IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

**No. 22-1587**

———————

**COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA GAME COMMISSION,**

**Appellants**

v.

**THOMAS E. PROCTOR HEIRS TRUST**

———————

**JOINT APPENDIX VOL. III**

———————

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
ENTERED DECEMBER 3, 2021

JOSH SHAPIRO
*Attorney General*

Office of Attorney General
15th Floor, Strawberry Square          BY:    MICHAEL J. SCARINCI
Harrisburg, PA 17120                          *Deputy Attorney General*
Phone: (717) 857-2184
FAX:   (717) 772-4526                          J. BART DELONE
                                               *Chief Deputy Attorney General*
DATE: June 7, 2022                             *Appellate Litigation Section*

# JOINT APPENDIX
# INDEX

## VOLUME  III of V

| Docket No. | Document Description | Page Numbers |
|---|---|---|
| 205 | Stipulation of Facts | JA167-171 |
| 218 | Trial Transcript, April 27, 2021 | JA172-310 |
| Trial Ex. J1 | Excerpts from Percheron title report (p. 1, 45-64, 67-72, 292-95) | JA311-341 |
| Trial Ex. J2 | Excerpts of Title Report (p. 1, 72, 90-94, 102-09, 119, 131-32) | JA342-359 |
| Trial Ex. J4 | Proctor & Hill to Union Tanning 1894 Deed | JA360-374 |
| Trial Ex. J5 | Union Tanning to CPLC 1903 Deed | JA375-388 |
| Trial Ex. J6 | CPLC to Commonwealth 1920 Deed | JA389-394 |
| Trial Ex. J7 | CPLC to Elk Tanning 1924 Deed | JA395-396 |
| Trial Ex. J8 | Bradford County List of Unseated Lands & Taxes (1890-95) | JA397-412 |
| Trial Ex. J9 | Bradford County List of Unseated Lands & Taxes (1895-1900) | JA413-432 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA GAME COMMISSION,

     Plaintiff,

     v.

THOMAS E. PROCTOR HEIRS TRUST and
the MARGARET O.F. PROCTOR TRUST,

     Defendants.

Case No. 1:12-CV-1567

Judge Conner

## STIPULATION OF FACTS FOR TRIAL

Plaintiff, the Commonwealth of Pennsylvania, Pennsylvania Game Commission ("PGC"), and Defendants, the Thomas E. Proctor Heirs Trust and the Margaret O.F. Proctor Trust (the "Trusts"), hereby submit the following Stipulation of Facts for use at trial:

1.    By warrant dated January 22, 1793, the Commonwealth of Pennsylvania warranted a tract of land then located in Northumberland County to Josiah Haines (the "Josiah Haines Warrant").

2.    By patent dated June 27, 1794, the Commonwealth subsequently conveyed the Josiah Haines Warrant (also known as "Trap"), patented at 407¾ acres, to Daniel Brodhead.

3.    The Josiah Haines Warrant is located in what is now LeRoy Township, Bradford County.

**JA167**

4.      Through a series of conveyances, Schrader Mining & Manufacturing Co. acquired ownership of the Josiah Haines Warrant.

5.      By deed dated June 5, 1893, Schrader Mining & Manufacturing Co. conveyed the Josiah Haines Warrant, along with forty-three other tracts (collectively, the "Schrader Lands") to Thomas E. Proctor and Jonathan A. Hill.

6.      By deed dated October 27, 1894 (the "Union Tanning Deed"), Thomas E. Proctor and his wife Emma H. Proctor, and Jonathan A. Hill and his wife Lucy M. Hill, conveyed the surface estate of the Schrader Lands and other tracts, including the Josiah Haines Warrant (collectively, the "Proctor & Hill Lands") to Union Tanning Co.

7.      The Union Tanning Deed found at Exhibit J4 is true and correct.

8.      Shortly after executing and delivering the Union Tanning Deed, Thomas E. Proctor died in December 1894.

9.      Pursuant to the will of Thomas E. Proctor, the residue of his estate was devised to his heirs in trust.

10.     The Thomas E. Proctor Heirs Trust and the Margaret O.F. Proctor Trust are the heirs of Proctor and/or successors to his interest in the Josiah Haines Warrant.

11.     By deed dated May 5, 1903 (the "Union-CPLC Deed"), the Union Tanning Company conveyed certain interests with respect to the Josiah Haines Warrant to the Central Pennsylvania Lumber Company ("CPLC").

12.     The Union-CPLC Deed at Exhibit J5 is true and correct.

13.     Taxes assessed against the Josiah Haines Warrant for 1907 were not

**JA168**

paid prior to June 8, 1908. (**Note:** The parties do *not* stipulate as to whether or not the assessment included subsurface oil, gas and mineral rights, matters for resolution at trial.)

14.    From 1894 through 1921 the Josiah Haines Warrant was assessed as unseated. (**Note:** The parties do *not* stipulate as to whether or not the Josiah Haines Warrant was in fact unseated.)

15.    On June 8, 1908, the Josiah Haines Warrant was sold by the W.F. Waters, the Treasurer of Bradford County at tax sale, to recover unpaid 1907 taxes. (**Note:** The parties do *not* stipulate as to the nature or extent of this interest, and do *not* stipulate as to whether or not it included subsurface oil, gas and mineral rights, matters for resolution at trial.)

16.    At the June 8, 1908 tax sale, the purchaser of the Josiah Haines Warrant was Calvin H. McCauley, Jr. ("McCauley Jr.").By deed dated December 6, 1910, Calvin H. McCauley, Jr. and Florence M. McCauley, in consideration of a payment of $1.00, "grant[ed], remise[d], release[d] and quit-claim[ed]" to CPLC "[a]ll their right, title, interest and estate of, in, and to" forty-five parcels, including the Josiah Haines Warrant.

17.    By deed dated December 14, 1920 (the "CPLC-PGC Deed"), CPLC conveyed to the Commonwealth 7,492.9 acres of land, including the Josiah Haines Warrant.

18.    The CPLC-PGC Deed at Exhibit J6 is true and correct.

**JA169**

19.     The PGC's acquisition of the Josiah Haines Warrant and other warrants contained in the L-2 Contract is noted in the Bradford County Assessment Book.

20.     Bradford County, LeRoy Township and Barclay Township assessment records for 1921 indicate the owners of these tracts as the Commonwealth of Pennsylvania.

21.     Union Tanning Company was a subsidiary of the U.S. Leather Company.

22.     Elk Tanning Company was a subsidiary of the U.S. Leather Company.

23.     The Susquehanna and New York Railroad was a subsidiary of the U.S. Leather Company.

24.     The Central Pennsylvania Lumber Company was a subsidiary of the U.S. Leather Company.

25.     In connection with the December 14, 1920 purchase of properties from CPLC, including the Josiah Haines Warrant, as well as in connection with other purchases from CPLC, the Board of Game Commissioners retained John E. Potter to examine the titles of the properties in advance of the conveyance.

**JA170**

Dated: December 4, 2020

Respectfully submitted,

*/s/ Bradley C. Bechtel**
Bradley C. Bechtel
W. Creigh Martson
2001 Elmerton Avenue
Harrisburg, PA 17110
brbechtel@pa.gov
wmartson@pa.gov

*\*With permission*

*Attorneys for the Commonwealth of
Pennsylvania, Pennsylvania Game
Commission*

Respectfully submitted,

*/s/ Paul K. Stockman*
Paul K. Stockman
   Pa. ID No. 66951
KAZMAREK MOWREY CLOUD
   LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
pstockman@kmcllaw.com

Laura A. Lange
   Pa. ID No. 310733
1670 Sturbridge Drive
Sewickley, PA 15143
lange@proctortrust.com

*Attorneys for the Thomas E. Proctor
Heirs Trust and Margaret O.F.
Proctor Trust*

**JA171**

1    **IN THE UNITED STATES DISTRICT COURT**
     **FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
2                 **HARRISBURG DIVISION**

3    PENNSYLVANIA GAME COMMISSION,     ) CASE NO.
                  **Plaintiff**        ) 1:12-CV-01567-CCC
4          vs.                         )
     PROCTOR HEIRS TRUST,              )
5                 **Defendant**        )
     _____)

6

7         **TRANSCRIPT OF BENCH TRIAL PROCEEDINGS**
        **BEFORE THE HONORABLE CHRISTOPHER C. CONNER**
8              **UNITED STATES DISTRICT JUDGE**
               **27 APRIL 2021 - 9:24 A.M.**

9

10   APPEARANCES:

11   **For the Plaintiff**:

12       Bradley C. Bechtel, Esq.
         Pennsylvania Game Commission
13       2001 Elmerton Avenue
         Harrisburg, PA 17110-9797
14       (717) 783-6530.

15       William C. Martson, Esq.
         Abom & Kutulakis, L.L.P.
16       2 West High Street
         Carlisle, PA 17013
17       (717) 249-0900

18   **For the Defendant**:

19       Laura A. Lange, Esq.
         1670 Sturbridge Drive
20       Sewickley, PA 15143
         (847) 800-8334

21

22       Justin G. Weber Esq..
         Troutman Pepper Hamilton Sanders, L.L.P.
23       100 Market Street, Suite 200
         Harrisburg, PA 17108
24       (717) 255-1170

25

 1  APPEARANCES (Continued):

 2

 3

 4

 5  **Court Reporter**:

 6      Wesley J. Armstrong, RMR
        Official Court Reporter
 7      U.S. Courthouse & Federal Building
        228 Walnut Street
 8      Harrisburg, PA 17101
        (717) 542-5569

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      Proceedings recorded by machine shorthand; transcript
    produced by computer aided transcription.

**JA173**

**P R O C E E D I N G S**

1
2          THE COURT: Please be seated. Good morning.
3          MR. BECHTEL: Good morning.
4          MS. LANGE: Good morning, Your Honor.
09:32AM  5          THE COURT: Off the record, Wes.
6          (Discussion held off the record.)
7          THE COURT: All right, Wes, back on the record.  As I
8   said, good morning. This is the time for a trial on the bell
9   weather tract of Josiah Haines.  I know the parties have
09:33AM 10  stipulated to certain facts.  I'm not sure if that's an exhibit
11  or how you would like to have that introduced, but that should
12  be part of our record.  And I'm happy to hear from you,
13  Mr. Bechtel. You have the -- you are the plaintiff in this
14  case, and I'm happy to hear from you with respect to any
09:33AM 15  presentation you would like to make.
16          MR. BECHTEL: Thank you, Your Honor.  My name is Brad
17  Bechtel.  I am chief counsel of the Pennsylvania Game
18  Commission.  I've been chief counsel since I believe about
19  2009.  We're here representing the Commonwealth of
20  Pennsylvania, the Pennsylvania Game Commission -- I apologize.
21  Thank you.  I'm technologically challenged apparently, and I
22  apologize for that.
23          THE COURT: It will happen to all of us throughout the
24  course of this proceeding I have no doubt.
09:34AM 25          MR. BECHTEL: Typically the purpose of an opening is

JA174

09:34AM

to preview the evidence of the witnesses.  It's a little
different here.  We don't have any witnesses, and in fact the
evidence has been viewed previously.  So I'm going to sort of
step back and start at the beginning with the idea that this is
a quiet title action, and in a quiet title action the plaintiff
has the burden of proof.

The burden is to prove a prima facie case by a
preponderance of the evidence, and a prima facie case is proven
by showing a chain of title at least to a common source of
grantor.  In order to do that we want to start at the very
beginning.  We have two joint exhibits, Joint Exhibit 1 and
Joint Exhibit 2.

They both set out the chain of title, beginning with
the Commonwealth, and traveling through various conveyances,
tax sales, other conveyances of many properties, including
Josiah Haines, until 1894, when Josiah Haines ends up being
owned by Thomas E. Proctor.

Thomas E. Proctor then transfers that to Union
Tanning, excepting and reserving certain, oil, gas, and mineral
interests.  Union Tanning transfers the property to Central
Pennsylvania Lumber Company.  In 1908 a tax sale takes place,
at which time the property, Josiah Haines, is sold to Calvin H.
McCauley, Jr., who two years later Calvin H. McCauley, Jr. and
his wife Florence convey that interest in Josiah Haines to the
Pennsylvania Central Lumber Company again, and the Central

JA175

1  Pennsylvania Lumber Company in turn conveys Josiah Haines to

2  the Commonwealth of Pennsylvania, the Game Commission, in 1921.

3  I would like to go back to the sale for a minute.  In a very

4  real sense this is when the Commonwealth will contend that the

09:36AM  5  position of the defendants and the plaintiffs diverge with

6  respect to title.

7       We could say it diverged back in 1894, but in fact

8  that was temporary.  The actual divergence in the change of

9  title begins with the actual tax sale.  From the plaintiff's

09:36AM  10  side that tax sale continues forward to the Commonwealth of

11  Pennsylvania, and from the defendant's side it didn't.  The

12  reason this is important is we talk about this as a title wash

13  case.

14       A title wash is not a concept or an argument or a

09:37AM  15  theory.  It's actually a moniker that's given to the

16  consequence or result of a certain set of facts.  If the facts

17  are present, we describe it as a title wash.  So to describe

18  those facts we can look to Herder Spring, which is a seminal

19  Pennsylvania case that discusses what it means, and essentially

09:37AM  20  if you have an unseated tract, assessed as unseated, a tax sale

21  that follows the assessment, that sale sells the whole of the

22  property.

23       So we have to talk about what's unseated for a

24  moment.  In a very real sense unseated land was taxed as an *ad*

09:37AM  25  *valorem* or *in rem* proceeding. The property was looked to for

JA176

1    the tax, for the value.  There is no question that from 1894 to

2    1921 the Josiah Haines warrant was assessed as unseated.  In

3    fact it has been stipulated.  That is Stipulation Number 14.

4    If we can look for a moment, if it's possible, we have Exhibits

09:38AM   5    J-3 through -- I'm sorry, J-3 through 7 if I may just say are

6    source deeds that are contained within J-1 and J-2.  So those

7    are the actual sort deeds set out for ease of reference as to

8    the various steps in the chain of title.

9         But when we begin through J-8 through 11, these are

09:38AM   10   assessment records from LeRoy Township showing what was

11   assessed, and if I could I would like to just go to J-11 for a

12   moment to make a point about it.  Is that possible?  I'm not

13   sure how to use the audio/visual aids at this point, but is

14   that an appropriate time?

09:39AM   15         THE COURT: That's really not within our bailiwick.

16   That's really up to you to control. We can give you access to

17   the court's electronic system, but it would be up to you to --

18         MR. BECHTEL: Well, I have it, but I don't think I

19   have control.

09:39AM   20         COURTROOM DEPUTY: You do.  It's on the screen.

21         MR. BECHTEL: Okay.

22         THE COURT: I have it in front of me on the screen.

23         MR. BECHTEL: Oh, you do?  Okay.  Because it's not

24   there.  All right, good.  Excellent. All right. So if we look

09:39AM   25   at J-11 for a moment, and I believe you can see this little

JA177

1  cursor.

2          THE COURT: I can.

3          MR. BECHTEL: This is the list of unseated lands for

4  the county of Bradford for the year 1907.  You can see where

09:40AM 5  I'm pointing now, it says LeRoy Township, and as we go down

6  through on the left hand side we find Josiah Haines, and we

7  follow it across and see the notation says it was sold June

8  8th, 1908 to Calvin H. McCauley, Jr., and if I could just

9  contrast that for a moment with the line right above that says

09:40AM 10  Charles Hall, and we follow it across, and it shows taxes paid

11  December 20th, 1907 by Central Pennsylvania Lumber Company.

12          The point I would like to make about this exhibit, as

13  with all of them, again Josiah Haines has been assessed

14  unseated.  It was assessed as unseated at the time of the sale.

09:40AM 15  It was sold as unseated at the time of the sale.  And just as

16  importantly, the person who is making the notations in this

17  book knew the difference between a sale and the tax being paid.

18          Central Pennsylvania Lumber Company is not a person.

19  It doesn't walk in and pay the tax.  Somebody paid that tax on

09:41AM 20  behalf of Central Pennsylvania Lumber Company, whether they

21  mailed the check, signed the check, delivered cash, and whoever

22  made this notation knew when that person paid the tax on

23  Charles Hall that it was on behalf of Central Pennsylvania

24  Lumber Company.

09:41AM 25          By contrast, when they sold the Josiah Haines warrant

JA178

1  they knew they sold it to Charles H. McCauley, Jr., and they

2  noted it on this record.  So they see evidence of the sale, the

3  assessment, the sale, the sale following the assessment.  In

4  just a moment -- I believe I have control now -- I'll bring up

09:42AM  5  another exhibit.  This is J-24.  There's a series of exhibits

6  starting at J-12 through J-24.

7          This is in fact J-12, and we can see from J-12 what

8  was advertised was the treasurer sale of unseated lands.  And

9  again I believe my cursor is going down to LeRoy Township, and

09:42AM 10  we can again see Josiah Haines.  And the date on this

11  particular notice is April 6th, 1908.  So again we have an

12  unseated tract assessed as unseated.  We have notices telling

13  the public there's an unseated tract being sold.  We have

14  record of the unseated tract being sold.  We have the sale

09:43AM 15  being made and record of the sale.

16          And then with regard to J-25 we see the treasurer's

17  deed book, which is the actual deed to Calvin H. McCauley, Jr.

18  from the treasurer.  And with respect to J-26, two years later

19  we have a sale from Calvin H. McCauley, Jr. and his wife

09:43AM 20  Florence to Central Pennsylvania Lumber Company.  I mention

21  Florence because Florence is important.  Florence signed that

22  deed because Florence had something to give up.

23          All the parties recognized that all of them made sure

24  that she signed that deed to Central Pennsylvania Lumber

09:44AM 25  Company.  We can't just forget Florence.  Pennsylvania courts

**JA179**

1   at all levels have looked at these facts, or remarkably similar

2   facts, or in some cases these very same facts, sometimes with

3   the same parties, and have come to the decision that the result

4   of these facts is a title wash, that the consequence is that

09:44AM  5   the whole of the Josiah Haines Warrant was sold to Calvin H.

6   McCauley, Jr., then to Central Pennsylvania Lumber Company, and

7   then to the Commonwealth of Pennsylvania.  At this point I

8   would like to move for admission if I may of the stipulation

9   that we already signed and filed.

09:45AM 10                THE COURT: Any objection?

11                MS. LANGE: No objection, Your Honor.

12                THE COURT: It is admitted.

13                MR. BECHTEL: Thank you.  I'd like to move for

14   admission of Exhibits J-1 -- let me get the right number --

09:45AM 15   through J-26.

16                THE COURT: These are all joint exhibits?

17                MR. BECHTEL: Yes.

18                THE COURT: Any objection?

19                MS. LANGE: No objection, Your Honor.

09:45AM 20                THE COURT: They are admitted.  Is there any objection

21   to the admission of all the joint exhibits?

22                MS. LANGE: None from the defendants, Your Honor.

23                THE COURT: Any reason why all of the joint exhibits

24   should not be admitted, Mr. Bechtel?

09:45AM 25                MR. BECHTEL: Well, Your Honor, in fact there's --

JA180

1  there are three joint exhibits, J-30, 31, and 32, which are

2  transcripts.  Those transcripts were prepared with the eye that

3  they may be used at trial.  The objection to these is that

4  they're not necessary to the decision of this case.

09:46AM  5          THE COURT: So the objection is relevance?

6          MR. BECHTEL: It's relevance, and there may be

7  authenticity or hearsay objections to what is contained within

8  them or how they're used.  We're not sure -- because this case

9  hasn't come up yet we're not sure how the defendants might use

09:46AM  10 those.

11          THE COURT: Why don't I reserve ruling on those three

12  exhibits then until the Proctor Heirs Trust has had an

13  opportunity to make their case in chief?

14          MR. BECHTEL: Thank you.

09:46AM  15         THE COURT: So all of the other joint exhibits are

16  hereby admitted.

17          MR. BECHTEL: All right.  And then the last exhibit

18  that I would like to move for admission is Exhibit P-1, which I

19  didn't discuss earlier.  It is also an abstract of title. All

09:46AM  20 of these abstracts, J-1, J-2, P-1 are typical abstracts of

21  title that you might see.  They set out the facts that are

22  found in the record by the searcher that looks for them. They

23  analyze the facts.  They report them back to whoever hired

24  them, in this case the Game Commission.  They are all abstracts

09:47AM  25 within our files in our government records.

**JA181**

1    THE COURT: P-1 stands for plaintiff, not Proctor?

2    MR. BECHTEL: Plaintiff 1.  Yes, sir, I apologize.

3    THE COURT: All right.

4    MR. BECHTEL: Plaintiff's 1,  I'll call it plaintiff

09:47AM  5  from now on, yes.

6    THE COURT: Any objection, Ms. Lange, to P-1?

7    MS. LANGE: We do have an objection to Plaintiff's

8  Exhibit 1, Your Honor.  It is their expert report which was

9  excluded during summary judgment.  You know, we maintained that

09:47AM 10 objection that it's an improper opinion testimony, but I think

11 more importantly as this court identified the issues that are

12 relevant to this trial being what the scope of the assessment

13 it was in 1907 and McCauley's agency, that expert opinion does

14 not address those issues. So we don't think it's relevant to

09:48AM 15 the issues that are presented for trial.

16    THE COURT: Well, look.  I've ruled on this.  I don't

17 know that it was excluded in its entirety and I'm not sure what

18 is in P-1 right now, but with respect to the exhibits where

19 there are objections, I'm going to allow them into the record

09:48AM 20 and then I'll make a ruling on the objections at the time that

21 I issue a final decision in this matter.

22    So, in other words, everything can come in, but it's

23 a bench trial, so I'm obviously not going to be influenced over

24 something that is in inadmissible, so -- or irrelevant,

09:48AM 25 ultimately irrelevant to the Court's determination.  So I will

JA182

allow P-1 to come in, and it is admitted into the record

subject to the Court's final review on its appropriateness as

part of the evidentiary record when we issue our final

determination.  All right?

09:49AM    MR. BECHTEL: Thank you, Your Honor.  At this point

the plaintiff has met its prima facie burden.  We would expect,

as you probably would expect, a motion to make a motion.  We

are making a motion for judgment based on the concept that the

title has been proven, the set of facts and circumstances have

09:49AM been set forth, and you should find in favor of the

Commonwealth on this issue of ownership.

THE COURT: All right.  That was a fairly swift

transition from your opening statement to your case in chief.

Is that essentially the conclusion of your case in chief? I

09:49AM didn't have an opportunity to ask Ms. Lange for her opening

statement, but if that was your intent to sort of preempt any

need for you to move forward with a burden of proof beyond what

you have presented, I'm happy to accept that as your case in

chief.

09:50AM    MR. BECHTEL: It was, Your Honor.  I may have

misunderstood you, but you said proceed with your case, I

proceeded with the case.

THE COURT: All right.  Therefore, Ms. Lange, I'll

turn to you for an opening statement and you may, if you could

09:50AM make a clear transition between your opening statement and your

JA183

1  presentation, that would be greatly appreciated.

2      MS. LANGE: Sure, Your Honor.  I will say that I

3  didn't prepare a formal opening statement, because when we had

4  our initial conference regarding this you kind of expressed not

09:50AM  5  really wanting to have a formal opening statement.  So I more

6  so just kind of, I have a brief opening, but then I jump into

7  the exhibits, if that's all right.

8      THE COURT: Well, it sounds like you and Mr. Bechtel

9  are of the same thought process.  And I guess when I mentioned

09:50AM  10  no need for an opening statement, I meant in terms of the

11  background of the case.  Look, you both know I've issued a

12  fifty page opinion on summary judgment.  I'm very well familiar

13  with the background and the facts.  What I think we really need

14  to do is get into the details and address the facts that are

09:51AM  15  pertinent to the very interesting legal issues that remain.

16  So I'm happy to hear from you at this time, Ms. Lange.

17      MS. LANGE: Thank you, Your Honor.

18      (Brief pause.)

19      MS. LANGE: Good morning, Your Honor.  Laura Lange on

09:51AM  20  behalf of the Thomas E. Proctor Heirs Trust. I just want to

21  explain how we're going to progress through today. I will be

22  talking about of the two issues this court identified in the

23  summary judgment ruling, I will be addressing the scope of the

24  assessment, which relates to evidence demonstrating a reporting

09:52AM  25  under the Act of 1806, and my colleague Mr. Weber will be

JA184

1  addressing the issue relating to Mr. McCauley's agency.

2          As the Court can see, we have many exhibits in this

3  case, and rather than walking through every single page what

4  we've done is highlight the critical pieces that we think are

09:52AM 5  important to the issues identified for the trial.  First I'm

6  going to walk through the relevancy transactions.

7          THE COURT: Ms. Lange, before you do that, I know I

8  have exhibit books from both parties.  This particular

9  Powerpoint that appears to begin on my screen, is that also an

09:52AM 10  exhibit? Is that something that I would have access to?

11          MS. LANGE: It is not an exhibit.  We do have a

12  printout if you would --

13          THE COURT: That would be, that would be much

14  appreciated.

09:53AM 15          MR. BECHTEL: Your Honor, if I may, I have not seen

16  this Powerpoint.  I have some objection to the idea that

17  there's an exhibit I have not seen.  I don't know what it would

18  say.  There's been no chance to cross examine on it and I doubt

19  there will be a chance as to how it was prepared.

09:53AM 20          THE COURT: Well, I don't envision this as witness

21  testimony.  It's a summary of what I anticipate to be a

22  presentation.  So you may certainly review it.  If you have

23  objections as we go through it please feel free to state them

24  for the record.

09:53AM 25          MR. BECHTEL: Thank you.

JA185

1          THE COURT: Ms. Lange, you may proceed.

2          MS. LANGE: So first I'm going to walk through the

3     relevancy transactions.  It's important to recognize that the

4     Josiah Haines warrant is a small piece of a much larger

09:53AM  5     transaction.  Proctor and Hill acquired all the lands of the

6     Schrader Mining & Manufacturing Company.  But when they

7     conveyed to the Union Tanning Company they reserved both the

8     subsurface estate which is at issue in this case, but also four

9     warranted that they retained in fee.

09:54AM 10          This is important, because following that transaction

11    the assessment records recognized this divided ownership

12    between Union Tanning Company and Proctor & hill, which is

13    indicative of reporting.  Second I will walk through the

14    assessment records that follow each of the deed transactions.

09:54AM 15          As I just mentioned, the assessment record reflect

16    the change in ownership from Proctor & Hill to Union Tanning to

17    then CPLC, and in 1907 the assessment that results in the tax

18    sale of the Josiah Haines warrant, it identified CPLC as the

19    owner of the warrant, indicating that CPLC's interest was

09:54AM 20    assessed and sold in the 1908 tax sale.

21          MR. BECHTEL: Excuse me, Your Honor, I think I do have

22    an objection.  There's no foundation to this being entered.

23    I thought we are walking through the exhibits to see that.

24          THE COURT: I think this is her introduction.  I'm

09:55AM 25    happy to hear her introduction, much like an opening statement,

JA186

1    and then we'll get into the details.

2            MR. BECHTEL: My apologies.

3            THE COURT: Not a problem, Mr. Bechtel. I want you to

4    feel free to interrupt and raise any objections that you have.

09:55AM    5    All right, Ms. Lange?

6            MS. LANGE: Third I will walk through the exhibits

7    that demonstrate clear instances of reporting to show that the

8    notations made in the assessment records reflect the reported

9    ownership pursuant to the Act of 1806.  And fourth I will walk

09:55AM  10    through the documents that show that all contemporaneous

11    parties, Proctor & Hill, CPLC, and the PGC understood that the

12    tax sale did not encompass the subsurface estate.

13            All of this evidence will show that at every step of

14    the way the transactions were reported and that all parties,

09:55AM  15    including the PGC, operated with the knowledge that the tax

16    sale had no impact on the title to the subsurface estate. So

17    first we're looking at the deed transaction.  Here's the chain

18    of title, and you can see in 1893 Proctor & Hill acquired the

19    Schrader lands.  This includes forty-five warrants.

09:56AM  20            And, Andy, if you could bring up Exhibit J-3?  Here

21    you can see Exhibit J-3 is the deed from the Schrader Mining &

22    Manufacturing Company to Thomas E. Proctor and Jonathan A.

23    Hill.  And if we go to page 2 of Exhibit J-3 you will see where

24    there's a highlighted notation.  It says, "All those certain

09:56AM  25    forty-five several tracts of parcels of land." And I just

JA187

1  wanted to highlight the magnitude of this transaction.  As you

2  will see, these parcels go through, the majority of these

3  parcels go through the entire chain of title.  So it's not just

4  the little pieces of Josiah Haines's warrant.

09:57AM  5          Following this transaction the county records

6  referenced Proctor & Hill, a Proctor & Hill map of Schrader

7  land, and those county assessment records are kept at the

8  Bradford County Historical Society, which also holds a

9  historical map of the Schrader land.

09:57AM  10         Then we have the 1894 transaction from Proctor & Hill

11  to Union Tanning Company, which is Exhibit J-4.  Andy, could

12  you bring up Exhibit J-4?  And as I noted, in that transaction

13  Proctor & Hill, and if you could zoom in on the caption real

14  quick, you can see Exhibit J-4 is a deed from Thomas E. Proctor

09:57AM  15  and Jonathan A. Hill to Union Tanning Company, and at the

16  bottom of Exhibit J-4 at page 1 you will see a notation where

17  it includes the Josiah Haines warrant, to the bottom right hand

18  corner.  So just a little bit to the left of that viewing area,

19  but these notations from the title examiner noted the Josiah

09:58AM  20  Haines warrant at that point.  And if we go to page 2 --

21          THE COURT: So if I could interrupt you for just a

22  second?  On that page what we saw highlighted was the title

23  examiner's notes on the margin, but in the body of the document

24  is the reference to the Josiah Haines 410.5 acres.

09:58AM  25         MS. LANGE: Correct, Your Honor.

JA188

1       THE COURT: All right.  But the margins and the

2  underlining, that's all title examiner work?  It is not the

3  original document?

4       MS. LANGE: Correct, Your Honor.  We do not have,

09:58AM  5  unfortunately neither side had a clean copy of this deed.  And

6  so it came from the title report contained within Exhibit J-1.

7       THE COURT: All right.  But there is a stipulation

8  that this is in fact the original deed with the title

9  examiner's notes reflected?

09:59AM 10       MS. LANGE: Correct, Your Honor.

11       THE COURT: All right.

12       MS. LANGE: If we go to page 2 of Exhibit J-4 we have

13  added these highlights, the yellow highlights that you see

14  here.  And here you see this is the retention by Proctor & Hill

09:59AM 15  of four warrants that convey hemlock bark only on these four

16  warrants.  But they otherwise retain the Henry Beck, John

17  Graff, Thomas Dundass, and James Biddle warrants, which are

18  located in both Barclay and LeRoy Townships.  And then if you

19  go to page --

09:59AM 20       THE COURT: How is that pertinent?

21       MS. LANGE: As I'll show you when we get to the

22  assessment records, you see after this transaction Union

23  Tanning is identified as the owner of the thirty-nine tracts it

24  acquired, and Proctor & Hill are identified as the owners of

10:00AM 25  these four tracts that were reserved out in this deed.

JA189

1    THE COURT: Okay.

2    MS. LANGE: If you go to page 3 of Exhibit J-4 where

3    the yellow highlights are, this just summarizes the

4    transaction.  You can see in the cursive handwriting it says,

10:00AM   5    "In all thirty-eight tracts of land and the hemlock bark from

6    four other tracts."  Adjacent to that you do see the title

7    report, the title examiner's notation that reflect that same

8    information.

9    THE COURT: Could you stay on that for just a second?

10:00AM  10    MS. LANGE: Sure.

11    THE COURT: And that total in the examiner's notes,

12    I'm sorry if I'm getting into too many details too quickly,

13    are we going to go through this document again?

14    MS. LANGE: No, this is the perfect time to ask any

10:01AM  15    questions.

16    THE COURT: All right.  So the total acreage of the

17    forty-five warrants, or I guess the thirty-eight tracts and the

18    four tracts of hemlock bark is 14,200 acres.  That's the entire

19    size of the transaction?

10:01AM  20    MS. LANGE: This transaction encompasses other tracts.

21    But for Bradford County, which is where the Josiah Haines

22    warrant is, yes, that is the acreage of those thirty-eight

23    tracts and four tracts of hemlock bark acreage.

24    THE COURT: All right.  Is there any more

10:01AM  25    identification of those four tracts of hemlock bark?

JA190

1          MS. LANGE: Anywhere else within this deed?

2          THE COURT: Or any other evidence to say what is, what

3    is being transferred.

4          MS. LANGE: If we went back to page 3 of exhibit, of

10:02AM  5    this Exhibit J-4, that's where the conveyance of the hemlock

6    bark is.  Page 3?  Or sorry, page 2.  Sorry.  And where that

7    first yellow highlight down to the, below the yellow highlight,

8    the second yellow highlight, you'll see it says, "Also all the

9    hemlock bark on all the hemlock trees standing and growing on

10:02AM  10   the four lots tracts or parcels of land situate in Bradford

11   County aforesaid," I can't quite read all of these words, but

12   in parts of the warrants conveyed and situate.

13         And then they say, "Survey to Henry Beck," that's the

14   first warrant, "containing 194 acres."  The John Graff warrant.

10:03AM  15   And fortunately we do have the underlines, so you can kind of

16   see those names.  And I believe it that's 183.3 acres.  The

17   Thomas Dundass warrant containing 454 acres.  And James Biddle,

18   containing 440 something point one acres.

19         THE COURT: Okay.  So explain the significance of this

10:03AM  20   to me.

21         MS. LANGE: So prior to this transaction all the

22   Schrader lands are assessed uniformly, and you will see

23   Schrader Mining & Manufacturing making the payments on those.

24   Following this transaction the Proctor & Hill reserved the

10:04AM  25   hemlock bark and the subsurface.  Following this transaction

JA191

1 these four tracts, which are retained and cede by Proctor &

2 Hill, except they convey the bark rights, are assessed to

3 Proctor & Hill. That signifies that this deed transaction was

4 reported to the county commissioners.  Otherwise they would not

10:04AM 5 know that Proctor & Hill were retaining these four tracts and

6 that Union Tanning acquired those other thirty-eight tracts.

7          THE COURT: Okay.

8          MS. LANGE: Now, if we could go to page 13 of this

9 deed, and you'll see this purple highlighting was done by the

10:04AM 10 title examiner.  So it's built into the document, the exhibit

11 itself.  But here is the reservation of the subsurface from

12 Proctor & Hill.  It states, "And the said grantors herein,

13 Thomas E. Proctor and Jonathan A. Hill, hereby expressly

14 reserve and save to themselves, their heirs and assigns, all

10:05AM 15 the minerals, coal, oil, gas, or petroleum found now or

16 hereafter on or under the surface of any or all of the lands

17 described in each of the above mentioned parts or divisions and

18 conveyed by this indenture."

19          So that is the reservation at issue that severed the

10:05AM 20 surface from the subsurface.  Now, going back to our

21 Powerpoint, we look at the next transaction from Central

22 Pennsylvania -- or from Union Tanning Company to the Central

23 Pennsylvania Lumber Company in May of 1903.  And here Union

24 Tanning conveyed all the lands in Bradford and Sullivan

10:05AM 25 Counties to Central Pennsylvania Lumber Company.  Andy, if you

JA192

1  can pull up Exhibit J-5?  And if we zoom in on the caption of

2  the deed you can see this is a deed from Union Tanning Company

3  to the Central Pennsylvania Lumber Company.  And if you go to

4  page 3 of J-5, here are the list of warrants, and I will try to

10:06AM  5  show the Josiah Haines here with the mouse. Do you see the

6  mouse there?

7           THE COURT: I do.

8           MS. LANGE: That's the Josiah Haines warrant, 410.5

9  acres.  And the rest of this deed is unfortunately not very

10:06AM  10  clear to read, but this effectively conveys everything that

11  Union Tanning held to the Central Pennsylvania Lumber Company,

12  but Union Tanning did reserve the bark rights for the lands.

13           Now, if you go back to the Powerpoint, the last

14  transaction at issue is J-6, which is the deed from the Central

10:07AM  15  Pennsylvania Lumber Company to the Pennsylvania Game

16  Commission.  And this includes nineteen of those warrants.  So

17  it does not include everything that started with the Schrader

18  land, but it does nineteen of those warrants have the same

19  chain of title as the Josiah Haines tract.

10:07AM  20           And this deed is made subject to the Proctor & Hill

21  reservation.  Andy, if you could pull up Exhibit J-6?  It's,

22  "Made subject to the Proctor & Hill reservation, and also CPLC

23  reserves the railroad right of way to the coal mine," and if

24  you zoom in on that caption, just to clarify that this is the

10:07AM  25  1920 deed from the Central Pennsylvania Lumber Company to the

1  Commonwealth of Pennsylvania, and then following this

2  transaction the assessment records again change from CPLC being

3  identified as the owner to the Commonwealth of Pennsylvania.

4        So if we can go back to the Powerpoint?  And what I'm

10:08AM  5  going to do here, Your Honor, this is going to be a summary of

6  the assessment records we're going to see.  I'm going to walk

7  through all the documents that support this, but I just wanted

8  to highlight the changes that occur with the timeline.

9        MR. BECHTEL: And, Your Honor, if I may, I have not

10:08AM  10  seen this before, but I would have to say highlighting the

11  changes and walking through a timeline, it sounds more like

12  testimony relating what is in the document to what they mean

13  because the timeline itself makes indications that mean

14  something.  I'm not sure if this would be an appropriate

10:08AM  15  exhibit.

16        THE COURT: I see no notations on the first page of

17  the Powerpoint reporting timeline.  I don't know how it's going

18  to be filled in.

19        MR. BECHTEL: I'm sorry, this is different from what I

10:09AM  20  received.

21        THE COURT: If you look at your display, do you see

22  what I see now?

23        MR. BECHTEL: I do.

24        THE COURT: All right.  I'm going to allow Ms. Lange

10:09AM  25  to fill in the various dates on the timeline, and to the extent

1  you have an objection you may raise it.

2      MR. BECHTEL: May I just -- one other objection.

3  There was a statement, the nineteen tracts in J-6 had the same

4  chain of title of Josiah Haines.  I'm not sure that that

10:09AM  5  statement, we know that in any way.

6      MS. LANGE: Well --

7      THE COURT: I'm assuming that we're going to work

8  through those documents that form the foundation for that

9  statement, or at least there will be some additional evidence

10:09AM  10  to that effect.  So I'm going to overrule that objection.  And

11  again it's a characterization.  So I consider that to be part

12  of the advocacy that I'm hearing given the presentation here,

13  just the same as you did, Mr. Bechtel.

14      So to the extent it's to the manner in which Ms.

10:10AM  15  Lange is advocating on behalf of her position, I think that's

16  fair game for today's proceeding.  But you certainly may

17  reserve an objection to any assertion that there is identical

18  chain of title in the nineteen warrants that ultimately went to

19  the Commonwealth of Pennsylvania in the final transaction.

10:10AM  20  Okay, Ms. Lange, you may proceed with your timeline.

21      MS. LANGE: Thank you, Your Honor.  So first we're

22  going to start with the 1894 deed from Proctor & Hill to Union

23  Tanning.  Following that transaction the assessments of those

24  tracts have notations that indicate Union Tanning company is

10:11AM  25  the owner, and also following that transaction we see those

JA195

1  reserved warrants that we highlighted, those four tracts are

2  assessed to Proctor & Hill.  Then in --

3          THE COURT: And by the four tracts you're referring to

4  the four tracts where Union Tanning only acquired the hemlock

10:11AM  5  bark rights?

6          MS. LANGE: Correct, Your Honor.

7          THE COURT: Okay.

8          MS. LANGE: I may refer to them throughout this as the

9  reserved warrants or retained warrants, but if you have any

10:11AM  10  questions just let me know.

11          THE COURT: Okay.

12          MS. LANGE: In 1897 we have newspaper evidence of coal

13  operations happening on Proctor & Hill's subsurface estate.  In

14  1903 we have the deed from Union Tanning Company to CPLC.  Then

10:11AM  15  the assessment books note the change, and CPLC's name is

16  identified in the assessment records, and those four retained

17  warrants continued to be assessed to Proctor & Hill.

18          Beginning in 1911 through 1921 we have newspaper

19  articles and correspondence and other documents that show that

10:12AM  20  there is coal activity on the Proctor & Hill subsurface estate

21  in Bradford County.  In 1920 we have the PGC deed, the deed

22  from the CPLC to PGC, and following that transaction the

23  assessment records identify PGC as the owner, and within that

24  deed we have the reservation from CPLC regarding the railroad

10:12AM  25  right of way to the coal mines, which indicates that PGC was

JA196

 1  not obtaining the coal interests.

 2         Now, turning to the assessment records, we're going

 3  to start first with that first transaction, the reporting of

 4  the Proctor & Hill interest.  We will look through the county

10:12AM  5  assessment records, J-8 and J-10, and D-51, which make multiple

 6  references to the Proctor & Hill map or survey and map from

 7  Proctor & Hill or General Hill.

 8         And then we're also going to look at a copy of a map

 9  that was located at the Bradford County Historical Society,

10:13AM 10  where the assessment records themselves are maintained, that

11  show references to both Proctor & Hill and Union Tanning.

12  First here's a newspaper article, we're looking at Exhibit D-9

13  at page 7, and here's an excerpt from a newspaper article, the

14  *Sullivan Republican*, which reports on the Proctor & Hill

10:13AM 15  acquisition of the Schrader Mining & Manufacturing Company's

16  lands.

17         MR. BECHTEL: Your Honor, we have an objection to

18  Exhibit D-9.

19         THE COURT: And I understand, and I'm going to

10:13AM 20  preserve for you for the record the hearsay objections and the

21  other matters that you've set forth in your pretrial memorandum

22  with respect to the evidentiary infirmities that the

23  Commonwealth of Pennsylvania have made with respect to these

24  exhibits.  But as I said at the beginning, I'm going to allow

10:14AM 25  all of this to come into the record at this time, subject to

JA197

1 your objections, and I will make a ruling on those objections

2 at the time that we issue a final determination.

3          MR. BECHTEL: Thank you.

4          THE COURT: And I'll note a continuing objection for

10:14AM  5 you, Mr. Bechtel, so you don't feel obligated to interrupt

6 the flow, and I think that will expedite things a bit. Okay?

7 Ms. Lange, you may continue.

8          MS. LANGE: Thank you, Your Honor.  Now what we're

9 going to look at is Exhibit D-51 at page 1, and this is

10:14AM 10 excerpts from the Bradford County assessment records.  If you

11 look at Exhibit D-51 in the binders you will see the full

12 assessment page, and on page 2 is this assessment record

13 without these cull outs on it.

14          So here we're looking at Barclay Township assessment

10:15AM 15 page in the county assessment records, and if you look at the

16 first box that I've highlighted, adjacent to the James Collins

17 warrant, and it may be difficult to read, so if you need me to

18 pull up the separate exhibit I can do so, but you will see it

19 says, "Shown by General Hill map 370 acres instead of 100."

10:15AM 20          THE COURT: I see that.

21          MS. LANGE: Okay.  And then if you look at the Thomas

22 Hillzeimer warrant it says, "Shown by General Hill, sold to

23 Towanda Coal Company."  And actually if you trace along with my

24 mouse, you can see here where the mouse is it says there's a

10:15AM 25 payment by Towanda Coal Company along that line.

**JA198**

1          THE COURT: I do see that.

2          MS. LANGE: And then at the bottom cull out with John

3    Baker it says, "Not assessed as shown by General Hill map."

4    And so these indications and notations by the county assessment

10:16AM  5    records show that there is communication between Proctor & Hill

6    and the county regarding the ownership of these tracts and

7    adjustments are being made to these assessments based on that.

8          THE COURT: All right, and I've heard a couple of

9    references to General Hill or the General Hill map.  Was

10:16AM 10   Mr. Hill a military veteran of some sort, referred to as --

11          MS. LANGE: He was a Civil War -- he was a Civil War

12   general, and he actually has his arm amputated during the Civil

13   War.

14          THE COURT: And the General Hill map is what?

10:16AM 15          MS. LANGE: We will get to that.

16          THE COURT: Okay. I'll be patient.

17          MS. LANGE: Now we're looking at Exhibit D-51 at page

18   3, and this is a 1893 Barclay Township, and next to, if you

19   look at that cull out you see the William Gratz warrant, and

10:17AM 20   the notation says, "Not owned by Schrader Mining &

21   Manufacturing Company as shown by the Proctor & Hill map."

22          THE COURT: I see that.

23          MS. LANGE: And we're looking at Exhibit D-51, page 5,

24   this is the assessment for the LeRoy Township assessment page,

10:17AM 25   and you see adjacent to John Barron, the cull out, it says, "As

JA199

per Proctor & Hill map, not in this township."  So again that's

a notation by the county commissioner with respect to Proctor &

Hill land and adjustments being made.

     THE COURT: And again these records are the Bradford

County assessment records, but in particular from the LeRoy

Township --

     MS. LANGE: Correct.  This page is from the LeRoy

Township.  The prior pages were Barclay Township.

     THE COURT: Okay.

     MS. LANGE: And here at Exhibit D-49 we see a map of

the Schrader lands.  Now, at Exhibit J-31, which I have noted

in this Powerpoint, we have the testimony of Gregory Gass,

who's a professional land man.  He acquired all the photographs

of the assessment records and he testified that he went to the

Bradford County Historical Society, where the county

commissioner records are all maintained, so the township

assessment records and the county level assessment records,

and in connection with these records the curator of the

Historical Society provided him or showed him this map of the

Schrader lands.  And if we pull up the -- it may be associated

with this, so we can zoom in on it.  Zoom in in that area with

the red.  So I'm going to highlight with my mouse, do you see

the James Biddle warrant?

     THE COURT: I do.

     MS. LANGE: And there's a notation that says Proctor &

JA200

1  Hill.  That, the James Biddle warrant was one of those four

2  warrants that were retained by Proctor & Hill and which only

3  the bark rights were conveyed to the Union Tanning Company. And

4  then you'll see down here where the, I've moved the mouse

10:19AM 5  cursor, that's a portion of the Andrew Tyborch warrant, it's

6  kind of hard to see the name of the warrant here because of

7  geographic notations on the map, but you see the reference, it

8  says Union Tanning Company and the amount of acreage, because

9  they did not acquire or Proctor & Hill did not own to convey to

10:19AM 10  them the entire warrant.  Just a portion of that warrant.  So

11  wherever Union Tanning did not, had just acquired portions of

12  warrants you see their name located on this map.

13         THE COURT: Okay.

14         MS. LANGE: If we go back to the Powerpoint, so now

10:20AM 15  we're going to talk about the reporting of the Proctor & Hill

16  Union Tanning transaction.  And you will be looking at two

17  types of assessment records.  There's township records and the

18  county records, both of which are maintained by the Bradford

19  County Historical Society.

10:20AM 20         Reporting was performed at the county level, but the

21  county commissioners utilized assessments for each township to

22  assess the taxable persons and property within that township.

23  And then what the county would do is send a letter to the

24  township assessors, which we often refer to as a recapitulation

10:20AM 25  statement.  And I will show you at Exhibit D-50, if we could

JA201

1  pull that up, at page 1, this is kind of the beginning of the

2  recapitulation, it says, "To the assessor," and this is -- if

3  we go to page 2 you will see the actual letter.  It's unfolded,

4  but it would be folded up into the book.  And what this is

10:21AM  5  placed inside of is the township assessment book.

6          So this is a copy of the Barclay Township assessment

7  book from 1894, and it contains this recapitulation statement.

8  And this is the letter, as I mentioned, from the county

9  commissioners to the township assessors basically commanding

10:21AM 10  them to go out and make assessments of the land, assessments of

11  the individuals, and return that information, put that

12  information in this book and then return the book to the county

13  so that it can be compiled into the county records.

14          So it's important to kind of understand that

10:21AM 15  relationship between the township books and the county books.

16  At the end of the day the county books are a compilation by the

17  clerk of each township's individual books for that year.  And

18  then the county book is the only book that actually contains

19  the payment information, as you'll see, where there's the

10:22AM 20  assessed value and then who makes the payment.

21          If we can go back to the Powerpoint? So what we're

22  going to look at for the reporting of the Proctor & Hill and

23  Union Tanning transaction, first we're going to look at the

24  township assessment records, which are D-1, D-2, and D-3.  Each

10:22AM 25  of those exhibits contains notes referencing the surveying of

**JA202**

land belonging to Union Tanning and Proctor & Hill.  They

contain notations of U.T. Co. and P & Hill adjacent to their

respective warrants, and there's headings stating unseated

lands assessed to Union Tanning Company and unseated lands

assessed to Proctor & Hill.

Then we're going to look at the county assessment

records, which are exhibits J-8 through J-10, and D-51.  These

show payments made by the Union Tanning Company for the

warrants it acquired. Adjustments to assessments based on

reports from Union Tanning, and notations of U.T. Co. and P & H

adjacent to the respective warrants.

First I wanted to just highlight again the

transaction that occurred from Proctor & Hill to Union Tanning.

So this pie chart represents the whole of the Schrader land,

and as you can see I've divided the surface and subsurface.

So the gray area represents Proctor & Hill retaining that

subsurface estate, and the yellow area to Union Tanning are the

number of warrants they acquired, and that purple area is the

retained lands by Proctor & Hill.

And the reason why these retained lands I referred to

so often is because if they're -- as we'll get to, there were

no separate assessments of the subsurface estate, but there

were separate assessments of the retained surface estate.  And

so this shows that that transaction was reported.  Now we're

going to look at Exhibit D-1.  This is page 1.  This is the

1896 LeRoy Township book. What I've highlighted in yellow is

the notation that is clipped into the book.  It says, "The

figure in pencil is the latest survey of land belonging to the

Union Tanning Company and Proctor & Hill."  Then below that

notation you see, the beginning it says "Unseated lands and

warrantee names" on the left hand side, and then you see the

list of warrants.  And then in remarks column you see U.T. Co.,

with ditto marks following the remaining of those assessments.

          And then as we get to the end of the Union Tanning

Company assessment, we're looking at page 4 of D1, and you see

where Proctor & Hill's retained acres or retained warrants are

now noted.  Those are the four warrants in that deed we

identified, and here you see the notation in the remarks

column, Proctor & Hill, with ditto marks for the remaining

warrants.

          Now we're looking at Exhibit D-2, page 1.  This is an

assessment record for Barclay Township in 1895, and here you

see adjacent to a warrant retained by Proctor & Hill the

notation of an adjustment being made by the commissioners.

Again to us this represents communication between Proctor &

Hill and the county commissioners with respect to their

ownership, and --

          THE COURT: I'm sorry, that -- is there any

indication, because this is a township record, right?

          MS. LANGE: Correct.

JA204

1       THE COURT: So we don't know the amount of that

2  adjustment?  Is that something that appears in the county

3  assessment records?

4       MS. LANGE: I think the adjustment is where there is a

10:26AM  5  circle of fifteen hundred, or that valuation I guess of, it

6  goes from eleven hundred to fifteen hundred, or maybe vice

7  versa, fifteen hundred to eleven hundred, because it looks like

8  the other, if you look at the original notations with the mouse

9  on the other warrants, they wrote the original assessed value

10:26AM 10  here.  And so it looks like that it was originally assessed at

11  fifteen hundred but it got adjusted to eleven hundred.  And

12  there is a circle adjacent to it.  So a lot of these --

13       THE COURT: So just I'm clear on what I'm looking at

14  in terms of that assessment, that is the assessment to Union

10:27AM 15  Tanning?

16       MS. LANGE: This is to Proctor & Hill for -- the James

17  Biddle warrant is one of the tracts that were retained by them.

18       THE COURT: Okay. So it would have -- wouldn't it have

19  originally been eighteen hundred, and then because of the bark

10:27AM 20  rights that were provided reduced to Proctor & Hill to eleven

21  hundred, or would it be the --

22       MS. LANGE: It's unclear that it's the, Union Tanning

23  was paying any assessments on the bark rights that they

24  obtained.  So the, because Proctor & Hill retained a fee of

10:27AM 25  these lands, they were paying the full taxes on it.

1          THE COURT: But you would agree with me that the land

2    would be worth less if you're the owner and you've already

3    given up bark rights to some third party.

4          MS. LANGE: I would agree with you on that.

10:27AM 5          THE COURT: All right.

6          MS. LANGE: Now we're going to look at Exhibit D-2,

7    page 6.  Again this is an adjustment that is made by the county

8    commissioners.  Here adjacent to the Thomas Dundass warrant you

9    see it says, "Proctor & Hill survey, acres 74," and then, "By

10:28AM 10    commissioner," abbreviated, and you see here that 74 value

11    makes, is where the adjustment is made.

12          And this reference again to the Proctor & Hill survey

13    and the fact that the adjustment is made shows that there is

14    communication between Proctor & Hill and the county

10:28AM 15    commissioners.  And we're going to look at Exhibit D-2, page

16    12, and this, I'm just showing you this one specific page, but

17    within Exhibit D-2 this is exemplified through pages 12 through

18    38 of that document.

19          We see -- and this is Barclay Township for 1898.  You

10:29AM 20    see for the John Adlum warrant, the Union Tanning Company is

21    identified in the remarks column.  And then James Biddle, which

22    was that same warrant we've been looking at for the last couple

23    of pages that was retained by Proctor & Hill, again they're

24    identified as the owner of that tract.  And so this is just

10:29AM 25    really to show how those notations of ownership are in the

JA206

1  assessment records.

2          Now we're going to look at Exhibit D-1, page 5.  Now,

3  this is the LeRoy Township assessment book, and we're looking

4  at 1898. Here at the highlighted portion of page you see

10:29AM 5  there's a heading that says, "Unseated lands assessed to Union

6  Tanning Company," and then the list of warrants that follow.

7  These are the warrants that were acquired from Proctor & Hill.

8  And as you look -- the third warrant listed, it actually says

9  Joseph Hines, and as Your Honor may recall, we noted in the

10:30AM 10  memorandum opinion last --

11          THE COURT: In the footnote, yes.

12          MS. LANGE: There are some occurrences of those names,

13  alterations made in this time period for the Josiah Haines

14  tract.  By the time we get back to 1907 it is the Josiah Haines

10:30AM 15  warrant.  And so this notation as identification as Joseph

16  Hines, that is copied over from the township to the county book

17  as well.

18          Now we're looking at Exhibit D-1, page 8.  So this is

19  1898, LeRoy Township.  It's this continuation of the assessment

10:31AM 20  records we were just looking at, but here the transition from

21  the Union Tanning lands, so you see the upper left highlights

22  it says "Unseated lands assessed to Union Tanning," and then we

23  reach the end alphabetically of their land, then you see,

24  "Unseated lands assessed to Proctor & Hill, "with the four

10:31AM 25  warrants that we've previously identified as being retained by

1  Proctor & Hill.  And again exhibit -- this is showing you page

2  8, but this is shown throughout pages 5 through 13 of the

3  Exhibit D-1.

4  Now we're going to look at Exhibit D-1, page 9.

10:31AM  5  And this is just the following year in the LeRoy Township

6  assessment records where it again has the heading unseated

7  lands assessed in the warrantee name, or unseated land and

8  warrantee names assessed to Union Tanning Company and the list

9  of warrants that were acquired by Union Tanning from the

10:32AM  10  Proctor & Hill transaction follow.

11  And here is the same year 1899, LeRoy Township, we're

12  looking at page 10 of Exhibit D-1, and again where the

13  transition happens from Union Tanning to Proctor & Hill you see

14  a new heading that says, "Unseated land assessed to Proctor &

10:32AM  15  Hill," with the four warrants that were retained by Proctor &

16  Hill.

17  Now we're going to turn to the county assessment

18  records, and we're looking at Exhibit D-51, page 7.  I do want

19  to note that the, this exhibit is also as the joint exhibits,

10:33AM  20  D-51 is kind of the demonstrative that we created with these

21  cull outs.  But J-11 I believe contained -- or J-8 contains the

22  1894 assessment records for the county.

23  THE COURT: Okay.

24  MS. LANGE: So here we're looking at 1894, Barclay

10:33AM  25  Township.  It shows, first I want to point out on the right

**JA208**

10:33AM

hand side you see all these references to the Union Tanning

Company making the payments on the warrants that they acquired,

and what I've highlighted in this box, and it can be a little

difficult to see, but I'm pointing to this kind of faded

language here, because it shows something different than

payment.  It says, "Union Tanning Company claims no such land."

And here that's indicative of communication happening between

Union Tanning Company and the county commissioners regarding

their ownership of land.  One other thing I just wanted to

10:34AM

point out with regard to this assessment record is under the

Act of 1806 the failure to report required a fourfold taxation.

So --

THE COURT: Required a what?

MR. MARTSON: Fourfold.

10:34AM

THE COURT: Oh, fourfold.

MS. LANGE: Sorry if that was unclear.  But nowhere

within the assessment records do you ever see a fourfold

taxation for any party's failure to report.  Again that is

indicative that the parties complied with the Act of 1806 and

10:34AM

reported their interest.

Now we're going to look at Exhibit D-51, page 9, and

again on the right hand side you can see all these payments are

being made by Union Tanning Company, and this is for LeRoy

Township, Your Honor, in 1894 following that transaction.  And

10:34AM

what I've highlighted in the box is the road tax column, you

JA209

1  see these red lines going through it, and I've actually rotated

2  the text that we can read what's in that, what that red

3  notation is, and it says, "Road taxes worked out by Proctor &

4  Hill."

10:35AM  5        So again this is showing that the county

6  commissioners knew of the association between Proctor & Hill

7  and Union Tanning with respect to these parcels, and as you can

8  see on the left hand side where the cursor is, this is again

9  identified as Joseph Haines or Joseph Hines, but that's the

10:35AM 10  Josiah Haines tract that is at issue in this case.

11        And we're going to look at Exhibit D-51, page 11.

12  This is the year 1900 assessment records for LeRoy Township,

13  and what I've highlighted in the box is notations that you will

14  see that go along the left hand side of the township column,

10:36AM 15  and those notations are adjacent to all the warrant names.  So

16  for instance, the first notation up here, I think I can see it,

17  but if it's not clear you can let me know, you see M.J. Biddle,

18  it says U.T. Co., and what I've tried to do was highlight where

19  the Josiah Haines tract falls and pull that out.

10:36AM 20        Here for a couple of the warrants that were retained

21  by Proctor & Hill you see the notation "P & H." For the Joseph

22  Henry warrant which was conveyed to the Union Tanning Company

23  you see U.T. Co., and then you see ditto marks following and

24  those are adjacent to the Josiah Haines warrant, and again on

10:36AM 25  the right hand side you see payments being made by Union

JA210

1  Tanning Company for the lands that have the U.T. Co. adjacent

2  to them, and you see a payment being made by J.A. Hill for the

3  two warrants that are identified as P & H.

4  　　　　　Now we're going to look at page 13 of Exhibit D-51.

10:37AM  5  This is again the Bradford County assessment records.  This is

6  the 1902 assessment for Overton Township.  Overton Township did

7  encompass lands that were contained from that original Schrader

8  Mining & Manufacturing to Proctor & Hill to Union Tanning. And

9  the reason why --

10:37AM  10  　　　　　THE COURT: Wait, wait.  That transaction was entirely

11  within Bradford County, correct?

12  　　　　　MS. LANGE: There were little pieces in Sullivan

13  County, but the focus of this case is at this point with the

14  pieces that are in Bradford County.

10:37AM  15  　　　　　THE COURT: Okay.

16  　　　　　MS. LANGE: And I'm only referencing during the

17  exhibits the portions that were in Bradford County.

18  　　　　　THE COURT: Okay. Thank you.

19  　　　　　MS. LANGE: You will see the first cull out that I

10:38AM  20  highlight is again in the township column.  You see these

21  notations along the left hand side, and adjacent to the John

22  Betz warrant you see the notation U.T. Co., Ridgeway PA, S.A.

23  Rote.  And I will get to in a later exhibit, I think you will

24  find out that S.A. Rote was the tax agent for Union Tanning and

10:38AM  25  Elk Tanning companies.  Exhibit D-4, which is the <u>Gamble vs.</u>

JA211

1 <u>Central Pennsylvania Lumber Company</u> case -- oh, slow down?

2 Sorry.  Exhibit D-4 is excerpts from the Central Pennsylvania

3 Lumber Company case involving Gamble, and during that case S.A.

4 Rote actually submitted testimony and he identified himself as

10:39AM 5 the tax agent for the tanning companies.  And also Exhibit D-53

6 is a newspaper article that we referenced that shows that S.A.

7 Rote was the tax agent for the tanning companies.

8        So here that notation shows the identification of the

9 owner and also who to contact in connection with the tax

10:39AM 10 assessments and payment.  The one other thing I wanted to

11 highlight on this is the George Moore warrant.  Now, you'll

12 see -- or I want to clarify first, George Moore was not a tract

13 that was owned by Proctor & Hill, but what I think is relevant

14 here is just to show what this notation is providing.

10:39AM 15        It says, "T. Ralph to U.T. Co. 1902."  That is

16 indicative of this is where the assessors made note of who

17 owned the tracts, and that's reflective of the reporting of

18 that transaction by the Union Tanning Company when they

19 acquired that warrant.  All right, so now we're going to move

10:40AM 20 on to the reporting by Central Pennsylvania Lumber Company.

21        THE COURT: I think this might be a good time for us

22 to take a short break.  So if you wouldn't mind, let's take a

23 short recess. Let's reconvene at 10:55. We'll go to

24 approximately 12:15, take an hour lunch, or an hour and fifteen

10:40AM 25 minutes, then return for the afternoon just for scheduling

JA212

1   purposes.  We're in recess for fifteen minutes.

2              (Recess taken at 10:40 a.m. )

3              (Bench trial resumed at 10:57 a.m.)

4              THE COURT: Please be seated.  Ms. Lange?

10:57AM   5              MS. LANGE: Thank you, Your Honor.  So what we're

6   going to look at right now is the reporting from the Central

7   Pennsylvania Lumber Company.  Again as we look at the township

8   assessment records, which are Exhibits D-1, D-2, and D-3, they

9   contain notations of CPL Co. adjacent to the warrant purchased

10:58AM  10   by Central Pennsylvania Lumber Company, adjustments made to the

11   assessments based on appeals from Central Pennsylvania Lumber

12   Company, and again there's a heading listing unseated lands

13   assessed to CPLC.

14              Then we're going to turn to the county assessment

10:58AM  15   records, which are Exhibits J-10 through 11, D-47, and D-51.

16   Those show payments by the Central Pennsylvania Lumber Company

17   for the warrants acquired and notations of CPL Co. adjacent to

18   the warrant names with a note stating, "CPL Co. meaning Central

19   Pennsylvania Lumber Company."

10:58AM  20              First we're looking at Exhibit D-51 at page 1.  This

21   is a newspaper article from Williamsport, I forget which one it

22   is, but it's identified in Exhibit D-53, and this notes the

23   acquisition of all the lands of Penn, Elk, and Union Tanning

24   Companies by Central Pennsylvania Lumber Company.  This as the

10:59AM  25   article notes in the highlighted portion encompasses hundreds

JA213

1  of thousands of acres in Pennsylvania.  As you see, this

2  article highlights the magnitude of this transaction, and it

3  would be very difficult for CPLC to evade reporting following

4  such a large transaction involving several hundred thousands of

10:59AM  5  acres in Pennsylvania.

6     Now we're going to look at the township assessment

7  records.  What I'm showing is Exhibit D-1 at page 19.  And

8  again this is exemplary of pages 18 through 21 and 23. There

9  you see the 1907 assessments for LeRoy Township. So this is the

11:00AM 10  year of the tax sale, or the year of the assessment that leads

11  to the tax sale.  Here you see the list of unseated lands with

12  the warrantee names, and in the remarks column you see CPL Co.

13  for the warrants listed on the left hand side.

14     Now we're going to turn to page 21 of Exhibit D-1.

11:00AM 15  This is the same 1907 assessments from LeRoy Township, but here

16  we have the Josiah Haines warrant actually identified, and you

17  will see it says Joseph Hines, and then above that it's

18  corrected to say Josiah Haines, 410 acres.  And just to note,

19  that 410 acres appears consistent whether it was assessed to

11:00AM 20  Joseph Hines or Josiah Haines for the prior years.

21     Now, in the remarks column adjacent to Josiah Haines

22  you see CPL Co., and again you see CPL Co. above and below for

23  the warrants that they acquired from the Union Tanning Company.

24  This is the assessment that the tax sale is based on.  Now

11:01AM 25  we're going to look at some other assessments from 1907.  Here

JA214

1  is D-2, which is Barclay Township's assessment book, and we're
2  looking at page 39.  Here in the remarks column you see some
3  notations marking adjustments for CPL Co. for the John Adlum
4  warrant you see reduced to two dollars per, I can't read that
11:01AM 5  last scribble, but per presumably commissioners.  And then you
6  also see the Central Pennsylvania Lumber Company repeated below
7  that, again reduced at two dollars per acre for the Mark. J
8  Biddle warrant.

9          And I've also highlighted the notation of the William
11:02AM 10  Biddle warrant P & H reference.  As I walk through that
11  timeline and after the conveyances to Central Pennsylvania
12  Lumber Company, these tracts continued to be assessed to
13  Proctor & Hill.  Here we're looking at Exhibit D-2, page 41,
14  and this exhibit is exemplary of pages 40 through 46 of Exhibit
11:02AM 15  D-2 and also Exhibit D-3, which deals with Overton Township.
16  Pages 7 and 1 have similar notations.

17          We see the name of the warrants on the left hand
18  side, and then again in the remarks column identification for
19  the first tract, which was a warrant retained by Proctor &
11:02AM 20  Hill, you see the P and H, again indicating their ownership of
21  that warrant.  The second highlight says, "S and NY."  Now, as
22  you'll see in the county assessment records there's a notation
23  that says S and NY, it's for the Susquehanna and New York
24  Railroad.  That is a corporate affiliate of CPLC who acquired
11:03AM 25  property throughout Bradford County from CPLC.  They acquired

JA215

11:03AM

1  portions of warrants for a railroad that was constructed, and

2  you will see also that name when we get to the deed from CPLC

3  to the Pennsylvania Game Commission where that right of way is

4  retained by CPLC for access from the Susquehanna and New York

5  Railroad to the mines that are being operated on the Proctor &

6  Hill subsurface estate.

7        Then below that the third highlight you again see

8  references to Central Pennsylvania Lumber Company and the

9  notation of an adjustment left off of CPL Co., again just

10  noting that there is communication between these entities and

11  the county commissioners and the assessors regarding the

12  assessments of their lands.

13        THE COURT: Can you help me with the notations on the

14  left on that page?  Is that be the assessor? It appears to be,

15  but I can't --

16        MS. LANGE: Are you referring to the Hillzheimer?

17        THE COURT: Yes.

18        MS. LANGE: I believe that is just a correction of the

19  spelling of that name.  It initially was written at Hilzmier,

20  and those are the Hillzheimer warrants.

21        THE COURT: Right.  But my point is that the pen

22  markings and corrections are original to the document?

23        MS. LANGE: They're original to the document. We did

24  not -- nobody within this case altered this document.  Those

25  are from, are contained in the original document at the

1  Bradford County Historical Society.

2         THE COURT: As opposed to notations made by a title

3  examiner or otherwise.  Okay, thank you.

4         MS. LANGE: Correct.  All right, now we're looking at

11:05AM  5  Exhibit D-1, which again is LeRoy Township assessments.  We're

6  showing page 25, and this is for 1910.  It shows the unseated

7  lands assessed to the Central Pennsylvania Lumber Company, and

8  again with the warrants.

9         And with respect to the Josiah Haines tract you can

11:05AM 10  see that on D-1 at page 27 they don't restate the headings, but

11  following page 25 there's continuous assessment of the CPLC

12  lands, and then you see the Josiah Haines warrant appear.  And

13  then similarly for the 1908 assessment it's identified as

14  Central Pennsylvania Lumber Company to the Josiah Haines

11:05AM 15  warrant.

16         Now we're going to look at the county assessment

17  records.  We're looking at Exhibit D-51 at page 15, and this is

18  the Bradford County assessment records from the year 1907, and

19  we're starting at Barclay Township. As indicated earlier with

11:06AM 20  Union Tanning Company, and I'm trying to show you with my

21  mouse, we had these notations along the left hand side of the

22  township column.  And here I've highlighted a box so we can

23  kind of encompass two things.

24         So here you can see zoomed in the notation CPL.  CPL.

11:06AM 25  S and NY.  And then you have this notation that says, "CPL Co.

JA217

means Central Pennsylvania Lumber Company."  And then below
that, "The S and NY RR Co. means Susquehanna and New York
Railroad Company," which as I indicated before was a corporate
affiliate of CPLC.

11:07AM    THE COURT: Do we know what kind of an affiliate?
Were they subsidiaries of a larger company?

MS. LANGE: They were both subsidiaries of the U.S.
Leather Company, which also the tanning companies were all
subsidiaries of.  And when I say the tanning companies I'm
11:07AM referring to the Elk Tanning Company, the Penn Tanning Company,
and the Union Tanning Company.  They were all under the
umbrella of the U.S. Leather Company.

THE COURT: And these two entities, the S and NY and
CPL, were also subsidiaries of the United States Leather
11:07AM Company?

MS. LANGE: Correct.

THE COURT: Okay. Separate subsidiaries?

MS. LANGE: Separate subsidiaries, but they were all,
all under U.S. Leather Company.  So they were I would say
11:07AM sister corporations.

THE COURT: All right.

MS. LANGE: Now we're looking at Exhibit D-51 at page
17.  This is the 1907 assessment of LeRoy Township.  And as
Mr. Bechtel pointed out, this is also available at Exhibit
11:08AM J-11, page 5, without these cull outs.  And unfortunately it

JA218

looks like that first cull out is a little washed out here, so

if you need me to I can bring up the separate exhibit as well

and we can zoom in, but what we're trying to point out here

again along the left hand side of the township column adjacent

11:08AM  to the warrant names you see these notations that say CPL, and

as I mentioned I apologize that that appears washed out here in

this copy, but I think you can kind of see it here the CPL

notations there.

THE COURT: I can.

11:09AM  MS. LANGE: And then you see ditto marks that come

down that left hand side.  And then what I've also highlighted

is the Josiah Haines warrant with the 410 acres, and

unfortunately the ditto marks don't show up in my zoomed in

version.  Andy, could we pull up maybe either D-51 or J-11?

11:09AM  Yes, D-51.  All right. If you could actually go to page 18? And

so let's just zoom in on the CPL up here, see if it comes

clearer there.  Can you sea that, Your Honor, the CPL notation?

THE COURT: I can.

MS. LANGE: Okay.  And then if we can zoom in on the

11:09AM  Josiah Haines warrant and the ditto marks adjacent to that? Can

you see -- it's still kind of hard to see here, but there's

some ditto marks along that left hand side.  If you zoom out

you can see those markings kind of along the whole length of

this side.

11:10AM  THE COURT: I see them.

JA219

MS. LANGE: Okay. Could we return to the Powerpoint? And so this, this is an important page right here, Your Honor. This is the assessment by the county commissioner that leads to the tax sale in 1908.  And that notation of CPL as the owner for the Josiah Haines warrant is critical to determining the scope of that assessment.

Now I'm going to turn to how these notations in the assessment records reflect the reported ownership. What we're going to look at are the county assessment records following the change in ownership and the reporting that we have a copy of from the Pennsylvania Game Commission to the county commissioner.

So we actually have a copy of that letter, and you see the same notations occur in the assessment records.  So we're going to look at some of the evidence and testimony from the <u>Gamble vs. Central Pennsylvania Lumber Company</u> case again where there was communication, or testimony provided regarding how reporting was done and transcriptions from the assessment records that show the identification of the new owner following the sale from Proctor to the affiliated tanning company.

And then we're going to look at the assessment records from McIntyre Township where we have the severed subsurface estates separately assessed in Lycoming County.  So that shows that the assessment and the, or the severance was reported, and it shows how important the identification of the

JA220

1 owner is to determining the scope of the assessments.  So here

2 we're looking at Exhibit J-2, page 131.  Now, this is an

3 excerpt of the PGC's title report and file affiliated with the

4 LQ contract that conveys the Josiah Haines warrant.  You see

11:12AM  5 there's other names listed on this letter, and those were the

6 other tracts of land that followed the chain of title and are

7 conveyed from Central Pennsylvania Lumber Company to the PGC.

8         This is a letter dated December 14th, 1920 from the

9 title examiner for the PGC to the commissioner of Bradford

11:12AM 10 County notifying them of the transaction.  Now, what I've noted

11 on the right hand side here is we have at Exhibits D-45, 44,

12 and 46 declaration from the recorder of deeds at Bradford

13 County, who is Shirley Rockefeller, who she at Exhibit D-45

14 testifies that there is no copy of this letter, this

11:13AM 15 notifications from the PGC to the county commissioners of

16 reporting, and there's no copy of any letter or notifications

17 under the Act of 1806 at the county recorder's office.

18         Then at D-44 Henry Farley, who is, or was at that

19 time at least, the president of the Bradford County Historical

11:13AM 20 Society said he conducted a review of all the records of the B

21 Bradford County Historical Society and they do not have any

22 copy of correspondence from the PGC, or this correspondence,

23 and they do not have copies of any correspondence relating to

24 the reporting under the Act of 1806.

11:14AM 25         And similarly at Exhibit D-46 we have a declaration

JA221

1  from Jonathan Stayer, who is a clerk at the Pennsylvania State
2  Archives, who similarly reports or testifies that there is no
3  copy of this letter from the PGC and no copy of any similar
4  letter for any lands in Pennsylvania of reporting under the Act
5  of 1806.

6          THE COURT: And spell it out.  What is the
7  significance?

8          MS. LANGE: So the significance here is, Your Honor,
9  and what has been a theme I would say from the other side is
10 that all that needs to be shown to show reporting under the Act
11 is a copy of that letter, and this shows that those copies of
12 the letters or any notification to the commissioners were not
13 retained, and instead how the commissioners would note the
14 reporting is through those notations that we saw in the
15 assessment records.

16         And we're going to see following this notification
17 you see notations in the assessment record identifying that now
18 the PGC owned these tracts.  And so that is how the
19 commissioners would reflect that they were reported the
20 ownership transaction.

21         THE COURT: Okay.

22         MS. LANGE: Here we're looking at Exhibit D-1 at page
23 28.  This is 1981 township assessment for LeRoy.  Now, the
24 first highlight on the left hand side you see it says,
25 "Unseated land, Central Pennsylvania Lumber Company."  Then you

see these markings that say, that are in red notation that say,

"To Commonwealth of Penna."  So to the Commonwealth of

Pennsylvania, and then you also see a deed book reference, and

that is the deed associated with this transaction. So this

notes the sale to the Commonwealth of Pennsylvania, references

the deed, and then -- and just for Your Honor's point of

reference, I don't have them in this slide, but page 30 of this

exhibit lists the Josiah Haines warrant and has that red

notation, and this is a similar note from, contained in the

Barclay Township assessment records to just show the

consistency of how those transactions were noted and reported

in the assessment records.  Again it highlights that these

properties were sold to the Commonwealth of Pennsylvania

following that transaction.

All right.  Now we're going to look at the tanning

companies' practice of reporting.  And what Exhibit D-4

contains are excerpts of the case titled Gamble vs. Central

Pennsylvania Lumber Company.  Now, this case is unique in the

sense that we are actually able to capture some testimony from

employees of the tanning companies and Central Pennsylvania

Lumber Company from the turn of the century.

So what happened in Gamble vs. CPLC, the testimony

and evidence explains how the tanning companies reported their

purchases from Proctor.  And while Proctor owned the land, we

have the testimony of his attorney Bentley, and here on the

1  right hand side of the, here I note the pages that this

2  testimony and these excerpts come from.  So Bentley testified

3  that he was contacted by C.H McCauley, who was the general

4  solicitor of Elk Tanning Company at its formation to provide a

11:18AM  5  list of all the Proctor lands that Elk Tanning Company was

6  acquiring in the transaction in 1894 so that they could report

7  and pay the taxes.

8      And as indicated earlier you see at the top there's

9  an excerpt from S.A. Rote where he testifies he was the tax

11:18AM  10  agent for the Elk Tanning Company, and he I guess -- let me

11  start back, step back with Mr. Bentley testified that he went

12  to the treasurer of Lycoming County, asked for a list of all

13  the taxes against the Thomas E. Proctor lands, and then the

14  treasurer provided him a list of the Proctor lands.

11:18AM  15      So then Mr. Bentley and Mr. Rote both testified that

16  Mr. Bentley gave that list to Mr. Rote, who then went back to

17  the treasurer's office to say we own these lands and I am

18  paying those taxes on those lands.  So that exemplifies the

19  communication that was happening between the tanning companies

11:19AM  20  and the county when these transactions occurred.

21      Now, following that transaction you see there's

22  references here, and just at the top highlight, this is from

23  page 50 of the Gamble excerpt, but it's actually page 28 of

24  Exhibit D-4, there's a notation regarding a reference that the

11:19AM  25  county treasurer's office showed what the Proctor lands were,

JA224

1 that shows that the practice of Proctor was to make sure that

2 his lands were enrolled with the county.  And then we have

3 transcriptions of the assessment records here, the list of

4 unseated lands, and this just is the warrant that was at issue

11:20AM 5 in that case, but here you see the notation that says owner,

6 Thomas E. Proctor, and then the change in ownership from Elk

7 Tanning Company following that reporting.

8 And what I wanted to highlight here from that excerpt

9 is following the list of unseated lands you have a seal from

11:20AM 10 the county commissioners in their book where it's like a page,

11 a stamp, and it says, "We hereby attach a list of the warrantee

12 owners of said tracts," and again this is just to show that the

13 county commissioners did maintain lists of warrants, the owner,

14 and we do not have copies of these lists aside from the

11:20AM 15 unseated land books in existence today, and it's unfortunate

16 that we're having to try this case today and not a hundred

17 years ago when these records were still in existence.

18 And then here at pages 65 and 66 of the testimony

19 you'll see on the next slide they're having the testimony of

11:21AM 20 the clerk of county commissioners, and these excerpts are

21 transcriptions from recitations of the assessment records for

22 various years, and they note that in each of these years Elk

23 Tanning Company was noted as the owner of the lands that were

24 acquired, and again down at this bottom highlight there's a

11:21AM 25 reference to a statement book from the treasurer of Lycoming

JA225

1  County and the notation of the receipt for taxes assessed to

2  the owner of Elk Tanning Company.

3       Now, Lycoming County no longer has this book.  No

4  similar book has been located in Bradford County.  But there

11:21AM 5  are excerpts of the receipt books available still in Sullivan

6  County.  So we do know what they look like and that they

7  existed in the counties.

8       And here as I indicated on page 61 through page 65 of

9  Exhibit D-4 is the testimony from Frank Miller, who identified

11:22AM 10  himself as the clerk of the county commissioners.  And what

11  I've highlighted here is testimony regarding notations in the

12  county assessment records.  Here Mr. Miller testifies that

13  where the Commonwealth would have -- or not the Commonwealth,

14  sorry.  The commissioners would acquire land at a tax sale,

11:22AM 15  they would note that change with just an abbreviation of "C" or

16  "COM" adjacent to the warrant name in the assessment records,

17  and that would indicate the ownership.

18       Now we're going to look at Exhibit D-6, which are

19  assessments of the subsurface estate in McIntyre Township.

11:23AM 20  So the upper excerpts are the assessment for the surface estate

21  of the Central Pennsylvania Lumber Company.  And you can see

22  I've highlighted two warrants, William Chancellor and Michael

23  Gratz, and on the right hand column you can see Central

24  Pennsylvania Lumber Company identified with the ditto marks

11:23AM 25  indicating their ownership of those two tracts.  In the bottom

1   excerpt you see a preamble of the following tracts of land

2   assessed, and it recites, "All coals, oils, saltwater,

3   minerals," various subsurface interests, and essentially it's a

4   recitation of the Proctor reservation in the deed, and you can

11:24AM  5   see a reference to the deed here in Lycoming County, it says,

6   "Deed book 144, page 398."

7        So this is an assessment of the subsurface in

8   Lycoming County, and you can see that the assessors understood

9   it was from a deed and they referenced the entirety of that

11:24AM 10   deed, although there's only a few tracts from that deed that

11   are subject to a separate assessment.  We note that these lands

12   were coal lands.  There were active coal operations on these

13   tracts in McIntyre and McNutt Townships, that this is the

14   McIntyre Township assessment record.

11:24AM 15        So what I have highlighted here are the first two

16   tracts listed, the William Chancellor and Michael Gratz

17   warrants.  As you can see in the same book, so this is the top

18   portion of page 12 of D-6 and the bottom portion is page 16.

19   So just a few pages later in that assessment book you have this

11:25AM 20   separate assessment.

21        Now, what I find first of all, this is important

22   because it shows the practice of reporting and how the

23   ownership names were identified.  What also it shows is that if

24   you don't have the CPLC associated with these surface estates,

11:25AM 25   you don't realize necessarily that they don't include the

JA227

1    entirety of the tracts.  But we know because there is a

2    separate assessment that that affiliation with CPLC can only

3    encompass CPLC's surface interests.  Otherwise you would have

4    an improper double assessment of where this is encompassing

11:26AM  5    both the surface and the subsurface and they're doubly

6    assessing the subsurface here to the Proctors. So what I think

7    is critical here is this shows the CPLC identification is an

8    identification of CPLC's interests in those tracts.

9         THE COURT: And so why wasn't there a separate

11:26AM  10   assessment of the Josiah Haines tract subsurface estate?

11        MS. LANGE: So we'll get to that partially, but what I

12   want to first say is that there were no coal operations on the

13   Josiah Haines tract.

14        THE COURT: In other words there were no ongoing

11:26AM  15   operations that would stimulate a tax?

16        MS. LANGE: There were coal operation on other

17   warrants in Bradford County, and as we'll get to, the

18   assessment records for the entire period never assessed, in

19   Bradford County they never assessed coal on the unseated list

11:27AM  20   or any subsurface operations on the unseated list.  Where you

21   see the coal companies and coal operations appear, and this

22   comes from the testimony of Greg Gass in Exhibit J-31, is on

23   the seated land, and actually those operations appeared to be

24   on the seated list because there was development through coal

11:27AM  25   mines.  Typically with coal mines you have buildings or other

JA228

1 structures that would be place on the land as well.  And so how
2 Bradford County treated it is different than how Lycoming
3 County treated it.

4          THE COURT: And I'm sorry, this is Lycoming County.

11:27AM 5          MS. LANGE: This is Lycoming County.

6          THE COURT: So in Bradford County it was entirely
7 based on whether the land was seated or unseated.

8          MS. LANGE: That's what the records seem to reflect
9 based on Greg Gass's review of it, because for the entire
11:28AM 10 period of 1890 through 1935 there's never an instance of an
11 assessment of oil, gas, or minerals.  And as I indicated
12 earlier, he also testified with respected to I believe Exhibit
13 D-50, which is the recapitulation statement from Bradford
14 County commissioner, the letter that is provided to the
11:28AM 15 assessor, and that identifies the categories of taxable items,
16 and oil, gas, and minerals never appear on that list in
17 Bradford County.

18          THE COURT: Okay.  Thank you.

19          MS. LANGE: Now we'll look at contemporaneous
11:28AM 20 documents regarding the impact of the sax tale and essentially
21 that the tax sale did not encompass the subsurface estate. So
22 as I just mentioned, we do have evidence of Proctor & Hill coal
23 operation on certain tracts that were within these transactions
24 and that those coal operations both predate the sax sale and
11:29AM 25 postdate the tax sale at issue and the PGC's purchase of the

JA229

1  land. We also have evidence that wherever the Proctor

2  subsurface estate was assessed, they ensured their taxes were

3  paid.  And then also the PGC's agreement for sale, title

4  examination, and subsequent deed and subsequent transactions

11:29AM  5  demonstrated that they understood they were not receiving the

6  subsurface estate.

7         So first we're going to look again at the Bradford

8  County assessments, and what becomes apparent is that Proctor &

9  Hill's coal operations appeared to be assessed on the seated

11:30AM  10  list.  So there's reports of Proctor & Hill's coal activity on

11  the Schrader lands in 1897.  That's Exhibit D9.  And we're

12  going to see correspondence reflecting coal leases that were

13  signed between the Proctor trustees and George Hill, who is one

14  of the heirs of Jonathan A. Hill, and we have testimony from

11:30AM  15  Greg Gass regarding assessments of subsurface rights in

16  Bradford County, unseated land books, and basically what he

17  says is that there is no evidence, no notations and no

18  assessments of unseated subsurface between 1890 and 1935, and

19  what he does see is that coal operations were assessed on the

11:30AM  20  seated list.

21         And then we also have communication with Calvin H.

22  McCauley, Jr. on selling the Proctor & Hill coal rights after

23  those lands went through McCauley tax sales.  The first --

24  this is Exhibit D-7, which is a historical oil and gas fields

11:31AM  25  map from the Department of Conservation and Natural Resources,

**JA230**

1  and this is really just to highlight where I've identified here

2  the property at issue in total in this case in Bradford and

3  Sullivan County, and that there is no historical, this map, as

4  you can see on the bottom left hand side, it's from 2007, so it

5  predates most of or at least the more recent activity through

6  the Marcellus Shale, and you can see that there's no oil and

7  gas production on or near the premises during the relevant

8  period.

9          So as far as oil and gas could have been a basis for

11:31AM 10  a separate assessment, there was no activity there.  Now we're

11  going to look at Exhibit D-9.  This is page 4.  And here's a

12  newspaper article regarding coal operations on Proctor & Hill

13  subsurface estate. This newspaper article references Sunfish

14  Pond, which is contained or located on the John Boyd warrant,

11:32AM 15  which is, has the same exact chain of title as the Josiah

16  Haines, including a tract sale subsequently to McCauley and

17  then is involved in the same contracts from CPLC to the PGC.

18          Now, here is just a newspaper reference that shows

19  that there's going to be coal operations, and the newspaper

11:32AM 20  article notes that this was from the Schrader lands, the Union

21  Tanning Company owns it, but Proctor & Hill reserves all the

22  minerals.

23          Now we're going to look at Exhibit D-8, which

24  contains excerpts of Barclay Township seated assessment books.

11:33AM 25  Now, the seated portion of the assessment records would only

JA231

1  appear in the township records.  They were not compiled in the

2  Bradford County unseated lands book.  The unseated lands book

3  was just for the unseated portion.  But the township, you would

4  at the beginning of the township books see seated assessments

11:33AM  5  where you would have individuals or companies identified and

6  these notations of the houses, barns, etc., various things that

7  the assessor found on their land to seat those lands.

8        Here -- and that description of those assessment

9  records is found at Exhibit J-31 from again the testimony of

11:34AM  10  Gregory Gass.  And here you can see some excerpts where you

11  have the Barclay Coal Company being assessed from the seated

12  list, the Towanda Coal Company, and Proctor & Hill being

13  assessed on the seated list.

14        Now, unfortunately we don't know exactly what was

11:34AM  15  being encompassed in the seated assessments, but the only

16  references to coal companies appeared, or coal operations

17  appeared in the seated list.  Here what we're looking at is

18  Exhibit D-35. This contains correspondence between the Proctor

19  trustees and George Hill. The top excerpt of a letter is from,

11:34AM  20  at page 2 of Exhibit D-35, and in order not to bore Your Honor

21  I simply pulled excerpts to kind of highlight key points of

22  these exhibits.

23        Here if you can read the script it says, "Enclosing a

24  check for, we are in receipt of yours of April 26th enclosing a

11:35AM  25  check for $2,000.62," or $62, sorry, "On account of the

JA232

royalties from the Carbon Run Coal property."  And so as of
April 1911 the Proctor & Hill heirs were receiving royalties on
the subsurface estate associated with the reserved lands.  And
here in August of 1917, I'll just show a quick excerpt of page
11:35AM 7, which shows that there were some leasing activities
happening on their land as well, and you can see additional
references from pages 5 through 8 of that exhibit.

Exhibit D-9 are newspaper articles from 1917 which
reference the opening of coal mines on Proctor & Hill lands.
11:36AM Again it says Sunfish Pond, which I identified as the John Boyd
warrant.  And, Andy, if you could actually bring up Exhibit
D-34? And go to page 9 I believe.  So here you're going to see,
and Your Honor will get to see this exhibit again, but if you
can zoom in, Andy, where the John Boyd warrant is?

11:36AM So you can see there's what looks like a pond there
and it says Sunfish Pond.  So that's just really to show you
that that reference to the Sunfish Pond area refers to the John
Boyd warrant.  And, as I mentioned, we'll come back to this
exhibit where we'll discuss the markings of coal on it. You can
11:37AM go back to the Powerpoint.

But what's important is that, again that John Boyd
warrant has the same chain of title as the Josiah Haines tract,
and it involved a tax sale to Calvin McCauley.  You can see the
quitclaim deed from Calvin McCauley to CPLC, which is Exhibit
11:37AM D-29 at page 9, references a list, all the warrants, it

JA233

1  includes the John Boyd warrant as well.  And here following the
2  tax sale in 1917 there are cooperations from Proctor & Hill on
3  those lands.

4          THE COURT: So this is your evidence of continuing
5  ownership of the subsurface estate by Proctor & Hill or, and
6  continued recognition of those ownership rights as a result of
7  their ability to enter into lease agreements with third parties
8  for coal operations?

9          MS. LANGE: Correct, Your Honor.

10          THE COURT: Okay.

11          MS. LANGE: All right.  Now we're going to look at
12  Exhibit D-33.  That exhibit contains several letters between
13  the Proctor trustees and Calvin H McCauley, Jr.  These letters
14  that I'm going to focus on are from 1920, which is the year
15  that CPLC was under contract with the Pennsylvania Game
16  Commission for the purchase of the land at issue in this case,
17  including the Josiah Haines warrant, and here you see this
18  letter where they're writing to discuss with McCauley
19  potentially selling some other mineral interests.

20          Proctor, the Proctor trustees had sold to McCauley or
21  to Rock Run, which is a company in Lycoming County, they sold
22  some of their coal mines in like 1917 to McCauley and others,
23  and then here in 1920 there's discussion of selling additional
24  minerals, and they specifically reference the John Barron tract
25  and, you know, an interest in trying to sell the reserve

**JA234**

1  Proctor & Hill interests. Again the John Barron, Jr. tract is
2  in the, it went through a McCauley tax sale, as shown as D-29
3  page 9.  It --

4           THE COURT: The same sale or a different sale?

11:39AM 5           MS. LANGE: The same sale.  The same sale.  It's in
6  the same quitclaim deed from McCauley to CPLC, and it's also in
7  the same deed from CPLC to the PGC, which is Exhibit J-2 and
8  it's part of that L-2 contract.  Here at page 25 of that
9  Exhibit D-33 it's an additional correspondence with McCauley
11:40AM 10  where there's reference to a receipt of his map enclosing the
11  Schrader company lands.

12           And if we could pull -- well, I will refer to that in
13  a second.  And what I've also highlighted here is this
14  reference, it says, "We would like to know what arrangements
11:40AM 15  the LeRoy Coal Company has made with the lumber company and the
16  Susquehanna and New York Railroad Company where quantity of
17  coal is estimated to be on the operation."

18           Now, during this correspondence you will see there's
19  references to a spur track being built to the coal mines for,
11:41AM 20  because the LeRoy Coal Company is negotiating with the lumber
21  company to convey the coal out of the mines on the spur track,
22  and so here is a reference to that negotiation.  And as I have
23  noted before and will note again, this is in the month leading
24  up to the actual deed from CPLC to the PGC, and in that deed
11:41AM 25  CPLC reserves the right of way to build a spur track to the

JA235

1    mines on the properties.  Now we're going to look at Exhibit

2    D-34.  This is a map of CPLC lands, and we looked at a portion

3    of this where I highlighted the Sunfish Pond earlier, and you

4    can see these notations, like these drawings of coal on the

11:42AM  5    map.

6            Here this other notation on that document, it says,

7    "The red ink circles marked COAL are from a blueprint received

8    from Calvin H. McCauley, Williamsport, PA, August 25th, 1920,"

9    and that corresponds to the letter we just saw where they say,

11:42AM 10    "We are in receipt of the map you provided to us, Calvin

11    McCauley, and here's reference to the coal land."

12            So you can see, if I could show you a bigger map if

13    Your Honor wants, you'll see that the coal lands are just on a

14    few tracts within the Proctor & Hill reserved subsurface, and

11:42AM 15    here you don't see the entire name, but there's Haines where

16    the mouse is, and that's the Josiah Haines tract in relation to

17    where these coal operations are.  You can also see what appear

18    to be railroad tracks that are built up through those lands.

19            Now, we're going to look at D-33 of page 27, or page

11:43AM 20    27 of Exhibit D-33.  This is again that reference to CPLC

21    building a spur track and actually inquiries from the Proctor

22    trustees as to whether the Central Pennsylvania Lumber Company

23    would like to essentially buy out their lease with the LeRoy

24    Coal Company.  Just highlighting this for that spur track

11:43AM 25    reference and just the constant communications with McCauley

JA236

1  during this era following his tax sales.  There's additional

2  correspondence contained in this exhibit where ultimately

3  McCauley suggests they wait to sell the property, but I haven't

4  used that in this presentation.

11:44AM  5      Now we're looking at Exhibit D-35.  Again D-35

6  contains correspondence from the trustees to George or John

7  Hill, who is the other son of Jonathan A. Hill.  This

8  essentially is just to show that there was continuing coal

9  leases and operations following the PGC deed.  What's important

11:44AM  10  to note here is the date January 26th, 1921.

11      The PGC deed was December 4th, 1920, and as I note on

12  the right hand column, I don't show you every page from this

13  exhibit, but I kind of summarize at page 12 prior to this

14  letter a trustee requests copies of the coal leases.  Then here

11:45AM  15  they acknowledge receipt of those coal leases in this letter,

16  and there's continuing communications following this where

17  ultimately the, on July 21st, 1921 at pages 16 and 17 of the

18  exhibit Willard Dalrymple, who is one of the Proctor trustees,

19  sends in signed copies of the coal leases for extending the

11:45AM  20  leases with LeRoy Coal Company to three additional tracts.

21      And the only other thing I highlighted on this

22  exhibit is just here you see the Proctor trustees understand

23  that they have valuable property and that they are valuing

24  their subsurface estate.

11:45AM  25      THE COURT: If you could stay there for a minute?

JA237

1       MS. LANGE: Sure.

2       (Brief pause.)

3       THE COURT: Okay.  Thank you.

4       MS. LANGE: Now we're going to look at some documents

11:46AM  5  that reflect the Proctor trustees monitoring and paying taxes

6  that were assessed on the subsurface estate.  You will see

7  communications between the trustees and county treasurers

8  directly involving the payment of taxes.

9       We see other communications of an actual

11:46AM 10  correspondence with McCauley, Jr. regarding the payment of

11  taxes on minerals in Bradford County.  So looking to these

12  exhibits, I've just shown you one page of Exhibit D-5, but that

13  entire packet contains correspondence regarding payment of

14  taxes where they were separately assessed.

11:47AM 15       Here this is for McIntyre Township, and you can see

16  at pages 2 to 3 there's other letters to the Lycoming County

17  treasurer, and also at page 4 there's a letter to the Elk

18  County treasurer requesting tax bills for their lands.  So this

19  was not a tax avoidance scheme. This was the Proctor trustees

11:47AM 20  were actively trying to pay their taxes on the subsurface

21  estate where assessed.

22       And here they even utilized McCauley to pay a tax.

23  Here they hand him $343 to pay their taxes in Lycoming County

24  in 1918.  And what I want to highlight on Exhibit D-33 at page

11:48AM 25  26.  So this is in September of 1920, and if you recall from

JA238

11:48AM

1  the prior letters with McCauley regarding the sale of the
2  subsurface in Bradford County, that occurred between August of
3  December of 1920.  Here they're noting or providing information
4  to McCauley that the taxes paid last year by Mr. George R. Hill
5  on account of the Proctor & Hill interest in minerals amounted
6  to $175.40.

7        Now again we don't have an assessment record that
8  shows mineral rights assessed to Proctor & Hill, but this
9  corresponds to what Mr. Gass saw reflected that they were a
10  seated assessment to Proctor & Hill and that that they were in
11  fact making payments on the mineral rights to the county
12  commissioner.

13        Now we're going to look at our last category of
14  documents.  This is the recognition of the severed subsurface
15  estate by the PGC.  The agreement for sale approved by the
16  Central Pennsylvania Lumber Company board was specifically
17  subject to the reservation in favor of Proctor & Hill.  Also we
18  have the PGC's title examiner recognizing that the sale from
19  CPLC to PGC did not encompass the subsurface estate.

20        In addition that culminated in a deed from the CPLC
21  to PGC that was made expressly subject to the Proctor
22  reservation and it says subject to all the minerals as fully as
23  said minerals were accepting a reserve to Proctor & Hill.  And
24  then subsequently about fifty years later the PGC sells off a
25  portion of the lands that were contained in that 1920 deed and

JA239

1  they recognized third party ownership of the oil, gas, and

2  minerals.

3        So looking at Exhibit J-2, this is at pages 102 to

4  109, and as I mentioned earlier, J-2 is Game Commission's title

11:50AM  5  report for the transaction involving the Josiah Haines warrant.

6  And this is a transcription of CPLC's board ratification and

7  approval to sell these lands to the Game Commission, and here

8  CPLC recites the Proctor & Hill reservation saying reserving

9  and saving unto Thomas E. Proctor, and it recites the whole

10  reservation.

11        That approval, or this board resolution was approved

12  in April of 1920 prior to the sale.  Now, still at J-2, but at

13  pages 90 to 92, here's a letter from the title examiner to the

14  Central Pennsylvania Lumber Company regarding the contract for

11:51AM  15  sale.  This is a letter from John Potter dated November 22nd,

16  1920, and he highlights that the contract for sale has the

17  reservation of the subsurface to Proctor & Hill.

18        And then after this noting he also notes that there's

19  other reservations within it, and after reciting all of those

11:51AM  20  exceptions and reservations, at page 92 Mr. Potter states, "In

21  preparation of this report, therefore, no references are made

22  to any exceptions, reservations, or adverse conveyances which

23  are included in the above exceptions contained in the agreement

24  for sale."

11:52AM  25        So what he's saying is I didn't examine the titles to

**JA240**

what was accepting a reserve from this contact of sale because
the PGC is not acquiring it.  Now we're looking at page 119 of
Exhibit J-2, and here it's a letter from Mr. Potter to the
secretary of the Game Commission.  It's dated January 11th,
11:52AM  1921, which follows the deed, the date of the deed, and what
I've highlighted is Mr. Potter stating that, "I have found the
title to the land is vested in the Central Pennsylvania Lumber
Company in fee simple, free and clear of all encumbrances of
record except for the reservations expressly set forth in the
11:53AM  agreement for sale," and again the Proctor & Hill reservation
was set forth in the agreement for sale.

Now we're looking at Exhibit J-6, and these are also
transcribed at Exhibit J-2 in the title report.  These are
excerpts from the deed from Central Pennsylvania Lumber Company
11:53AM  to the PGC, and the top reservation you can see is the, states
that this conveyance is made subject to all the minerals, coal,
oil, gas, petroleum found, and I'm going to skip down to where
it says "as fully as said minerals and mineral rights were
accepted and reserved in the deed from Thomas E. Proctor,  et
11:53AM  al. to Union Tanning."  And then it also says also subject to
all the reservations, exceptions, covenants contained in this
said deed from Thomas E. Proctor.

So again here is an acknowledgement by the PGC that
they were not acquiring the subsurface rights when they
11:54AM  acquired the lands from Central Pennsylvania Lumber Company,

11:54AM

1  and as I have noted this exception at times in this
2  presentation we have the exception from the Central
3  Pennsylvania Lumber Company regarding a right of way of fifty
4  feet in width for railroad purposes from a point on the line of
5  the Susquehanna & New York Railroad to any mine or mine on the
6  said described land.

7          Again it asks the question of why would Central
8  Pennsylvania Lumber Company reserve railroad right of ways to
9  access mines if those mines were going to be acquired by the
10 PGC.  So now just to refresh the Court of the timeline and the
11 evidence that we walked through here regarding the scope of the
12 assessment, we had the Union Tanning deed in 1894 where the
13 assessment records changed to Union Tanning Company for the
14 lands they acquired.

15         We have the reserve lands assessed to Proctor & Hill.
16 We have the coal operations that occurred beginning 1897.  We
17 have the CPLC deed in 1903 with the assessments changing to
18 CPLC. Then we have coal operations happening from 1911 past the
19 date of the deed to the PGC.  And then we have the PGC deed in
20 1920 where they then become identified in the assessment
21 records as the owner and CPLC reserves the right of way.

22         So at every step of the way the evidence shows that
23 the transactions were reported and that all parties, including
24 the PGC, understood that the tax sales did not affect title to
25 the subsurface estate.  Thank you, Your Honor.

**JA242**

1    THE COURT: All right.  It's about noon.  Would you

2  like to take a break at this time? Is Mr. Weber going to make

3  the next presentation?

4    MR. WEBER: That's right, Your Honor.  I'll be

11:56AM  5  addressing the McCauley agency issue.  And so it would be an

6  opportune time before I start that to take a break, or I'm

7  happy to get started with it a little bit, whatever Your Honor

8  prefers.

9    THE COURT: Why don't we break now.  Is that okay with

11:56AM 10  you, Mr. Bechtel, if we --

11    MR. BECHTEL: Yes, Your Honor.

12    THE COURT: -- take our lunch break now?  And we'll

13  come back, let's reconvene at say 1:15.  And, Mr. Weber, you

14  were present for your colleague's presentation.  Approximately

11:56AM 15  how long is the McCauley agency presentation?

16    MR. WEBER: It will be shorter.  I suspect it will

17  take maybe an hour, hour and ten minutes, fifteen minutes.

18    THE COURT: All right.  And do you have anything to

19  present on behalf of Proctor Heirs other than these two issues?

11:57AM 20    MS. LANGE: Your Honor, this is -- I guess it depends

21  on plaintiff's rebuttal if there would be any additional things

22  we would need to address, but generally these are the two

23  components that the Court identified as issues for the trial.

24  So these are the two presentations that we have for the Court.

11:57AM 25    THE COURT: I'm just wondering if we're going to spill

JA243

1 into tomorrow with respect to any presentation, but I have

2 tomorrow open in the event that's necessary.  Let's take our

3 lunch break.  We'll reconvene at 1:15.  Have a nice lunch.

4                 (Lunch recess taken at 11:57 a.m.)

11:57AM  5        (Trial resumed at 1:15 p.m.)

6        THE COURT: Good afternoon. Please be seated.  Ms.

7 Lange, before we begin with Mr. Weber's presentation you went

8 through a number of exhibits.  Would you like to move for their

9 admission at this time?

01:15PM 10        MS. LANGE: Yes, Your Honor.  We would like to move

11 for the admission.  We can do that now, or if you want to wait

12 until Mr. Weber is done so we can move for all of them,

13 whatever your preference is.

14        THE COURT: Let me ask you for purposes of clarity of

01:15PM 15 record, do you have a list of each exhibit that was referenced

16 during the course of your presentation? Or is there a way for

17 us to double check exactly what is being moved into the record?

18        MS. LANGE: Well, Your Honor --

19        THE COURT: Short of saying all Defendant's exhibits?

01:16PM 20        MS. LANGE: The list would be really contained in the

21 Powerpoint presentation on the side where I note the exhibit

22 name.  I don't have a specific list handed out to you.  I could

23 recite the exhibits to you now if that would be a preference.

24        THE COURT: Well, I want to give Mr. Bechtel an

01:16PM 25 opportunity to place his objections on the record beyond what

**JA244**

1 he's already preserved.  So why don't we hear from Mr. Weber,

2 we'll do that at the end.  And then, Mr. Bechtel, I'll give you

3 the opportunity to raise your objections beyond what has

4 already been submitted.  Okay?

01:16PM 5        MR. BECHTEL: And, Your Honor, if I may just, we sped

6 through the presentation this morning, and I understood and

7 appreciated, I did appreciate your indication that objections

8 had been preserved.  I just want to make sure before we go into

9 presentations this afternoon that we preserve those objections

01:17PM 10 again, and more specifically the objection that, you know, this

11 particular issue about Mr. McCauley, Jr. has also been decided

12 just recently by the Commonwealth court in the <u>Keta Gas</u> case,

13 and we've appended those to our pretrial, or our motion, or

14 bench memorandum ECF-214.  I'm sorry, I know the ECF. And

01:17PM 15 respectfully we'd request that they not present that

16 presentation on Charles McCauley, Jr., or Calvin McCauley, Jr.

17        THE COURT: All right.  And I note that objection.

18 I've read those cases.  I do believe that there are some

19 significant differences.  I'm sure I'll hear from the

01:17PM 20 defendants on those differences as well, but your objection is

21 noted, it's preserved, and again, as I have said previously,

22 it's a continuing objection --

23        MR. BECHTEL: Thank you.

24        THE COURT: -- for the record, and it is certainly

01:18PM 25 preserved for appellate review.  To the extent that we need to

JA245

01:18PM

address this issue in a decision we will address it, in other
words if it's relevant to our ultimate determination, and we
have to take certain documents that have been objected to into
consideration, obviously we'll deal with the evidentiary issue.

MR. BECHTEL: Thank you.  I was just going to ask for
the same understanding from this morning.

THE COURT: Absolutely.  Mr. Weber, happy to hear from
you, and you may remove your mask.

MR. WEBER: Thank you.  Actually, Your Honor, I'll
remove it after.  I have a Powerpoint.  My presentation is
going to be twofold.  First we'll walk through the actual
exhibits on the monitors, but I have a Powerpoint that I was
going to project a timeline so we can keep everything in
perspective.  So if you don't mind I'll approach and provide a
copy.

THE COURT: Certainly.

(Brief pause.)

MR. WEBER: As I indicated, Your Honor, I'll be
addressing the issue regarding Mr. McCauley's agency and his
relationship with Central Pennsylvania Lumber Company, and to
do that first of all I'd like to set the stage just to refocus
again on the specific property and tax sale at issue.

First of all, we know from what's already been
admitted and discussed that Central Pennsylvania Lumber Company
acquired the Haines warrant and additional properties from

JA246

01:20PM

1  Union Tanning Company in 1903.  We're here today, as

2  Mr. Bechtel, indicated because of a tax sale that occurred in

3  June 8, of 1908, where Calvin H. McCauley, Jr. purchased the

4  Haines warrant and forty-four other tracts at a Bradford County

5  tax sale.

6         We also know from the evidence that has already been

7  reviewed in the record that in 1910 Mr. McCauley, Jr. conveyed

8  the Haines warrant as well as forty-four other tracts to CPLC

9  for one dollar.  The points I would like to make before

01:20PM 10  specifically getting into issues regarding Mr. McCauley are

11  two.  Andy, if you could bring up Exhibit J-11, page 9?

12         You'll see, Your Honor, that in the interim period

13  after the tax sale at issue where Mr. McCauley, Jr. was the

14  nominal purchaser, after that tax sale Central Pennsylvania

01:21PM 15  Lumber Company paid the taxes on the Haines warrant.  So, Your

16  Honor, this, as you can see from the top where I'm indicating

17  the cursor, are the assessment records for 1908.  Highlighted

18  is the Josiah Haines warrant that we've been discussing, and by

19  who paid we can see on the upper right hand corner is Central

01:21PM 20  Pennsylvania Lumber Company, and the quotation marks continue

21  all the way down through that column indicating the Josiah

22  Haines warrant.

23         If you could bring up D-47, page 2? We'll look at the

24  same information, but for the following year 2009, again after

01:21PM 25  the 1908 tax sale and prior to the quitclaim conveyance back to

JA247

01:22PM

CPLC we see the tax assessment records again for 1909.  Again similar setup.  The highlighted line is for the Josiah Haines warrant, 410 acres.  You can see the quotation marks, and if you follow up to the highlighted box you'll see the Central Pennsylvania Lumber Company is the party paying those taxes.

01:22PM

        The question is in this period of time why was Central Pennsylvania Lumber Company paying the taxes on a parcel that was nominally purchased by Mr. McCauley?  And why did Mr. McCauley convey that purchase back to Central Pennsylvania Lumber Company for one dollar in 1910?

        We think that's from examining the timeline and his relationship with Central Pennsylvania Lumber Company it will become apparent that he was acting as its agent in the 1908 tax sale. To first understand a little bit about Mr. McCauley, Jr. you have to understand a bit about his family.  You have to understand about his continuing relationship with Central Pennsylvania Lumber Company from its inception in 1903 and continuing throughout the period on the timeline, periods of increasing responsibility that he assumes within CPLC, ultimately to assuming a member, as a member of the board of directors, and then also Mr. McCauley's own explanation regarding process and what occurred at tax sales.

        If we could look at Exhibit P-3, page 2? We'll see that Calvin H. McCauley, Jr. was the son of C.H. McCauley. This is an application for marriage from 1905 for, and we can see on

01:23PM

JA248

1 the first line Calvin H. McCauley, Jr.

2         THE COURT: The "H" didn't stand for Haines by any

3 chance? I'm sorry, that was an attempt at judicial humor,

4 and --

01:24PM 5         MR. WEBER: Not to my knowledge.

6         THE COURT: -- I just -- strike that for the record.

7         MR. WEBER: You can see that in 1905 McCauley, Jr.,

8 and I'll refer to him as McCauley, Jr., as you'll see, his

9 father was also Calvin H. McCauley, and I'll refer to sometimes

01:24PM 10 C.H. McCauley or McCauley, Sr. to keep the designations of

11 those two individuals separate.

12         But you can see that Calvin H. McCauley, Jr. was

13 twenty-six in 1905, the date of the application for marriage.

14 And you can also see that he was the son of C.H. McCauley.

01:24PM 15 I'm going to talk briefly about C.H. McCauley because it's

16 important to understand the nature of the familial relationship

17 with Central Pennsylvania Lumber Company.

18         C.H. McCauley, Sr. was a well respected attorney in

19 Pennsylvania.  If we could go to Exhibit 53?  And let's look at

01:25PM 20 page 7. We'll see an obituary from C.H. McCauley, Sr. died in

21 1910.  This is from the Williamsport Sun.  As you can see,

22 there's a reference to Mr. McCauley.  And actually, Your Honor,

23 Calvin Hudson McCauley was one of the best known attorneys in

24 Pennsylvania, and he died in 1910.

01:25PM 25         As you can see in the obituary he was admitted to the

1 bar in 1872, and he had actually served as the Elk County

2 district attorney.  He was elected in 1875.  And at the time of

3 his death, if you continued further through the obituary, you

4 will see that he was general solicitor for the Central

01:25PM 5 Pennsylvania Lumber Company as well as other affiliated

6 interests.

7          So at the time of his death in 1910, C.H. McCauley,

8 McCauley, Sr., was general solicitor of the Central

9 Pennsylvania Lumber Company.  And again similar to the marriage

01:26PM 10 license that we looked at, you can see at the very bottom it

11 refers to his surviving issue and noting his three children,

12 including Calvin H. McCauley, Jr.

13          Now, we referenced the Central Pennsylvania Lumber

14 Company, and as the obituary notes, C.H. McCauley, Sr. was the

01:26PM 15 general solicitor.  As Ms. Lange identified in looking at

16 Exhibit 53 in page 1 of the exhibit, Central Pennsylvania

17 Lumber Company was formed in 1903, and I would like to take a

18 look at the articles of incorporation for that entity. If we

19 could go to Exhibit 13, page 1?

01:26PM 20          We will see the articles of incorporation from the

21 Department of State with respect to the Central Pennsylvania

22 Lumber Company.  As you can see on the highlighted first box,

23 it references that this is the Central Pennsylvania Lumber

24 Company, and further down it identifies the shareholders, and

01:27PM 25 you'll see that C.H. McCauley is actually the largest

**JA250**

1  shareholder at inception of the corporation, largest

2  shareholder of Central Pennsylvania Lumber Company.

3         And if you could scroll out, and at the very bottom,

4  it's a little difficult to see, but you also see on the second

01:27PM  5  line under name that Mr. McCauley, this is Senior, was a member

6  of the board of directors of the corporation.  So McCauley,

7  Sr., not only a founding and the largest shareholder, but a

8  member of the board of directors.

9         Now, starting with our timeline what we'll see is

01:28PM  10  that when Central Pennsylvania Lumber Company was formed in

11  1903 it identified its treasurer as Calvin McCauley, Jr.  Andy,

12  if you could go to page 2 of Exhibit 13? And if you could pull

13  out the top box? This box, Your Honor, refers to the capital

14  stock having been paid, and it's difficult to read, but it says

01:28PM  15  to the treasurer of said corporation whose name and residence,

16  and I can't read anything else from that line, but as you can

17  see, identifies Calvin H. McCauley, Jr.

18         We also have a second copy of this document from the

19  Department of State that's typed and is slightly more legible,

01:28PM  20  Andy, if you could go to page 4 of this document? And let's go

21  to the next page, page 5.  And if you could pull out the bottom

22  text?  So it's a more legible portion of the document.  This is

23  the same information, but it's a little clearer to read, the

24  highlighting text that the funds has been paid in cash to the

01:29PM  25  treasurer of said corporation whose name and residence are

JA251

1  Calvin H. McCauley, Jr.

2          So from the inception Mr. McCauley was identified as

3  the treasurer of the Central Pennsylvania Lumber Company.  We

4  also have additional documentation identifying Mr. McCauley as

01:29PM  5  the treasurer at the inception of CPLC, and if you could bring

6  up Exhibit 14, page 1?  Let's go to page 2.  This is the

7  certificate of incorporation for the Central Pennsylvania

8  Lumber Company.  And if you look on the document you will see

9  the highlighted text that identifies the name of the company,

01:30PM 10  Central Pennsylvania Lumber Company, and identifies again its

11  treasurer Calvin H. McCauley, Jr., again the treasurer at the

12  inception.

13          Now, we know going back to our timeline we'll see

14  that Mr. McCauley transitioned from the treasurer to become

01:30PM 15  referred to as its real estate agent during that first year of

16  its operation.  So, Andy, if you could bring up Exhibit 12 and

17  start off with the first page?  We'll see the annual report,

18  this is the first annual report of the Central Pennsylvania

19  Lumber Company for the year ending December of 1903, and we're

01:31PM 20  going to go to the third page where Central Pennsylvania Lumber

21  Company listed its general officers and we'll see the two

22  individuals that we were discussing previously, Calvin H.

23  McCauley, dad, or Senior, as the general solicitor, and Calvin

24  H. McCauley, Jr. identified by the corporation as its real

01:31PM 25  estate agent.  Mr. McCauley then continues to be referred to as

JA252

1  CPLC's real estate agent on multiple occasions in continuing

2  years.

3          So our next point on the timeline is April of 1904,

4  and we're going to take a look at several pieces of

01:31PM  5  correspondence that identify Mr. McCauley, Jr. as a real estate

6  agent.  Andy, if you could bring up Exhibit 15 on the screen?

7  Your Honor, the next three exhibits that we're going to look at

8  are pieces of correspondence that were contained in Central

9  Pennsylvania Lumber Company's tax books.  This is

01:32PM  10  correspondence that Central Pennsylvania Lumber Company

11  maintained, and there was an objection to authenticity

12  regarding this.

13          We have deposition testimony of Lauri Sekerak, who is

14  an abstractor in Warren County, identifying those books, and we

01:32PM  15  have pictures of those books, but if Your Honor would permit

16  us, I'd like to hand up the actual book so Your Honor could see

17  the actual plat ledger.

18          THE COURT: All right.  Very good.

19          MR. WEBER: If I may approach?

01:32PM  20          THE COURT: You may.

21          (Brief pause.)

22          MR. WEBER: There's a slip sheet in that book, Your

23  Honor, which is the Exhibit 15 that you see on the screen.  It

24  was used in Ms. Sekerak's deposition, and I'll just give a

01:33PM  25  little bit of context for these books before I outline the

**JA253**

01:33PM

actual exhibit itself.  As Ms. Sekerak testified, these were
books, she's an abstractor and was doing abstracting work for
Judge Hammond in Warren County, actually Judge Hammond before
he took the bench in 2005, and saw these books, we have
additional books from the Central Pennsylvania Lumber Company
in its law library, and asked what was going to happen to those
books.  He said they were going to be thrown out and she asked
that she take them in her possession and she's had them ever
since.

01:34PM

The correspondence that's identified in the next
three series of specific letters that are included, as you can
see, kind of glued in between the pages there referencing those
parcels that are at issue in the map book.  So if we look at
Exhibit 15, we see this is a piece of correspondence from the
Penn Tanning Company directed to Mr. C.H. McCauley, Jr., and it
identifies him as "R.E. AGT," real estate agent, CPL Company,
Williams, PA, and the correspondence is dated April of 1904,
and if you can scroll back out, you'll see it's referencing
some of the lands and some bark and timber operations were
occurring in McKee County. We continue on with additional
correspondence --

THE COURT: Can I maintain this or would you like it
to be returned?

MR. WEBER: I can take it back, Your Honor.

THE COURT: Okay.

JA254

01:35PM

01:36PM

01:36PM

01:37PM

01:37PM

MR. WEBER: For the next several years we see
additional correspondence to Mr. McCauley again continuing as
real estate agent for Central Pennsylvania Lumber Company.
And if you could bring up Exhibit 16? Exhibit 16 again is a
piece of correspondence from the CPLC books, this time from an
individual identified as I believe A.K. Borcher, who identifies
himself as woods foreman, and he's corresponding with
Mr. McCauley, C.H. McCauley, Jr., again identifying him as real
estate agent, and CPLC isn't specifically identified in the
caption, but, as you can see, it's -- the letter, the substance
of the letter is referencing timber removal operations by
Central Pennsylvania Lumber Company.

If we continue to the next piece of correspondence,
which I want to spend just a bit more time on, it's from
December of 1905, and again showing Mr. McCauley, Jr. as an
agent of Central Pennsylvania Lumber Company.  Andy, if you
could bring up Exhibit 17? This document, Your Honor, on
Exhibit 17, Defendant's Exhibit 17 has a few more indications
of associating it with Central Pennsylvania Lumber Company and
Mr. McCauley first.

This is a piece of correspondence on Central
Pennsylvania Lumber Company's letterhead. As you can see, it's
from the Sheffield District and it's on the letterhead of W.E.
Henderson, land and timber superintendent.  You can see he
signs the letter.  So this is internal correspondence from one

JA255

1  district of Central Pennsylvania Lumber Company to C.H.

2  McCauley, Jr. identifying him again as real estate agent.

3  And if you look at the box on the right hand corner of the

4  document that's highlighted you will see that it's stamped,

01:37PM  5  "Received, Central Pennsylvania Lumber Company real estate

6  department, December 20th, 2005." So this piece of

7  correspondence, again internal from Central Pennsylvania Lumber

8  Company's Sheffield district, is to Mr. McCauley as real estate

9  agent and stamped received by the real estate department at

01:38PM 10  Central Pennsylvania Lumber Company.

11       Continuing with the identification of Mr. McCauley as

12  real estate agent, we're going to take a look at Boyd's

13  Directory from nineteen -- actually from 1906. And, Andy if

14  you could bring up Exhibit D-18? Boyd's Directory is a listing

01:38PM 15  of the citizens and businesses in Williamsport. And if you

16  could go to page 2, you can see that this is for 1906, a

17  compendium of the government and its public and private

18  institutions named as citizens and classified businesses.

19       Go to page 4. You can see that in the Boyd's

01:39PM 20  Directory for Williamsport 1906 Mr. McCauley is listed as a

21  real estate agent. Continuing on to 1907, we have another

22  example of Mr. McCauley's association with Central Pennsylvania

23  Lumber Company. Andy, if you could bring up Exhibit D-48, page

24  4? You'll see a, this is from the Williamsport Sun from July of

01:39PM 25  1907. It indicates that Calvin H. McCauley, Jr. of the Central

**JA256**

1 Pennsylvania Lumber Company with a Ridgeway visitor Saturday.

2 It's not an indication of a specific provision, but associating

3 Mr. McCauley, Jr. as being of the Central Pennsylvania Lumber

4 Company.  Now, in 1908 Mr. McCauley's position changes.  And if

01:40PM 5 we take a look at the timeline we'll see that in February of

6 1908 we'll see that he becomes the assistant general solicitor

7 of Central Pennsylvania Lumber Company.

8          If you could go to Exhibit 48, page 2?  Again this is

9 a notice from the Williamsport Sun.  It identifies two specific

01:40PM 10 facts regarding Mr. McCauley.  First, that he was admitted to

11 practice in the courts of Lycoming County, admitted to the bar,

12 and he as also been appointed assistant general solicitor for

13 Central Pennsylvania Lumber Company.  Now, this newspaper

14 listing does not specifically reference Junior as opposed to

01:41PM 15 Senior, but we know that this is McCauley, Jr., as McCauley,

16 Sr. had been admitted to the bar in 1872 and was the general

17 solicitor at the time of inception of the corporation and at

18 his death in 1910.  Also to note is from February of 1908, the

19 year of the tax sale that we're here about today.

01:41PM 20          In addition, going back to one of the documents we

21 looked at, or a subsequent addition, take a look at the Boyd's

22 Directory for 1908.  Again it is confirmation of this change in

23 position.  So if we look a take at the Boyd's Directory for

24 1908 we'll see Calvin McCauley, Jr. identified as the assistant

01:42PM 25 general solicitor.  Andy, if we could go to Exhibit 20, page 4?

JA257

So we can see again specifically this is a reference to Junior,
as we've already alluded to, but his position being listed as
assistant general solicitor, not as real estate agent.

01:42PM  I would note that the indication of a street address
or location of government place I think also corresponds with
Central Pennsylvania Lumber Company's place of business.  And
if you could go to the preceding page, page 3 of that same
document? You can see the reference to Central Pennsylvania
Lumber Company in the Boyd's Directory noting its location at
01:43PM  Government Place, and Forked or Front Susquehanna.

In 1910, you can go to Exhibit 24, we have census
records from Williamsport, and the census records are specific
to again Calvin McCauley.  Again this exhibit, Exhibit 24,
doesn't specifically use Junior in Calvin McCauley, but he's
01:43PM  the first highlighted line, you can see it says Calvin
McCauley. We know it's Calvin McCauley, Jr. for two reasons.

First we see his wife identified as Florence in the
line immediately below Calvin's name. We know from the marriage
application that was Calvin McCauley, Junior's wife.  And we
01:44PM  can also see his age as thirty-one in 1910, corresponding to
Calvin McCauley, Junior's age.

Again it goes Mr. McCauley's employment.  If you go
to the far right hand side and you could go back and highlight
the -- yeah, let's highlight the top and put in the box where
01:44PM  it says "Occupation". And maybe standing in is a little bit

JA258

01:45PM

difficult to read, but the top box indicates "Occupation," and
you can see that Mr. McCauley, Jr. is identified as being a
lawyer for a lumber company.  And that's in 1910.  We know also
that Mr. McCauley continued to appear on behalf of Central
Pennsylvania Lumber Company and represent it in litigation,
including assessment litigation.

If we go to Exhibit 23 we're going see that in
February of 1910 Mr. McCauley appears in court for the Central
Pennsylvania Lumber Company.  And if we could go to page 2 of
the exhibit we'll see that this was a matter in the Potter
County Court of Common Pleas and was an appeal of the Central
Pennsylvania Lumber Company with respect to some tax
assessments, and you can see on the fourth line that's
highlighted, C.H. McCauley, Jr. is identified as one of the
attorneys who was appearing on behalf of the Central
Pennsylvania Lumber Company.

His involvement in representing the Central
Pennsylvania Lumber Company continued throughout that year,
and we have an example of a writ from the Supreme Court.
They apparently continued, did not receive a favorable
assessment decision and appealed it.  If we could go to Exhibit
23, age 2, we can see -- I'm sorry, Exhibit 25.  My apologies.

Exhibit 25 will be a document from the Supreme Court
of Pennsylvania.  It references the appeal bond.  You see the
date?  If we could back up to page 1? You can see that in the

JA259

01:47PM

matter of the appeal from the decision of the Commissioners of
Potter County was appealed to the Supreme Court, and again you
can identify Calvin H. McCauley, the Junior is under the filed
mark, but appearing for the appellant Central Pennsylvania
Lumber Company in that matter.

We also have the paper books from that matter before
the Supreme Court in Exhibit 26.  Again it's for the same
appeal to the Supreme Court, and if we could go to page 2 we
can see that Calvin H. McCauley, Jr. is appearing on the paper
book of the appellant, the Central Pennsylvania Lumber Company.

Now, if we look at our timeline we have another point
of interest, which is going to be in April of 1913.  And April
of 1913 is important because it shows the elevation of
Mr. McCauley's, or really the culmination of his experience
with CPLC and that he kind of rose from being the
treasurer/real estate agent to assistant general solicitor, and
then becomes a member of the board of directors.  As we'll see
from the reports and notice in the newspaper he also remained
at that time the assistant general solicitor of CPLC.

If we could to Exhibit 32, page 2, we can see from
the 19 April 1913 newspaper report that the annual meeting of
the stockholders of CPLC was held, see that the directors, C.H.
McCauley, Jr. is the first indication that he'd become a
director of the Central Pennsylvania Lumber Company, and also
see that he remained as assistant general solicitor.  So going

JA260

1 back to our timeline, we've filled in the top portion of the

2 timeline and we have some of the bottom is tax sale purchases

3 at least with respect to the warrant at issue, but I would like

4 to walk through three other tax sales briefly so that we can

01:49PM 5 see that during his period of association with the Central

6 Pennsylvania Lumber Company he was purchasing property at tax

7 sales and conveying it back to CPLC for one dollar, the nominal

8 consideration, and that it happens throughout both his period

9 of association as its real estate agent and also as its

01:49PM 10 assistant general solicitor.

11       For example, in 1904 McCauley, Jr. had a tax sale

12 purchase of ten tracts in Sullivan County in November, and he

13 conveyed those properties then to Central Pennsylvania Lumber

14 Company for one dollar in 1907.  That's going to be evidenced

01:49PM 15 by Exhibit D-29 page 12.  If you look at D-29, page 12, this is

16 the quitclaim deed from Florence and Calvin McCauley to CPLC,

17 again October of 1907.  The quitclaim deed and the date

18 referenced that these were the tracts that Mr. McCauley

19 purchased at the Sullivan County tax sale.

01:50PM 20       If we could go to page 13 of that exhibit?  If you

21 just highlight that portion you'll see that the ten tracts that

22 he's quitclaimed are the same tracts that were conveyed to the

23 said Calvin H. McCauley, Jr., treasurer of Sullivan County,

24 November 1904.  So as its real estate agent purchasing property

01:50PM 25 and conveying it to CPLC.  We also have an additional Lycoming

JA261

1  County tax sale in June of 1906 where Mr. McCauley that time

2  when he was its real estate agent purchasing property at the

3  Lycoming County tax sale, forty-one tracts.  Those forty-one

4  tracts he then conveys to CPLC in August of 1908.

01:51PM  5         If we could go to Exhibit D-29?  Let's go to page 4.

6  Here is the quitclaim deed, again the evidence for those

7  timeline points specifically identifying a quitclaim from

8  Calvin McCauley, Jr. to the Central Pennsylvania Lumber

9  Company, identifying the date in 1908 and recognizing that the

01:52PM  10 consideration was for one dollar.

11        If you'd go to the next page?  We can see that the

12 tracts of land being conveyed were the same that were conveyed

13 to McCauley, Jr. by the treasurer of Lycoming County as a

14 result of the tax sales that happened in June of 1906.  We then

01:52PM  15 have obviously the Bradford County tax sale that we've spent

16 time on, but on that same date Mr. McCauley in 1908 purchased

17 tracts at a Lycoming County tax sale, again the purchase of

18 those tracts, and then he conveyed to Central Pennsylvania

19 Lumber Company the tame date that he conveyed back the Bradford

01:53PM  20 County tracts.

21        So June of -- sorry, December 6th of 2010.  If we

22 take a look at D-29, page 1, we can see again this is the deed

23 documenting the quitclaim back from Calvin H. McCauley, Jr. in

24 which his wife Florence joined, which we believe were for dower

01:53PM  25 purposes, which I believe has already been briefed and the

JA262

01:53PM

01:54PM

01:54PM

01:54PM

01:55PM

Court has been provided on that law why wives would join in a transaction or a deed, but again from 1910, the same date the Bradford County and the Haines warrant were conveyed back to CPLC.  Andy, if you could scroll out a little bit?  You can see that the parcels that were quitclaimed, it's over twenty thousand acres of property that's at issue. You can see the acreage identified on the right hand, the far right hand column.  And if you go to the next page, pull the language out that further identifies those tracts, again confirming these are the fifty-six tracts that have been conveyed to McCauley, Jr. by the treasurer of Lycoming County as a result of the June 1908 sale.

Although we have the specifics of Mr. McCauley's relationship with Central Pennsylvania Lumber Company throughout the relevant time period, then we have him purchasing property and then conveying it back to CPLC for nominal consideration, and in fact CPLC paying the taxes during the time period when Mr. McCauley was nominally the purchaser, we also have some testimony from a case involving a tax sale that occurred in 1914 in Elk County where Mr. McCauley describes the nature of his tax sale purchase.

So this come from an affidavit that was in the Proctor v. Sagamore Big Game Club, a case from the 1950's that I believe this court is aware of, but this declaration of Calvin McCauley I believe provides light on what this and what

JA263

1  this process was. If we could go to Exhibit D-27? If we could

2  go to page 2?  We'll see that the declaration that was provided

3  in 1914 by Calvin McCauley, we'll look at two exhibits.

4  There's an excerpt of this that was also in the record that's

01:55PM  5  slightly clearer to read, but it's an excerpt.  So we'll take a

6  look at this full declaration and then the excerpt.

7          So Calvin McCauley, Jr. of Williamsport, Lycoming

8  County.  And if we could, let's take the next highlighted text

9  as a pull out.  We can see that he is -- actually let's go to

01:56PM 10  the next box as well.  We can just focus on this one.  That's

11  fine.  You see that Mr. McCauley acknowledges that the amount

12  of $685, the consideration aforesaid, we you can see it's for

13  the tracts at issue in that matter, "...was and is the proper

14  money of Central Pennsylvania Lumber Company, a corporation

01:56PM 15  organized and existing under the laws of the State of

16  Pennsylvania, and that my name in the said deeds is only used

17  in trust for it, the said Central Pennsylvania Lumber Company,

18  its successors and assigns, and for no other use, trust, or

19  purposes whatsoever."

01:57PM 20          And it's a little bit difficult to read, but if you

21  could just back out from that?  Those highlights, let's --

22  we're going to go to Exhibit 28, which is the excerpt.  As you

23  can see, this is an excerpt from the declaration that was

24  contained in the record.  If we go to page 2 you can see the

01:57PM 25  highlighted language, which is the same language that was

JA264

01:57PM

appearing in there, but again typed so it's more legible to read, again identifying Mr. McCauley's testimony regarding the Elk County tax sale that the purchase was with Central Pennsylvania Lumber Company's funds and that his name was used in the deeds only in trust for the Central Pennsylvania Lumber Company.

This arrangement where Central Pennsylvania Lumber Company would have its agents or its attorneys purchase property and convey it back is one that was recognized at least in the 1930's by the Pennsylvania Game Commission itself, and it dovetails with Mr. McCauley's explanation.  So if I could take a look at a piece of correspondence regarding title that the Pennsylvania Game Commission procured regarding property in Potter County that had been owned by Central Pennsylvania Lumber Company, if we could go to Exhibit D-36, this is correspondence to John Slautterback, who is executive, identified as executive secretary of the Board of Game Commissioners, and see the date is from June of 1931, and this correspondence is from the Game Commissioner's examination of land titles.

If we could turn to the last page of the document we'll see that the correspondence is from John E. Potter, examiner of land titles, to the Board of Game Commissioners. And if we go to page 3 of this letter, D-36 page 3, we'll see a recognition of the practice that we've been describing.  So

JA265

1    Mr. Potter's correspondence identifies, "The practice of the

2    Central Pennsylvania Lumber Company has been to let its lands

3    go to tax sale and have the lands bid in a tax sale by persons

4    whom from long continued dealings with the company in making

01:59PM  5    settlement for lands purchased by the Department of Forests and

6    Waters and the Game Commission, I know to be attorneys and

7    counselors," go to page 4, "at law for the said corporation,

8    and who I surmise pay their bids with funds of the said

9    corporation and later reconvey the lands to the corporation."

02:00PM  10          And Mr. Potter notes, "I've been unwilling heretofore

11   to recommend the acceptance of the title based wholly upon a

12   tax sale where taxes delinquent are those of the corporation

13   and the purchaser has been attorney of the corporation."  Then

14   as we saw here, Mr. McCauley, assistant general solicitor in

02:00PM  15   1908, making the purchase of Haines warrant, the property at

16   issue, in 1908.

17          We go to some additional correspondence from

18   Mr. Potter in August of 1931.  If we go to D-37, which is

19   correspondence, this time from Mr. Potter to the Central

02:00PM  20   Pennsylvania Lumber Company in August of 1931, let's go to the

21   last page of the document and identify the author.  Again

22   correspondence, John E. Potter, examiner of land titles, to the

23   Board of Game Commissioners.  And if we go to the relevant

24   portion of the document, page 11, we'll see this was with

02:01PM  25   respect to property in Sullivan and Wyoming County, and in

JA266

writing to CPLC Mr. Potter notes with respect to a tax sale in

1926, but again noting the process that Central Pennsylvania

Lumber Company engaged in.  And Mr. Potter notes, "It's

probable, however, that bids by Mr. Jones," he was the tax sale

02:01PM  5  purchaser, "were paid with funds of your company, and it's also

probably that it was passably understood, without any need for

discussion, Mr. Jones would reconvey to your company his tax

titles when they matured by the expiration of the redemption

period, which deed of reconvene he has in fact executed and

02:02PM  10  delivered.  I'm included," he says included, but I think from

the context he meant inclined, "to question whether under the

circumstances stated," states, stated, "the tax sales have any

greater effect on that of redemption, in which case the title

to the oil, gas, and minerals would not be divested but would

02:02PM  15  still continue in the Davidge estate."

THE COURT: Where is that record located?

MR. WEBER: This is D-36.

THE COURT: Okay.

MR. WEBER: I'm sorry, Your Honor, this is D-37, page

02:02PM  20  11.

THE COURT: D-37.

MR. WEBER: And if we go to the next page, which is

D-12 of that same letter, you can see his ultimate conclusion

then, he says, "For this reason I will report these facts to

02:03PM  25  the Game Commission for submission to the Attorney General with

JA267

1  recommendation that your company does not own the oil, gas, and

2  minerals."  Again a recognition of the process that CPLC

3  engaged in.  In addition to recognizing the process that

4  Central Pennsylvania Lumber Company engaged in, we have a

02:03PM  5  specific incident where they referenced a McCauley tax sale,

6  and that's going on Exhibit D-43.

7         D-43 is an excerpt of title notes that were attached

8  to a petition for review filed by the Game Commission, and if

9  we go to -- let's first go to pages, let's go to page 4.  We'll

02:03PM  10  see that in these title notes there are various items that are

11  being referred to.  And actually let's back up to page 3.  The

12  items start out, if we look at item 128 we see a reference to a

13  treasurer's deed.

14         This going back is the tax sale, you can see in the,

02:04PM  15  where the cursor is, this is dated June 25th, 1908.  This is

16  the tax sale, same year as the Bradford County tax sale that

17  we've been talking about.  Again another treasurer's deed

18  reference is June 1908, identified at item 129, and the items

19  are important because further in the letter which we'll take a

02:04PM  20  look at it identifies the items specifically.

21         So let go's to the next page, page 4.  Item 30,

22  treasurer's deed again related to the June 1908 tax sale. 131

23  is the same.  Page 5.  You see 132 is again the treasurer's

24  another treasurer's deed reference to the June tax sale.  And

02:04PM  25  then the quitclaim deed referenced in this title note as item

JA268

1  133 is the conveyance quitclaim back with respect to those

2  properties.

3         If we go to page 8 of the title exam notes, pull out

4  the portions starting with items 128 to 132, the Game

02:05PM  5  Commission's title notes reference those items, 128 to 132, the

6  June 1908 tax sales are tax sales of certain warrants or tracts

7  they identified as Calvin H. McCauley, Jr., who apparently was

8  acting for the Central Pennsylvania Lumber Company as at item

9  133.  That's the quitclaim to Central Pennsylvania Lumber

02:05PM  10  Company.  He quitclaims to it.

11         So we see the Game Commission recognizing the

12  apparent agency of Mr. McCauley specifically regarding 1908 tax

13  sales.  We see the understanding of the process that CPLC would

14  engage in.  And we also see the additional evidence of

02:06PM  15  Mr. McCauley's agency and relationship with CPLC beginning at

16  the very inception of the company.

17         So to conclude with these evidence regarding agency,

18  conclude I guess where I began, Your Honor, which is with

19  respect to this period of time where Central Pennsylvania

02:06PM  20  Lumber Company pays the taxes, there's no other explanation

21  that anybody has ever provided other than that Mr. McCauley was

22  an agent of the Central Pennsylvania Lumber Company when he

23  made the purchase at the Bradford County tax sale as to why

24  after the tax sale CPLC would be paying the tax on parcels that

02:07PM  25  Mr. McCauley purchased.  As we see from the evidence that we've

**JA269**

1  looked at throughout this entire period of time, Mr. McCauley

2  was rising in responsibility in representing CPLC specifically

3  regarding real estate and real estate transactions and real

4  estate assessments, and throughout the period of time he was

02:07PM 5  also engaged in the process that the PGC recognized of

6  purchasing its property at a tax sale and conveying it back for

7  nominal consideration.  So with respect to that, Your Honor, I

8  think we would be ready to move our exhibits.

9          THE COURT: All right.

02:07PM 10          MR. WEBER: With respect to -- and maybe my notes were

11  unclear, per the stipulations that were entered into by the

12  parties, which I think is ECF-205, it was unclear whether there

13  was only one stipulation moved in or the entire stipulation of

14  the parties were moved in.  And if it was not the entire

02:08PM 15  stipulation, stipulations that the parties reached, we would as

16  for the stipulations to be moved in their entirety.  That's

17  ECF-205.

18          THE COURT: All right.  Any objection?

19          MR. BECHTEL: None, Your Honor.

02:08PM 20          THE COURT: They are moved in in their entirety.

21          MR. WEBER: I know Your Honor has maybe as a

22  preference that we don't move all of the defendant's exhibits.

23  We I think referenced --

24          THE COURT: Actually I think it would be appropriate

02:08PM 25  to move all of them in at this time.

**JA270**

1          MR. WEBER: We would then move Exhibits D-1 through

2 53, Defendant's 1 through 53 exhibits into evidence.

3          THE COURT: All right.  Mr. Bechtel, I'm happy to hear

4 from you with respect to objections.

02:08PM  5          MR. BECHTEL: Thank you, Your Honor.  Of course there

6 are three layers of objections.  You're familiar with them, I

7 don't believe they're new, the general relevancy objections

8 that these issues should not under a matter of state law

9 matter.

02:09PM 10          We've gone over that, the collateral estoppel issue.

11 I understand that Your Honor is very well versed on it. Just to

12 reiterate, these exact arguments have been placed in front of

13 the Commonwealth court, have been placed in front of various

14 state courts at all levels.  They're been rejected.  That

02:09PM 15 should given full faith and credit and they should not be moved

16 into evidence here.

17          There are specific relevance objections.  I have to

18 walk through this a second, but --well, if I may let me take up

19 the authenticity objections first. There were three letters

02:09PM 20 identified and I believe five letters actually in the list

21 which comes from Ms. Sekerak's deposition.

22          These letters have not been shown to exist prior to I

23 believe 2005.  There seems to be no basis for those letters to

24 be brought into evidence.  They were, as you can see, as I saw,

02:10PM 25 glued into what appears to be, we're not sure, an even older

**JA271**

1 book at a later time.  We don't even know where they came from,

2 and they are just incapable of being authenticated as old

3 documents or whatever they are.  They also contain hearsay that

4 the facts in them are true, whether those facts are true or

02:10PM 5 not, and, if I may, they also invite speculation as to what

6 those facts actually are.

7           When we look at this, I'll actually use the documents

8 that were utilized here, D-15, Junior is a -- or Senior is a

9 real estate agent in April of 1904.  We have to count on that

02:11PM 10 being correct.  We don't know.  Obviously could have been using

11 speculation, he could have been using a title from last year.

12          D-16 no longer says that he's a real estate agent for

13 CPLC, yet we know that he was a real estate agent, and real

14 estate agents, as we all know, can operate for many people.

02:11PM 15 D-17 similarly, again he's no longer identified as CPLC, and in

16 fact the letter is on CPLC letterhead to someone allegedly in

17 CPLC.

18          Although there's a stamp that says it's received by

19 the real estate division, we don't know who in the real estate

02:11PM 20 division would have received that.  Nor does the address say

21 that McCauley, Jr. was in the real estate division.  So we have

22 a layer of hearsay, a layer of authenticity, a lay of problems

23 with the Sekerak letters that they don't necessarily have the

24 aura of authenticity about them that they should be accepted

02:12PM 25 into evidence. So that would be the authenticity objections.

JA272

|   | |
|---|---|
| 1 | THE COURT: And there was a third layer? |
| 2 | MR. BECHTEL: No, those are the three layers.  The |
| 3 | hearsay, the relevance, and -- |
| 4 | THE COURT: Relevance, all right. |
| 02:12PM 5 | MR. BECHTEL: Looking at the other than the general |
| 6 | relevancy, when we look specifically at some of these |
| 7 | documents, I'll have to walk back through them a second. |
| 8 | THE COURT: And while you're working on that, and I'm |
| 9 | with your pretrial memorandum, your bench memorandum on the |
| 02:12PM 10 | evidentiary objections, I want to hear from Ms. Lange or |
| 11 | Mr. Weber with respect to authenticity specifically. Who would |
| 12 | like to speak to that issue? |
| 13 | MR. WEBER: I can address that, Your Honor.  With |
| 14 | respect to authenticity, we believe that the Sekerak testimony |
| 02:13PM 15 | that J-30 provides the necessary foundation as well as the |
| 16 | books themselves.  So if we take a look at Rule 901, one of the |
| 17 | things under B-4 that the Court can consider are the |
| 18 | appearance, substance, and distinctive characteristics of the |
| 19 | item.  So these ledgers which Your Honor looked at as Ms. |
| 02:13PM 20 | Sekerak testified -- |
| 21 | THE COURT: I think you also referred to it as a |
| 22 | corporate plat book, something along those lines, a ledges or a |
| 23 | plat book which contains corporate documentation.  It appears |
| 24 | to contain corporate documentation. |
| 02:14PM 25 | MR. WEBER: It does -- that's correct.  In all of the |

JA273

1    books there's a map on the left hand side and identifies the

2    parcel information, and then the correspondence related to

3    those parcels, for example like Your Honor looked at, that's

4    the example of each of these, we believe that the documents

02:14PM  5    themselves as Your Honor could see and we can --

6         THE COURT: May I make another look at that book?

7         MR. WEBER: Sure.  If you would like to examine

8    another of the series, we've got the other correspondence are

9    in similar volumes.

02:15PM  10         (Brief pause.)

11         MR. WEBER: With respect, that's a copy of an

12    additional volume, Your Honor, and I guess I would note that

13    under the ancient records authentication requirements there are

14    three prongs.  First, that the document, the condition creates

02:17PM  15    no suspicion regarding it is what it purports to be.  Two, they

16    were found in a place that would likely be if they were

17    authentic.  And two, that they're at least twenty years old.

18         We think there's a sufficient foundation for each of

19    those based on an examination of the document itself while with

02:17PM  20    Ms. Sekerak's testimony.  As I indicated, she located these in

21    approximately 2005.  She's a third parity title abstractor not

22    associated with either party and located them in a law office

23    of Judge Hammond's former firm in Warren, Pennsylvania.

24         As we indicated in our trial brief, Warren County is

02:17PM  25    where Central Pennsylvania Lumber Company's headquarters were

JA274

1  when they closed their operations in 1940 or 1941.  And so the

2  location, these being in a law office library in Warren County,

3  is a place where it would likely be if they were authentic, and

4  there's no indication that they were created at any time other

02:18PM  5  based on the condition of the documents themselves.

6         THE COURT: If I could generally characterize these

7  ledger books, they are pages and pages and pages of

8  descriptions of both the type of timber and the peeling records

9  of individual tracts of land.  It's almost as if it's an

02:18PM  10  inventory of what is within the or under the auspices of the

11  Central Penn Lumber Company, together with records of not

12  simply classification of timber, but also peeling records, and

13  then ultimately land sales.  Very interesting.

14         MR. BECHTEL: Yes, Your Honor, I would point out we're

02:19PM  15  not authenticating the books.  We're authenticating the letters

16  within the books.  I'd also point out history does repeat

17  itself.  This was precisely the type of issue before the Gamble

18  case and specific before there was an objection sustained that

19  these books were not the best evidence, they weren't going to

02:19PM  20  be accepted into evidence.

21         It's just rife with questions of what we could

22  speculate these were meant or meant to mean when a letter was

23  sent or why it was put in a book at some point in time.  And if

24  I recall, Judge Hammond in the deposition has told Ms. Sekerak

02:19PM  25  he didn't recall ever seeing the books before.  So although she

JA275

1  found them in 2005, we have no idea where they came from or why

2  they got there.  I cannot remember if these particular books,

3  in fact I've never seen these books before today.  I've only

4  seen the excerpts of them.  I'm not even sure if these books

02:20PM  5  are Central Pennsylvania Lumber Company's books or if they

6  might be U.S. Leather's or Union Tanning's or what the purpose

7  might be to keep those books.

8        As you say, they're in inventory, but we also know

9  from the extensive exhibits there are a lot of tax assessment

02:20PM 10  appeals, there are other cases to go on.  These could have been

11  developed for use in those tax assessment appeals, and they're

12  no relationship to telling anything about what we're looking at

13  in this case. We just have no way of knowing.

14        THE COURT: I understand your objection.  I'll take it

02:20PM 15  under advisement.  But thank you, Mr. Bechtel.  You may

16  continue with your other objections.

17        MR. BECHTEL: I apologize, I turned the page too

18  quickly.  Oh, D-2 we object -- there's an objection that D-1 is

19  cumulative to what's already in the record.  To the extent that

02:21PM 20  it's not cumulative we don't have an objection to it, but we

21  believe it is.

22        D-2 are Barclay Township assessment books.  And with

23  all due respect to the idea that we're trying to show some sort

24  of pattern, that pattern is a wholly speculative pattern.  In

02:21PM 25  fact, if anything what we see is that there's not an unseated

**JA276**

1    assessment for Proctor & Hill for minerals.  So while we're

2    trying to show this pattern that they pay taxes that they

3    report, to the extent that's relevant at this point, because

4    they've already lost 109 years ago the ability to complain

02:22PM  5    about how this property is assessed, the Barclay Township

6    assessment books don't really lend any insight into what was

7    going on with this property.

8         They just don't concern it.  They don't show anything

9    different than the LeRoy Township books show.  Likewise D-3 is

02:22PM 10    the Overton Township assessment books.  And once again these

11    are township assessment books.  We've heard how the county

12    talks to the township, the township talks to the county,

13    they're sending information back and forth, they're making

14    recapitulation statements, but there's no, there's nothing that

02:22PM 15    says these township books in some way supercede or are more

16    important than the unseated listing maintained by the county

17    and the county follows that regularly when making their

18    assessments, their taxes, and their tax sales, and it's even

19    less certain why we would care about Overton or Barclay

02:23PM 20    Townships that don't talk about this property.

21         To the extent that we're looking at -- well, some of

22    these weren't even discussed, but I'll look at it.  The Proctor

23    estate letters, the letters, Your Honor, are one sided of a

24    story.  We're all familiar with the circumstances where

02:23PM 25    somebody sends you a letter and says I'll sell you my Camaro.

JA277

1 We have to speculate that somebody didn't write back and say I

2 don't want it, you don't own that Camaro.  We have no idea what

3 the response was. Speculation of what these types of

4 conversations might have been is really not, you know, the type

02:23PM 5 of evidence that we would expect to see, especially 109 years

6 later, but probably not what you'd expect to see 109 years ago

7 to show that someone reported something or did something.

8         With regard to Mr. Rote, who I think was Elk

9 Tanning's tax agent, and the idea that Mr. Rote was in constant

02:24PM 10 communication, if you read that carefully what you really see

11 is that the county gave him a list of land.  He didn't ask, he

12 didn't tell them what was owned.  They told him what was owned

13 and they paid taxes. And why not? Of course they paid taxes on

14 seated land.  They're personally responsible for those taxes.

02:24PM 15 It's not an unseated tract.

16         We have seen over and over again that Proctor & Hill

17 paid taxes on seated tracts.  Proctor & Hill are personally

18 responsible for that.  They have to make those payments.  So

19 the letters themselves, they're irrelevant. They're not

02:25PM 20 trustworthy. You don't know what they say.  You have to

21 speculate as to what they say.  The McIntyre Township

22 assessments, again we're looking in Bradford County and we're

23 saying what did Bradford County do.

24         We heard this morning we even know they treat them

02:25PM 25 differently.  So why would we look to McIntyre Township

JA278

1  assessments that in fact show a separate assessment leading to

2  the inference there is no separate assessment.  I think I heard

3  us agree that there's no separate assessment for the Josiah

4  Haines warrant in Bradford County.  Why would we look at those

02:25PM  5  books to try and show what we think there should have been or

6  might have been or could have been, but wasn't.  It still

7  wasn't there.

8        THE COURT: Aren't we just talking about two different

9  counties? I mean, your argument to me goes to the weight of the

02:26PM  10  evidence, but not necessarily to the admissibility.

11        MR. BECHTEL: But evidence that has zero weight is

12  also irrelevant, and that is admissibility.  And these are two

13  counties, but they're two counties in, what was the date, 1905

14  and 1909.  They don't have computers.  They probably couldn't

02:26PM  15  bring the actual records we just looked at to show in 1910,

16  they probably don't have those actual records.  Or if they did

17  they wouldn't look like they do on our screen.

18        We have the benefit of that, being able to bring

19  those out today.  These aren't -- these aren't necessarily

02:26PM  20  every county doing this exact same thing, as we know, and the

21  relevant inquiry would be what did this county do.  So they are

22  two different counties, but they're two very different counties

23  at a very different time, and in fact don't even show what they

24  purport to show.

02:27PM  25        The oil and gas map in fact points that out.  The oil

JA279

02:27PM

and gas map, the current oil and gas map, not even sure if it's

telling us what they bought was out on land scape 1908, but

assuming it did, you can look at Lycoming County, if you know

where Lycoming County is on that map, and see there's no oil

and gas fields there.  And yet there's an assessment in

Lycoming County in D-6 for oil and gas.  Again what Lycoming

County was doing is anybody's guess. What exactly happened in

Bradford County is a matter of the record that we're showing

you.

02:27PM

THE COURT: Yes, I would agree with you with respect

to the map.  I don't find that to be particularly relevant, but

again I think it goes to the weight.  But please continue.

MR. BECHTEL: D-8 are seated land assessments.  Again

heard very strongly that there's evidence that a seated land

02:28PM

assessment was over here, and I'm not sure even what the

relevance that the seated land assessment was made to Proctor &

Hill for four warrants that they reserved and owned would be to

this case, and Josiah Haines in particular and the nineteen

other warrants that were referenced, these all were sold to

02:28PM

Union Tanning.

There was an exception of reservation.  It's a

different situation.  It's a different thing that we're talking

about, and to then follow through those seated assessments and

say see, they were assessed with them, well, again they owned

02:28PM

them, they -- clearly somebody decided, and I say somebody,

JA280

1  because the inference that was drawn is that Proctor & Hill

2  must have told them they owned those four warrants.  It is

3  equally as likely Union Tanning told them they didn't own those

4  four warrant because they kept them.

02:29PM  5       We don't know anymore. We're just speculating who

6  told who what or how anyone found out about these things.  The

7  news articles about coal, D-9, 1897 there's coal that's being

8  mined by Proctor & Hill.  And in 1897 there's no question as to

9  title.  They reserved it in 1894, reserved it to Union Tanning.

02:29PM  10  Union Tanning has not sold.  The article just -- it bears no

11  relevance.  It's a totally uncontroverted fact.

12       Again in 1917 there's a newspaper article, but we

13  don't even know where that coal might be or what that is that

14  they're talking about trying to sell, or mine.  D-10 is a

02:29PM  15  petition and appeal.  Of course we're just claiming irrelevance

16  immateriality.  You can take notice of documents that in the

17  court.  Same with D-11.

18       D-12 and 13, the articles of incorporation, the first

19  annual report.  These are actually fairly simple irrelevancy

02:30PM  20  objections.  The relevant inquiry as to agency would be in the

21  1908 timeframe.  Seeing that in 1903 someone was named as a

22  real estate agent -- by the way, it doesn't say real estate

23  agent for CPLC.  It says real estate agent.

24       So if we want to speculate and start, let's start

02:30PM  25  there. At the very first when he's supposed to be related as

JA281

1  this real estate agent, real estate agents can work for anyone.

2  They don't have to work for one person.  So keep that in mind.

3  And it doesn't say that.  But also you can see that these

4  titles change throughout the year.  Just from D-12 and D-13,

02:31PM 5  the articles of incorporation, the first annual report, so

6  knowing what someone was titled at some point five years prior

7  to the point in time you want to know that, it's kind of

8  irrelevant because they can change throughout the year, let

9  alone year to year.

02:31PM 10        Same with certification to the auditor general.

11  D-14, that's the same document, only now it's filed in a

12  different place.  I talked about D-15, D-16, D-17, D-18.  I

13  won't belabor them, but again they don't necessarily say even

14  what they say they say or support an inference or what they

02:31PM 15  say.

16        D-18, Boyd's Directory, it would just be a shock to

17  me if a real estate agent who owned a property in Williamsport

18  didn't want to lease it to somebody.  And maybe an anchored

19  tenant who was a pretty good tenant. The fact that he has that

02:32PM 20  address or that he's listed as a real estate agent, and I noted

21  as we went through this, Boyd's Directory in 1906 says he's a

22  real estate agent for a lumber company, but it doesn't say what

23  lumber company.

24        There are any number of lumber companies, and if we

02:32PM 25  need to we will show at least one that he could have been an

JA282

1 agent for or a real estate agent for.  Boyd's Directory in 1908

2 listed him as assistant solicitor general or general solicitor

3 of nothing.  It doesn't say what.  And once again we can show

4 if we need to that there are other speculative companies, jobs

02:32PM 5 that he may have been doing at that time, that he could have

6 been representing somebody, and we just don't know who that is.

7 That's D-18.

8           D-20, D-23 we discussed is evidence of Central

9 Pennsylvania Lumber Company from 1908.  It's a tax appeal.

02:33PM 10 Again it's irrelevant what that says, but you may take

11 obviously notice of a judicial decision or judicial papers.

12 The manuscript census from 1910, I don't believe that was on

13 the timeline.

14           THE COURT: I don't recall that being used.  Was that

02:33PM 15 used?

16           MR. WEBER: It was not on the timeline.  It was used,

17 the census, where we pulled out and saw that he was Calvin

18 McCauley, Florence below, and then he was identified as being a

19 lawyer for a lumber company at the same time.

02:33PM 20           THE COURT: I saw that.

21           MR. BECHTEL: Again the relevant time period is 1908.

22 I mean, we can only speculate how Florence would have felt if

23 her husband had died in 1909.  Would she have felt that she was

24 an agent for Central Pennsylvania Lumber Company?  I mean, she

02:34PM 25 had an interest here, dower or otherwise, and to look at a 1910

JA283

1  census and say you're a lawyer from an unidentified lumber

2  company and that's evidence that you are an agent in a 1908 tax

3  sale, or for that matter 1904 and 1906, 1907, seems to be an

4  unreasonable inference that's irrelevant and immaterial to

02:34PM  5  discuss.

6  The declaration of trust, the declaration of trust

7  has of course been found irrelevant by other courts in

8  Pennsylvania.  You've heard a presentation and you'll get to

9  make that decision here.  Wholly understand that.  We would

02:34PM  10  suggest to you or argue to you that it is irrelevant as a

11  matter of law.  What he did in 1914 in a different case that is

12  evidenced by an actual writing is totally different from what

13  was done in 1908 that has no writing, but also point out under

14  the Federal Rules of Evidence the absence of a writing can also

02:35PM  15  draw an inference.  So as you consider that trust, that

16  document, just consider we've not seen that anywhere else other

17  than in that one place at one time.

18  The McCauley quitclaim deeds, D-29 irrelevant and

19  immaterial because they concern other sales, and those sales

02:35PM  20  have not been shown to have been assessed regularly. They have

21  not been shown how the sales were conducted. Nothing about the

22  sales to know that they're the same sale, the same type of

23  sale.

24  Sure, they're a tax sale.  Sure there's a tax sale

02:35PM  25  deed.  But none of the evidence that went forth in this case

JA284

1 about this sale has been presented with regard to those to know

2 if they're even similar to know whether to look at them.  I

3 didn't hear any reference to D-30 through 35, but I did see

4 references to PGC reports on D-36.  Generally D-36 and D-37 are

02:36PM  5 the letters from L-205 a 1931 contract.

6        I believe they're both L-205 -- no, one is.  But

7 they're 1931 contracts and they discuss an employee's feeling,

8 assumption, presupposition about the legal issue in 1931.  The

9 employee's presumptions, suppositions are nothing more than

02:37PM 10 that. Presumptions and suppositions.  They're not evidence of

11 the truth.  They're hearsay.

12        If you consider that, if I may, if we have to proceed

13 with rebuttal we will also show that these two suppositions

14 changed throughout time and what they mean and what they might

02:37PM 15 mean to him, and to say at any given time you recognize,

16 acknowledge, or understand something because one employee, who

17 is a title searcher, and this is what title searchers do, just

18 like J-1, just like J-2, they report facts.

19        They may have feelings about those facts and they

02:37PM 20 analyze them for you, but they're reporting facts.  And at that

21 point in time, for whatever reason, this was the supposition

22 that he worked under.  And, if I may, it was a supposition

23 about something which Herder Spring has now told us is

24 irrelevant, which cases after 1931 told us is irrelevant.  The

02:38PM 25 owners themselves could have brought this property.  So while

JA285

02:38PM

1  we're arguing about whether Mr. McCauley is an agent, the end

2  game here is it didn't matter if he was an agent. He could have

3  done this on their behalf anyways.  I don't recall seeing

4  reference to D-38, 39, 40, 41 or 42. I don't recall D-43.  Was

5  there a reference to D-43, Your Honor? I don't recall that.

6           MR. WEBER: If I may, Your Honor?

7           THE COURT: You may.

8           MR. WEBER: Exhibit 43 was the last document that we

9  went through.  This was the notes from the title examination

02:39PM 10  that identified Mr. McCauley referencing the items 128 through

11  132 as 1908 tax sale purchases where the Game Commission's

12  title notes indicate he was apparently acting for CPLC in

13  making the purchase.

14           MR. BECHTEL: Thank you.  I'll make a note of that.

02:39PM 15           THE COURT: All right.  But I think --

16           MR. BECHTEL: I was just, because again he apparently

17  was acting for them.

18           THE COURT: Mr. Bechtel pointed out that he doesn't

19  recall references to 38, 39, 40, 41.

02:39PM 20           MR. BECHTEL: And 42.

21           THE COURT: And 42.  41 is I believe, is that the book

22  that was handed up? Okay.  Were 38, 39, 40, and 42 submitted?

23           MS. LANGE: Your Honor, 39 and 40 were not and 42 was

24  not.  And we, the stipulations, the facts set forth in 39 and

02:40PM 25  40 are found in the stipulation.  So there's no need for us to

JA286

1  utilize those exhibits.  And we're fine with not admitting

2  Exhibit D-42.  As far as 38, I believe Mr. Weber utilized that,

3  but I defer to him.

4         MR. BECHTEL: In which case the objection would be the

02:41PM  5  same, Your Honor, that this is a statement by an employee of

6  what they felt at a certain point in time.  1931, as we know,

7  the law changes throughout the years, and someone's

8  understanding or belief, just beliefs about the law and about

9  the suppositions and what they presume happened may change

02:41PM  10  throughout the years.

11         THE COURT: All right.

12         MR. BECHTEL: They don't change the law.

13         THE COURT: All right.  So we're clear though, 39, 40,

14  and 42 are not being moved into the record?

02:41PM  15         MR. WEBER: Correct, Your Honor.

16         THE COURT: All right. So we will except out 38, 39,

17  40, and 42.

18         MR. BECHTEL: With regard to the D-44, 45, and 46

19  declarations, if you read the declarations, none of them speak

02:42PM  20  to notices being found in the county commissioners's office. In

21  fact, some of them specifically say they should look in the

22  county commissioner's office, and in fact all requires notices

23  to the county commissioners.

24         So they're really declarations saying, for instance,

02:42PM  25  I went to the federal courthouse and didn't find any notices to

**JA287**

1  the county commissioner saying that I should tax Proctor &

2  Hill.  It's an irrelevant fact.  I'm not going to say the fact

3  isn't true.  It just doesn't matter, it's irrelevant, and

4  there's no way it becomes relevant.  47 I believe is cumulative

02:42PM  5  of J -- was that, I'm going to ask was that demonstrative, is

6  that the purpose of, was D-47 used?

7          MS. LANGE: D-47 was used.  It is the same as the J

8  exhibit, except it's for a different year.  It starts at 1910.

9  And so it's the county assessment records beginning at 1910

02:43PM  10  through a certain time period that we missed when we submitted

11  the joint exhibits.

12          MR. BECHTEL: The objection would only be that they're

13  after the relevant time period, Your Honor, and immaterial.

14          THE COURT: All right.

02:43PM  15          MR. BECHTEL: The map of the Schrader land, likewise

16  this is a time period in 1894, 1897 when Schrader was prior to

17  Proctor.  There's no doubt that Proctor & Hill bought the

18  Schrader land.  The identification and location of them were

19  already in the deed.  It doesn't make any of the issues about

02:43PM  20  reporting or anything more likely or not, none of the issues

21  about McCauley, Jr. more likely or not. They're just simply an

22  irrelevant map that doesn't help tell us anything about this

23  case.

24          The recapitulation statement, in fact from Barclay

02:44PM  25  Township, and I believe, if I may, there were additional

JA288

1  recapitulation statements in D-50.  I believe that went

2  through.  The recapitulation statement is essentially offered

3  simply for the concept that Mr. Gass said that there's no,

4  there's no oil, gas, and minerals specifically listed as being

02:44PM 5  part of what an assessor is supposed to assess.

6          However, in Mr. Gass's testimony, we're not on

7  rebuttal, but just to mention he also said real estate includes

8  oil, gas, and minerals, and it says real estate.  So if you

9  strip the meaning from that there's really no meaning to the

02:45PM 10  recapitulation statement.  It doesn't tell you anything.  It's

11  just an statement, assess people and property subject to tax,

12  which we all know is what the assessor is supposed to do.

13          So there's no relevancy to the sale.  There's no

14  relevancy to reporting.  There's no relevancy to McCauley

02:45PM 15  Junior's relationship or lack thereof. Just nothing that causes

16  it to be relevant. D-51 is of course demonstrative excerpts.

17  To the extent I believe they are all demonstrative because I

18  just watched them I withdraw my objection, because they're the

19  same as J-11.

02:45PM 20          THE COURT: All right.

21          MR. BECHTEL: And the only other item I believe that

22  was put into evidence was, I believe D-52 was not used.  D-53,

23  however, was.  These are two newspaper articles.  These

24  articles are about Calvin Hudson McCauley the father, not

02:46PM 25  Calvin Hudson McCauley, Jr.  They're not even -- they're not

JA289

1  even used to say they're about Calvin Hudson McCauley, Jr. They

2  just simply speak about Calvin Hudson McCauley, Sr., and Calvin

3  Hudson McCauley's relationship, he's not in the tax sale chain.

4  It's not a question in this case.  When he died is not a

02:46PM  5  question.  None of this is of any again relevance to actually

6  telling us anything about any of the issues that we're here

7  today about.  And those would be our objections to the D-2

8  through 53 exhibits.

9          THE COURT: With respect to D-52, was that used?

02:46PM 10          MS. LANGE: I referenced it, Your Honor, and we would

11  like to get it in the record for purposes of the proposed

12  findings of fact and conclusions of law.  I didn't feel, I did

13  reference it in the Powerpoint, but I did not show you an image

14  from it.

02:47PM 15          THE COURT: Let me ask you to go back to the PGC title

16  report of 1931.  D-38, the letter from A.F. Jones to Potter.

17  Mr. Bechtel, did you object on the grounds that that was not

18  introduced during the defendant's case in chief?

19          MR. BECHTEL: I did, but I believe that Mr. Weber

02:47PM 20  corrected me.

21          THE COURT: Mr. Weber, it was in fact introduced?

22          MR. WEBER: No, Your Honor.  It was referenced.  It's

23  the response to Mr. Potter's letter.  I didn't specifically

24  address it in our walk through.  I think it's relevant to be in

02:48PM 25  in that it's the response.  We may want to refer to it in the

 1  conclusions of law and the findings of fact, but it's not a

 2  document that we walked through.

 3          THE COURT: All right.

 4          MR. WEBER: So D-38 was, I think that was not one that

02:48PM  5  I specifically pulled up, but it is the response to D-37, which

 6  was the letter that we walked through.

 7          THE COURT: Okay.  All right.  So with the exception

 8  of 39, 40, and 42, all of the other exhibits were either

 9  specifically referenced or are the subject of potentially

02:48PM 10  proposed findings of fact and conclusions of law.  Is that a

11  fair statement?

12          MR. WEBER: Yes.

13          THE COURT: And they're all on the joint exhibit list,

14  so there's no argument with respect to surprise or prejudice.

02:49PM 15  All right, those exhibits are all admitted into the record,

16  subject to the objections of Mr. Bechtel, which the Court will

17  take under advisement.  Anything else from the Proctor Heirs?

18          MR. WEBER: Yes, Your Honor.  I think that we

19  reserved, or you reserved ruling on the testimony that the

02:49PM 20  joint exhibits that were identified.

21          THE COURT: Oh, that's right, the --

22          MR. WEBER: That testimony of Ms. Sekerak which I

23  referred to, which is relevant to the authenticity issues that

24  the Court will consider.  Ms. Lange also referenced with

02:49PM 25  respect to Mr. Gass and his testimony with respect to the

**JA291**

1  Bradford County records.  And I believe Ms. Hochberg's

2  testimony also goes to authenticity, although I don't believe

3  it was specifically referenced during the presentation.

4          THE COURT: All right. So those are Exhibits --

5          MR. WEBER: Joint Exhibit --

6          THE COURT: J-30 through J-33? Is that correct?

7          MR. BECHTEL: Yes, Your Honor.

8          THE COURT: All right.  They are admitted subject to

9  Mr. Bechtel's objections, which will be taken under advisement.

02:50PM 10  Anything further?

11          MS. LANGE: No, Your Honor.

12          THE COURT: All right.  Thank you, Ms. Lange.  Thank

13  you, Mr. Weber.  Mr. Bechtel, do you have rebuttal that you

14  would like to introduce?

02:50PM 15          MR. BECHTEL: Your Honor, the Commission would.

16          THE COURT: All right.  Then I'm going to take a break

17  now.  We'll take our afternoon break. Let's reconvene at ten

18  after three, and I don't want to place any time constraints on

19  you, Mr. Bechtel.  Just give me a rough estimate off the record

02:50PM 20  as to how much time you may think you need.

21          (Discussion held off the record.)

22          THE COURT: All right.  We're in recess until ten

23  after three.

24          (Recess taken at 2:51 p.m.)

02:51PM 25          (Trial resumed at 3:10 p.m.)

JA292

1    THE COURT: Please be seated.  Mr. Bechtel, you may

2   begin your rebuttal.

3    MR. BECHTEL: Thank you, Your Honor.  If I may begin

4   just for a moment just to address the reporting issues and the

03:10PM   5   discussions of reporting, we've seen numerous examples of

6   assessments that have been changed, assessments that may have

7   gone to Proctor & Hill or Union Tanning, whoever, and there's

8   been an inference that's been urged that since those

9   assessments were changed, there must have been some reporting

03:11PM  10   under the Act, under the law, and in the case of Josiah Haines

11   we don't have an assessment.

12    So what is being said is that they're asking the

13   Court to speculate that Proctor & Hill must have reported their

14   interest, but that Josiah Haines was not assessed

03:11PM  15   appropriately.  That in fact, that challenge has been lost,

16   and throughout this whole reporting conversation there's a

17   conflation of reporting what's being reported by a newspaper,

18   by Union Tanning, by the county to the township, by the

19   township to the county, but nothing that we've seen at any

03:12PM  20   point indicates that reporting took place in any way in

21   accordance with the law and brings us squarely within the ambit

22   of the Hunter case where they also said there's no evidence

23   that reporting ever took place.

24    And just as importantly I would note that although

03:12PM  25   we've all talked about reporting, we've talked about it for a

123

1  very long time, there's no indication anywhere in the law that

2  reporting an interest would change the character of the land

3  from unseated to seated. So it's the assessment that governs.

4  If the assessment is unseated and the sale regularly follows

03:12PM  5  the assessment, the fact that the assessment is wrong, if

6  indeed it was, doesn't change the outcome.

7          As I said earlier, a title wash isn't a theory.  It's

8  a name for a set of facts, and some of those facts are you have

9  an assessment as an unseated property, the sale regularly

03:13PM  10  follows, and it's sold.  Nothing in that reporting issue

11  changes that, that character, if that assessment isn't seated.

12          So moving on to the exhibits to walk through them,

13  Exhibit P-2 is a title from a different contract, L-36.  Since

14  we are looking at other contracts, other abstracts, I thought

03:13PM  15  this would be a pretty interesting one to look at.  It's from

16  1923.  These transactions of course don't take place in a

17  vacuum.

18          So while the 1920 and 1921 transaction is going

19  forward between CPLC and the Game Commission there's also

03:14PM  20  another transaction that takes place a couple of short years

21  later, 1923, and I will call attention on P-2, page 65 and 66.

22  Now, I had mentioned that in the prior L-203, 201, there were

23  letters from Potter, and he said he's been unwilling to talk

24  about this in 1931 or, you know, he had mentioned about what he

03:14PM  25  suspected about some of these agencies, but what he also said

**JA294**

1 is, "I didn't search the title.  I didn't search the minerals,

2 the reserved interests."  He wasn't asked the question what

3 happens to those reserved interests.  In this title he was.

4 He was specifically asked.  And when you look at page 65 you

03:15PM 5 see him saying, "The method of keeping assessment of unseated

6 land in Sullivan County, the manner of entering record of

7 payment taxes are unsatisfactory."

8        THE COURT: A little bit slower, please, for the court

9 reporter.

03:15PM 10        MR. BECHTEL: Yes, sir.  "And make it very difficult

11 to ascertain the facts conclusively, but my examiners were

12 unable to find any separate assessment of the minerals, coal,

13 oil, and gas reserved in the deeds heretofore mentioned.  I am

14 therefore of the opinion that if the tax sales above referred

03:15PM 15 to are regular and there is no separate assessment of the

16 minerals, as seems to be the case, that any outstanding

17 ownership or title to those reservations is clearly divested."

18        I would say to you this doesn't make the law.  Your

19 Honor gets to decide the law.  But if we're talking about what

03:16PM 20 people knew or thought they knew or how they conversed with

21 each other in business, it's far from clear that anyone knew or

22 didn't know what that was going to be.

23        THE COURT: It may be a technical clarification, but I

24 do not get to decide the law.  I get to decide the facts and

03:16PM 25 their application to the law as I believe it to be within this

JA295

1  circuit and in this Commonwealth.

2          MR. BECHTEL: I appreciate that.  I'm a little

3  exuberant with the decision of the law. Turning to P-3, P-3 is

4  indeed the marriage certificate.  I mention it only because it

03:16PM  5  does show that Calvin H. McCauley is Calvin H. McCauley's

6  father, McCauley Junior's father, and I will be moving for

7  admission of that exhibit.

8          P-4 through P-28 are letters.  So far, I mean we see

9  only side of this story.  As I mentioned, we've all had that

03:17PM 10  experience with one side of a story and what it means.  It does

11  seem kind of speculative.  It's a shame that we have to

12  speculate at this point, but all we have are these letters and

13  I think it's important to talk about, if we're going to talk

14  about what these letters show or don't show, that would look at

03:17PM 15  a lot of them to understand the idea that the Proctors

16  addressed Calvin McCauley when it was Calvin McCauley,

17  addressed Calvin McCauley, Jr. when it was Calvin McCauley,

18  Jr., addressed him as working for CPLC when it was appropriate

19  to address him as working for CPLC, and sometimes didn't

03:17PM 20  address him as working for CPLC when the facts and

21  circumstances of the letters would indicate he wasn't working

22  for CPLC, and we have some examples of these.

23          P-14 in particular, you'll see that this is a letter

24  from 1913.  He is addressed as assistant general solicitor,

03:18PM 25  Central Pennsylvania Lumber Company, at a time when I believe

JA296

we've all said he has been appointed assistant general

solicitor.  They say, "We're in receipt of your favor of the

11th including a deed of minerals which appears to be an order

and for which we thank you."  They knew they had to get a deed

03:18PM  of minerals from the assistant general solicitor of Central

Pennsylvania Lumber Company in 1913.

If we look at P-18, this is a letter from 1920 to

Mr. Calvin H. McCauley, Jr.  It says when he was Boston in

connection with the Rock Run deal, "We would be glad to

03:19PM  investigate any other coal properties we might have in

Pennsylvania."  I believe this came up on, in the defendant's

case.

I noted that it said, "The only other minerals we are

interested in is in connection with the estate of Jonathan A.

03:19PM  Hill."  They're not, they're not discussing every mineral in

every case.  They're discussing certain ones, Rock Run, and

we'll see who Rock Run is in a little bit, and they also talk

about the Carbon Run Mine.  So there's other mines that Proctor

& Hill has interest in.  It's not all about Bradford County,

03:19PM  Josiah Haines, or even McIntyre Township.  And they're working

directly with Calvin H. McCauley, Jr., not in reference to CPLC

when they do this.

In P-19, again August of 1920, if you recall, these

were around the time of the transactions to the Commission from

03:20PM  CPL.  Calvin H. McCauley, Jr., not affiliated necessarily with

JA297

CPLC.  Receipt of the map of the Schrader lands which they were

termed.  They note, however, "We would like to know what

arrangements the LeRoy Coal Company has made with the lumber

company and the Susquehanna & New York Railroad Company."  In

03:20PM  1920 they're getting a little bit of seller's remorse.  They

realize that they've sat around now from 1908 to 1920 and that

some of this may have some value, and they want to know from,

not from CPLC, but from their friend Mr. McCauley, Jr. what do

you know about this.

03:21PM        It's also interesting that they say, "You might be

better to conduct this independently of Mr. Hill if possible

or until you hear further from us," was an indication I might

speculate that he's working on their behalf in 1920.  If we

look at P-21, another letter, September 27th, 1920, again

03:21PM  around the time of the transaction with the Game Commission to

Calvin McCauley, Jr., again not referenced with regard to CPLC,

but they're asking him about the LeRoy Coal Company, if LeRoy

would sell their lease, presumably to Proctor & Hill, and they

also mention, "If you made a sale, we would expect to pay you a

03:22PM  commission."

        Obviously conflict of interest rules were not as

strict at that time, but it is somewhat unusual that you would

pay a commission to somebody who's working at a company and

you're asking about what they company is doing and what we

03:22PM  might do about it.  If we look at P-22, you see a telegram,

**JA298**

1    October 15th, 1920, Calvin H. McCauley, Jr.  Again, and I keep

2    mentioning this, no mention of CPLC, but they want to know what

3    price he could get for their two-thirds interest. I don't know

4    in what, but once again he's working and getting a price for

03:22PM   5    the Proctors.

6            P-23 is a letter following up that telegram.  P-27

7    once again is another letter dated November 30th, 1920.  This

8    one is to George Hill.  You'll note that they reference

9    Mr. Calvin H. McCauley, Jr. of Williamsport, "With whom we have

03:23PM   10   done considerable business and in whom we have great confidence

11   and who was at some unknown time an officer in the Central

12   Pennsylvania Lumber, as is you know has been trying to dispose

13   of our interest in the lease to the LeRoy Coal Company."

14           The point is that Mr. McCauley had many hats.  He put

03:23PM   15   those hats on, he took those hats off.  Mr. McCauley, Jr., he

16   wasn't simply as the timeline might indicate "I only work for

17   CPLC."  Oh, it's clear, I mean you don't expect that he doesn't

18   know who his father is.  You don't expect that he doesn't know

19   that he was treasurer in 1903 when they incorporated the

03:24PM   20   company.  You don't expect when he represented him, by the way

21   as part of a farm with Lewis and Jones and Lewis up in

22   Williamsport, a firm that's been around a long time, you don't

23   expect that he doesn't know who the client is.

24           But you also can expect, because you can see the

03:24PM   25   letters, you can read them, that he knows the difference

03:25PM

between when he's working for this person or when he's working

for that person.  In fact P-28, specifically there's a letter

around the same time sending him five hundred dollars to cover

his expenses for the work that he's doing on behalf of the

trust.  He knows where his loyalties lay at any given time in

what he's doing, and this is not a vacuum that we're just

talking about the Proctors and we're just talking about CPLC.

If we look at P-29, this is an article of

incorporation of Rock Run Coal Company.  The date on this, I

03:25PM

always have trouble finding it, I believe it's 1912.  But if we

look, Calvin H. McCauley, Jr. is an incorporator with twenty

shares.  He's also a board of directors.  Yes, and it's dated

in 1912.  So the Rock Run deal we heard about.  He was talking

to them about his company, a deal that he was part of.

03:25PM

If we look at P-30, this is an article, as we can

see, *The Agitator* of Wellsboro, Pennsylvania, December 21st,

1910, on the left hand side you can real estate transfers,

recent changes of ownership in Tioga County properties.  If we

look down here to Liberty Township we see Calvin H. McCauley,

03:26PM

Jr. and his wife Florence to T.R. Horton, ninety-one acres.

We see the Treasurer to Calvin H. McCauley, Jr.,

twenty-six acres.  We see another sale by the Treasurer to

Calvin H. McCauley, Jr., sixty-five acres.  There's no

indication that CPLC, Rock Run Coal Company, Proctor & Hill, or

03:26PM

any of the people mentioned in this case are involved in any

JA300

1  way in this. He had a different hat on.  He bought things at

2  tax sale, but that doesn't mean that he bought things at tax

3  sale solely for Central Pennsylvania Lumber Company, even if

4  the result of that sale was to sell it back to the company that

03:27PM  5  most likely wanted it, and there's been no indication why,

6  there's been no indication why CPLC must pay the taxes.

7          Well, consider this.  1908, I make a purchase at a

8  tax sale, and by the end of 1908 I make a contract to sell that

9  property, and as part of that contract I'm not paying the

03:27PM 10  taxes, you are, because I'm not just going to sit here and hold

11  this property if I'm going to pay taxes and I'm not going to

12  get that money back.  So there's any number of reasonable

13  explanations for why these things might happen.

14          P-31, just so you know, is an authentication of P-30.

03:28PM 15  I won't go through it.  P-32 is, are a couple of other

16  articles.  They're kind of interesting.  This is 1907, and 1907

17  being the year for which Josiah Haines was assessed, actually

18  sale takes place 1908.  In the middle you see, "Big Land Case

19  Occupies Court."  And if you read down through it says right

03:28PM 20  about where my cursor is, "C.H. McCauley," not Junior, "of

21  Ridgeway," we know Junior lived in Williamsport, "The general

22  solicitor for the Elk Tanning Company," which we now know is a

23  subsidiary, "and his son Richard McCauley of this city,

24  solicitor for the Pennsylvania Lumber Company are defending the

03:29PM 25  companies."  This is truly a family affair, with people going

JA301

1   in and people going out of positions and what they have.

2          P-33 are the same Rock Run filing at the state level.

3   P-34 is an authentication for P-29, 32, and 33.  And P-35 is a

4   draft card.  This is a draft card.  I think it's 1917, and I

03:29PM 5   use this just to point out that if you look right here on the

6   left about where my cursor is, this is how Mr. McCauley, Jr.

7   referenced himself.  He referenced himself as self employed.

8          The point is that this speculation about who he was

9   working with, for, who, when, or why is all belied by the fact

03:30PM 10  that he bought the Josiah Haines warrant, and whatever happened

11  after that is what happened.  However it was done is how it was

12  done.  But J-11 shows you they knew the difference between

13  paid, they knew the difference between sold.  They knew who got

14  it.  And all the other sales in 1908, you know they knew the

03:30PM 15  difference, because it was sold to Calvin H. McCauley,

16  Jr. Those chances were taken.  Your Honor, I apologize, I know

17  we just had a break.  I had one final thing I wanted to bring

18  up, and I have a plethora of notes.

19         THE COURT: This is the type of case that would

03:31PM 20  generate a plethora of notes.

21         (Brief pause.)

22         MR. BECHTEL: Oh, I recall.  It was actually a fairly

23  simple, it was about the timeline article that named Calvin

24  McCauley as general solicitor in 1908.  It's Exhibit D-42.  If

03:32PM 25  I can just bring that up a second? This doesn't say D-42.

JA302

1  D-43.  I'm reading poorly.

2           THE COURT: "D" as in "Defendant"?

3           MR. BECHTEL: Yes, sir.  You'll note that this article

4  from 1908, which is I believe the only article or the only

03:32PM  5  evidence from 1908 that purportedly links Calvin McCauley with

6  Central Pennsylvania Lumber Company.  This says Calvin H.

7  McCauley, not Junior, was admitted to the Lycoming County Bar.

8  And it's been presented as it must be Calvin McCauley, Jr.,

9  because we know Calvin McCauley was admitted to the bar in

03:33PM  10  1872. Well, as most of us who have been practicing a while also

11  knows, you have to be admitted to each county bar.

12           THE COURT: That is correct.

13           MR. BECHTEL: Not just the Supreme Court bar in 1908.

14           THE COURT: However, this does say assistant general

03:33PM  15  solicitor for the Central Pennsylvania Lumber Company.

16           MR. BECHTEL: It does.  He was general solicitor

17  before.  He was a solicitor for Elk Tanning in 1907.  We saw

18  that in the other article.  And now we have this same name,

19  this same man being assistant general counsel for the Central

03:33PM  20  Pennsylvania Lumber Company he gets admitted to the bar of the

21  county in which they're located, which only makes sense.

22           So I just wanted to point out that, you know, these

23  documents are very difficult.  They're very difficult to put

24  together.  They're very difficult to have a timeline, as we've

03:34PM  25  seen, and you have to consider what they actually say for what

JA303

1 they say, not for what we might want them to say.  Me included.

2 Think about what they are.  Thank you, Your Honor.

3          THE COURT: I did think about that when I saw the

4 admission to a county court in the early 1900's.  All right,

03:34PM 5 thank you very much, Mr. Bechtel. Ms. Lange? Mr. Weber?

6          MR. WEBER: Could we have five minutes, Your Honor?

7          THE COURT: Yes absolutely.

8          MR. WEBER: Figure out if there's anything -- there's

9 a lot of argument that we could, but we'd like keep it to any

03:34PM 10 appropriate rebuttal.  So if we could have for ten minutes to

11 just to put your heads together?

12          THE COURT: Certainly.  Why don't we take a break for

13 ten minutes.  We'll reconvene at 3:45, let's make it 3:50. All

14 right?

03:35PM 15          MR. WEBER: Thank you.

16          (Recess taken at 3:35 p.m.)

17          (Trial resumed at 3:49 p.m.)

18          THE COURT: Please be seated.  Mr. Bechtel?

19          MR. BECHTEL: Your Honor, just would it be appropriate

03:50PM 20 to move for admission now of the exhibits?

21          THE COURT: Certainly.

22          MR. BECHTEL: I would like to move for admission of

23 Plaintiff's Exhibits P-2 through P-35, and I have an oversight.

24 I'd like to move for admission of two additional documents that

03:50PM 25 were appended to defense trial memorandum ECF-214.  The first

**JA304**

1 is a deed recorded in Lycoming County deed book 207, page 563,

2 where McCauley, Jr. bought property at a tax sale and he and

3 his wife Florence sold them to unrelated, parties unrelated to

4 this litigation on June 17th, 1910.  And the other is a deed

03:50PM 5 from Potter County deed book 78, page 155, again McCauley, Jr.

6 and his wife Florence sold several tracts that they bought at

7 tax sale to Emporium Lumber Company on June 15th, 1911.  If

8 they could be marked as P-36 and 37?

9        THE COURT: All right.  And they were appended to the

03:51PM 10 defendant's pretrial memorandum?

11        MR. BECHTEL: The defense memorandum, yes, 214.

12        THE COURT: The defendant's memorandum.

13        MR. BECHTEL: No.  Ours, Your Honor.

14        THE COURT: That would be plaintiff's memorandum.

03:51PM 15        MR. BECHTEL: Plaintiff's.

16        THE COURT: All right.  Any objections to the

17 admission of those exhibits?

18        MS. LANGE: Your Honor, we do not have an objection to

19 Exhibits P-3 through P-35, and we don't have an objection to

03:51PM 20 the exhibits referenced appended to the trial brief.  I just

21 want to restate for the record, and I understand Your Honor is

22 going to take them under submission, our objections to

23 Plaintiff's P-1, which was the expert report, and P-2, just the

24 portions of those documents as far as the improper opinion

03:52PM 25 testimony and relevancy objections that we raised earlier in

JA305

1  the proceeding.

2         THE COURT: All right. Those objections are admitted

3  subject to Ms. Lange's objections, which will be taken under

4  advisement and resolved to the extent necessary in the Court's

03:52PM  5  ultimate decision in this matter.  Mr. Weber?

6         MR. WEBER: Thank you, Your Honor.  Just very briefly

7  a few points regarding a few of the documents that Mr. Bechtel

8  referenced.  If we could switch to the Defendant's D-2.  Let's

9  start with -- Your Honor, with respect to the title reference

03:53PM 10  that Mr. Bechtel referenced earlier, I wanted to point out

11  three things regarding that document.

12         First, if it wasn't clear, that was correspondence

13  from John E. Potter.  That's the same, I believe the same title

14  examiner that we referenced in the exhibits that we looked at

03:53PM 15  from about ten years later in 1931, and this letter, if you

16  look at the beginning of it, which is page 60 of P-2, is dated

17  in 1924.  So certainly Mr. Potter's understanding evolved

18  through 1924 to 1931, and the correspondence and conclusions

19  that he drew regarding Central Pennsylvania Lumber Company at

03:53PM 20  its tax sales, but to put that in the appropriate time frame

21  and context.

22         In addition, if you go to page 65 of that same

23  exhibit, I'd just like to draw attention to the bottom portion,

24  which is the fact that with respect to the Sullivan County

03:54PM 25  assessment records, he found those to be unsatisfactory and

JA306

1  difficult to make an assessment, and therefore it looks like he

2  surmised that they were unable to find a separate assessment,

3  but he notes kind of the unsatisfactory nature of the records

4  or being able to make that determination.  But his

03:54PM  5  understanding obviously has evolved, as the two documents we

6  looked at for Mr. Potter in the early 1930's identified.

7         With respect to the range of other exhibits that

8  Mr. Bechtel referenced, I think it's appropriate to look at the

9  period of time in which those were identified.  Most of the

03:54PM 10  correspondence was from 1920 and certainly around that time

11  period. Based on the evidence that we've been able to gather it

12  looks like Mr. McCauley's last relationship that we can

13  identify with Central Pennsylvania Lumber Company was sometime

14  in 1917, or it ended sometime in that year or later in 1917.

03:55PM 15         And specifically if we look at Exhibit P-27, which

16  Mr. Bechtel referenced, the correspondence on the third line,

17  if you could cull out the second half of the third line where

18  it begins "and"?  Yep.  I'm sorry, I'm just going to drag my

19  mouse to it.  "And who was an officer in the Central

03:55PM 20  Pennsylvania Lumber Company."  So obviously this correspondence

21  in 1920 referencing Mr. McCauley is referencing that he had a

22  prior association with the Central Pennsylvania Lumber Company,

23  was an officer in the Central Pennsylvania Lumber Company.

24         In addition a couple of points regarding the

03:56PM 25  assistant general solicitor position.  The newspaper article

JA307

1  that we looked at that identified Calvin H. McCauley, which is

2  his correct name, as the assistant general solicitor was not

3  the only piece.  If Your Honor might recall, D-20 that we

4  looked at was, of course corroborated that, which was the

03:56PM  5  Boyd's Directory which listed Mr. McCauley as assistant general

6  solicitor as well in 1908.

7         And finally with respect to the reference that

8  Mr. McCauley, Sr. may have been the assistant general

9  solicitor, I would simply point out that the annual report that

03:56PM  10  we looked at initially from 1903 identified McCauley Senior as

11  the general solicitor.  And if we could pull up D-53, page 7,

12  and pull out the highlighted text, we see that in his obituary

13  in 1910 he was identified as the general solicitor for the Elk

14  Tanning Company, the Central Pennsylvania Lumber Company, and

03:57PM  15  other affiliated interests.

16         So we think it would be an improper inference to draw

17  that somehow Mr. McCauley, Sr. was the general solicitor,

18  switched to be the assistant general solicitor, and then back

19  to general solicitor, and that the evidence is clear that it's

03:57PM  20  Calvin McCauley, Jr., corroborated by the other evidence that

21  we've identified.  Thank you, Your Honor.

22         THE COURT: All right. Any other exhibits?

23         MR. WEBER: No, Your Honor.

24         THE COURT: Mr. Bechtel, any other exhibits?

03:57PM  25         MR. BECHTEL: No, Your Honor.

JA308

1      THE COURT: Very good. The record is closed. How much

2 time would you folks like to prepare and submit post trial

3 findings of fact and conclusions of law following receipt of

4 the transcript?

03:58PM 5      MS. LANGE: Your Honor, we would be happy with thirty

6 days from receipt of the transcript.

7      THE COURT: All right.  Mr. Bechtel?

8      MR. BECHTEL: Do you have any idea when the transcript

9 is coming?

03:58PM 10      THE COURT: Off the record.

11      (Discussion held off the record.)

12      THE COURT: We'll issue an order based on our off the

13 record conversation that briefing in the form of proposed

14 findings of fact and conclusion of law will be due within sixty

04:00PM 15 days of receipt of the transcript of this hearing, and we'll

16 ask the court reporter to expedite the hearing transcript to

17 make it the top priority of our civil list after the criminal

18 matters are addressed.  Thank you very much. We are adjourned.

19      (Bench trial concluded at 4:00 p.m.)

20

21

22

23

24

25

JA309

1          **CERTIFICATE OF OFFICIAL COURT REPORTER**

2

3      **Pennsylvania Game Commission vs. Proctor Heirs Trust**

4          **1:12-CV-1567-CCC**

5          **Bench Trial Proceedings**

6          **27 April 2021**

7

8      I, Wesley J. Armstrong, Federal Official Court

9  Reporter, in and for the United States District Court for

10  the Middle District of Pennsylvania, do hereby certify that

11  pursuant to Section 753, Title 28, United States Code that

12  the foregoing is a true and correct transcript of the

13  stenographically reported proceedings held in the

14  above-entitled matter and that the transcript page format is

15  in conformance with the regulations of the Judicial Conference

16  of the United States.

17

18          Dated this <u>10th</u> day of <u>May 2021</u>

19

20

21

22          **/s/ Wesley J. Armstrong**

23          _____

24          **Wesley J. Armstrong**

25          **Registered Merit Reporter**

JA310



March 30, 2017

W. Creigh Martson
Assistant Counsel
Pennsylvania Game Commission
2001 Elmerton Avenue
Harrisburg, PA 17110-9797

RE: Disclaimer – Information and Application – Warrant Title Work – Josiah Haines Warrant
(C-355)

Dear Mr. Martson:

   The information contained in these documents is confidential, privileged and only for the
information of the intended recipient and may not be used, published or redistributed without the
prior written consent of Chief Exploration & Development LLC ("Chief").

   Neither Chief nor Percheron LLC ("Percheron") makes any representations and gives no
warranties of whatever nature in respect to these documents, including but not limited to the
accuracy or completeness of any information, facts and/or opinions contained therein.

   Chief or Percheron, or their directors, employees and agents cannot be held liable for the
use of and reliance upon the opinions and findings in these documents.

Title Documents Enclosed:

   (1) Josiah Haines Warrant Title – C-355.

Sincerely,

_____
Mark A. Mudrick, Esq., RPL
Director – Title, Percheron
o. 304-842-9550
mark.mudrick@percheronllc.com

**JOINT EXHIBIT**

**1**

**Commonwealth of Penn. v. Thomas E. Proctor Heirs Trust et al.**

**No. 1:12-cv-1567**

**Surface Chain**
**Bradford County, PA**
**Leroy Township (22)**
**Map 119, Parcel 11**
**Josiah Haines Warrant #659 "Trap"**
**407.75 Acres**

==(100%) The Commonwealth of Pennsylvania==

↑

DB 342/376       *General Warranty
D: 12/20/1920    *Grant, bargain, sell and convey that certain tract or piece of land situate, lying and being in the Townships
R: 4/29/1921      of Leroy and Barclay containing in all 7492.9 acres.       Being comprised of the whole or portions of the
                  folowings warrants, viz, No. 10, Tract of land surveyed in pusuance of warrant dated Jan. 22, 1793
                  granted to Josiah Haines for which Letters were granted to John Brodhead, dated June 27, 1794
                  enrolled at Harrisburg in Patent Book P, Vol. 21, page 326.

                  P/R: DB 251/520; DB 300/401
                  This conveyance is subject to all the minerals, coal, oil, gas or petroleum found now or hereafter on, or
                  under the surface or any or all of the lands described in each of the above mentioned part or divisions
                  together with the right and privilege of ingress, egress and regress upon said land for the purpose
                  of prospecting for, or developing, working or removing the same, as fully as said minerals and mineral rights
                  were excepted and reserved in deed dated October 27, 1894, form Thomas E. Proctor et al to the Union Tanning
                  Company, recorded in the office for recording deeds in Bradford County in deed book Vol. 205, page 436.
                  Also subject to all the reservations, exceptions, covenants and stipulations contained in DB 251 page 520.

Central Pennsylvania Lumber Company, a corporation created and existing under the laws of the
State of Pennsylvania

(100%) Central Pennsylvania Lumber Company, a corporation organized and existing under the laws of the
State of Pennsylvania

↑

DB 300/401       *No Warranty
D: 12/6/1910     *Grant, remise, release and quit claim all their right, title, interest and estate of, in, and to all those 45
R: 2/4/1911       certain pieces, parcels or lots of land situate in the County of Bradford.....as follows: 24. Haines, Josiah
                  Leroy Township, 432 Acres

                  P/R: Conveyed by W.F. Waters, Treasurer of Bradford County, to Calvin H. McCauley, Jr. by deed
                  dated 6/8/1908
                  *No O&G Reservation
                  **Note: A quit-claim deed from Elk Tanning Company (successor in a merger with Union Tanning
                  Company) to Central Pennsylvania Lumber was recorded in DB 355/165 - D: 12/30/1924 | R: 2/17/1925
                  releasing and quit-claiming all the right, title, interest and estate of, in and to certain tracts, including
                  Josiah Haines 410 acres (subject Warrant).  It is unclear why this deed was made.

Calvin H. McCauley, Jr. and Florence M., his wife

↑

(100%) Calvin H. McCauley, Jr.

↑

TD 7/185         *A.E. Blackwell, Deputy Treasurer of Bradford County acknowledged a deed to Calvin H. McCauley, Jr.
D: 6/8/1908       dated June 8, 1908 for 410 acres of unseated land in Leroy Township assessed in the Warrantee name of
R: 12/17/1908     Josiah Haines

                  *Per recital in DB 300/401 dated 12/6/1910, W.F. Waters, Treasurer of Bradford County conveyed 45
                  tracts of land, including the subject Josiah Haines Warrant, by deed dated 6/8/1908, which was
                  acknowledged in open court 12/17/1908.  This deed could not be found of record.
                  **Note: It is believed that this deed will wash title and prior reservation of the coal, oil, and gas by
                  Thomas E. Proctor and Jonathan A. Hill in DB 205/436, as no separate assessment of the coal, oil, and gas
                  was found of record.

W.F. Waters, Treasurer of Bradford County

↑

(100%) Central Pennsylvania Lumber Company, a corporation organized and existing under the laws of the
State of Pennsylvania

↑

DB 251/520       *General Warranty
D: 5/5/1903      *Grant, bargain, sell, alien, release, convey and confirm all those certain.....parcels of land situate.....
R: 6/11/1903      Bradford County.....Josiah Haines 410.50 acres.....containing 16,350.30 acres of land more or less situate in

PGAP 01363


JA312

Barclay, Leroy and Overton Townships
*Reserving and excepting nevertheless unto the party of the first part, its successors and assigns all of
the hemlock bark, rock oak bark and chestnut oak bark upon said lands, timber and trees, with the rights
of ingress, egress and regress for the purpose of cutting, peeling, curring, piling, sorting and removing
said bark in the usual and ordinary manner at any and all times within the period of 25 years from the
date hereof.....
P/R: DB 205/436

> *Subject to all the exceptions, reservations, covenants, stipulations, agreements and conditions contained
> in the recent deeds hereinbefore recited.....

Union Tanning Company, a corporation organized and existing under the laws of the State of Pennsylvania

↑

(100%) Union Tanning Company, a corporation organized under the laws of the State of Pennsylvania

DB 205/436   *General Warranty
D: 10/27/1894   *Grant, bargain, sell, alien, enfeoff, release, convey and confirm all those certain tracts or parcels of land
R: 1/23/1895   being Warrants or parts of Warrants lying contiguous to each other situate in the County of Bradford.....
another situate in Leroy Township surveyed to Josiah Haines containing 410.5 acres.....comprising in all
38 tracts of land and the hemlock bark from four other tracts containing 14,200 acres be the same more or
less
**Note: The above noted hemlock bark from "four other tracts" does not pertain to the subject Josiah
Haines Warrant.
P/R: DB 197/270

> *And the same grantors herein Thomas E. Proctor and Jonathan A. Hill hereby expressly reserve, and
> save to themselves, their heirs and assigns, all the minerals, coal, oil, gas, or petroleum found now or
> hereafter, on or under the surface of any or all of the lands described in each of the above mentioned parts
> or division, and conveyed by this Indenture, together with the right and privilege of ingress, egress, and
> regress upon said lands for the purpose of operating or developing, working, or removing the same.

Thomas E. Proctor and Emma H., his wife, and Jonathan A. Hill and Lucy M., his wife

↑                                                    ↑

(1/2) Thomas E. Proctor                              (1/2) Jonathan A. Hill

DB 197/270   *No Warranty
D: 6/5/1893   *Whereas on the 20 day of April, 1893 at a meeting of the Board of Directors of the Schrader Mining and
R: 7/6/1893   Manufacturing Company in compliance with a resolution of the holders of a majority of the stock of said
company requesting a sale of the real estate of said company passed at a stockholder meeting duly
convened for the purpose and evidenced afterwards by the written signature of such stockholders to such
request and consent it was resolved.  That all the interest, estate, fee and title of every kind and nature
of the Schrader Mining and Manufacturing Company in all of the lands, real estate, mine or mines owned
by said company, subject to the rights and property of Proctor and Hill the Assignee and then owned by
a certain contract dated the 27 day of May, 1867 (DB 81/284 R: 8/29/1867) between the said company
and the Towanda Tanning Company for the sale of the Hemlock Bark upon the trees standing upon said
lands, be sold.....to the highest bidder
*Grant, bargain, sell, alien, release and confirm all the following lots, tracts, piece or parcels of land
described as follows: All those certain 45 several tracts or parcels of land situate and lying contiguous
to each other.....in the County of Bradford.....being in the names of the warrantees hereinafter mentioned
and specified.....another called Trap surveyed on Warrant to Josiah Haines.....excepting and
reserving from the tracts mentioned such tracts, lots, pieces or parcels as have been sold by the former
owners thereof to various parties comprising in all 1,800 acres be the same more or less, the said tracts
herein conveyed containing together and in the whole about 15,000 acres of land be the same more or less
P/R: DB 74/34

> *No O&G Reservation

Schrader Mining and Manufacturing Company, a corporation organized under the laws of the State of
Pennsylvania

↑

(100%) Schrader Mining and Manufacturing Company

DB 85/188   *No Warranty
D: 3/2/1868   *Grant, bargain, sell, alien, enfeoff, release and confirm all those 45 several tracts of land described in
R: 5/18/1868   the said deed.....to Charles W. Beresford excepting as therein excepted and also excepting such parts
thereof and such rights and interests therein as have heretofore been sold and conveyed  by the trustees
of the said Schrader Land Company, also granting and conveying all coal, minerals, oils rights privileges,
and interest of whatsoever kind and nature reserved to or in anyway belonging to the said Schrader Land
Company being all the lands of the said Schrader Land Company

PCMP 0135

JA313

P/R: DB 74/34, DB 44/124, and DB 44/56
*No O&G Reservation

Charles F. Welles and William Reed, trustees of the Schrader Land Company

↑

(100%) William Reed and Charles F. Wells, Jr., Trustees

DB 74/34
D: 1/3/1866
R: 1/25/1866

*No Warranty
*Whereas Charles W. Beresford by Deed dated the 21 day of April, 1855.....DB 44/124 granted and
conveyed unto the said parties of the first part.....45 several tracts or parcels of land situate and lying
contiguous to each other.....in said Bradford County (except the part of said tracts previously sold.....) in
Trust.....and whereas the said parties of the first part hereto on the twentieth day of December.....tendered
in writing their resignation as Trustees.....and at the request of the said "The Schraeder Land Company"
to transfer over any title which may be vested in them.....and where at a meeting.....held the twenty first
day of December last part it was resolved that the resignation of said Trustees.....be accepted.....and the
said parties of the second part hereto were unanimously chosen and elected Trustees
*Grant, bargain, sell, alien, enfeoff, release and confirm all the estate, right, title, interest, property,
claim.....whatsoever of them.....in and to all the said real estate belonging to the said "The Schraeder Land
Company" situate in said Bradford County and known as the Carbon Creek Coal Lands of "The Schraeder
Land Company".....to contain about 15,000 acres - also the reserved mineral rights in all lots or parcels of
ground sold heretofore by the said parties of the first part hereto and not otherwise disposed of.....
P/R: DB 44/124
*No O&G Reservation

Joseph Oat, Conrad S. Grove, and S. Wilmer Cannell, Trustees

↑

(100%) Joseph Oat, Conrad S. Grove, and Simon Wilmer Cannell, Trustees

DB 44/124
D: 4/21/1855
R: 5/23/1855

*No Warranty
*Whereas Edward M. Davis and others by a certain indenture bearing date the day next before the day of
the date of these presents did grant and convey unto the said Charles W. Beresford his heirs and assigns
all those certain 45 several tracts or parcels of land situate and lying contiguous to each other.....in the
County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names,
Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called "Trap"
surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in
the whole containing 18,570 acres and 19 perches and allowance of 6% for roads
*Grant, bargain, sell, release and confirm the above mentioned 45 several tracts or parcels of land
*Excepting nevertheless and always reserving out of and from the hereby granted premises such parts
and portions thereof as are excepted and reserved in and by a certain indenture made between Charles
Barclay by his Attorney in fact Samuel Rhoads of the one part and Edward Overton, Edward M. Davis and
John Ely of the other part.....recorded in Bradford County.....in DB 39/481
P/R: DB 44/56
**Note: Per Article 7 attached in the subject deed, Joseph Oat, Conrad S. Grove, and Simon Wilmer
Cannell, Trustees, shall be the first Trustees of the Schraeder Land Company
*No O&G Reservation

(100%) Charles W. Beresford

↑

DB 44/56
D: 4/20/1855
R: 5/12/1855

*General Warranty
*Grant, bargain, sell, release and confirm all those certain 45 several tracts or parcels of land situate
and lying contiguous to each other.....in the County of Bradford (formerly in the
Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities
hereinafter mentioned and specified that is to say.....Another called "Trap" surveyed on Warrant to
Josiah Haines containing 407 3/4 acres (subject warrant).....together and in the whole containing
18,570 acres and 19 perches and allowance of 6% for roads
*Excepting nevertheless and always reserving out of and from the hereby granted premises such parts
and portions thereof as are excepted and reserved in and by the above recited indenture (DB 39/481)
P/R: DB 39/481
*No O&G Reservation

Edward M. Davis and Maria M., his wife, John Ely, George R. Oat and Elizabeth, his wife, Joseph Oat and Sarah, his wife,
Henry Lewis, Junior and Fanny H. his wife, J. Tunis Way and Ann Eliza, his wife, Benjamin W. Tingley and Elizabeth, his
wife, William P. Way and Amanda S. his wife, John T. Sharpless, M.D. Simon W. Cannell and Sarah W., his wife, John
Farnum and Elizabeth H., his wife, Peter Farnum and Caroline, his wife, Edward Lewis and Elizabeth J., his wife, Benjamin A.
Farnham and Lydia R., his wife, William S. Freeman, Caleb Jones and Mary A. his wife, Levi Dickson, George W. Grove
and Emma W., his wife, Charles Evans and Rachel S., his wife, Penrose Mather and Lydia S., his wife, Isaac R. Davis and

PCOP 013632

**JA314**

Lydia C., his wife, Thomas Beaver and Elizabeth, his wife, James Mott and Lucretia, his wife, Conrad S. Grove and Hannah C., his wife, Henry Jones and Mary A., his wife, James Jones and Mary Ann, his wife, Edward Overton and Eliza, his wife, Thomas J. Wierman and Emily V., his wife

^

*John Ely DB 42/491 - D: 1/3/1855 | R: 1/29/1855 to Henry Jones
*Caleb Jones and Mary A. Jones, his wife DB 43/90 - D: 1/17/1855 | R: 2/8/1855 to John Ely
*Caleb Jones and Mary A. Jones, his wife DB 42/489 - D: 1/2/1855 | R: 1/29/1855 to John Ely
*Francis N. Buck and Jane E., his wife DB 42/258 - D: 12/14/1854 | 12/18/1854 to Caleb Jones
*Francis N. Buck and Jane E., his wife DB 42/256 - D: 12/14/1854 | 12/18/1854 to Caleb Jones
*Edward M. Davis and Maria M., his wife DB 41/139 - D: 4/27/1854 | R: 5/1/1854 to Francis N. Buck
*Edward M. Davis and Maria M., his wife DB 41/140 - D: 4/27/1854 | R: 5/1/1854 to Francis N. Buck
*Edward M. Davis and Maria M., his wife DB 41/142 - D: 4/27/1854 | R: 5/1/1854 to Levi Dickson
*Edward M. Davis and Maria M., his wife DB 41/143 - D: 4/27/1854 | R: 5/1/1854 to Edward Lewis
*Isaac R. Davis and Lydia C., his wife DB 42/500 - D: 1/27/1855 | R: 1/31/1855 to Edward M. Davis
*Edward M. Davis and Maria M., his wife DB 41/144 - D: 4/27/1854 | R: 5/1/1854 to Isaac R. Davis
*Edward M. Davis and Maria M., his wife DB 41/145 - D: 4/27/1854 | R: 5/1/1854 to Isaac R. Davis
*Edward M. Davis and Maria M., his wife DB 42/148 - D: 10/6/1854 | R: 10/12/1854 to Edward Overton
*John Tucker and Louisa M., his wife DB 42/147 - D: 9/13/1854 | R: 9/13/1854 to Edward M. Davis
*Edward M. Davis and Maria M., his wife DB 41/146 - D: 4/27/1854 | R: 5/1/1854 to John Tucker
*Edward M. Davis and Maria M., his wife DB 41/148 - D: 4/27/1854 | R: 5/1/1854 to Simon Wilmer Cannell
*Edward M. Davis and Maria M., his wife DB 41/149 - D: 4/27/1854 | R: 5/1/1854 to Caleb Jones
*Edward M. Davis and Maria M., his wife DB 41/150 - D: 4/27/1854 | R: 5/1/1854 to Henry Lewis, Jr.
*Daniel L. Miller, Junior and Anna R., his wife DB 43/463 - D: 3/28/1855 | R: 5/4/1855 to George W. Grove
*Benjamin Rush Plumly and Rebecca, his wife DB 41/445 - D: 8/1/1854 | R: 8/9/1854 to Daniel L. Miller, Jr.
*Edward M. Davis and Maria M., his wife DB 41/151 - D: 4/26/1854 | R: 5/1/1854 to Benjamin Rush Plumly
*Edward M. Davis and Maria M., his wife DB 41/259 - D: 4/26/1854 | R: 5/31/1854 to Penrose Mather
*Edward M. Davis and Maria M., his wife DB 41/260 - D: 4/26/1854 | R: 5/31/1854 to William P. Way
*Edward M. Davis and Maria M., his wife DB 41/262 - D: 4/26/1854 | R: 5/31/1854 to George R. Oat
*Edward M. Davis and Maria M., his wife DB 42/486 - D: 1/4/1855 | R: 1/29/1855 to Thomas J. Wierman
*Edward M. Davis and Maria M., his wife DB 42/487 - D: 1/4/1855 | R: 1/29/1855 to James Mott
*Edward Overton and Eliza, his wife DB 41/131 - D: 4/26/1854 | R: 5/1/1854 to Jonathan T. Sharpless (Corr. Deed from Edward Overton and Eliza, his wife, to John T. Sharpless was recorded in DB 41/479 - D: 9/19/1854 | R: 9/21/1854 to correct the name of the Grantee)
*David B. Birney and Anna B., his wife DB 43/371 - D: 3/22/1855 | R: 4/3/1855 to William S. Freeman
*Edward Overton and Eliza, his wife DB 41/130 - D: 4/26/1854 | R: 5/1/1854 to David B. Birney
*Edward Overton and Eliza, his wife DB 41/128 - D: 4/26/1854 | R: 5/1/1854 to Thomas Beaver
*Edward Overton and Eliza, his wife DB 41/127 - D: 4/26/1854 | R: 5/1/1854 to Benjamin W. Tingley
*Edward Overton and Eliza, his wife DB 41/125 - D: 4/26/1854 | R: 5/1/1854 to J. Tunis Way
*Edward Overton and Eliza, his wife DB 42/146 - D: 10/6/1854 | R: 10/12/1854 to Joseph Oat
*John Ely and Rebecca R., his wife DB 41/133 - D: 4/26/1854 | R: 5/1/1854 to Benjamin A. Farnham
*John Ely and Rebecca R., his wife DB 41/134 - D: 4/26/1854 | R: 5/1/1854 to Charles Evans
*John Ely and Rebecca R., his wife DB 41/136 - D: 4/26/1854 | R: 5/1/1854 to Peter Farnum
*Thomas S. Webb DB 43/87 - D: 12/15/185- | R: 2/7/1855 to Conrad S. Grover        *12/15/1854
*John Ely and Rebecca R., his wife DB 41/137 - D: 4/26/1854 | R: 5/1/1854 to Thomas S. Webb
*John Ely and Rebecca R., his wife DB 41/138 - D: 4/26/1854 | R: 5/1/1854 to John Farnum
*John Ely DB 43/92 - D: 1/17/1855 | R: 2/8/1855 to James Jones

See Deeds      *General Warranty
Above          *Grant…..undivided 1/40…..in all those 51 tracts…..known as the "Barclay Coal Lands" situate in the
               townships of Overton, Franklin, and Leroy (containing 20,000 acres more or less)
               P/R: DB 39/481
               **Note: DB 41/136 and DB 41/131 contain an incorrect reference to the prior deed (DB 39/418 should
               be 39/481).  The prior deed reference in DB 43/87 is also incorrect (DB 41/146 should be DB 41/147).
               *No O&G Reservation
               **Note: The following DB/PGs contain the following exception:
               DB 41/138, DB 41/137, DB 41/134, DB 41/133, DB 41/125, DB 41/127, DB 41/128, DB 41/130, DB 41/131,
               DB 41/151, DB 41/150, DB 41/149, DB 41/148, DB 41/146, DB 41/145, DB 41/144, DB 41/143, DB 41/142,
               DB 41/140, DB 41/139, DB 43/371
               Except always as in the above recited Indenture is excepted in regard to some small parts or parcels of
               some of the tracts which had previously been sold and granted out of which all coal and other minerals
               were reserved to the said Barclay and his grantees

(1/2) Edward Overton and (1/4) Edward M. Davis and (1/4) John Ely

DB 39/481      *General Warranty

PCBP 0136

JA315

D: 10/5/1853
R: 10/10/1853

*Grant, bargain and sell, alien, enfeoff, release and confirm all and every of those 51 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called Trap surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in whole containing 20,986 acres and 19 perches and allowance of 6% for roads

*Except always out of this present grant all such small parts and parcels of the said tracts or of same of them as have heretofore been granted to other persons which so far as recollected and known are as follows that is to say - two pieces or parcels of land parts of Milton one of them containing 113 acres and 113 perches granted to Henry Gatiss and the other containing 106 acrs and 43 perches granted to Henry Waggot, one piece or parcel part of Aaronsburg containing 86 acres and 23 perches granted to David Allen, one piece or parcel part of Baltimore containing 25 acres and 68 perches granted to Matthew Mott, two pieces or parcels parts of Oxford one of them containing 132 acres and 144 perches granted to James Cooper and the other containing 112 acres and 49 perches granted to Henry Knowles and two pieces or parcels of ground containing (blank) granted to David White and others Trustees for the purposes of a School House and Burial Ground

**Note: The above noted exceptions do not pertain to the subject Josiah Haines Warrant.

P/R: P 21/319 - 332 and P 22/112 - 123 granted to Daniel Brodhead in fee, who by indenture dated 7/5/1794 recorded in DB 3/118 (Luzerne County) granted and conveyed to the said Thomas Park in fee, who by indenture dated 1/10/1795 recorded in DB 3/450 (Luzerne County) granted and conveyed the same tracts unto Robert Barclay of London in fee, who departed this life having first made and published his LW&T in writing which after his decease was duly proved on 12/3/1830 and 6/29/1831 (London) and of which LW&T and probate (exemplified) was produced to be recorded in Bradford County whereby the said testator gave and devised subject lands to his son, Charles Barclay

| *No O&G Reservation |

(100%) Charles Barclay (acting by Samuel Rhoads, his Attorney in fact)          *POA - DB 5/243 - D: 10/4/1836 | R: 5/14/1838

↑

(100%) Charles Barclay

↑

WB 3/150
D: 8/5/1826
P: 12/6/1830
R: 1/14/1865

DOD Unknown
Charles Barclay, son
*Codicils dated 8/21/1827, 8/24/1827, 8/12/1828, 8/21/1828, and 9/2/1930

↑

(100%) Robert Barclay

↑

DB 3/450
D: 1/10/1795
R: 8/17/1795
Luzerne County
DB 45/394
D: 1/10/1795
R: 1/7/1856
Bradford County

*General Warranty
*Grant, bargain, sell, alien, enfeoff, release and confirm 51 several tracts or parcels of land situate, lying and being in the Counties of Northumberton and Luzerne in the Commonwealth of Pennsylvania..... hereinafter described....."Trap" containing 407 3/4 acres.....which said several and respective 51 tracts or parcels of land containing together and in the whole 20,986 acres and 19 perches of land be the same more or less
P/R: DB 3/118
| *No O&G Reservation |

↑

(100%) Thomas Park

↑

DB 3/118
D: 7/5/1794
R: 8/18/1794
Luzerne County

*General Warranty
*Grant, bargain and sell, alien, enfeoff, release and confirm 51 tracts or parcels of land in the Counties of Northumberton and Luzerne in the Commonwealth of Pennsylvania.....which the said Daniel Brodhead hath lately obtained Patents to....."Trap" containing 407 3/4 acres
P/R: Patent to Daniel Brodhead
| *No O&G Reservation |

↑

(100%) Daniel Brodhead

↑

P 21/326
D: 6/27/1794
R: 6/28/1794

*Northumberland County Warrant Re  *Acres Returned: 407 3/4, Nam *Date of Warrant:  1/22/1793
*Date of Return: 6/26/1794          *Patent Recorded: :P21-326
*Patentee: Daniel Brodhead                              *Survey Recorded: : C-355
*Per Patent document, the Warrant dated 1/22/1793 was granted to Josiah Haines.  However, the claim was conveyed to Daniel Brodhead upon the death of Josiah Haines.
**Note: Bradford County was established on February 21, 1810.  It was created from parts of Luzerne and Lycoming Counties.  Luzerne County was created from part of Northumberland County on September 25, 1786.  Lycoming County was also created from part of Northumberland County on April 13, 1795.

PCDP 013855

JA316

The Commonwealth of Pennsylvania

Warrant #659 dated 1/22/1793 issued to Josiah Haines in Northumberland County (Now Bradford County)

PCCP 013632

JA317

**O&G Chain**
**Bradford County, PA**
**Leroy Township (22)**
**Map 119, Parcel 11**
**Josiah Haines Warrant #659 "Trap"**
**407.75 Acres**

<mark>(100%) The Commonwealth of Pennsylvania</mark>

⋏

| | |
|---|---|
| DB 342/376<br>D: 12/20/1920<br>R: 4/29/1921 | *General Warranty<br>*Grant, bargain, sell and convey that certain tract or piece of land situate, lying and being in the Townships of Leroy and Barclay containing in all 7492.9 acres.        Being comprised of the whole or portions of the folowings warrants, viz, No. 10, Tract of land surveyed in pusuance of warrant dated Jan. 22, 1793 granted to Josiah Haines for which Letters were granted to John Brodhead, dated June 27, 1794 enrolled at Harrisburg in Patent Book P, Vol. 21, page 326. |

P/R: DB 251/520; DB 300/401

This conveyance is subject to all the minerals, coal, oil, gas or petroleum found now or hereafter on, or under the surface or any or all of the lands described in each of the above mentioned part or divisions together with the right and privilege of ingress, egress and regress upon said land for the purpose of prospecting for, or developing, working or removing the same, as fully as said minerals and mineral rights were excepted and reserved in deed dated October 27, 1894, form Thomas E. Proctor et al to the Union Tanning Company, recorded in the office for recording deeds in Bradford County in deed book Vol. 205, page 436. Also subject to all the reservations, exceptions, covenants and stipulations contained in DB 251 page 520.

Central Pennsylvania Lumber Company, a corporation created and existing under the laws of the State of Pennsylvania

⋏

(100%) Central Pennsylvania Lumber Company, a corporation organized and existing under the laws of the State of Pennsylvania

⋏

| | |
|---|---|
| DB 300/401<br>D: 12/6/1910<br>R: 2/4/1911 | *No Warranty<br>*Grant, remise, release and quit claim all their right, title, interest and estate of, in, and to all those 45 certain pieces, parcels or lots of land situate in the County of Bradford…..as follows: 24. Haines, Josiah Leroy Township, 432 Acres |

P/R: Conveyed by W.F. Waters, Treasurer of Bradford County, to Calvin H. McCauley, Jr. by deed dated 6/8/1908

*No O&G Reservation

**Note: A quit-claim deed from Elk Tanning Company (successor in a merger with Union Tanning Company) to Central Pennsylvania Lumber was recorded in DB 355/165 - D: 12/30/1924 | R: 2/17/1925 releasing and quit-claiming all the right, title, interest and estate of, in and to certain tracts, including Josiah Haines 410 acres (subject Warrant).  It is unclear why this deed was made.

Calvin H. McCauley, Jr. and Florence M., his wife

⋏

(100%) Calvin H. McCauley, Jr.

⋏

| | |
|---|---|
| TD 7/185<br>D: 6/8/1908<br>R: 12/17/1908 | *A.E. Blackwell, Deputy Treasurer of Bradford County acknowledged a deed to Calvin H. McCauley, Jr. dated June 8, 1908 for 410 acres of unseated land in Leroy Township assessed in the Warrantee name of Josiah Haines |

*Per recital in DB 300/401 dated 12/6/1910, W.F. Waters, Treasurer of Bradford County conveyed 45 tracts of land, including the subject Josiah Haines Warrant, by deed dated 6/8/1908, which was acknowledged in open court 12/17/1908.  This deed could not be found of record.
**Note: It is believed that this deed will wash title and prior reservation of the coal, oil, and gas by Thomas E. Proctor and Jonathan A. Hill in DB 205/436, as no separate assessment of the coal, oil, and gas was found of record.

W.F. Waters, Treasurer of Bradford County

⋏

(100%) Central Pennsylvania Lumber Company, a corporation organized and existing under the laws of the State of Pennsylvania

⋏

| | |
|---|---|
| DB 251/520<br>D: 5/5/1903<br>R: 6/11/1903 | *General Warranty<br>*Grant, bargain, sell, alien, release, convey and confirm all those certain…..parcels of land situate…..<br>Bradford County…..Josiah Haines 410.50 acres…..containing 16,350.30 acres of land more or less situate in |

PGAP 01363

**JA318**

Barclay, Leroy and Overton Townships

*Reserving and excepting nevertheless unto the party of the first part, its successors and assigns all of the hemlock bark, rock oak bark and chestnut oak bark upon said lands, timber and trees, with the rights of ingress, egress and regress for the purpose of cutting, peeling, curring, piling, sorting and removing said bark in the usual and ordinary manner at any and all times within the period of 25 years from the date hereof.....

P/R: DB 205/436

> *Subject to all the exceptions, reservations, covenants, stipulations, agreements and conditions contained in the recent deeds hereinbefore recited.....

Union Tanning Company, a corporation organized and existing under the laws of the State of Pennsylvania

⌃

(100%) Union Tanning Company, a corporation organized under the laws of the State of Pennsylvania

DB 205/436
D: 10/27/1894
R: 1/23/1895

*General Warranty

*Grant, bargain, sell, alien, enfeoff, release, convey and confirm all those certain tracts or parcels of land being Warrants or parts of Warrants lying contiguous to each other situate in the County of Bradford..... another situate in Leroy Township surveyed to Josiah Haines containing 410.5 acres.....comprising in all 38 tracts of land and the hemlock bark from four other tracts containing 14,200 acres be the same more or less

**Note: The above noted hemlock bark from "four other tracts" does not pertain to the subject Josiah Haines Warrant.

P/R: DB 197/270

> *And the same grantors herein Thomas E. Proctor and Jonathan A. Hill hereby expressly reserve, and save to themselves, their heirs and assigns, all the minerals, coal, oil, gas, or petroleum found now or hereafter, on or under the surface of any or all of the lands described in each of the above mentioned parts or division, and conveyed by this Indenture, together with the right and privilege of ingress, egress, and regress upon said lands for the purpose of operating or developing, working, or removing the same.

Thomas E. Proctor and Emma H., his wife, and Jonathan A. Hill and Lucy M., his wife

⌃                                                         ⌃

(1/2) Thomas E. Proctor                         (1/2) Jonathan A. Hill

DB 197/270
D: 6/5/1893
R: 7/6/1893

*No Warranty

*Whereas on the 20 day of April, 1893 at a meeting of the Board of Directors of the Schrader Mining and Manufacturing Company in compliance with a resolution of the holders of a majority of the stock of said company requesting a sale of the real estate of said company passed at a stockholder meeting duly convened for the purpose and evidenced afterwards by the written signature of such stockholders to such request and consent it was resolved.  That all the interest, estate, fee and title of every kind and nature of the Schrader Mining and Manufacturing Company in all of the lands, real estate, mine or mines owned by said company, subject to the rights and property of Proctor and Hill the Assignee and then owned by a certain contract dated the 27 day of May, 1867 (DB 81/284 R: 8/29/1867) between the said company and the Towanda Tanning Company for the sale of the Hemlock Bark upon the trees standing upon said lands, be sold.....to the highest bidder

*Grant, bargain, sell, alien, release and confirm all the following lots, tracts, piece or parcels of land described as follows: All those certain 45 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford.....being in the names of the warrantees hereinafter mentioned and specified.....another called Trap surveyed on Warrant to Josiah Haines.....excepting and reserving from the tracts mentioned such tracts, lots, pieces or parcels as have been sold by the former owners thereof to various parties comprising in all 1,800 acres be the same more or less, the said tracts herein conveyed containing together and in the whole about 15,000 acres of land be the same more or less

P/R: DB 74/34

> *No O&G Reservation

Schrader Mining and Manufacturing Company, a corporation organized under the laws of the State of Pennsylvania

⌃

(100%) Schrader Mining and Manufacturing Company

DB 85/188
D: 3/2/1868
R: 5/18/1868

*No Warranty

*Grant, bargain, sell, alien, enfeoff, release and confirm all those 45 several tracts of land described in the said deed.....to Charles W. Beresford excepting as therein excepted and also excepting such parts thereof and such rights and interests therein as have heretofore been sold and conveyed  by the trustees of the said Schrader Land Company, also granting and conveying all coal, minerals, oils rights privileges, and interest of whatsoever kind and nature reserved to or in anyway belonging to the said Schrader Land Company being all the lands of the said Schrader Land Company

**JA319**

PC-3P 0136.2

P/R: DB 74/34, DB 44/124, and DB 44/56
*No O&G Reservation

Charles F. Welles and William Reed, trustees of the Schrader Land Company

(100%) William Reed and Charles F. Wells, Jr., Trustees

DB 74/34
D: 1/3/1866
R: 1/25/1866

*No Warranty
*Whereas Charles W. Beresford by Deed dated the 21 day of April, 1855.....DB 44/124 granted and conveyed unto the said parties of the first part.....45 several tracts or parcels of land situate and lying contiguous to each other.....in said Bradford County (except the part of said tracts previously sold.....) in Trust.....and whereas the said parties of the first part hereto on the twentieth day of December.....tendered in writing their resignation as Trustees.....and at the request of the said "The Schraeder Land Company" to transfer over any title which may be vested in them.....and where at a meeting.....held the twenty first day of December last part it was resolved that the resignation of said Trustees.....be accepted.....and the said parties of the second part hereto were unanimously chosen and elected Trustees
*Grant, bargain, sell, alien, enfeoff, release and confirm all the estate, right, title, interest, property, claim.....whatsoever of them.....in and to all the said real estate belonging to the said "The Schraeder Land Company" situate in said Bradford County and known as the Carbon Creek Coal Lands of "The Schraeder Land Company".....to contain about 15,000 acres - also the reserved mineral rights in all lots or parcels of ground sold heretofore by the said parties of the first part hereto and not otherwise disposed of.....
P/R: DB 44/124
*No O&G Reservation

Joseph Oat, Conrad S. Grove, and S. Wilmer Cannell, Trustees

(100%) Joseph Oat, Conrad S. Grove, and Simon Wilmer Cannell, Trustees

DB 44/124
D: 4/21/1855
R: 5/23/1855

*No Warranty
*Whereas Edward M. Davis and others by a certain indenture bearing date the day next before the day of the date of these presents did grant and convey unto the said Charles W. Beresford his heirs and assigns all those certain 45 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called "Trap" surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in the whole containing 18,570 acres and 19 perches and allowance of 6% for roads
*Grant, bargain, sell, release and confirm the above mentioned 45 several tracts or parcels of land
*Excepting nevertheless and always reserving out of and from the hereby granted premises such parts and portions thereof as are excepted and reserved in and by a certain indenture made between Charles Barclay by his Attorney in fact Samuel Rhoads of the one part and Edward Overton, Edward M. Davis and John Ely of the other part.....recorded in Bradford County.....in DB 39/481
P/R: DB 44/56
**Note: Per Article 7 attached in the subject deed, Joseph Oat, Conrad S. Grove, and Simon Wilmer Cannell, Trustees, shall be the first Trustees of the Schraeder Land Company
*No O&G Reservation

(100%) Charles W. Beresford

DB 44/56
D: 4/20/1855
R: 5/12/1855

*General Warranty
*Grant, bargain, sell, release and confirm all those certain 45 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called "Trap" surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in the whole containing 18,570 acres and 19 perches and allowance of 6% for roads
*Excepting nevertheless and always reserving out of and from the hereby granted premises such parts and portions thereof as are excepted and reserved in and by the above recited indenture (DB 39/481)
P/R: DB 39/481
*No O&G Reservation

Edward M. Davis and Maria M., his wife, John Ely, George R. Oat and Elizabeth, his wife, Joseph Oat and Sarah, his wife, Henry Lewis, Junior and Fanny H. his wife, J. Tunis Way and Ann Eliza, his wife, Benjamin W. Tingley and Elizabeth, his wife, William P. Way and Amanda S. his wife, John T. Sharpless, M.D. Simon W. Cannell and Sarah W., his wife, John Farnum and Elizabeth H., his wife, Peter Farnum and Caroline, his wife, Edward Lewis and Elizabeth J., his wife, Benjamin A. Farnham and Lydia R., his wife, William S. Freeman, Caleb Jones and Mary A. his wife, Levi Dickson, George W. Grove and Emma W., his wife, Charles Evans and Rachel S., his wife, Penrose Mather and Lydia S., his wife, Isaac R. Davis and

PCOP 013802

JA320

Lydia C., his wife, Thomas Beaver and Elizabeth, his wife, James Mott and Lucretia, his wife, Conrad S. Grove and Hannah C., his wife, Henry Jones and Mary A., his wife, James Jones and Mary Ann, his wife, Edward Overton and Eliza, his wife, Thomas J. Wierman and Emily V., his wife

\^

*John Ely DB 42/491 - D: 1/3/1855 | R: 1/29/1855 to Henry Jones

*Caleb Jones and Mary A. Jones, his wife DB 43/90 - D: 1/17/1855 | R: 2/8/1855 to John Ely

*Caleb Jones and Mary A. Jones, his wife DB 42/489 - D: 1/2/1855 | R: 1/29/1855 to John Ely

*Francis N. Buck and Jane E., his wife DB 42/258 - D: 12/14/1854 | 12/18/1854 to Caleb Jones

*Francis N. Buck and Jane E., his wife DB 42/256 - D: 12/14/1854 | 12/18/1854 to Caleb Jones

*Edward M. Davis and Maria M., his wife DB 41/139 - D: 4/27/1854 | R: 5/1/1854 to Francis N. Buck

*Edward M. Davis and Maria M., his wife DB 41/140 - D: 4/27/1854 | R: 5/1/1854 to Francis N. Buck

*Edward M. Davis and Maria M., his wife DB 41/142 - D: 4/27/1854 | R: 5/1/1854 to Levi Dickson

*Edward M. Davis and Maria M., his wife DB 41/143 - D: 4/27/1854 | R: 5/1/1854 to Edward Lewis

*Isaac R. Davis and Lydia C., his wife DB 42/500 - D: 1/27/1855 | R: 1/31/1855 to Edward M. Davis

*Edward M. Davis and Maria M., his wife DB 41/144 - D: 4/27/1854 | R: 5/1/1854 to Isaac R. Davis

*Edward M. Davis and Maria M., his wife DB 41/145 - D: 4/27/1854 | R: 5/1/1854 to Isaac R. Davis

*Edward M. Davis and Maria M., his wife DB 42/148 - D: 10/6/1854 | R: 10/12/1854 to Edward Overton

*John Tucker and Louisa M., his wife DB 42/147 - D: 9/13/1854 | R: 9/13/1854 to Edward M. Davis

*Edward M. Davis and Maria M., his wife DB 41/146 - D: 4/27/1854 | R: 5/1/1854 to John Tucker

*Edward M. Davis and Maria M., his wife DB 41/148 - D: 4/27/1854 | R: 5/1/1854 to Simon Wilmer Cannell

*Edward M. Davis and Maria M., his wife DB 41/149 - D: 4/27/1854 | R: 5/1/1854 to Caleb Jones

*Edward M. Davis and Maria M., his wife DB 41/150 - D: 4/27/1854 | R: 5/1/1854 to Henry Lewis, Jr.

*Daniel L. Miller, Junior and Anna R., his wife DB 43/463 - D: 3/28/1855 | R: 5/4/1855 to George W. Grove

*Benjamin Rush Plumly and Rebecca, his wife DB 41/445 - D: 8/1/1854 | R: 8/9/1854 to Daniel L. Miller, Jr.

*Edward M. Davis and Maria M., his wife DB 41/151 - D: 4/26/1854 | R: 5/1/1854 to Benjamin Rush Plumly

*Edward M. Davis and Maria M., his wife DB 41/259 - D: 4/26/1854 | R: 5/31/1854 to Penrose Mather

*Edward M. Davis and Maria M., his wife DB 41/260 - D: 4/26/1854 | R: 5/31/1854 to William P. Way

*Edward M. Davis and Maria M., his wife DB 41/262 - D: 4/26/1854 | R: 5/31/1854 to George R. Oat

*Edward M. Davis and Maria M., his wife DB 42/486 - D: 1/4/1855 | R: 1/29/1855 to Thomas J. Wierman

*Edward M. Davis and Maria M., his wife DB 42/487 - D: 1/4/1855 | R: 1/29/1855 to James Mott

*Edward Overton and Eliza, his wife DB 41/131 - D: 4/26/1854 | R: 5/1/1854 to Jonathan T. Sharpless (Corr. Deed from Edward Overton and Eliza, his wife, to John T. Sharpless was recorded in DB 41/479 - D: 9/19/1854 | R: 9/21/1854 to correct the name of the Grantee)

*David B. Birney and Anna B., his wife DB 43/371 - D: 3/22/1855 | R: 4/3/1855 to William S. Freeman

*Edward Overton and Eliza, his wife DB 41/130 - D: 4/26/1854 | R: 5/1/1854 to David B. Birney

*Edward Overton and Eliza, his wife DB 41/128 - D: 4/26/1854 | R: 5/1/1854 to Thomas Beaver

*Edward Overton and Eliza, his wife DB 41/127 - D: 4/26/1854 | R: 5/1/1854 to Benjamin W. Tingley

*Edward Overton and Eliza, his wife DB 41/125 - D: 4/26/1854 | R: 5/1/1854 to J. Tunis Way

*Edward Overton and Eliza, his wife DB 42/146 - D: 10/6/1854 | R: 10/12/1854 to Joseph Oat

*John Ely and Rebecca R., his wife DB 41/133 - D: 4/26/1854 | R: 5/1/1854 to Benjamin A. Farnham

*John Ely and Rebecca R., his wife DB 41/134 - D: 4/26/1854 | R: 5/1/1854 to Charles Evans

*John Ely and Rebecca R., his wife DB 41/136 - D: 4/26/1854 | R: 5/1/1854 to Peter Farnum

*Thomas S. Webb DB 43/87 - D: 12/15/185- | R: 2/7/1855 to Conrad S. Grover          *12/15/1854

*John Ely and Rebecca R., his wife DB 41/137 - D: 4/26/1854 | R: 5/1/1854 to Thomas S. Webb

*John Ely and Rebecca R., his wife DB 41/138 - D: 4/26/1854 | R: 5/1/1854 to John Farnum

*John Ely DB 43/92 - D: 1/17/1855 | R: 2/8/1855 to James Jones

See Deeds
Above

*General Warranty

*Grant.....undivided 1/40.....in all those 51 tracts.....known as the "Barclay Coal Lands" situate in the townships of Overton, Franklin, and Leroy (containing 20,000 acres more or less)

P/R: DB 39/481

**Note: DB 41/136 and DB 41/131 contain an incorrect reference to the prior deed (DB 39/418 should be DB 39/481).  The prior deed reference in DB 43/87 is also incorrect (DB 41/146 should be DB 41/147).

*No O&G Reservation

**Note: The following DB/PGs contain the following exception:

DB 41/138, DB 41/137, DB 41/134, DB 41/133, DB 41/125, DB 41/127, DB 41/128, DB 41/130, DB 41/131, DB 41/151, DB 41/150, DB 41/149, DB 41/148, DB 41/146, DB 41/145, DB 41/144, DB 41/143, DB 41/142, DB 41/140, DB 41/139, DB 43/371

Except always as in the above recited Indenture is excepted in regard to some small parts or parcels of some of the tracts which had previously been sold and granted out of which all coal and other minerals were reserved to the said Barclay and his grantees

(1/2) Edward Overton and (1/4) Edward M. Davis and (1/4) John Ely

DB 39/481          *General Warranty

**JA321**

PCAP 0136

D: 10/5/1853
R: 10/10/1853

*Grant, bargain and sell, alien, enfeoff, release and confirm all and every of those 51 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called Trap surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in whole containing 20,986 acres and 19 perches and allowance of 6% for roads

*Except always out of this present grant all such small parts and parcels of the said tracts or of same of them as have heretofore been granted to other persons which so far as recollected and known are as follows that is to say - two pieces or parcels of land parts of Milton one of them containing 113 acres and 113 perches granted to Henry Gatiss and the other containing 106 acrs and 43 perches granted to Henry Waggot, one piece or parcel part of Aaronsburg containing 86 acres and 23 perches granted to David Allen, one piece or parcel part of Baltimore containing 25 acres and 68 perches granted to Matthew Mott, two pieces or parcels parts of Oxford one of them containing 132 acres and 144 perches granted to James Cooper and the other containing 112 acres and 49 perches granted to Henry Knowles and two pieces or parcels of ground containing (blank) granted to David White and others Trustees for the purposes of a School House and Burial Ground

**Note: The above noted exceptions do not pertain to the subject Josiah Haines Warrant.

P/R: P 21/319 - 332 and P 22/112 - 123 granted to Daniel Brodhead in fee, who by indenture dated 7/5/1794 recorded in DB 3/118 (Luzerne County) granted and conveyed to the said Thomas Park in fee, who by indenture dated 1/10/1795 recorded in DB 3/450 (Luzerne County) granted and conveyed the same tracts unto Robert Barclay of London in fee, who departed this life having first made and published his LW&T in writing which after his decease was duly proved on 12/3/1830 and 6/29/1831 (London) and of which LW&T and probate (exemplified) was produced to be recorded in Bradford County whereby the said testator gave and devised subject lands to his son, Charles Barclay

*No O&G Reservation

(100%) Charles Barclay (acting by Samuel Rhoads, his Attorney in fact)        *POA - DB 5/243 - D: 10/4/1836 | R: 5/14/1838

(100%) Charles Barclay

WB 3/150
D: 8/5/1826
P: 12/6/1830
R: 1/14/1865

DOD Unknown
Charles Barclay, son
*Codicils dated 8/21/1827, 8/24/1827, 8/12/1828, 8/21/1828, and 9/2/1930

(100%) Robert Barclay

DB 3/450
D: 1/10/1795
R: 8/17/1795
Luzerne County
DB 45/394
D: 1/10/1795
R: 1/7/1856
Bradford County

*General Warranty
*Grant, bargain, sell, alien, enfeoff, release and confirm 51 several tracts or parcels of land situate, lying and being in the Counties of Northumberton and Luzerne in the Commonwealth of Pennsylvania.....hereinafter described....."Trap" containing 407 3/4 acres.....which said several and respective 51 tracts or parcels of land containing together and in the whole 20,986 acres and 19 perches of land be the same more or less
P/R: DB 3/118
*No O&G Reservation

(100%) Thomas Park

DB 3/118
D: 7/5/1794
R: 8/18/1794
Luzerne County

*General Warranty
*Grant, bargain, sell, alien, enfeoff, release and confirm 51 tracts or parcels of land in the Counties of Northumberton and Luzerne in the Commonwealth of Pennsylvania.....which the said Daniel Brodhead hath lately obtained Patents to....."Trap" containing 407 3/4 acres
P/R: Patent to Daniel Brodhead
*No O&G Reservation

(100%) Daniel Brodhead

P 21/326
D: 6/27/1794
R: 6/28/1794

*Northumberland County Warrant Re *Acres Returned: 407 3/4, Nam *Date of Warrant:  1/22/1793
*Date of Return: 6/26/1794        *Patent Recorded: :P21-326
*Patentee: Daniel Brodhead                        *Survey Recorded: : C-355
*Per Patent document, the Warrant dated 1/22/1793 was granted to Josiah Haines.  However, the claim was conveyed to Daniel Brodhead upon the death of Josiah Haines.
**Note: Bradford County was established on February 21, 1810.  It was created from parts of Luzerne and Lycoming Counties.  Luzerne County was created from part of Northumberland County on September 25, 1786.  Lycoming County was also created from part of Northumberland County on April 13, 1795.

PCOP 0138

JA322

The Commonwealth of Pennsylvania

Warrant #659 dated 1/22/1793 issued to Josiah Haines in Northumberland County (Now Bradford County)

PCCP 013932

JA323

**Lease Chain**
**Bradford County, PA**
**Leroy Township (22)**
**Map 119, Parcel 11**
**Josiah Haines Warrant #659 "Trap"**
**407.75 Acres**

*This lease was not carried forward per client directive.

Chief Exploration & Development LLC, Radler 2000 Limited Partnership, and Enerplus Resources (USA) Corporation

201419942
D: 10/1/2013
R: 9/4/2014

Memorandum of Restricted Surface Use Cooperative Agreement for Exercise of Production for Oil and Gas

*Parcel of land located in Leroy, Canton, Franklin and Overton Townships, Bradford County

*Consisting of a total of approximately 19,133 deeded acres, as more fully described on Exhibit A

*5 Year Term

**Note: A First Amendment adding amendment area comprising 449 acres (not subject Warrant location) was recorded in 201502035 on 1/22/2015 (document dated 10/31/2014).

**Note: A full adverse of The Commonwealth of Pennsylvania / Pennsylvania Game Commission was not completed per client directive. However, the Bradford County Landex Summary Index was briefly reviewed for any additional leases.

Pennsylvania Game Commission

*This lease was not carried forward per client directive, as it is under court order to be released.
Chesapeake Appalachia, L.L.C., an Oklahoma limited liability company

201304543
D: 1/24/2013
R: 3/14/2013

Memorandum of Oil and Gas Lease

*Townships of Leroy, Overton, Barclay, and Franklin

*21,617.32 Acres - See Exhibit A

*10 Year Term

*Exhibit A - Josiah Haines Warrant

*A Ratification was recorded in 201305018 (document dated 3/22/2013 but effective on 1/24/2013) on 3/22/2013 to include Tax Parcel Number 22-119.00-011

Citizens and Northern Bank, as Trustee, of the Trust for the Unknown Owners of Oil and Gas Interests, In Re: Jonathan A. Hill and Lucy M. Hill, h/w; OCD No. 7804-ORPHANS-2012

PGCP 013643

**JA324**

*This lease was not carried forward per client directive.

Lancaster Exploration and Development Company, LLC, a Michigan limited liability company

20120373
D: 12/23/2011
R: 1/6/2012

Oil and Gas Lease Extension Affidavit

*Except for the Richard A. & Margaret Beach oil and gas lease (Exhibit A), LEPC extended the primary term of the following Oil and Gas Leases....from 5 years to 10 years by timely sending the required consideration to extend such leases to each of the Lessors named below.

Exhibits:

a. 10/21/2009 - Richard A. Beach and Margaret Anne Beach, husband and wife, to Lancaster Exploration and Development Company, LLC - 27,849 acres - 5 year term        **Note: This lease was not extended.

b. 9/15/2006 - Brett P. Gillen and Katharine Arnoldy Gillen, husband and wife, to Lancaster Exploration and Development Company, LLC - 27,849 acres - 5 year term

c. 9/15/2006 - John P. Kellas and Nancy Gregg Kellas, husband and wife, to Lancaster Exploration and Development Company, LLC - 27,849 acres - 5 year term

d. 3/26/2007 - Judith R. Polonofsky, a married woman acting in her own right, to Lancaster Exploration and Development Company, LLC - 27,849 acres - 5 year term

e. 10/10/2006 - George H. Ruding, Jr. and Linda P. Ruding, husband and wife, to Lancaster Exploration and Development Company, LLC - 27,849 acres - 5 year term

f. 10/18/2006 - Margaret W. Ruding, a single woman, to Lancaster Exploration and Development Company, LLC - 27,849 acres - 5 year term

g. 10/30/2006 - Katheryn Ann Stoutenburg, a married woman acting in her own right, to Lancaster Exploration and Development Company, LLC - 27,849 acres - 5 year term

**Note: The leases above appear to cover lands in Sullivan and Bradford Counties. However, the original leases appear to have only been recorded in Sullivan County. The leases note that the intent is to cover all mineral interests in the State of Pennsylvania owned or claimed by Lessors as heirs of Jonathan A. Hill.

Brett P. Gillen and Katharine Arnoldy Gillen, husband and wife; John P. Kellas and Nancy Gregg Kellas, husband and wife; Judith R. Polonofsky, a married woman acting in her own right; George H. Ruding, Jr. and Linda P. Ruding, husband and wife; Margaret W. Ruding, a single woman; and Katheryn Ann Stoutenburg, a married woman acting in her own right

PGCP 013644

**JA325**

**Coal Chain**
**Bradford County, PA**
**Leroy Township (22)**
**Map 119, Parcel 11**
**Josiah Haines Warrant #659 "Trap"**
**407.75 Acres**

<mark>(100%) The Commonwealth of Pennsylvania</mark>

↑

| | |
|---|---|
| DB 342/376 | *General Warranty |
| D: 12/20/1920 | *Grant, bargain, sell and convey that certain tract or piece of land situate, lying and being in the Townships |
| R: 4/29/1921 | of Leroy and Barclay containing in all 7492.9 acres.        Being comprised of the whole or portions of the |
| | folowings warrants, viz, No. 10, Tract of land surveyed in pusuance of warrant dated Jan. 22, 1793 |
| | granted to Josiah Haines for which Letters were granted to John Brodhead, dated June 27, 1794 |
| | enrolled at Harrisburg in Patent Book P, Vol. 21, page 326. |

P/R: DB 251/520; DB 300/401

This conveyance is subject to all the minerals, coal, oil, gas or petroleum found now or hereafter on, or
under the surface or any or all of the lands described in each of the above mentioned part or divisions
together with the right and privilege of ingress, egress and regress upon said land for the purpose
of prospecting for, or developing, working or removing the same, as fully as said minerals and mineral rights
were excepted and reserved in deed dated October 27, 1894, form Thomas E. Proctor et al to the Union Tanning
Company, recorded in the office for recording deeds in Bradford County in deed book Vol. 205, page 436.
Also subject to all the reservations, exceptions, covenants and stipulations contained in DB 251 page 520.

Central Pennsylvania Lumber Company, a corporation created and existing under the laws of the
State of Pennsylvania

↑

(100%) Central Pennsylvania Lumber Company, a corporation organized and existing under the laws of the
State of Pennsylvania

↑

| | |
|---|---|
| DB 300/401 | *No Warranty |
| D: 12/6/1910 | *Grant, remise, release and quit claim all their right, title, interest and estate of, in, and to all those 45 |
| R: 2/4/1911 | certain pieces, parcels or lots of land situate in the County of Bradford…..as follows: 24. Haines, Josiah |
| | Leroy Township, 432 Acres |

P/R: Conveyed by W.F. Waters, Treasurer of Bradford County, to Calvin H. McCauley, Jr. by deed
dated 6/8/1908

*No O&G Reservation

**Note: A quit-claim deed from Elk Tanning Company (successor in a merger with Union Tanning
Company) to Central Pennsylvania Lumber was recorded in DB 355/165 - D: 12/30/1924 | R: 2/17/1925
releasing and quit-claiming all the right, title, interest and estate of, in and to certain tracts, including
Josiah Haines 410 acres (subject Warrant).  It is unclear why this deed was made.

Calvin H. McCauley, Jr. and Florence M., his wife

↑

(100%) Calvin H. McCauley, Jr.

↑

| | |
|---|---|
| TD 7/185 | *A.E. Blackwell, Deputy Treasurer of Bradford County acknowledged a deed to Calvin H. McCauley, Jr. |
| D: 6/8/1908 | dated June 8, 1908 for 410 acres of unseated land in Leroy Township assessed in the Warrantee name of |
| R: 12/17/1908 | Josiah Haines |

*Per recital in DB 300/401 dated 12/6/1910, W.F. Waters, Treasurer of Bradford County conveyed 45
tracts of land, including the subject Josiah Haines Warrant, by deed dated 6/8/1908, which was
acknowledged in open court 12/17/1908.  This deed could not be found of record.
**Note: It is believed that this deed will wash title and prior reservation of the coal, oil, and gas by
Thomas E. Proctor and Jonathan A. Hill in DB 205/436, as no separate assessment of the coal, oil, and gas
was found of record.

W.F. Waters, Treasurer of Bradford County

↑

(100%) Central Pennsylvania Lumber Company, a corporation organized and existing under the laws of the
State of Pennsylvania

↑

| | |
|---|---|
| DB 251/520 | *General Warranty |
| D: 5/5/1903 | *Grant, bargain, sell, alien, release, convey and confirm all those certain…..parcels of land situate….. |
| R: 6/11/1903 | Bradford County…..Josiah Haines 410.50 acres…..containing 16,350.30 acres of land more or less situate in |

PGA P 01364

**JA326**

Barclay, Leroy and Overton Townships
*Reserving and excepting nevertheless unto the party of the first part, its successors and assigns all of the hemlock bark, rock oak bark and chestnut oak bark upon said lands, timber and trees, with the rights of ingress, egress and regress for the purpose of cutting, peeling, curring, piling, sorting and removing said bark in the usual and ordinary manner at any and all times within the period of 25 years from the date hereof.....
P/R: DB 205/436

> *Subject to all the exceptions, reservations, covenants, stipulations, agreements and conditions contained in the recent deeds hereinbefore recited.....

Union Tanning Company, a corporation organized and existing under the laws of the State of Pennsylvania
&uarr;
(100%) Union Tanning Company, a corporation organized under the laws of the State of Pennsylvania

DB 205/436
D: 10/27/1894
R: 1/23/1895

*General Warranty
*Grant, bargain, sell, alien, enfeoff, release, convey and confirm all those certain tracts or parcels of land being Warrants or parts of Warrants lying contiguous to each other situate in the County of Bradford..... another situate in Leroy Township surveyed to Josiah Haines containing 410.5 acres.....comprising in all 38 tracts of land and the hemlock bark from four other tracts containing 14,200 acres be the same more or less
**Note: The above noted hemlock bark from "four other tracts" does not pertain to the subject Josiah Haines Warrant.
P/R: DB 197/270

> *And the same grantors herein Thomas E. Proctor and Jonathan A. Hill hereby expressly reserve, and save to themselves, their heirs and assigns, all the minerals, coal, oil, gas, or petroleum found now or hereafter, on or under the surface of any or all of the lands described in each of the above mentioned parts or division, and conveyed by this Indenture, together with the right and privilege of ingress, egress, and regress upon said lands for the purpose of operating or developing, working, or removing the same.

Thomas E. Proctor and Emma H., his wife, and Jonathan A. Hill and Lucy M., his wife
&uarr;                                                          &uarr;
(1/2) Thomas E. Proctor                                    (1/2) Jonathan A. Hill

DB 197/270
D: 6/5/1893
R: 7/6/1893

*No Warranty
*Whereas on the 20 day of April, 1893 at a meeting of the Board of Directors of the Schrader Mining and Manufacturing Company in compliance with a resolution of the holders of a majority of the stock of said company requesting a sale of the real estate of said company passed at a stockholder meeting duly convened for the purpose and evidenced afterwards by the written signature of such stockholders to such request and consent it was resolved.  That all the interest, estate, fee and title of every kind and nature of the Schrader Mining and Manufacturing Company in all of the lands, real estate, mine or mines owned by said company, subject to the rights and property of Proctor and Hill the Assignee and then owned by a certain contract dated the 27 day of May, 1867 (DB 81/284 R: 8/29/1867) between the said company and the Towanda Tanning Company for the sale of the Hemlock Bark upon the trees standing upon said lands, be sold.....to the highest bidder
*Grant, bargain, sell, alien, release and confirm all the following lots, tracts, piece or parcels of land described as follows: All those certain 45 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford.....being in the names of the warrantees hereinafter mentioned and specified.....another called Trap surveyed on Warrant to Josiah Haines.....excepting and reserving from the tracts mentioned such tracts, lots, pieces or parcels as have been sold by the former owners thereof to various parties comprising in all 1,800 acres be the same more or less, the said tracts herein conveyed containing together and in the whole about 15,000 acres of land be the same more or less
P/R: DB 74/34

> *No O&G Reservation

Schrader Mining and Manufacturing Company, a corporation organized under the laws of the State of Pennsylvania
&uarr;
(100%) Schrader Mining and Manufacturing Company

DB 85/188
D: 3/2/1868
R: 5/18/1868

*No Warranty
*Grant, bargain, sell, alien, enfeoff, release and confirm all those 45 several tracts of land described in the said deed.....to Charles W. Beresford excepting as therein excepted and also excepting such parts thereof and such rights and interests therein as have heretofore been sold and conveyed  by the trustees of the said Schrader Land Company, also granting and conveying all coal, minerals, oils rights privileges, and interest of whatsoever kind and nature reserved to or in anyway belonging to the said Schrader Land Company being all the lands of the said Schrader Land Company

PCJP 0138-2

**JA327**

P/R: DB 74/34, DB 44/124, and DB 44/56
*No O&G Reservation

Charles F. Welles and William Reed, trustees of the Schrader Land Company

(100%) William Reed and Charles F. Wells, Jr., Trustees

DB 74/34
D: 1/3/1866
R: 1/25/1866

*No Warranty
*Whereas Charles W. Beresford by Deed dated the 21 day of April, 1855.....DB 44/124 granted and conveyed unto the said parties of the first part.....45 several tracts or parcels of land situate and lying contiguous to each other.....in said Bradford County (except the part of said tracts previously sold.....) in Trust.....and whereas the said parties of the first part hereto on the twentieth day of December.....tendered in writing their resignation as Trustees.....and at the request of the said "The Schraeder Land Company" to transfer over any title which may be vested in them.....and where at a meeting.....held the twenty first day of December last part it was resolved that the resignation of said Trustees.....be accepted.....and the said parties of the second part hereto were unanimously chosen and elected Trustees
*Grant, bargain, sell, alien, enfeoff, release and confirm all the estate, right, title, interest, property, claim.....whatsoever of them.....in and to all the said real estate belonging to the said "The Schraeder Land Company" situate in said Bradford County and known as the Carbon Creek Coal Lands of "The Schraeder Land Company".....to contain about 15,000 acres - also the reserved mineral rights in all lots or parcels of ground sold heretofore by the said parties of the first part hereto and not otherwise disposed of.....
P/R: DB 44/124
*No O&G Reservation

Joseph Oat, Conrad S. Grove, and S. Wilmer Cannell, Trustees

(100%) Joseph Oat, Conrad S. Grove, and Simon Wilmer Cannell, Trustees

DB 44/124
D: 4/21/1855
R: 5/23/1855

*No Warranty
*Whereas Edward M. Davis and others by a certain indenture bearing date the day next before the day of the date of these presents did grant and convey unto the said Charles W. Beresford his heirs and assigns all those certain 45 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called "Trap" surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in the whole containing 18,570 acres and 19 perches and allowance of 6% for roads
*Grant, bargain, sell, release and confirm the above mentioned 45 several tracts or parcels of land
*Excepting nevertheless and always reserving out of and from the hereby granted premises such parts and portions thereof as are excepted and reserved in and by a certain indenture made between Charles Barclay by his Attorney in fact Samuel Rhoads of the one part and Edward Overton, Edward M. Davis and John Ely of the other part.....recorded in Bradford County.....in DB 39/481
P/R: DB 44/56
**Note: Per Article 7 attached in the subject deed, Joseph Oat, Conrad S. Grove, and Simon Wilmer Cannell, Trustees, shall be the first Trustees of the Schraeder Land Company
*No O&G Reservation

(100%) Charles W. Beresford

DB 44/56
D: 4/20/1855
R: 5/12/1855

*General Warranty
*Grant, bargain, sell, release and confirm all those certain 45 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called "Trap" surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in the whole containing 18,570 acres and 19 perches and allowance of 6% for roads
*Excepting nevertheless and always reserving out of and from the hereby granted premises such parts and portions thereof as are excepted and reserved in and by the above recited indenture (DB 39/481)
P/R: DB 39/481
*No O&G Reservation

Edward M. Davis and Maria M., his wife, John Ely, George R. Oat and Elizabeth, his wife, Joseph Oat and Sarah, his wife, Henry Lewis, Junior and Fanny H. his wife, J. Tunis Way and Ann Eliza, his wife, Benjamin W. Tingley and Elizabeth, his wife, William P. Way and Amanda S. his wife, John T. Sharpless, M.D. Simon W. Cannell and Sarah W., his wife, John Farnum and Elizabeth H., his wife, Peter Farnum and Caroline, his wife, Edward Lewis and Elizabeth J., his wife, Benjamin A. Farnham and Lydia R., his wife, William S. Freeman, Caleb Jones and Mary A. his wife, Levi Dickson, George W. Grove and Emma W., his wife, Charles Evans and Rachel S., his wife, Penrose Mather and Lydia S., his wife, Isaac R. Davis and

PCOP 0138

JA328

Lydia C., his wife, Thomas Beaver and Elizabeth, his wife, James Mott and Lucretia, his wife, Conrad S. Grove and Hannah C., his wife, Henry Jones and Mary A., his wife, James Jones and Mary Ann, his wife, Edward Overton and Eliza, his wife, Thomas J. Wierman and Emily V., his wife

*John Ely DB 42/491 - D: 1/3/1855 | R: 1/29/1855 to Henry Jones
*Caleb Jones and Mary A. Jones, his wife DB 43/90 - D: 1/17/1855 | R: 2/8/1855 to John Ely
*Caleb Jones and Mary A. Jones, his wife DB 42/489 - D: 1/2/1855 | R: 1/29/1855 to John Ely
*Francis N. Buck and Jane E., his wife DB 42/258 - D: 12/14/1854 | 12/18/1854 to Caleb Jones
*Francis N. Buck and Jane E., his wife DB 42/256 - D: 12/14/1854 | 12/18/1854 to Caleb Jones
*Edward M. Davis and Maria M., his wife DB 41/139 - D: 4/27/1854 | R: 5/1/1854 to Francis N. Buck
*Edward M. Davis and Maria M., his wife DB 41/140 - D: 4/27/1854 | R: 5/1/1854 to Francis N. Buck
*Edward M. Davis and Maria M., his wife DB 41/142 - D: 4/27/1854 | R: 5/1/1854 to Levi Dickson
*Edward M. Davis and Maria M., his wife DB 41/143 - D: 4/27/1854 | R: 5/1/1854 to Edward Lewis
*Isaac R. Davis and Lydia C., his wife DB 42/500 - D: 1/27/1855 | R: 1/31/1855 to Edward M. Davis
*Edward M. Davis and Maria M., his wife DB 41/144 - D: 4/27/1854 | R: 5/1/1854 to Isaac R. Davis
*Edward M. Davis and Maria M., his wife DB 41/145 - D: 4/27/1854 | R: 5/1/1854 to Isaac R. Davis
*Edward M. Davis and Maria M., his wife DB 42/148 - D: 10/6/1854 | R: 10/12/1854 to Edward Overton
*John Tucker and Louisa M., his wife DB 42/147 - D: 9/13/1854 | R: 9/13/1854 to Edward M. Davis
*Edward M. Davis and Maria M., his wife DB 41/146 - D: 4/27/1854 | R: 5/1/1854 to John Tucker
*Edward M. Davis and Maria M., his wife DB 41/148 - D: 4/27/1854 | R: 5/1/1854 to Simon Wilmer Cannell
*Edward M. Davis and Maria M., his wife DB 41/149 - D: 4/27/1854 | R: 5/1/1854 to Caleb Jones
*Edward M. Davis and Maria M., his wife DB 41/150 - D: 4/27/1854 | R: 5/1/1854 to Henry Lewis, Jr.
*Daniel L. Miller, Junior and Anna R., his wife DB 43/463 - D: 3/28/1855 | R: 5/4/1855 to George W. Grove
*Benjamin Rush Plumly and Rebecca, his wife DB 41/445 - D: 8/1/1854 | R: 8/9/1854 to Daniel L. Miller, Jr.
*Edward M. Davis and Maria M., his wife DB 41/151 - D: 4/26/1854 | R: 5/1/1854 to Benjamin Rush Plumly
*Edward M. Davis and Maria M., his wife DB 41/259 - D: 4/26/1854 | R: 5/31/1854 to Penrose Mather
*Edward M. Davis and Maria M., his wife DB 41/260 - D: 4/26/1854 | R: 5/31/1854 to William P. Way
*Edward M. Davis and Maria M., his wife DB 41/262 - D: 4/26/1854 | R: 5/31/1854 to George R. Oat
*Edward M. Davis and Maria M., his wife DB 42/486 - D: 1/4/1855 | R: 1/29/1855 to Thomas J. Wierman
*Edward M. Davis and Maria M., his wife DB 42/487 - D: 1/4/1855 | R: 1/29/1855 to James Mott
*Edward Overton and Eliza, his wife DB 41/131 - D: 4/26/1854 | R: 5/1/1854 to Jonathan T. Sharpless (Corr. Deed from Edward Overton and Eliza, his wife, to John T. Sharpless was recorded in DB 41/479 - D: 9/19/1854 | R: 9/21/1854 to correct the name of the Grantee)
*David B. Birney and Anna B., his wife DB 43/371 - D: 3/22/1855 | R: 4/3/1855 to William S. Freeman
*Edward Overton and Eliza, his wife DB 41/130 - D: 4/26/1854 | R: 5/1/1854 to David B. Birney
*Edward Overton and Eliza, his wife DB 41/128 - D: 4/26/1854 | R: 5/1/1854 to Thomas Beaver
*Edward Overton and Eliza, his wife DB 41/127 - D: 4/26/1854 | R: 5/1/1854 to Benjamin W. Tingley
*Edward Overton and Eliza, his wife DB 41/125 - D: 4/26/1854 | R: 5/1/1854 to J. Tunis Way
*Edward Overton and Eliza, his wife DB 42/146 - D: 10/6/1854 | R: 10/12/1854 to Joseph Oat
*John Ely and Rebecca R., his wife DB 41/133 - D: 4/26/1854 | R: 5/1/1854 to Benjamin A. Farnham
*John Ely and Rebecca R., his wife DB 41/134 - D: 4/26/1854 | R: 5/1/1854 to Charles Evans
*John Ely and Rebecca R., his wife DB 41/136 - D: 4/26/1854 | R: 5/1/1854 to Peter Farnum
*Thomas S. Webb DB 43/87 - D: 12/15/185- | R: 2/7/1855 to Conrad S. Grover    *12/15/1854
*John Ely and Rebecca R., his wife DB 41/137 - D: 4/26/1854 | R: 5/1/1854 to Thomas S. Webb
*John Ely and Rebecca R., his wife DB 41/138 - D: 4/26/1854 | R: 5/1/1854 to John Farnum
*John Ely DB 43/92 - D: 1/17/1855 | R: 2/8/1855 to James Jones

See Deeds        *General Warranty
Above            *Grant.....undivided 1/40.....in all those 51 tracts.....known as the "Barclay Coal Lands" situate in the townships of Overton, Franklin, and Leroy (containing 20,000 acres more or less)
                 P/R: DB 39/481
                 **Note: DB 41/136 and DB 41/131 contain an incorrect reference to the prior deed (DB 39/418 should be DB 39/481).  The prior deed reference in DB 43/87 is also incorrect (DB 41/146 should be DB 41/147).
                 *No O&G Reservation
                 **Note: The following DB/PGs contain the following exception:
                 DB 41/138, DB 41/137, DB 41/134, DB 41/133, DB 41/125, DB 41/127, DB 41/128, DB 41/130, DB 41/131, DB 41/151, DB 41/150, DB 41/149, DB 41/148, DB 41/146, DB 41/145, DB 41/144, DB 41/143, DB 41/142, DB 41/140, DB 41/139, DB 43/371
                 Except always as in the above recited Indenture is excepted in regard to some small parts or parcels of some of the tracts which had previously been sold and granted out of which all coal and other minerals were reserved to the said Barclay and his grantees

(1/2) Edward Overton and (1/4) Edward M. Davis and (1/4) John Ely

DB 39/481        *General Warranty

PCGP 0136
JA329

| | |
|---|---|
| D: 10/5/1853<br>R: 10/10/1853 | *Grant, bargain and sell, alien, enfeoff, release and confirm all and every of those 51 several tracts or parcels of land situate and lying contiguous to each other.....in the County of Bradford (formerly in the Counties of Northumberland and Luzerne).....according to the Names, Warrantees and Quantities hereinafter mentioned and specified that is to say.....Another called Trap surveyed on Warrant to Josiah Haines containing 407 3/4 acres (subject warrant).....together and in whole containing 20,986 acres and 19 perches and allowance of 6% for roads |

*Except always out of this present grant all such small parts and parcels of the said tracts or of same of them as have heretofore been granted to other persons which so far as recollected and known are as follows that is to say - two pieces or parcels of land parts of Milton one of them containing 113 acres and 113 perches granted to Henry Gatiss and the other containing 106 acrs and 43 perches granted to Henry Waggot, one piece or parcel part of Aaronsburg containing 86 acres and 23 perches granted to David Allen, one piece or parcel part of Baltimore containing 25 acres and 68 perches granted to Matthew Mott, two pieces or parcels parts of Oxford one of them containing 132 acres and 144 perches granted to James Cooper and the other containing 112 acres and 49 perches granted to Henry Knowles and two pieces or parcels of ground containing (blank) granted to David White and others Trustees for the purposes of a School House and Burial Ground

**Note: The above noted exceptions do not pertain to the subject Josiah Haines Warrant.

P/R: P 21/319 - 332 and P 22/112 - 123 granted to Daniel Brodhead in fee, who by indenture dated 7/5/1794 recorded in DB 3/118 (Luzerne County) granted and conveyed to the said Thomas Park in fee, who by indenture dated 1/10/1795 recorded in DB 3/450 (Luzerne County) granted and conveyed the same tracts unto Robert Barclay of London in fee, who departed this life having first made and published his LW&T in writing which after his decease was duly proved on 12/3/1830 and 6/29/1831 (London) and of which LW&T and probate (exemplified) was produced to be recorded in Bradford County whereby the said testator gave and devised subject lands to his son, Charles Barclay

☐ *No O&G Reservation

↑

(100%) Charles Barclay (acting by Samuel Rhoads, his Attorney in fact)          *POA - DB 5/243 - D: 10/4/1836 | R: 5/14/1838

↑

(100%) Charles Barclay

| | |
|---|---|
| WB 3/150<br>D: 8/5/1826<br>P: 12/6/1830<br>R: 1/14/1865 | DOD Unknown<br>Charles Barclay, son<br>*Codicils dated 8/21/1827, 8/24/1827, 8/12/1828, 8/21/1828, and 9/2/1930 |

↑

(100%) Robert Barclay

| | |
|---|---|
| DB 3/450<br>D: 1/10/1795<br>R: 8/17/1795<br>Luzerne County<br>DB 45/394<br>D: 1/10/1795<br>R: 1/7/1856<br>Bradford County | *General Warranty<br>*Grant, bargain, sell, alien, enfeoff, release and confirm 51 several tracts or parcels of land situate, lying and being in the Counties of Northumberton and Luzerne in the Commonwealth of Pennsylvania.....hereinafter described....."Trap" containing 407 3/4 acres.....which said several and respective 51 tracts or parcels of land containing together and in the whole 20,986 acres and 19 perches of land be the same more or less<br>P/R: DB 3/118<br>☐ *No O&G Reservation |

↑

(100%) Thomas Park

| | |
|---|---|
| DB 3/118<br>D: 7/5/1794<br>R: 8/18/1794<br>Luzerne County | *General Warranty<br>*Grant, bargain and sell, alien, enfeoff, release and confirm 51 tracts or parcels of land in the Counties of Northumberton and Luzerne in the Commonwealth of Pennsylvania.....which the said Daniel Brodhead hath lately obtained Patents to....."Trap" containing 407 3/4 acres<br>P/R: Patent to Daniel Brodhead<br>☐ *No O&G Reservation |

↑

(100%) Daniel Brodhead

| | |
|---|---|
| P 21/326<br>D: 6/27/1794<br>R: 6/28/1794 | *Northumberland County Warrant Re *Acres Returned: 407 3/4, Nam *Date of Warrant:  1/22/1793<br>*Date of Return: 6/26/1794          *Patent Recorded: :P21-326<br>*Patentee: Daniel Brodhead                         *Survey Recorded: : C-355<br>*Per Patent document, the Warrant dated 1/22/1793 was granted to Josiah Haines.  However, the claim was conveyed to Daniel Brodhead upon the death of Josiah Haines.<br>**Note: Bradford County was established on February 21, 1810.  It was created from parts of Luzerne and Lycoming Counties.  Luzerne County was created from part of Northumberland County on September 25, 1786.  Lycoming County was also created from part of Northumberland County on April 13, 1795. |

PCOP 013812

**JA330**

The Commonwealth of Pennsylvania

Warrant #659 dated 1/22/1793 issued to Josiah Haines in Northumberland County (Now Bradford County)

PCOP 013622

JA331



PGCP 013653

J1.067

**JA332**

Warrant Register
Page 125

NORTHUMBERLAND COUNTY

PGCP 013654

**JA333**

Northumb.ᵈ or Luzerne

Josiah Haines
as
407¾

r

Ret.ᵈ &c. 26 June 1794.

Reproduction of an Original Record
Please Credit
PA STATE ARCHIVES
350 North Street, Harrisburg, PA 17120-0090
PA Historic & Museum Commission

PGCP 013655

JA334

FORM No. 1.

355

RG-17. Copied Survey Books. Survey Book C, page 355.

Charles Hall
C 93-126

Joseph Simons

East 372

Josiah Haines
407¾

Collinson Road

James Shoemaker

C 191-153

Situate on the head Waters of *Towandie* Creek in Northumb^d or Luzerne County surveyed the 23^d day of Sept^r 1793. to Josiah Haines on Warrant dated the 22^d Jan^y 1793. Containing Four hund^d seven Acres three quarters and Allowance of Six ℗ Cent for Roads &c.

Jo. J. Wallis D.S.

Dan^l Brodhead Esq^r S.G^l

*IN TESTIMONY* that the above is a copy of the original remaining on file in the Department of Internal Affairs of Pennsylvania, made conformably to an Act of Assembly approved the 16th day of February, 1833, I have hereunto set my Hand and caused the Seal of said Department to be affixed at Harrisburg, this *sixteenth* day of *March* 1911.

*Henry Houck*

Secretary of Internal Affairs

Reproduction of an Original Record
Please Credit
PA STATE ARCHIVES
350 North Street, Harrisburg, PA 17120-0090
PA Historic & Museum Commission

FGCP 013656

**JA335**





Pennsylvania State Archives
350 North Street
Harrisburg, PA 17120-0090
(717) 783-3281

### Land Records Search Form

**Search Data**

| | |
|---|---|
| Application No. _____ | County of Warrant _____ |
| Tract No. _____ | Date of Survey _____ |
| Date of Application _____ | Date of Return _____ |
| Warrant No. _____ | Acres Returned _____ Perches _____ |
| Warrantee _____ | Name of Patentee *Daniel Brodhead* |
| Acres _____ Perches _____ | Patent Book Vol. *P* No. *21* Pg. *326* |
| Location _____ | Date of Patent *June 27, 1794* |
| Date of Warrant _____ | Survey Book Vol. ____ No. ____ Pg. ____ |
| Name of Tract _____ | Survey Book Vol. ____ No. ____ Pg. ____ |
| | Survey Book Vol. ____ No. ____ Pg. ____ |

**Remarks**

_____
_____
_____
_____
_____
_____

Researcher *Claire McWilliams*

Inquiry From _____

Date of Search *6-22-16*

Address _____
_____
_____

PGCP 013657

# JA336

Please Credit
PA STATE ARCHIVES
350 North Street, Harrisburg, PA 17120-0090
Commission

**The Commonwealth of Pennsylvania,** To all to whom these Presents shall come: GREETING.

KNOW YE, That in Consideration of the _____

[handwritten text]

to the Beginning, containing _____ Acres _____ and the usual Allowance of Six per Cent. for Roads, &c. [Which said Tract was surveyed in Pursuance of a _____ Warrant Dated _____ ]

with the Appurtenances: To HAVE and to HOLD the said Tract, or Parcel of Land, with the Appurtenances, unto the said _____ and his Heirs, to the Use of him the said _____ and his Heirs and Assigns for ever.

Heirs and Assigns forever, _____ free and clear of all Restrictions and Reservations, as to Mines, Royalties, Quit-Rents, or otherwise, excepting and reserving only the Fifth Part of all Gold and Silver Ore, for the Use of the Commonwealth, to be delivered at the Pit's Mouth, clear of all Charges. IN WITNESS WHEREOF, _____ Governor of the said Commonwealth, hath hereto set his Hand, and caused the State Seal to be hereunto affixed, the _____ Day of _____ in the Year of our Lord, one Thousand seven Hundred and Ninety _____ and of the Commonwealth the _____

Attest, _____

_____ Deputy Secretary

Inrolled the _____

**JA337**

270

Chain of Title

Benjamin Pennington Warrant.    James Shoemaker Warrant
Josiah Haines Warrant        James Collins Warrant
William M. Biddle Warrant     And Others

DB 197 / 270

the said party of the second part, his heirs and assigns, that the above described premises, with the appurtenances, unto the said party of the second part his heirs and assigns, they will warrant and forever defend, against all or any person or persons lawfully claiming or to claim the same.

In witness whereof, the said party of the first part have here unto set their hands and seals the day and year first above written.

Signed, sealed and delivered
in presence of
John A. Codding

W. H. Smith        seal
Eunice L. Smith     seal
Alva C. Smith       seal
Isabella M. Smith   seal

State of Pennsylvania } ss.
Bradford County.

Be it remembered, that on the Fifth day of July A. D. 1893 personally appeared before the subscriber, one of the Justices of the Peace in and for said county W. H. Smith & Eunice L. Smith his wife and Alva C. Smith and Isabella M. Smith his wife, the above named grantors, and each acknowledged the foregoing Indenture to be their act and deed for the purpose herein contained. She, the said Eunice L. Smith and Isabella M. Smith being of full age, and by me examined separate and apart from her husband, and the full contents thereof being by me first made known to her, acknowledged that she executed the same of her own free will and accord, without any coercion or compulsion on the part of her said husband. Witness my hand and seal the day and year aforesaid.

John A. Codding.    Official seal
Justice of the Peace

Recorded July 6th 1893.
Chas. M. Hall, Recorder.

5 June 1893

No. 3615.
The Schrader Mining and
Manufacturing Company
To
Thomas E. Proctor &
Jonathan A. Hill

This Indenture, made the fifth day of June, in the year of our Lord one thousand eight hundred and ninety three. Between the Schrader Mining and Manufacturing Company a corporation organized under the laws of the State of Pennsylvania party of the first part, and Thomas E. Proctor of the city of Boston, State of Massachusetts, and Jonathan A. Hill of the Township of Monroe, County of Bradford and State of Pennsylvania, parties of the second part. Whereas heretofore to wit on the 20th day of April A. D. 1893 at a meeting of the Board of Directors of the Schrader Mining and Manufacturing Company in compliance with a Resolution of the holders of a majority of the Stock of said Company requesting a sale of its real estate of said Company passed at a stockholder meeting duly convened for the purpose and evidenced afterwards by the written signatures of such

197 / 270

JA338

J1.292

197/ 271

Stockholders to such request and consent it was resolved. That all the interest, estate, fee & title, of every kind, and nature, of the Schrader Mining and Manufacturing Company in all of the lands, real estate, mine or mines owned by said Company, subject to the rights and property of Proctor & Hill the Assignees and then owned of a certain contract dated the 27th day of May A.D. 1867 between the said Company and the Towanda Tanning Company for the sale of the Hemlock Bark upon the trees standing upon said lands — be sold, and the Secretary of said Schrader Mining and Manufacturing Company Joseph Powell Esq. was directed to sell the same at public sale to the highest bidder for cash after advertising the sale for a period of three weeks prior thereto in two newspapers, published in said county of Bradford; and whereas after so duly advertising the time and place of sale the said Joseph Powell did expose the same for sale at public vendue or outcry at the time and place mentioned to wit: at the Court House in the Borough of Towanda in the County of Bradford aforesaid on the 20th day of May A.D. 1893 at 10 o'clock A.M. and sold the same to Thomas E. Proctor and Jonathan A. Hill before mentioned for the sum of Fifty Thousand Dollars they being the highest and best bidders and that the highest and best price bidden for the same which sale on report thereof by him being made to said Schrader Mining and Manufacturing Company at a meeting of the Board of Directors held on the same day was confirmed and ratified, and the President and Secretary of said company directed to execute and deliver under the seal of said company a conveyance of the same. Now therefore this Indenture Witnesseth, that the Schrader Mining and Manufacturing Company in consideration of the aforesaid sum of

Fifty Thousand Dollars,

to it paid by the said Thomas E. Proctor and Jonathan A. Hill at and before the ensealing and delivery hereof, the receipt and payment whereof is hereby acknowledged, hath granted, bargained, sold, aliened, released and confirmed and by these presents doth grant, bargain, sell, alien, release and confirm unto the said Thomas E. Proctor and Jonathan A. Hill his and their heirs and assigns,

All the following lots, tracts, pieces or parcels of land described as follows, viz:

All those certain forty five several tracts or parcels of land situate and lying contiguous to each other wholly or chiefly in the County of Bradford in the State of Pennsylvania being in the names of the warrantees hereinafter mentioned and specified that is to say: one of them called Green originally surveyed to Henry Epple; an other called Johnston's Hall surveyed on warrant to Richard Fullerton; an other called Stenton surveyed on warrant to George Eckhart; one other called Bristol surveyed on warrant to Robert Hiltzheimer; an other called Landius surveyed on warrant to Jacob Holtzheimer; an other called Dary surveyed on warrant to Richard Erwin; an other called Greensburg survey on warrant to John

197/272

Adlum; an other called Grove surveyed on Warrant to Collinson Reed; an other called Valley surveyed on Warrant to Clarke I. Biddle; an other called Trenton surveyed on Warrant to James Collins; an other called Darby surveyed on Warrant to John Baker; an other called Pleasant Garden surveyed on Warrant to George Glentworth; an other called Dublin surveyed on Warrant to William M. Biddle; an other called Belair surveyed on Warrant to John Barrow Jr.; an other called Chelsea surveyed on Warrant to James Shoemaker; an other called Danville surveyed on Warrant to Benjamin Pennington; an other called Hill surveyed on Warrant to Andrew Graden; an other called Newcastle surveyed on Warrant to John Patton; an other called Oxford surveyed on Warrant to Peter Boynton; an other called Wilmington surveyed on Warrant to Peter Z. Lloyd; an other called Baltimore surveyed on Warrant to Clement Biddle; an other called Mifflinburg surveyed on Warrant to William Wilson; an other called Vaux Hall surveyed on Warrant to Michael Gratz; an other called Mount Pleasant surveyed on Warrant to Charles Hall; an other called Nice Stadt surveyed on Warrant to Bernard Gratz; an other called Pittsburg surveyed on Warrant to Simon Gratz; an other called Reading surveyed on Warrant to Hyman Gratz; an other called Sunbury surveyed on Warrant to Joseph Simons; and other called Troy surveyed on Warrant to Joseph Haines; and other called Ostend surveyed on Warrant to John Boyd; an other called Philadelphia surveyed on Warrant to Joseph Henry; an other called Burlington surveyed on Warrant to Henry Beck; an other called Dryden surveyed on Warrant to Samuel Claphamson; an other called Camden surveyed on Warrant to William Gray; an other called Pottsgrove surveyed on Warrant to John Goff; an other called Chanceford surveyed on Warrant to Thomas Dundas; an other called Fairview surveyed on Warrant to James Biddle; an other called Chester surveyed on Warrant to William Packer and other called Trout Hall surveyed on Warrant to John Barrow Jr.; an other called Broadheadburg surveyed on Warrant to James Shoemaker; an other called Montgomery surveyed on Warrant to Thomas Hillzheimer; an other called Marchelne surveyed on Warrant to Jacob Hillzheimer; an other called Harrisburg surveyed on Warrant to William Biddle; an other called Northumberland surveyed on Warrant to Andrew Graydon And an other called Warren surveyed on Warrant to Andrew Tybout; also one tract of one hundred acres more or less situate at the foot of the Plane in Barclay Township on which are several framed buildings, lumber yard etc., excepting and reserving from the tract mentioned such tracts, lots, pieces or parcels as have been sold by the former owners thereof to various parties comprising in all eighteen hundred acres be the same more or less, the said tracts herein conveyed containing together and in the whole about fifteen thousand acres of land be the same more or less, and more fully described in a certain Deed dated January 5th 1866 from Joseph Cox, C.S. Coe and S.W. Cannell Trustees of the Schrader Land Company to William Reed &

18ØØ ac Reserved as previously Sold

JA340

J1.773

197/ 273

→ Reference Deed

Charles F. Welles Jr. Trustee &c, and recorded in the Recorder Office of Bradford
County in Deed Book No. 74, Page 344 &c. DB 74/34

Together with all and singular, the rights, liberties, privileges,
hereditaments, appurtenances, interest, estate, fee and title of every kind and
nature whatsoever thereunto belonging or in anywise appertaining (saving and
excepting rights and property of Proctor & Hill the owners of a certain con-
tract dated the 27th day of May 1867 for the sale of the Hemlock Bark here-
inbefore mentioned) and the reversion and reversions, remainder, rents,
issues and profits thereof; and all the estate, right, title, interest, property,
claim and demand whatsoever of the said Schrader Mining and Manu-
facturing Company of, in, to or out of the said tracts, real estate, land,
hereditaments, mine or mines mentioned.

To have and to hold the said tracts of land, mines or mines
hereditaments and premises hereby granted unto the said Thomas E.
Proctor, his heirs and assigns and Jonathan A. Hill his heirs & assigns,
to their only proper use and behoof and benefit of his and their assigns for-
ever.

In testimony whereof the said Schrader Mining & Manufacturing
Company has hereunto fixed the common seal of said corporation at Towanda
aforesaid the day and year first before written.

Corporate Seal            Jonathan A. Hall        President

                          Joseph Powell           Secretary

State of Penna.
County of Bradford, ss.

Be it remembered, that on the fifth day of June A.D. 1893 before
me a Justice of the Peace in and for said County personally appeared Jonathan A. Hill
President of the above named corporation and Joseph Powell Secretary of the same and
each being severally sworn doth for himself say that he was personally present at
the execution of the foregoing written Indenture or Deed of Conveyance and saw the
common seal of said corporation the Schrader Mining and Manufacturing Com-
pany duly affixed thereto and that the seal so affixed thereto is the common and
corporate seal of the said Schrader Mining and Manufacturing Company and
that the above & foregoing written Indenture or Deed of Conveyance was duly
signed, sealed and delivered by and as and for the act and deed of the said
Schrader Mining & Manufacturing Company for the use and purpose therein
mentioned, and that the names by their deponents subscribed to the said Deed as
President and Secretary of said corporation in attestation of the due execution
thereof and delivery of the same is by the deponents own proper and respective
handwriting it purports to be.

Sworn & subscribed before me the day      Jonathan A. Hill      seal
and year aforesaid,                        Joseph Powell         seal

        John A. Codding              Recorded July 1893  3881
        Justice of the Peace          Charles F. Hall, Recorder
                                              197/27

J1.295

JA341

# T I T L E

OF

CENTRAL PENNSYLVANIA LUMBER COMPANY

TO

Nineteen warrants or parts of warrants containing 7704.8

acres, more or less, situate in the Townships

of LeRoy and Barclay, Bradford

County, Pennsylvania.

Purchased December 14, 1920.

**JOINT EXHIBIT**

**2**

**Commonwealth of Penn. v. Thomas E. Proctor Heirs Trust et al.**

**No. 1:12-cv-1567**

942.
1

JA342

STATEMENT OF TAXES
for 1907

#114

LeRoy Township  Bradford County

| Year | No. | Acres | Warrantee | Val. | Co. | Rd. | Sch. | Town | Int. | Total |
|------|-----|-------|-----------|------|-----|-----|------|------|------|-------|
| 1907 | ~~ | 199 | Adlum, John | $500 | 4.00 | 2.00 | 1.75 | 1.25 | .27 | 13.02 |
| " | " | 237 | Biddle, M. J. | 592 | 4.73 | 2.37 | 2.07 | 1.48 | .32 | 14.72 |
| " | " | 440 | Barron, John Sr. | 1100 | 8.80 | 4.40 | 3.85 | 2.75 | .60 | 24.15 |
| " | " | 91 | Biddle, Clement | 275 | 2.19 | 1.09 | .96 | .68 | .15 | 8.82 |
| " | " | 403 | Boyd, John | 1008 | 8.07 | 4.03 | 3.53 | 2.52 | .55 | 22.45 |
| " | " | 348 | Graydon, Andrew | 870 | 6.96 | 3.48 | 3.05 | 2.18 | .47 | 19.89 |
| " | " | 290 | Gratz, Hiram | 825 | 6.60 | 3.30 | 2.89 | 2.06 | .45 | 19.05 |
| " | " | 333 | Gratz, Bernard | 832 | 6.65 | 3.33 | 2.91 | 2.08 | .45 | 19.17 |
| " | " | 410 | Haines, Joseph | 2460 | 19.68 | 9.84 | 8.61 | 6.15 | 1.33 | 49.36 |
| " | " | 444 | Henry, Joseph | 1110 | 8.88 | 4.44 | 14.43 | 2.77 | 1.35 | 50.05 |
| " | " | 486 | Pennington, Benj. | 1215 | 9.72 | 4.86 | 4.25 | 3.04 | .66 | 26.28 |
| " | " | 227 | Reed, Collinson | 570 | 4.56 | 2.28 | 2.00 | 1.43 | .31 | 14.33 |
| " | " | 35 | " " | 350 | 2.80 | 1.40 | 1.23 | .88 | .19 | 10.25 |
| " | " | 452 | Shoemaker, James | 1130 | 9.04 | 4.52 | 3.96 | 2.83 | .60 | 24.70 |
| " | " | 257 | Simons, James | 645 | 5.16 | 2.58 | 2.26 | 1.61 | .35 | 15.71 |
| " | " | 47 | " " | 375 | 3.00 | 1.50 | 1.31 | .94 | .20 | 10.70 |

4,699.0

NOTE:-- Above total includes also Costs of $3.75 each case.

---000:0:000---

COPY OF ENTRY FROM

#115          Treasurers Sales Book 2, Page ----

Sale of 1908  LeRoy Twp.

Acreage same as above in each case.

Each of Above sold separately, same warrantee.

Tax, costs and interest as indicated, in each case at Total.

1013          Date June 8, 1908.
72.

JA343

Pittsburgh, Penna., Nov. 22, 1920.

Central Pennsylvania Lumber Company,

    Williamsport, Penna.

Gentlemen:

    I have completed the examination of the Brief of Title prepared for the Board of Game Commissioners to the following tracts of land located in Bradford County, which were purchased from you by the Board of Game Commissioners on March 24, 1920, subject to the examination of title, for the consideration of $2.50 per acre, viz:-

| Township | Warrantee Name | Acres |
|---|---|---|
| LeRoy | Clement Biddle | 91.6 |
| " | Michael Gratz | 236. |
| " | Joseph Henry | 444.3 |
| " | John Boyd | 403.7 |
| " | William Wilson | 486.4 |
| LeRoy-Barclay | Collinson Reede | 422.9 |
| LeRoy | John Barron | 440.5 |
| LeRoy-Barclay | Mark J. Biddle | 439.8 |
| " | William Parker | 422.7 |
| " | John Adlum | 531.6 |
| Barclay | John Barron, Jr. | 444.2 |
| LeRoy | Bernard Gratz | 333.4 |
| " | Joseph Simons | 304 |
| " | Hiram Gratz | 290.6 |
| " | Andrew Graydon | 355.1 |
| " | Charles Hall | 497. |

88 - 89.

JA344

*. See letter for C P L S
11-27-1920

| Township | Warrantee Name | Acres |
|----------|----------------|-------|
| LeRoy | Josiah Haines | 410.5 |
| " | James Shoemaker | 452.6 / ~~664.5~~ |
| " | Benj. Pennington | 486. |
| Total | | ~~7704.8~~ 7442.9 * |

and would respectfully report upon the same as follows, viz:

The Contract for Sale in this case is made subject to the following exceptions, reservations and conveyances, viz:

"RESERVING AND SAVING unto Thomas E. Proctor and Jonathan A. Hill, their heirs and assigns, all the minerals, coal, oil, gas or petroleum found now or hereafter on, or under the surface of any or all of the lands described in each of the above mentioned parts or divisions; together with the right and privilege of ingress, egress and regress upon said lands for the purpose of prospecting for, or developing, working or removing the same, as fully as said minerals and mineral rights were excepted and reserved in deed dated Oct. 27, 1894, from Thomas E. Proctor et al to the Union Tanning Company, recorded in the office for recording Deeds in Bradford County in Deed Book 205, page 436.

"The deed would be subject to all the reservations, exceptions, covenants and stipulations contained in the above recited deed from Thos. E. Proctor, et al to the Union Tanning Company, and in deed from the Union Tanning Company to the Central Pennsylvania Lumber Company dated May

90.

**JA345**

25, 1903, recorded in the office for recording deeds in Bradford County in Deed Book 251, page 520, on June 11th. 1913.

"The conveyance of these lands will be subject to the right of way of the Susquehanna and New York Railroad Company.

"The deed would also contain the following reservations of the Central Pennsylvania Lumber Company:-

"Hereby excepting and reserving unto the grantor, its successors and assigns, rights of way for wagon roads, sled roads, log slides and tramroads, through, over and across the lands above described and hereby conveyed, for the purpose of removing timber and other wood products from other lands of said grantor, its successors and assigns, for so long a time as the Lumber Company requires said privileges.

"Excepting and reserving unto the grantor, its successors and assigns, a right of way fifty (50) feet in width for railroad purposes from a point on the line of the Susquehanna and New York Railroad to any mine or mines on said described lands, with the right to take additional land for turn-outs, switches, cuts, slopes, etc."

In the preparatkon of this report, therefore, no references are made to any exceptions, reservations or adverse conveyances which are included in the above exceptions contained in the agreement for sale.

The Agreement for Sale in this case has attached to it a description of the properties as one connected body

91.

JA346

by courses and distances.  This description has been care-
fully checked up by my Mr. Harbison, who prepared the Abstract
in this case, and has been found to be correct.

The Agreement for Sale procides for settlement on
the basis of actual area, so that you will be entitled to
payment for the total area, viz: 7704.8 acres called for in
the description.

I note in a prior conveyance in the chain of title
from the Schrader Mining and Manufacturing Company to Thomas
E. Procter and Jonathan A. Hill, dated June 5, 1893, of
record in Bradford County in Deed Book Vol. 197, page 270,
a reference to an existing contract dated May 27, 1867 with
the Towanda Tanning Company.  Satisfactory evidence must be
furnished that all rights and privileges under this contract
have been long since abandoned.

I note a possible conveyance of a small lot con-
taining 90 perches contained in a deed from Charles Barclay
to James Cooper, Henry Knowles and Joseph Mills, dated Feb.
17, 1851, of record in Bradford County in Deed Book Vol. 34,
page 139.  Mr. Harbison was unable to locate this tract from
the description given.  I attach hereto for your convenience
a transcript of the deed.  Satisfactory evidence should be
furnished that this tract is not a portion of the land to
be conveyed to the Commonwealth.

I note an existing lease made by the Central
Pennsylvania Lumber Company and the Commonwealth of Pennsyl-
vania, dated April 21, 1916, of record as aforesaid in Deed
Book Vol. 327, page 485, for the purpose of establishing a

92.

JA347

State Game Reserve on the tracts of land included in this examination.  This is reported for your information only and is not adverse to these tracts.

As soon as you advise me that the very few matters referred to have been or will be satisfactorily disposed of, I will then prepare the conveyance to the Commonwealth and forward it to you for execution.

Satisfactory evidence must be furnished of proper corporate action authorizing this conveyance.

Evidence must also be furnished showing payment of all corporate taxes and charges due the Commonwealth.

All taxes must be paid in full which are a lien at date of actual conveyance to the State.

I will take pleasure in doing all that I can to expedite the settlement of this transaction.

Yours very truly,
John E. Potter,
Examiner of Titles to the
Board of Game Commissioners.
c/o Potter Title & Trust Co.,
Fourth Avenue & Grant Street,
Pittsburgh, Penna.

---ooo:0:ooo---

93.

JA348

Exhibit "D".

The President presented correspondence from
Mr. Seth E. Gordon, Secretary of the Board of Game Commis-
sioners of the State of Pennsylvania asking for a formal tender
or option of certain lands owned by the Company in LeRoy and
Barclay Townships, Bradford County, Pennsylvania, and stated
that in compliance with the request such tender or option
had been made of the following lands under date of March
24th., 1920:

| Bradford County | LeRoy Township | | Warrant | Acres |
|---|---|---|---|---|
| | | | Clement Biddle | 91.6 |
| " | " | " | " | Michael Gratz | 236. |
| " | " | " | "" | Joseph Henry | 444.3 |
| " | "" | " | " | John Boyd | 403.7 |
| " | " | " | " | William Wilson | 486.4 |
| " | " | LeRoy-Barclay | Collinson Reede | 422.9 |
| " | " | LeRoy | John Barron | 440.5 |
| " | " | LeRoy-Barclay | Mark J. Biddle | 439.8 |
| " | " | " | " | William Parker | 422.7 |
| " | " | " | " | John Adlum | 531.6 |
| " | " | Barclay | John Barron, Jr. | 444.2 |
| " | " | LeRoy | Bernard Gratz | 333.4 |
| " | " | " | Joseph Simons | 304. |
| " | " | " | Hiram Gratz | 290. |
| " | " | " | Andrew Graydon | 355.1 |
| " | " | " | Charles Hall | 497. |
| " | " | " | Josiah Haines | 410.5 |
| " | " | " | James Shoemaker | 664.5   452.6 |
| " | " | | Benj. Pennington | 486 |

**JA349**

The following resolution was offered:

Resolved that the action of the President and Secretary in tendering to the Board of Game Commissioners of the State of Pennsylvania, at a price of Two Dollars and Fifty cents ($2.50) per acre, 7,704.8 acres of land in LeRoy and Barclay Townships, Bradford County, as shown above, subject to the reservations and conditions specified in said tender, be and the same is hereby ratified and approved, and should said tender be accepted by the Board of Game Commissioners the President or Vice President and Secretary be, and they are hereby authorized and empowered to make, execute and deliver to the Board of Game Commissioners of the state of Pennsylvania or to the Commonwealth of Pennsylvania a proper deed of special warranty for the land therein tendered upon payment of the full consideration therefor, a complete description of said lands together with all exceptions, reservations, covenants and stipulations to be embodied in said deed as follows:

All that certain piece, parcel or tract of land situate in the Townships of LeRoy and Barclay, County of Bradford and State of Pennsylvania, bounded and described as follows:

Beginning at a stonescorner marking the northeast corner of the Joseph Henry Warrant and the northwest corner of the James Biddle Warrant; thence by the line between the Joseph Henry and James Biddle warrants, South 4° 30' East, 190 rods to a post in the east line of the Joseph Henry Warrant, said post also marking the Southwest corner of the

JA350

James Biddle warrant; thence by the south line of the said
James Biddle warrant and the north line of the William Parker
and John Barron, Jr. warrants, S. 86° E. 371 rods to a post;
thence by a line between the Joanna Carey warrant and the John
Barron, Jr. warrant, S. 40° E. 194 rods to post and stones
corner in the west line of the William Govett warrant, said
corner being also the most easterly corner of the John Barron,
Jr. warrant; thence by the line between the William Govett
and John Barron, Jr. warrants, S.34° W. 140 rods to a fallen
maple, said maple marking the southwest corner of the William
Govett warrant; thence by the line between the Andrew Tybout
and the John Barron, Jr. warrants, N. 58° W. 63.5 rods to a
beech marking the most northerly corner of the Andrew Tybout
warrant; thence continuing along line between the Andrew
Tybout and John Barron, Jr. warrants S. 34° W. 133.6 rods to
a stones corner in the east line of the Robert Irwin warrant;
thence by the line between the Robert Irwin and John Barron
Jr. warrant, N. 33° W. 212 rods to a stones corner marking
the most northerly corner of the Robert Irwin warrant, also
the northeast corner of the John Adlum warrant; thence by
the east line of the John Adlum warrant and the west line of
the Robert Irwin warrant, S. 4° W. 395 rods to a post marking
the southeast corner of the John Adlum warrant; thence by
the south line of the John Adlum warrant and the north line
of the Jacob Hiltzheimer warrant, N. 85° 15' W. 318.4 rods
to a post, said post marking the southwest corner of the
John Adlum warrant and the northwest corner of the Jacob
Hiltzheimer warrant; thence by the east line of the Mark
J. Biddle warrant and the west line of the Jacob Hiltzheimer
warrant, S. 2° 15' W. 369 rods to a post in the north line

102

JA351

of the Robert Hiltzheimer warrant, said post marking the
southeast corner of the Mark J. Biddle warrant; thence by
the north line of the Robert Hiltzheimer warrant, and the
south line of the Mark J. Biddle warrant, N. 85° W. 191.5
rods to a hemlock in the east line of the John Barron warrant,
said hemlock also marking the northwest corner of the Robert
Hiltzheimer warrant; thence by the east line of the John
Barron warrant and the west line of the Robert Hiltzheimer
warrant, S. 2° 15' W, 15 rods to a beech marking the northeast
corner of the James Collins warrant; thence by the south line
of the John Barron, Benjamin Pennington and Andrew Brady
warrants and the north line of the James Collins, William
M. Biddle and Peter Boynton warrants, N. 86° W. 776 rods
to a point in the line between the Andrew Brady and Peter
Boynton warrants; thence by lands now or formerly of J. Mills,
Joseph Mills, Christopher Smith and L. Wilcox, N. 4 1/2°
E. 271 rods to a beech marking the northeast corner of the
said L. Wilcox lot; thence by the north line of the said
Wilcox lot, N. 85° 15' W. 88 rods to a post marking the
northwest corner of the said Wilcox lot; thence by the west
line of the said Wilcox lot, S. 4° 30' W. 85 rods to a post
marking the southwest corner of the said Wilcox lot, said
post being also in the north line of the John Patton warrant;
thence by line between the Hiram Gratz and John Patton
warrants; N. 85° 15' W. 90 rods to a post, said post marking
the southwest corner of the Hiram Gratz warrants and the
southeast corner of the Simon Gratz warrants; thence by line
between the Simon Gratz and Hiram Gratz warrants, N. 4° 30'
E. 197 rods to a post, said post marking the northwest corner

103

JA352

of the Hiram Gratz warrant; thence by the south line of the Joseph Simmons warrant and the north line of the Hiram Gratz warrant, S. 85° 15' E. 90 rods to a birch, said birch marking the southeast corner of lot of land now or formerly of R. Stone; thence by lands of the said R. Stone and three following courses and distances; N. 4° 30' E. 86.3 rods to a stone corner; S. 85° 30' E. 4 rods to a post corner; N. 4° 30' E. 82.4 rods to a post in the south line of the Bernard Gratz warrant; thence by the south line of the Bernard Gratz warrant and the north line of the Stone lands, North 85° 30' W. 94 rods to a post in the east line of the Henry Antes warrant; thence by line of the Henry Antes warrant and line of the Bernard Gratz warrant, N. 4° 30' E. 17.4 rods to a post marking the north east corner of the Henry Antes warrant and line of the Bernard Gratz warrant, N. 85° 30' W. 98 rods to a birch marking the southwest corner of the Bernard Gratz warrant; thence by the east line of the William Wister warrant and the west line of the Bernard Gratz warrant N. 4° 30' E. 126.2 rods to a post marking the northwest corner of the Bernard Gratz Warrant; thence by the north line of the Bernard Gratz warrant and the south line of lands now or formerly of Bellows and Wilcox, S. 86° 20' E. 400 rods to the southwest corner of the said Bellows and Wilcox lands; thence by the east line of the said Bellows and Wilcox lands, N. 4° 15' E. 53 rods to a post marking the southwest corner of the Henry Beck warrant; thence by the south line of the Henry Beck warrant, N. 81° E. 333.7 rods to a post and stones marking the southeast corner of the Henry Beck warrant; thence by the east line of the Henry Beck

JA353

warrant and the west line of lands of the Central Penn-
sylvania Lumber Company, N. 5° E. 359 rods to a point in
the south line of the James Claphampson warrant; thence by
the south line of the said James Claphampson warrant, N.
72° E. 108 rods to a post and stones, said post and stones
marking the northeast corner of land now or formerly of M.
Mott; thence by the west line of the said Mott lands and
lands now or formerly of E. Halcomb, S. 5° W. 172.3 rods to
a post in the north line of the Michael Gratz warrant; thence
by the north line of the Michael Gratz warrant, S. 85° 30'
E. 78 rods to a post in the west line of the Joseph Henry
warrant, said post marking the southeast corner of the said
Holcomb lot; thence by the west line of the Joseph Henry
warrant and the east line of the said Halcomb lot, N. 5°
E. 100 rods to a post marking the northwest corner of the
Joseph Henry warrant; thence by the north line of the Joseph
Hanry warrant and the south line of the Henry Beck warrant,
S. 86° E. 369 rods to the place of beginning.  Containing
in all 7,704.8 acres, and being all or parts of warrants as
follows:  Clement Biddle, 91.6 acres; Michael Gratz 236 acres;
Joseph Henry, 444.3 acres; John Boyd, 403.7 acres; William
Wilson, 486.4 acres, Collinson Reede, 422.9 acres, John
Barron, 440.5 acres; Mark J. Biddle, 439.8 acres; William
Parker, 422.7 acres; John Adlum, 531.6; John Barron, Jr.
444.2 acres; Bernard Gratz 333.4 acres; Joseph Simons, 304
acres; Hiram Gratz, 290.6 acres; Andrew Graydon, 355.1
acres; Charles Hall, 497 acres; Josiah Haines, 410.5 acres;
James Shoemaker, 664.5 acres and Benj. Pennington 486 acres,

JA354

RESERVING AND SAVING unto Thomas E. Proctor and Jonathan A. Hill, their heirs and assigns, all the minerals, coal, oil, gas or petroleum found now or hereafter on, or under the surface of any or all of the lands described in each of the above mentioned parts or divisions; together with the right and privilege of ingress, egress and regress upon said lands for the purpose of prospecting for, or developing, working or removing the same, as fully as said minerals and mineral rights were excepted and reserved in deed dated October 27th., 1894 from Thomas E. Proctor et al, to the Union Tanning Company, recorded in the office for recording deeds in Bradford County in Deed Book 205, page 436.

This sale is subject to all the reservations, exceptions, covenants and stipulations contained in the above recited deed from Thomas E. Proctor et al., to the Union Tanning Company, and in deed from the Union Tanning Company to the Central Pennsylvania Lumber Company dated May 25th 1903, recorded in the office for recording deeds in Bradford County in Deed Book 251, page 520 on June 11th., 1903.

SUBJECT, NEVERTHELESS, to any and all rights of way of the Susquehanna & New York Railroad Company, through, over and across the lands hereby sold.

HEREBY EXCEPTING AND RESERVING unto the Central Pennsylvania Lumber Company, its successors and assigns, rights of way for wagon roads, sled roads, log slides and tramroads through, over and across the lands above described and hereby sold, for the purpose of removing timber and other wood products from other lands of said Central Pennsylvania

106

J2.108

**JA355**

Lumber Company, its successors and assigns,

EXCEPTING AND RESERVING unto the Central
Pennsylvania Lumber Company, its successors and assigns, a
right of way 50 feet in width for railroad purposes from a
point on the line of the Susquehanna & New York Railroad
to any mine or mines on said described lands, with the
right to take additional land for turn-outs, switches, cuts,
slopes etc.

Upon motion duly seconded, the above resolution
was unanimously approved and adopted, the vote being as follows

AYES: Brownell, Horton, Mallison, Sisley, Spicer.

NAYS: None


Copied from the minutes of meeting of
the Board of Directors held in Williamsport,
Pa., April 6, 1920.

Williamsport, Penn'a.,

Dec. 21, 1920.,

I hereby certify that the foregoing is a true and correct
copy of a resolution of the Board of Directors passed at a
regularly called meeting thereof on April 6th, 1920.


W. M. Simmons,

Secretary, Central Pennsylvania

Lumber Company.


---ooo:0:ooo---

**JA356**

Jan. 11, 1921.

Mr. Seth E. Gordon, Secretary,

Board of Game Commissioners,

212 Locust Street,

Harrisburg, Penna.

Dear Sir:

I hereby certify that I have made a careful examination of the record title of the Central Pennsylvania Lumber Company to a certain tract of land containing 7492.9 acres, located in LeRoy and Barclay Townships, Bradford County, which was purchased by the Board of Game Commissioners on March 24, 1920, for the consideration of $2.50 per acre, subject to the examination of title, said tract of land being composed of the whole or portions of the following original warrants, viz:-

| | |
|---|---|
| Joseph Henry | Josiah Haines |
| John Barron, Jr. | Charles Hall |
| Clement Biddle | Joseph Simons |
| Benjamin Pennington | Mark I. Biddle |
| Hyman Gratz | Bernard Gratz |
| James Shoemaker | William Parker |
| John Boyd | John Adlum |
| John Barron, Jr. | Andrew Graydon |
| William Wilson | Collinson Reed |

Michael Gratz

and find the same to be now vested in the said Central Pennsylvania Lumber Company in fee simple, free and clear of all encumbrances of record, except the reservations expressly set forth in the Agreement for sale in this case

1058

117.

J2.119

JA357

December

Fourteenth,

1920.

Commissioners of Bradford County,

Towanda,

Bradford Co., Penna.

Gentlemen:

Please kindly take notice that a certain tract
of land containing 7492.9 acres located in LeRoy and Bar-
clay Townships, Bradford County, and being composed of the
whole or portions of the following original warrants, viz:

| | |
|---|---|
| Joseph Henry | Josiah Haines |
| John Barron, Jr. | Charles Hall |
| Clement Biddle | Joseph Simons |
| Benjamin Pennington | Mark I. Biddle |
| Hyman Gratz | Bernard Gratz |
| James Shoemaker | William Parker |
| John Boyd | John Adlum |
| John Barron, Jr, | Andrew Graydon |
| William Wilson | Collinson Reed |

Michael Gratz

has been conveyed to and is now the property of the
Commonwealth of Pennsylvania, as the same is more fully
bounded and described in a certain deed from the Central
Pennsylvania Timber Company to the Commonwealth of Penn-
sylvania, bearing even date herewith and to be recorded,

129.

JA358

and kindly remove the same from your list of properties
assessed for taxation, in accordance with the provisions
of the Act of Assembly approved Feb. 25, 1901.

                    Yours very respectfully,
                    BOARD OF GAME COMMISSIONERS.

                By
                    John E. Potter,

                Examiner of Titles to the Board
                of Game Commissioners.


---oOo:O:oOo---

*1071*
130.

JA359

JOINT EXHIBIT

4

Commonwealth of Penn. v.
Thomas E. Proctor Heirs Trust
et al.

No. 1:12-cv-1567

Deed Book 205
Page 436

205/436

Case: 22-1587   Document: 14-2   Page: 196   Date Filed: 06/07/2022

Thomas C. Proctor et ux
Jonathan A. Hill et ux
To
Union Tanning Company

This Indenture made the twenty
seventh day of October in the
year of our Lord one thousand eight
hundred and ninety four.

27 Oct. 1894

Between Thomas C. Proctor and
Emma H. his wife of the city of

Grantors

Boston and State of Massachusetts and Jonathan A. Hill and Lucy
M. his wife of the township of Monroe, county of Bradford and
State of Pennsylvania parties of the first part and Union Tanning

Grantee

Company a corporation organized under the laws of the State of
Pennsylvania county of the second part. Witnesseth that the said parties
of the first part in and in consideration of the sum of one dollar law-
ful money of the United States of America unto them well and
truly paid by the said party of the second part, at and before the
sealing and delivery of these presents the receipt whereof is
hereby acknowledged have granted bargained sold aliened en-
feoffed released conveyed and confirmed And by these presents do
grant bargain sell alien enfeoff release convey and confirm unto the
said party of the second part, its successors or successors and assigns

✳ All those certain tracts or parcels of land being warrants or
parts of warrants lying contiguous to each other, situate in the County
of Bradford and State of Pennsylvania in the several townships hereinafter
designated and known to the several warranties and containing the
number of acres of land be the same more or less as hereinafter mentioned
to wit: one situate in Barclay township surveyed to Andrew Lybert
containing 176.8 acres; another situate in Barclay township surveyed to
John Barrow Jr. containing 344.2 acres; another situate in Leroy township
surveyed to John Barrow Jr. containing 440.5 acres; another situate in Leroy
township surveyed to Benjamin E. Pennington containing 486 acres; another
situate in Leroy township surveyed to John Boyd, containing 408.4 acres;
another situate in Leroy township surveyed to Micaiah Healy containing
350.4 acres; another situate in Leroy township surveyed to John Barton, con-
taining 241.2 acres; another situate in Leroy township surveyed to
Healy containing 433 acres; another situate in Leroy township surveyed to
Hiram Healy containing 220.5 acres; another situate in Leroy township
surveyed to Josiah Haines containing 335 acres; another situate in Leroy
township surveyed to Barnard Healy containing 437.4 acres; another
situate in Leroy township surveyed to Mr. Goodwin containing 150.5 acres;
another situate in Leroy township surveyed to Peter G. Linza containing ..
acres; another situate in Leroy township surveyed to William Wall containing
449 acres; another situate in Leroy township surveyed to Josiah Haines con-
taining 410.5 acres; another situate in Leroy township surveyed to William
Wilson containing 498.4 acres; another situate in Leroy township surveyed to
Clement Biddle, containing 91.0 acres; another situate in Leroy township

Warrants
Bradford County

Barclay Township ✳

Benjamin
Pennington
Warrant
486 acres

Josiah Haines
Warrant 410.5 a

William
Wilson

→ Clement Biddle

205/436

✳ Barclay township. See Attached Map. Barclay township was created from Franklin in
1866 and later returned to Franklin.

PGCP 013882

JA360

surveyed to Joseph Henry containing 444.3 acres; another situate in (18)
Leroy Township surveyed to Andrew Gray Jun. containing 355.1 acres; an- (17)
other situate in Leroy Township surveyed to William M. Biddle con- (19)
taining 457 acres; another situate in Leroy Township surveyed to George (20)
Ellsworth, containing 481 acres; another situate in Leroy Township (21)
surveyed to John Balter containing 317.2 acres; another situate in (22)
Leroy Township surveyed to Samuel Isle Shannon, containing 125.8 (23)
acres; another situate in Leroy Township surveyed to James Shoemaker (24)
containing 452.6 acres; another situate in Overton Township surveyed (25)
to Jacob Stiltzhouse, containing 487.7 acres; another situate in Leroy
and Barclay Townships surveyed to John Adlum, containing 681.6 (26)
acres; another situate in Barclay Township surveyed to
Mark J. Biddle, containing 430.9 acres; another situate in Leroy and (27)
Barclay Townships surveyed to Werthwin Riedt containing 422.9 (28)
acres; another situate in Leroy and Barclay Townships, containing sur- (27)
veyed to William Parker, containing 422.7 acres; another situate in (29)
Barclay and Overton Townships surveyed to Richard Brown containing
621½ acres; another situate in Leroy and Overton Townships surveyed (30)
to James Serline, containing 434.2 acres; another situate in Barclay (31)
Leroy, and Overton Townships surveyed to Robert Stiltzhouse, contain- (32)
ing 512.2 acres. Another situate in Fox Township, Sullivan County
Pennsylvania, and Overton Township aforesaid surveyed to George (33)
Eckert, containing 489 acres; [also all its hemlock bark on all
the hemlock trees standing and growing on the four lots, tracts
or parcels of land situate in Bradford County aforesaid imme-
diately following, being warrants or parts of warrants surveyed to
the several warrantees and containing its number of acres its
same more or less (as hereinafter mentioned to wit:) one situate (1)
in Leroy Township surveyed to Henry Cox, containing 174 acres; an-
other situate in Barclay and Leroy Townships surveyed to John (2)
Graff, containing 132.3 acres; another situate in Barclay and Leroy (3)
Townships surveyed to Thomas Dunshee, containing 454 acres; another
situate in Barclay and Leroy Townships surveyed to James Riddle (4)
containing 441.1 acres. Also its hemlock bark on the four last men-
tioned tracts to be removed therefrom within five years from the date
of this conveyance - after which its time its same at its expiration
of its time mentioned to immediately revert to its grantor herein, free
from all claims of its grantee, its executors or assigns] Also five
other lots tracts or parcels of land situate in said County of Bradford
immediately following from which its hemlock bark has been strip-
ped and removed its being warrants (or parts) warrants surveyed to its
several warrantees and containing its number of acres be its same
more or less, herein after mentioned to wit;. one situate in Barclay
Township surveyed to James Shoemaker, containing 114.1 acres; another (34)

PGCP 013883

J4.002

JA361

Case: 22-1587   Document: 14-2   Page: 197   Date Filed: 06/07/2022

[Margin annotations:]
James Collins Warrant 434.2 acres
William M. Biddle Warrant 457 acres
James Shoemaker Warrant 452.6 acres
Conveyance of "Hemlock Bark" on all standing Hemlock trees on 4 lots, tracts & parcels of land
James Shoemaker Lot 114.1 acres

Case: 22-1587   Document: 14-2   Page: 198   Date Filed: 06/07/2022

*[Left margin notes:]*

James Shoemaker
Lot 65.7 acres

James Shoemaker
Lot 32.1 acres

Reference Deed
from
Schrader Mining and
Manufacturing Company
Dated 5 June 1893
DB 197, Pg 27Ø

*[Right margin notes:]*

35
36
37
38

38 tracts plus
4 tracts of her lot
bark
14,2ØØ acres

Forks Township
Sullivan County

*[Main text:]*

situate in Barclay Township surveyed to Thomas Neltzheimer,
containing 2Ø.9 acres; another situate in Barclay Township surveyed
to James Shoemaker containing 65.7 acres; another situate in
Barclay Township surveyed to James Shoemaker containing 32.1
acres; another situate in Barclay Township surveyed to Jacob
Neltzheimer, containing 28 acres; comprising in all Thirty eight
tracts of land, and the hereditament forth from four other tracts and
containing four teen thousand and two hundred acres be the same
more or less, being the same lands heretofore conveyed by the Schrader
Mining and Manufacturing Co., a company organized under the
laws of the State of Pennsylvania (or a part of the same) to the grantor
herein by deed bearing date the 5th day of June A.D. 1893 and recorded
in the recorder office of Bradford County in Deed book 197 page 27Ø to
July 5th A.D. 1893.

Also all those certain six tracts or parcels of land being warrants
or parts of warrants situate in the township of Forks, County of
Sullivan and State of Pennsylvania and bounded and described as
follows viz with:

Lot No. 1. Part of the Henry Toland warrant containing 24.2 acres
be the same more or less, bounded on the south by lot of Thomas Gordon
and the George Eddie warrant; on the east by James Hutton warrant;
on the north by lot of Christopher Taylor; and on the west by Israel
Pleasant warrant.

Lot No. 2. Part of the James Hutton warrant containing 84 acres
be the same more or less, bounded on the south by Ed Hallowell warrant;
on the east by lot No. 3 next described; on the north by lands of Thomas
Gordon and on the west by lot No. 1 above described.

Lot No. 3. Part of the Edward Hallowell warrant containing 133.2
acres be the same more or less, bounded on the south by lands of
Stephen Rowe and Andrew Blithen; on the east by Peter F. Lloyd warrant;
on the north by the James Hutton warrant; and on the west by
land of Thomas Gordon and George Eddie warrant.

Lot No. 4. Part of the Peter F. Lloyd warrant containing 42
acres be the same more or less, bounded on the north by Geo. Pennypacker
warrant; on the east by other portion of the P.F. Lloyd warrant; on
the south by the same land on the west by lot No. 3 above described.

Lot No. 5. Part of the Jurdison So warrant from which
the hemlock bark has been stripped and removed, situate in the
township of Forks and Elkland County and in the aforesaid, con-
taining 43 acres be the same more or less, bounded on the north by lot
of Christian Laville on the east by other portion of fractional So warrant
on the south by lot of Thomas Loveley and on the west by the Peter
Frimas warrant.

Also that piece or parcel of land situate in the town-

PGCP 013884

JA362

J4.003

Forks Township / Sullivan County

Township of Forks, County of Sullivan, and State of Pennsylvania, bounded as follows to wit: *Beginning* at the north corner of the Jos. F. Roberts warrant. Thence along the line of Jos. P. Norris north thirty one degrees East about seventy eight perches to the south corner of the George Abbot warrant. Thence north fifty nine degrees west along a line of George Abbot, James Q. Fisher, and Samuel Pleasants twelve hundred and eighty nine perches to the west corner of Samuel W. Fisher. Then north thirty one degrees East two hundred and thirty five perches to the north corner of the same. Thence south fifty nine and one half degrees east three hundred and ninety perches to the west corner of the Charles Warren warrant. Thence north thirty degrees and one half east two hundred and thirty five perches to the south corner of George Reid. Thence south fifty nine and one half degrees East seventy four perches to another corner of said lot. Thence north thirty degrees and one half East, sixty six perches to a warrant line. Thence south fifty nine degrees and one half east two hundred and fifty one perches to the line of the Charles Pleasants warrant. Thence along the line of the Charles Pleasants warrant north thirty one degrees East one hundred and seventy five perches to the west corner of the Israel Pleasants warrant. Thence along the line of said Israel Pleasants warrant south fifty degrees East two hundred and forty six perches to the north corner of Thomas Jordan's lot. Thence south thirty two degrees west one hundred and forty perches to a corner. Thence south fifty eight degrees East eighty perches to a corner. Thence along a warrant line south thirty one degrees and one half west, one hundred and ninety five perches to the west corner of John Jordans lot. Thence along his line south fifty eight degrees East one hundred and two and seven tenth perches to line of lot of Anthony Phil-lip. Thence south thirty one degrees west ninety eight perches. Thence south fifty eight degrees and one half East sixty eight perches to the south corner of said Phillie lot. Thence along warrant line and other lines south thirty one degrees and one half west one hundred and sixty five perches to the west corner of Maxizean land. Thence along his line south fifty eight degrees and one half East four hundred and forty seven perches to a corner of same. Thence still along his line south thirty one degrees west ninety eight perches to a corner of David P. Coopers land. Thence down the several courses of the Loyal sock Creek, in a westerly direction to the division line between the Joseph P. Norris and Joseph F. Norris warrants. Thence along said warrant line north fifty eight degrees and one half west, one hundred and fourteen perches to the place of beginning. Containing three thousand six hundred and sixty six (3,666) acres be the same more or less and being parts of the following warrants: Joseph P. Norris, containing 307.6 acres be the same more or less; George Abbot, con-

Case: 22-1587   Document: 14-2   Page: 199   Date Filed: 06/07/2022

PGCP 013885

**JA363**

J4.004

containing 467.8 acres be the same more or less. Charles Warner containing 561.8 acres be the same more or less. George Eddie 392.2 acres be the same more or less. Edward Hallowell containing on the south end 137.2 acres and on the north end 229.1 acres be the same more or less. And the whole of the Charles Pleasants containing 470.5 acres be the same more or less. James C. Fisher containing 444 acres be the same more or less. Samuel Pleasants containing 470.8 acres be the same more or less, and Samuel M. Fisher warrants containing 452.9 acres be the same more or less.

And the following tract of land situate in the Townships of Forks and La Porte, County of Sullivan and State aforesaid and bounded and described as follows viz: (Beginning at the east corner of the Eliza H. Norris warrant. Thence along warrant line south thirty one degrees west three hundred and eighty six perches and three tenths to a corner of land of John S. Meredith. Thence along his line south fifty degrees east thirty eight perches. Thence north thirty one east seventy four perches and three tenths to the corner of lot of Thomas Levy. Thence south fifty eight degrees east sixty five perches and five tenths to his east corner. Thence north thirty one degrees East twenty perches to corner of lot of Peter McCormick. Thence along his line south fifty eight degrees East about one hundred perches. Thence south thirty two degrees west about fifty three perches to line of Hockins lot. Thence along his line south thirty one degrees East about one hundred and forty perches to east of lot of Leonard Ewing. Thence along his line north thirty one degrees East one hundred and six perches to John Kiernan's land. Thence along his line north fifty nine degrees west one hundred and one perches to the line of Phillip Frost. Thence along his line south thirty one degrees west fifty perches. Thence north fifty nine degrees west fifty four perches. Thence south thirty one degrees west fifteen perches. Thence north fifty nine degrees west forty perches. Thence north thirty one degrees East ninety six perches to a corner of Samuel Frost's lot. Thence along his line north fifty eight degrees west eighty perches to his corner. Thence north thirty one degrees and one half East one hundred and sixty two perches to warrant line. Thence along said line north fifty eight degrees and one half west ninety four perches to the place of beginning) containing three hundred and ninety three acres be the same more or less and being part of the Hamaok &c. containing 259 acres be the same more or less. Richard Gardner containing ____ acres; and Robert &c. warrants the latter containing 111.1 acres be the same more or less.

And another tract of land situate in La Porte Township County and State aforesaid bounded as follows viz: Beginning at the south west corner of the George Roberts Jr. warrant and on the east side of Josiah Wamsley warrant.

thence along warrant line south fifty nine degrees East one hundred and
fifty three perches to a corner. Thence along the easterly line of the George
Roberts Sr. north thirty one and one half degrees East three hundred and
sixteen perches to a corner. Thence south fifty one and one half degrees
west one hundred and four perches to a point. Thence south thirty one and
one half degrees west two hundred and thirty four perches to a corner.
Thence north fifty eight and one half degrees west about fifty two
perches to the line of Josiah Townley Warrant. Thence along the line
of said warrant south thirty one degrees and one half west about
ninety six perches to the place of beginning containing about
214.3 perches be the same more or less, the same being a part of the George
Roberts Sr. warrant, being the same lands of grant of same, conveyed
by James Mason Drew and the Pennsylvania Land Company, for insur-
ance on lives and granting annuities, administrator & c. & c. of William
B. Wynne, deceased to the grantors herein by two several deeds
bearing date respectively the one August 7th A.D. 1886 and recorded
in the office for recording deeds in Sullivan County in deed book No.
14 page 386 to August 18th A.D. 1886 and the other bearing date
June 11th A.D. 1893, and recorded in the office for recording deeds in
Sullivan County in deed book No. 14 page 305 to, August 13 A.D. 1886

Also all those certain eight tracts of land (three being the hem-
lock bark on the tree only as hereinafter mentioned) situated in the
Township of Overton, County of Bradford, and State of Pennsylvania
surveyed in the warrantee name of Samuel Fritz, containing 377.3
acres be the same more or less; Jonathan Feeley containing 488.1
acres be the same more or less; John Betz containing 386.0 acres
be the same more or less; James Betz containing 358.2 acre be the
same more or less; James Hardy containing 406.4 acres be the same
more or less, and the hemlock bark only on all the hemlock trees
standing and growing on the warrant surveyed to Samuel Hardy
containing 439.2 acres be the same more or less; Petry Feeley, con-
taining 40 acres be the same more or less and Joseph Feeley con-
taining 892 acres be the same more or less; bounded as follow to wit:
Beginning at a beech corner of Joseph Feeley, Henry Bryson, James
White and James Burns. Thence along the line of James Burns, Patrick
Burns and James Bryson S.33½° West two hundred and thirty six
perches to a beech. Thence north 52½° W. Three hundred and twenty two
perches to a beech. Thence N. 52½° W. two hundred and eighty seven and
five tenths perches to a maple in the east line of Jonathan Feeley. Thence
north 33½° West two hundred and twelve perches to a beech being a
corner of John Fritz, David Fritz, James Bryson and Jonathan Feeley.
Thence north 57½° W. two hundred and twenty one perches to a beech. Thence
north 32½° E. six hundred and fifty five perches to a post being a corner
of James Hardy and Samuel Hosley. Thence south 57½° E. two hundred

PGCP 013887

J4.006

**JA365**

*Margin notes:*

Overton Township
Bradford County

8 tracts, 3 being
the hemlock bark
only

Samuel Fritz
Warrant. 377.3ac

hemlock bark
only

Case: 22-1587   Document: 14-2   Page: 201   Date Filed: 06/07/2022

and twenty five perches to a post being a corner of James Hardy, Samuel Lewley and James Retz and John Retz; thence n. 52½° E. two hundred and twelve perches, along the east line of Samuel Lewley to a birch being a corner of John Retz and Joseph Retz; thence south 52½° E. two hundred and eighty three perches to a post; thence south 82° and 40° E. three hundred and twenty two perches to the place of beginning) Containing three thousand three hundred and twenty eight acres be the same more or less. The right to made free of charge to haul lumber to from the Samuel Lewley tract through the John Retz is reserved to Leverett Porter, Porter and Foot and their heirs, executors, administrators and assigns. And whereas John Brown a former owner and grantor, did heretofore by deed convey to said Leverett Porter, Porter and Foot four ninths called George Brown, Samuel Lewley, Joseph Retz and Henry Brigam and in said deed reserve the right towards through said tract for lumbering &c and that right so reserved conveyed to the grantor herein, the same is conveyed by this deed being the same lands or a part of the same conveyed to the grantor herein by John Brown by deed bearing date the 1st day of May A.D. 1888 and recorded in the office for recording deeds in Bradford County in Deed Book No 152 page 29/40. May 4 A.D. 1889.

Also all that certain tract or parcel of land lying and being in the township of La Porte County of Sullivan and State of Pennsylvania and bounded and described as follows viz: (Beginning at the north west corner of a tract of land in the warrantee name of Joel Benedict. Thence along the said north eighty seven and one half degrees west three hundred and twenty eight perches to a corner; thence along the west line of the same south two and one half degrees west seventy eight perches to a corner. Thence along line of John Bingman warrant north fifty eight degrees west one hundred and sixty perches to a corner. Thence along line of George Roberts jr. warrant north thirty one and one half degrees east three hundred and sixteen perches to a corner. Thence along the line of tract in the warrantee name of Hugh Roberts, George & said Joseph B Cross, south sixty degrees east three hundred and twenty perches to a corner; thence south two and one half degrees west one hundred and seventeen perches to the place of beginning) Containing five hundred and forty seven acres & land be the same more or less, and being two tracts of land surveyed in the warrantee names of William Brower, containing 157.4 acres be the same more or less, and three Cleveland containing 390.1 acres be the same more or less and being the same tracts of land conveyed to Thomas B. Proctor one of the grantors herein by four several deeds as follows to wit: One equal undivided one fifth part of the Franklin Reading et vir by deed bearing date the 2d day of May, A.D. 1882 and recorded in the office for recording deeds in the county of Sullivan in Deed book 2013 page 6 &c. the 19 day of ... A.D. 1882. One equal undivided

Case: 22-1587     Document: 14-2     Page: 203     Date Filed: 06/07/2022

...fifty part by Frederick R. Kent by deed bearing date the 12 day of June A.D. 1882 and recorded in office last mentioned in deed book No 13 page 670 &c the 16 day of June A.D. 1882; one equal undivided one fifth part by Frederick R. Kent executor of the last will and testament of William S. Kent deceased and the Philadelphia Trust, Safe Deposit and Insurance Co. trustee of the estate of Francis S. Kent under the will of the said Wm S. Kent deceased by deed bearing date the 12 day of June A.D. 1882 and recorded in the office last mentioned in deed book No 13 page 670 &c the 16 day of June A.D. 1882 and an undivided two fifths part by Richard S. Souder et ux and Charles S. Souder et ux by deed bearing date the 9 day of February A.D. 1883 and recorded in the office last mentioned in deed book 14 page 166 &c, the 28 day of Feby A.D. 1883.

Also one equal undivided half interest in and to the following described piece parcel and tract of land situate in the Townships of Forks and Laporte County of Sullivan and State of Pennsylvania to wit: Beginning at a post on the line between the Joseph D. Norris and Eliza Fox warrants. Thence north thirty one degrees east along the Division line fixed by an inquest of partition four hundred and ninety six perches to a post. Thence south fifty nine degrees east sixty six perches to a corner in line of lands now or late J. Adam's. Thence south thirty one degrees west along the same twenty two perches to a corner. Thence south fifty nine degrees east one hundred perches to a corner. Thence south thirty one degrees east twenty two perches to warrant line; Thence along the same south fifty nine degrees east sixty seven perches to an old hemlock corner. Thence south thirty one degrees west three hundred and ninety three perches to a corner; Thence south fifty nine degrees east thirty eight perches. Thence south fifty seven degrees east seven perches. Thence south forty nine and one half degrees east sixty perches. Thence south fifty nine degrees east thirty perches. Thence south seventy five degrees east fourteen perches. Thence north seventy six &c and one half degrees east thirty four perches. Thence south six degrees west, south six teen perches. Thence south eighty four degrees west two hundred and seventy six perches to a corner at the mouth of Mill Creek; Thence north thirty one degrees east one hundred and fourteen perches to a corner in warrant line. Thence along the same south fifty nine degrees west one hundred and eighty nine perches to the place of beginning, containing six hundred and ninety three acres more or less &c more or less, and being the same undivided one half interest conveyed to the grantor herein by F. W. Lewis assignee &c of F. B. Russell and F. B. Russell & Co., by deed bearing date the 22 day of January A.D. 1891 and recorded in the recorder's office of said County of ........... in deed book No. ..., J. page 842 the 6 day of February A.D. 1891.

PGCP 013889

# JA367

Case: 22-1587    Document: 14-2    Page: 204    Date Filed: 06/07/2022

Parts in
Overton Township
Bradford County
and
Parts in
Elkland Township
Sullivan County

Samuel Fritz
Warrant does not
Straddle the
County line - Skipping
this for now

Parts of:
Henry Cooley Warrant
John Fritz Warrant

Fox Township
Sullivan County

Also all those certain lots pieces or parcels of land lying and being partly in Overton Township, County of Bradford and State of Pennsylvania and partly in Elkland Township, County of Sullivan and State of Pennsylvania and bounded as follows viz.: Beginning at the south west corner of lot no 2 contracted to James White, thence by White's north line north 31° East, one hundred and thirty five (135) rods to a beech at said White's north east corner. Thence by the warrant line north 59° west two hundred and ninety one (291) rods to a post in the south west corner of lot no 8 and corner of lot no 9 conveyed to Joshua McCarty. Thence by the south line of said lot number 9 north 31° east one hundred and six (106) rods to the north east corner of lot number 8. Thence by the north line of lot no 9 and the east line of lot no 8 north 59° west five hundred and thirty one (131) rods to the south line of the Jonathan Sneley warrant. Thence by the same south 31° west one hundred and six (106) rods to the warrant corner. Thence by the north line of lots nos. 9 and 8 south 59° East two hundred and sixty two (262) rods to the line of the Henry Cooley warrant. Thence north 31° to about seventy (70) rods to a beech corner of lot no 3 and 4. Thence by the east line of lot no 4 south 59° East one hundred and sixty (160) rods to the place of beginning, being lot no 3 north west lot of Henry Cooley warrant. Containing 156 acres be the same more or less. Lots nos 5, no 8 and no 9 of the John Fritz warrant, containing 262.7 acres more or less as subdivided on the map of Edward Overton his land, and containing in all 399.7 acres be the same more or less, and being the same lands of which the said Edward Overton died seized and intestate leaving as his heirs at law, Niles B. Overton, Mary MacFarlane, Henry S. Overton, Louisa Ward, Eliza Wammond and Edward Overton Jr. The said N. B. Overton by deed dated Dec. 31" A.D. 1891 recorded in the Recorders Office of Bradford county in deed book no 14° page 590, having conveyed his interest therein to Edward Overton Jr. and being the same land heretofore conveyed to the grantors herein by the said heirs of Edward Overton Sr. by deed bearing date the 2" day of January A.D. 1891 and recorded in the Recorders Office of Bradford county in deed book no 169 page 326 to. March 1" A.D. 1889, and in the Recorders Office of Sullivan county in deed book vol 14 page 463 the 3" day of May A.D. 1889.

Also all that certain piece parcel or tract of land situate in the township of Fox county of Sullivan and State of Pennsylvania bounded and described as follows to wit: Beginning at a sugar tree the near corner of a tract in the warrantee name of Richard Fullerton, thence running with along the line of the said Fullerton warrant about one hundred and thirteen perches to a post corner of another division of the Richard Fullerton warrant sold to John Rovan. Then a course along said Rovan's land to a post corner of four subdivisions of the said

PGCP 013890

JA368

J4.009

Fullerton warrant. Thence east along other lands of said Brown and lands of J.C. Meyer to the eastern line of the said Fullerton warrant. Thence along said east line south thirty degrees west to the sugar tree corner the *place of beginning.* Containing 69,500 acres to the same more or less, being the same land conveyed to the grantors herein by Marietta Watson, Elvira Watson and John Hancock Watson, executors of the last will and testament of Oliver Watson deceased, by deed bearing date the 16th day of January A.D. 1888, and recorded in the Recorders office in Sullivan County in deed book No 14 Page 658 to the 27th day of January A.D. 1888 it being also one of the subdivisions of the Richard Fullerton warrant.

Fox Township
Sullivan County

Also all that certain piece or parcel of land situate in the Township of Fox, County of Sullivan and State of Pennsylvania bounded and described as follows to wit: *Beginning* at a post in a swamp in the west line of the Samuel Brown land the east line of the Richard Fullerton warrant; Thence N.34° E. along the division line of said warrants about four hundred rods to the N.E. corner of the said Richard Fullerton warrant, thence N.56° W. along the north line of the Richard Fullerton warrant, one hundred and fifty rods to the N.E. corner of the John Brown tract; Thence South 40° W. along the line of the said John Brown tract sixty three and eight tenths rods to a post corner; Thence S.56° E. sixty three rods to the *place of beginning.* Containing 52 acres to the same more or less, and being a piece of land conveyed to the grantor herein by Jacob Lovell, Treasurer of Sullivan County by deed bearing date the 10th day of June A.D. 1890 and also being another subdivision of Richard Fullerton warrant.

Fox Township
Sullivan County

Also another piece or parcel of land situate in the Township of Fox, County of Sullivan and State of Pennsylvania, bounded and described as follows to wit: *Beginning* at a post corner the N.W. corner of the Richard Fullerton warrant, adjoining land of John Potter; Thence S.56° E. along the warrant line of the Richard Fullerton one hundred and forty rods to a post corner of the Elda Wilcox subdivision; Thence S.40° W. along the west line of said Wilcox sixty seven rods to a post corner. Thence N.56° W. one hundred and forty rods to a post corner in the river line of the Richard Fullerton warrant. And thence N.40° E. along said warrant line sixty seven rods to the *place of beginning.* Containing 58 acres and 100 perches to the same more or less and being the same land conveyed to the grantors herein by Conrad Miller by deed including other lands, dated the 3rd day of April A.D. 1888, and recorded in the Recorders office in Sullivan County in deed book No 14 page 653 to the 11th day of April A.D. 1888.

Fox Township
Sullivan County

Also a piece or parcel of land situate in the Township of Fox, County of Sullivan and State of Pennsylvania bounded and described as follows to wit: *Beginning* at a post in a swamp on the western

Case: 22-1587   Document: 14-2   Page: 205   Date Filed: 06/07/2022

PGCP 013891

**JA369**

J4.010

Case: 22-1587    Document: 14-2    Page: 206    Date Filed: 06/07/2022

line of the Richard Fullerton warrant; then N. 4° E. sixty five and
five tenths rods to the S. W. corner of the lot herein before last described
Thence S. 86° E. along the line of said lot one hundred and forty rods
to the S. E. corner of said lot. Thence south 4° W. sixty five and five tenths
rods to a post corner also the corner of the Ellis Fullerton subdivision
Thence N. 86° W. one hundred and forty rods <mark>to the place of beginning</mark>
Containing 57 acres and 59 perches be the same more or less land
being the same land conveyed to the grantor herein by N. A. Macon
Treasurer of Sullivan County by deed dated the 9th day of June a.D.
1884. This tract and the one described immediately preceding being
subdivision of the Richard Fullerton warrant.

Also all that certain piece or parcel of land situate in the
same bit of acres, county of Sullivan and State of Pennsylvania bounded
and described as follows to wit: <mark>Beginning</mark> at a point in the line
between the Joseph P. Morris and the Eliza Fox warrants, thence north
fifty nine degrees west two hundred and sixty perches (N.59° W.260p.)
thence north thirty one degrees East four hundred and twenty
six perches (N. 31° E.426) to a corner, thence south fifty nine degrees
East two hundred and sixty perches to a four corner (S.59° E.260p)
at a division line fixed by a jury of inquest upon a writ of
Partition issued out of the Court of Common Pleas of Sullivan County
thence along said division line south thirty one degrees west four
hundred perches <mark>to the place of beginning</mark> Containing 592.1 acres
be the same more or less, and being parts of tracts in the warrantee
name of George Abbott, Peter G. Lloyd, and Eliza Fox and conveyed
to the grantor hereinby James E. Lyon et ux by deed bearing date
the eighth day of October A.D.1892 and recorded in Sullivan County
in the Recorder's Office in deed book No 21 page 251 +c. the 20th day
of October A.D. 1892.

Also a certain piece or parcel of land situate in Elkland
Township, county of Sullivan and State of Pennsylvania bounded
and described as follows to wit: <mark>Beginning</mark> at the intersection of the
"North View" road so called and the road leading to Lake Run, the N. E. corner
of the J. G. Dickens land: Thence along said north road S. 86° E. about one
hundred rods to the East line of the Warrant surveyed in the name of Aaron
Fritz; Thence along said warrant line N. 84° E. about one hundred and
twenty rods to a beech stump the N. E. corner of said warrant. Thence
along the northerly line of said warrant N. 86° W. two hundred and sixty
two rods to a post the N. corner of the said Aaron Fritz warrant. Thence
along the line of said warrant S. 84° W. twenty seven and seven tenths rods
to a fallen hemlock. Thence S. 10° W. about one hundred and ten rods to the
bank of Little Lake, Thence in an easterly direction about one hundred rods
to a point on the Wilson road. The N. E. corner of the J. G. Dickens tract.
Thence S. 4° west along the line of J. G. Dickens land about one hundred and

PGCP 013892

JA370

J4.011

Forks Township
Sullivan County

Elkland Township
Sullivan County

fifteen rods *to the place of beginning* containing 206 acres be the same more or less and being land from which the hemlock bark has been stripped and removed.

Also one other piece or parcel of land situate in Elkland township County of Sullivan and State of Pennsylvania bounded and described as follows to wit: *Beginning* at an old hemlock on the division line between the Richard Fullerton and the Samuel Bryson warrants at the N. W. corner of the latter, thence S. 56 E. two hundred and fourteen rods to a post corner in the warrant line between the Samuel Bryson and the Joseph Fritz warrants, thence S. 34 W. along the said warrants line two hundred and thirty two rods to a post the S. W. corner of the Joseph Fritz warrant, thence N. 56° W. two hundred and fourteen rods to a post corner in the east line of the Henry Epple warrant, and thence N. 34 E. along said warrant line two hundred and thirty two rods *to the place of beginning* containing 299 acres and 124 perches be the same more or less, and being land from which the hemlock bark has been stripped and removed.

Also one other piece or parcel of land situate in the township of Elkland, County of Sullivan and State of Pennsylvania bounded and described as follows to wit: *Beginning* at the N. W. corner of a warrant surveyed in the name of William Townley on the Lake view road; thence S. 56° E. along the division warrant line between the Wm. Townley and the Robert Townley warrants two hundred and one rods to a post the S. E. corner of the Robert Townley warrant, thence S. 34° W along the warrant line of the Wm. Townley warrant thirty four rods to a post for a corner, thence N. 50° W. two hundred and one rods to a post in the westerly line of the William Townley warrant, thence N. 34° E. along the said warrant line thirty four rods *to the place of beginning* containing 42 acres and 114 perches be the same more or less, and being lands from which said hemlock bark has been stripped and removed, the last three described tracts being parts of warrants surveyed in the name of Aaron Fritz, Samuel Bryson, Robert Townley and William Townley and the same lands which were conveyed to the grantor herein which other lands not included herein by Edward Miller et ux by three several deeds dated the 13th day of April A. D. 1883 and recorded in the Recorders Office in Sullivan County two of them in deed book No 14 page 633 & and 630 &c. the 14th day of April A. D. 1883 and the other in deed book No 15 page 46 &c the 14th day of April A. D. 1883.

This that certain lot piece or parcel of land situate in the township of Overton, County of Bradford and State of Pennsylvania bounded and described as follows to wit: *Beginning* at the warrant corner of the Andrew Siddons, Peter Haga, and Nathan Haga and Peter Seeley warrants, thence south 33° West four hundred and forty eight rods to a corner of the said

Andrew Siddons 17
Peter Haga 12      } Reference Numbers on
Nathan Haga 14      } Overton Map
Peter Seeley 18      } Historical and Museum Commission

Andrew Giddens warrant and Peter Suley warrant and also in the line of the Joshua Lovely warrant, thence south 56° E. four hundred and thirty one rods to the corner of a lot or part of the George Scatator warrant contracted by James H. Haines to E. Floyd Kizer in the warrant line of Stephen Hollingsworth. Thence N. 29¼° E. two hundred and eighty three and one quarter rods to a hemlock; thence N. 54½° E. one hundred and fifty eight rods to a corner a post in the warrant line of Peter Haverton. Thence N. 56° W. four hundred and four rods to the place of beginning) Containing 997.8 acres be the same more or less including the Peter Suley, Jonathan Hampton and the west part of the George Scatator warrants, and excluding the lands and of the George Scatator warrant contracted or before mentioned to E. Floyd Kizer. The hemlock bark on the piece hereby conveyed having been stripped and removed. Being the same lands conveyed to the grantor herein by James H. Haines et ux by deed bearing date the 28th day of September A.D. 1884 and recorded in the office for recording deeds &c in Bradford county in deed book Vol 172 page 39 &c. the 29th day of Sept. A.D. 1884.

End of land descriptions

Reservation

And the said grantors herein Thomas C. Proctor and Jonathan A. Hill hereby expressly reserve, and save to themselves their heirs and assigns, all the minerals, coal, oil, gas or petroleum found now or hereafter in or under the surface of any or all of the lands described in each of the above mentioned parts or division and conveyed by these Indentures. Together with the right and privilege of ingress egress and regress upon said lands for the purpose of prospecting for or developing or working or removing the same.

Reservation

And subject to the above mentioned reservation the said premises are hereby granted and all the estate right title interest property, claim and demand whatsoever both in law and equity of the said parties of the first part of, in to or out of the same, and every part and parcel thereof.

To have and to hold the said premises with all and singular the appurtenances thereof saving the reservation mentioned unto the said party of the second part, its successor or successors, and assigns, to and for the only proper use and behoof of the said party of the second part its successor or successors and assigns forever.

Warranty

And the said Thomas C. Proctor and Jonathan A. Hill for themselves their heirs executors and administrators do by these presents covenant grant and agree to and with the said Union Tanning Company its successor or successors and assigns, that they the said Thomas C. Proctor and Jonathan A. Hill and their heirs all and singular the hereditaments and premises herein before described and granted or mentioned and intended so to be unto the said Union Tanning Company its successor or successors, and assigns against them the said

Case: 22-1587   Document: 14-2   Page: 208   Date Filed: 06/07/2022

PGCP 013894

JA372

J4.013

Thomas C. Proctor and Jonathan A. Hill and their heirs and against all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof shall and will by these presents warrant and forever defend.

In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

Witness                              Thomas C. Proctor (seal)
Willard Dalrymple to                 Emma H. Proctor (seal)
Thos. C. and Emma H. Proctor.        Jonathan A. Hill (seal)
Witness to                           Lucy M. Hill (seal)
Jonathan and Lucy Hill signature
A. C. Blackwell

State of Pennsylvania  }
County of Bradford  } ss.

On the 27th day of October in the year of our Lord one thousand eight hundred and ninety four, before me the subscriber a Recorder of Deeds in and for the said County personally appeared Jonathan A. Hill and Lucy M. his wife and acknowledged the foregoing Indenture to be their act, and deed and desired the same might be recorded as such. And she said Lucy M. being of full age and separate and apart from her husband by me examined and the full contents of said Indenture being by me first made known to her, declared upon such separate examination that she did voluntarily and of her own free will and accord sign seal and as her act and deed delivered the said Indenture without any coercion or compulsion on the part of her said husband.

Witness my hand and official seal.
A. C. Blackwell,
Recorder.

(Recorder's seal)

State of Massachusetts  }
City of Boston  } ss.

On the ninth day of November in the year of our Lord one thousand eight hundred and ninety four, before me the subscriber a Notary Public in and for said City and State personally appeared the before named Thomas C. Proctor and Emma H. his wife and acknowledged the foregoing Indenture to be their act and deed and desired the same might be recorded as such. And she said Emma H. being of full age and separate and apart from her husband by me examined and the full contents of said Indenture being by me first made known to her declared upon such separate examin-

...tion that she did voluntarily and of her own free will and accord sign seal and as her act and deed deliver the said Indenture, without any coercion or compulsion on the part of her said husband.

Witness my hand and notarial seal.

Willard Dalrymple
Notary Public.

*(notarial seal)*

Recorded Jan'y 23d 1895

Joseph H. Martin et ux
} 
John J. Kerrick

This Indenture made the twenty third day of January in the year of our Lord one thousand eight hundred and ninety five Between Joseph H. Martin and Anna B. his wife of the Borough of Towanda, County of Bradford and State of Pennsylvania of the first part and John J. Kerrick of the same place of the second part. Witnesseth that the said party of the first part for and in consideration of the sum of One Thousand five hundred dollars lawful money of the United States of America, well and truly paid by the said party of the second part to the said party of the first part, at and before the sealing and delivery of these presents the receipt whereof is hereby acknowledged have granted bargained sold aliened enfeoffed released conveyed and confirmed and by these presents do grant bargain sell alien enfeoff release convey and confirm unto the said party of the second part his heirs and assigns

All that certain lot piece or parcel of land lying and being in the Borough of Towanda County of Bradford and State of Pennsylvania and bounded and described as follows viz: Beginning at a stake on the East side of Main Street three rods ...

*(several lines illegible handwriting)*

520

personally appeared C. W. Farr, the attorney named in the foregoing indenture or deed of conveyance and by virtue and in pursuance of the authority therein conferred upon him acknowledged the said [illegible] or deed of conveyance to be the [illegible] stone Lumber Company.

Witness my hand and Not[illegible] year aforesaid.

J. N. [illegible]

Official seal.

My [illegible] From[illegible]

Recorded June 11 1903
Wm J. McCabe Recorder.

**JOINT EXHIBIT**

**5**

**Commonwealth of Penn. v. Thomas E. Proctor Heirs Trust et al.**

**No. 1:12-cv-1567**

CERTIFIED FROM ORIGINAL RECORD
THIS 25 August 2020
Shirley M. Johnson
Recorder of Deeds

Union Tanning Company,
Deed to
Central Pennsylvania
Lumber Company

This Indenture, Made the twenty fifth day of May in the year of our Lord one thousand nine hundred and three (1903)

Between the Union Tanning Company, a corporation organized and existing under the laws of the State of Pennsylvania, of the first part, and Central Pennsylvania Lumber Company, a corporation organized and existing under the laws of the State of Pennsylvania of the second part.

Whereas the articles of association of the Union Tanning Company authorizing and empowering its Board of Directors to grant, bargain, sell, lease and convey any and all real estate of said Company without the consent of a majority of the stock in said company, such [illegible] sale, lease or conveyance [illegible] the same, the [illegible] notice of meeting [illegible] [illegible]

[illegible] that the [illegible] authority [illegible]

[illegible]

521

Five Directors;

And Whereas, at a meeting of the Board of Directors of the Union Mining Company held was held at the office of the Company, in Wilsey Pa in *[illegible]* Twenty fifth day of May A.D. 18__ *[illegible]* upon the resolution vote of five Directors, Resolved that the Union Mining Company did and sell convey unto the said *[illegible]* Company, its successors and assigns, the land *[illegible]* described, at and for the amount *[illegible]* *[illegible]* other good and valuable consideration, and *[illegible]* *[illegible]* the *[illegible]* and *[illegible]* *[illegible]*, and the President of *[illegible]* President and Secretary, *[illegible]* and *[illegible]* to make *[illegible]* and *[illegible]* *[illegible]* *[illegible]*

*[several lines illegible]*

*[large block of illegible handwritten text]*

*[illegible]* John *[illegible]*, 53.0 *[illegible]*; John *[illegible]*, *[illegible]* 70.0 *[illegible]*;
*[multiple illegible lines with numbers]*

JA376

J5.002

522

S. Clapharmon 125.0 acres; George Eckert 460.0 acres;
Andrew Graydon 355.1 acres; Hendrick Getz 383.4 acres;
Hyman Gratz 290.6 acres; Michael Gratz 236.4 acres;
Simon Gratz 220.0 acres; Charles Hall 477.0 acres;
Josiah Haines 410.5 acres; Joseph Henry 444.4 acres;
Peter S. Kloge 412.0 acres; John Sutter 341.3 acres;
Benj. Pennington 486.0 acres; James Shoemaker 452.6 acres;
Joseph Lenbro 304.0 acres; William Wilson 486.4 acres;
Geo Glentworth 431.0 acres; James Betz 386.9 acres;
John Betz 385.2 acres; Geo. Casteller 179.4 acres;
Henry Cobley 104.0 acres; John Fritz 214.0 acres;
Samuel Fritz 377.3 acres; Jonathan Plumpton 435.0 acres;
James Harley 406.4 acres; Jonathan Seiler 438.7 acres;
Peter Seiley 383.5 acres;

Containing Sixteen thousand three hundred fifty nine
three tenths (16,350.3) acres of land more or less,
situate in

Barring, LeRoy and Overton Townships
and being part of the same land surveyed and
particularly mentioned in deed from Proctor & Hill to
Union Canning Company, their letters 3rd & 4th and
recorded in Bradford County in deed book Vol. 200,
page 436, on January 23rd A. D. 1895.

Second:- Four hundred and forty eight (448.0) acres
of land, more or less, part of the Phebe Moore and
Andrew Lyant tracts, situated in

Albany and Overton Townships
and being part of the same land bargained and
particularly mentioned in deed from Proctor & Hill
to the Union Canning Company, letter letter 5th &
1808, and recorded in Bradford County in deed
book Y & 201, line 195, March 12th, 1808.

Third:- Three hundred fifty four acres, known as,
M. Smith,                        Wm. Cleary,
Geo. Smith,                      Matthias Kruse,
Henry Betz,                      Andrew Stadler,
Jacob Moore,                     John Moore,
E. Shaterer Jr.                  Jacob Kruse,
John Simpson,                    John Kruse,
            Wm. Kintner

Containing Twenty three hundred fifty four acres
more or less of land more or less, situated

JA377

523

## Canton and Leroy Townships

and being part of the same lands conveyed and particularly mentioned in deed from D. Cross et al to the Union Tanning Company, dated December 7th 1893, and recorded in Bradford County in Deed Book Vol. 291, page 204, on March 10th 1894.

Fourth: For part of the Andrew Lyon Tract, containing thirty two (32) acres of land, more or less, situate in

## Wadsley Township

and being same land above particularly mentioned in deed from J. C. Weldon, Receiver, to the Union Tanning Company, dated June 13th 1898 and recorded in Bradford County in Deed Book Vol. 288, page 96, on December 1st 1898.

Reserving and Excepting, nevertheless, unto the twenty in fee first coal, for excepting and reserving all the Hemlock Bark, rock oak bark and chestnut oak bark upon said lands, timber and trees, with the rights of ingress, egress and regress for the purpose of cutting, hewing, curing, piling, storing and removing said bark in the usual and ordinary manner at any and all times within the term of twenty (20) years from the date hereof, and with the right to erect and construct thereon, from and after coming upon said lands for said bark harvest, and to construct such railroad roads, tram roads and railroad roads, over and across the same, for the purpose of hauling, snaking and removing said bark and other timber and materials from time to time as they choose, to any water course, and also, the further so ...

[remaining lines illegible]

J5.004

JA378

the parties hereto, that the party of the first part, its successors and assigns, by reason of its ownership in the bark and bark rights therein reserved, hereby covenants and agrees to pay the one third part of any and all lawful taxes which may be assessed and levied against any of said tracts of land upon which there is hemlock bark, chestnut oak bark or rock oak bark, until said bark is removed therefrom, by written notice given to the party of the second part, its successors or assigns of such removal and the possession of each tract the same for such purposes is surrendered, then all liability of the party of the first part, its successors or assigns, for the payment of taxes thereon, shall cease and determine.

And the party of the second part for itself and its successors and assigns, hereby covenants and agrees to pay all remaining taxes upon said lands, timber and bark during the joint possession [illegible] including all taxes that may be levied and assessed upon any increased valuation by reason of improvements [illegible] made on said lands.

This deed is made, executed, delivered and accepted for the purpose of vesting in the party of the second part, its successors and assigns, all the right, title, interest and estate, but no greater than is now held and owned by the [illegible] Company, of, in, and to the above hereinbefore mentioned land, timber, trees and bark thereon, [illegible] in the exceptions, reservations, covenants, [illegible] agreements and conditions contained in the [illegible] hereinbefore [illegible], and subject [illegible] to all the exceptions, reservations, covenants, [illegible] agreements and conditions hereinbefore [illegible].

Together with all and singular the [illegible] [illegible] and [illegible] thereunto belonging or in anywise appertaining, and the reversions and remainders, [illegible] and [illegible], rents, issues and profits [illegible] and all the estate, right, title, interest, property, claim and demand whatsoever, both in law and equity, of the said party of the first part, of, in, [illegible] of the said premises, [illegible]

525

To have and to hold the said premises, with all and singular the appurtenances unto the said party of the second part, its successors and assigns, to and for the only proper use and behoof of the said Party of the second part, its successors and assigns forever, subject to the exceptions and reservations herein above mentioned.

And the said Union Tanning Company for itself and its successor and successors, does hereby covenant and agree to and with the said Central Pennsylvania Lumber Company, its successors or assigns, that it the said Union Tanning Company and its successor and successors, all and singular the hereby granted premises with the appurtenances unto the said Central Pennsylvania Lumber Company, its successors or assigns against it the said Union Tanning Company and its successors, and against all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or through or under the said Union Tanning Company, shall and will by these presents warrant and forever defend.

The Union Tanning Company doth hereby constitute and appoint C. S. Schieffelin to be its attorney for it, and in its name and as and for its corporate act and deed to acknowledge the within indenture or deed of conveyance before any person having authority by the laws of the Commonwealth of Pennsylvania to take such acknowledgment, to the intent that the same may be duly recorded.

In testimony whereof the Union Tanning Company has hereunto set their hands and affixed the corporate seal of the said Union Tanning Company the day and year first above written.

Signed, sealed and delivered Union Tanning Company, in the presence of    per, C. S. Schieffelin
                                                            Vice President.

Corporate Seal    Attest A. E. Brookfork
                                    Secretary.

526

State of Pennsylvania } ss.
County of Elk
I hereby certify that on this Twenty fifth day of May in the year of our Lord one thousand nine hundred and three (1903) before me, the subscriber, a Notary Public in and for said County and State personally appeared C. V. Schluigin the attorney named in the foregoing Indenture or deed of Conveyance, and by virtue and in pursuance of the authority there conferred upon him acknowledged the said Indenture or deed of Conveyance to be the act of the said Union Tanning Company.
Witness my hand and Notarial Seal the day and year aforesaid.

Jes. E. Whitney
Notary Public

Notarial Seal.                    My Commission expires
                                 March 2d 1907.

Recorded June 1905.
V. J. Woods Recorder.

---

Fred L. Willis et ux
Deed to
Theron Elmore

This Indenture Made the First day of May in the year our Lord one thousand Eight hundred and sixty seven

Between Fred L. Willis and Mary his wife of the Town of Athens, County of Bradford and State of Pennsylvania of the first part, and Theron Elmore of the same place of the Second part:

Witnesseth That the said party of the first part for and in consideration of the sum of

Three Thousand dollars

lawful money of the United States of America, well and truly paid by the said party of the second part, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, released

JA381

520

251-520

personally appeared C. A. Farr, the attorney named in the foregoing indenture or deed of conveyance and in virtue and in pursuance of the authority therein conferred upon him acknowledged the said indenture or deed of conveyance to be the act of the said Keystone Lumber Company.

Witness my hand and Notarial seal the day and year aforesaid.

J. N. Fissell
Notary Public
My commission expires
February 27. 1905.

Official Seal

Recorded June 11. 1903
Wm. D. McCabe, Recorder.

---

Union Lumber Company

Deed to

Central Pennsylvania
Lumber Company

This Indenture, Made the twenty fifth day of May in the year of our Lord, one thousand nine hundred and three (1903)

Between the Union Lumber Company a corporation organized and existing under the laws of the state of Pennsylvania, of the first part, and Central Pennsylvania Lumber Company a corporation organized and existing under the laws of the state of Pennsylvania of the second part.

Whereas the articles of Association of the Union Lumber Company authorizes and empowers the Board of Directors to grant, bargain, sell, lease and convey any and all real estate of said Company without the consent of a majority of the stock in value consenting and assenting to such sale, lease or conveyance, before making the same, the thirty days notice of meeting of stockholders and the consent of said stockholders evidenced by their written signatures as required by law being required, And whereas the By Laws of the Union Lumber Company provide that the sale or authority to sell the same shall require the appointment etc. of

five Directors.

And Whereas, at a meeting of the Board of Directors of the Union Tanning Company called and held at the office of the Company at Ridgway Pa. on the twenty fifth day of May A. D. 1903, it was upon the affirmative vote of five Directors, Resolved that the Union Tanning Company sell and convey unto the said Central Pennsylvania Lumber Company, its successors and assigns, the land hereinafter described, at and for the sum of One Dollar and divers other good and valuable consideration, subject to the reservations and conditions hereinafter stated, and the President or Vice President and Secretary were authorized and directed to make, execute and deliver a proper deed of conveyance therefor.

Now Therefore, This Indenture Witnesseth, That the said Union Tanning Company, for and in consideration of the sum of

One Dollar and divers other good & valuable consideration

lawful money of the United States of America to the Treasurer of the Union Tanning Company, in hand paid, at and before the execution and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, aliened, released, conveyed and confirmed, and by these presents doth grant, bargain, sell, alien, release, convey and confirm unto the said Central Pennsylvania Lumber Company, its successors and assigns, All those certain tracts, lots or pieces of land situate, lying and being in the township of _____ County, Pennsylvania, to wit: _____

Tracts known and laid out in their known as:

John Adam, 531.6 acres;    John Barron, Sr. 443.3 acres

John Barron, Jr. 444.2 acres;   Jacob _____,   ___.0 acres

Wm. M. Bradd, 457.0 acres;    James _____ 437.0 acres

Albert Griffin, 521.0 acres;   Jacob _____   370. acres

Robert Haltzheimer 512.4 acres;   Thos. Haltzheimer   ___ acres

William Parker 420.7 acres;    Collinson Read   ___.0 acres

James _____ 419.9 acres;   Andrew Labont   175.5 ___

John Parker   319.0 acres;   Clement Weddle   ___.0 ___

_____ 467 acres   Peter Boynton   ___.0 ___



**JA384**

Canton and Leroy Townships

and being part of the same lands conveyed and particularly mentioned in deed from J. Andrews et al to the Union Tanning Company, dated December 9th, 1893 and recorded in Bradford County in Deed Book Vol. 203, Page 284, on March 16th, 1894.

Fourth: For part of the Andrew Lybart Tract, containing thirty two (32) acres of land, more or less, situate in

Rahley Township

and being same land surveyed and particularly mentioned in deed from J. _____ to the Union Tanning Company, dated June 13th, 1898 and recorded in Bradford County, in Deed Book Vol. 203, Page 56, on September 17th, 1898.

Reserving and Excepting, nevertheless, unto the party of the first part, its successors and assigns, all the hemlock bark, rock oak bark and chestnut oak bark upon said lands, timber and trees, with the rights of ingress, egress and regress for the purpose of cutting, peeling, curing, piling, storing and removing said bark in the usual and ordinary manner at any and all times within the period of twenty-five (25) years from the date hereof, and with the right to erect and maintain sheds, barns and other buildings upon said lands for such bark purposes, and to construct and maintain roads, tram roads and railroads through, over and across the same, for the purpose of hauling, shipping and transporting bark and other freights and supplies from and to their lands or any other lands, and with the further full and free right to cut, take and use such trees and timbers without liabilities therefor, as may be necessary and proper for the erection and maintenance of such barns, sheds and buildings and the construction and maintenance of said roads, tram roads and railroads, and with the right and privilege of taking and removing any and all of said property and improvements at any and all times during the aforesaid term of twenty-five years.

And it is further understood and agreed by and be-



To have and to hold the said premises with all and singular the appurtenances unto the said party of the second part, its successors and assigns to and for the only proper use and behoof of the said party of the second part, its successors and assigns forever, subject to the exceptions and reservations herein before mentioned.

And the said Union Tanning Company for itself and its successor and successors, doth hereby covenant and agree to and with the said [illegible] Company, its [illegible] and assigns, that it, the said Union Tanning Company and its successor and successors, all and singular the hereby granted premises with the appurtenances unto the said Central Pennsylvania Lumber Company, its successors and assigns against it the said Union Tanning Company and its successors, and against all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from, through or under the said Union Tanning Company, shall and will by these presents warrant and forever defend.

The Union Tanning Company doth hereby constitute and appoint A. C. Schieffelin to be its attorney for it, and in its name and as and for its corporate act and deed to acknowledge [illegible] this present [illegible] or deed of conveyance, before [illegible] having authority by the laws of the Commonwealth of Pennsylvania to take such acknowledgment, to the intent that the same may be duly recorded.

In Testimony Whereof the [illegible] officers of the said Union Tanning Company has executed set their hands and affixed the corporate seal of the said Union Tanning Company the day and year first above written.

Signed, Sealed and Delivered    Union Tanning Company,
in the presence of              By: A. C. Schieffelin
                                        Vice President

    Corporate Seal    Attest: A. C. Welchford
                                        Secretary

State of Pennsylvania } ss
County of [illegible] }

I hereby certify that on this Twenty fifth day of May in the year of our Lord one thousand nine hundred and three [illegible] before me [illegible] a Notary Public in and for said County and State personally appeared C. H. [illegible] the Attorney in the foregoing Indenture or deed of conveyance by [illegible] and by pursuance of the authority therein conferred upon him acknowledged the said Indenture or deed of conveyance to be the act of the said [illegible]

Witness my hand and Notarial seal the day and year aforesaid.

Jno. G. Whitmore
Notary Public
My Commission Expires
March 30th 1907

Official seal

Recorded June 11 1903
W. J. [illegible] Recorder

| | |
|---|---|
| Fred L. Willis et ux<br>Deed to<br>Theresa Clabise | This Indenture, Made the First day of May in the year of our Lord one thousand eight hundred and sixty seven |

Between Fred L. Willis and Theresa his wife of the Boro of Athens, County of Bradford and State of Pennsylvania of the first part, and Theresa Clabise of the same place of the second part.

Witnesseth That the said party of the first part for and in consideration of the sum of
Three thousand dollars
lawful money of the United States of America well and truly paid by the said party of the second part to the said party of the first part at and before the ensealing and delivery of these presents the receipt whereof is hereby acknowledged [illegible]

376

342

Sworn and subscribed the nineteenth day of March A.D. 1921 before me,

Clarence H. Boehm

Notary Public

Notarial seal    My commission expires March 9, 1923

$3.00 Rev. stamp

RECORDED APRIL 29, 1921

*Fred R. Prince*

RECORDER

ELLA AYERS
TO
MARSHALL B. WHEELER JR

THIS DEED Made the twenty ninth day of July in the year nineteen hundred and nineteen. Between Ella Ayers (widow) of Middleton, New York, Grantor, and Marshall B. Wheeler, Jr., of North Towanda township, Bradford county, Pa. grantee. WITNESSETH, That in consideration of

ONE (1) DOLLAR

in hand paid, the receipt whereof is hereby acknowledged, the said grantor does hereby grant and convey to the said grantee, all that certain lot, piece or parcel of land, situate in the

TOWNSHIP OF NORTH TOWANDA

county of Bradford and state of Pennsylvania, bounded and described as follows:  Beginning in center of road leading from Towanda to Ulster at corner of Frank Johnson's lot, easterly 120 feet to a corner of Johnson's lot; thence north 150 feet to a corner of Clara Ayers Myers lot; thence westerly 120 feet to center of road aforementioned and corner of Clara Ayers Myers lot; thence south 150 feet to starting point. Being part of the same land conveyed by Helen Lindley to J. Monroe Ayers by deed dated the fourth day of November 1892 and recorded in Bradford county in deed book Vol. 194 at page 339 and by J. Monroe Ayers to Mrs. Ella Ayers May 13th, 1914, by deed recorded in Bradford county in deed book 318 at page 4 etc.  All taxes assessed during 1919 to be paid by the grantee

And the said grantor does hereby WARRANT GENERALLY the property h

In witness whereof, the said grantor has hereunto set her hand an year first above written.

Signed sealed and delivered in

the presence of

D. A. McNeal

ELLA AYERS

STATE OF PENNSYLVANIA

COUNTY OF BRADFORD        SS.  On this 29th day of July A.D. 1919 Public in and for said county, came the above named Ella Ayers and ack going deed to be her act and deed and desired the same to be recorded

Witness my hand and notarial seal the day and year aforesaid.

David A. McNeal

Notarial seal        Notary Public

My commission expires Mar. 9th, 1923

RECORDED APRIL 29, 1921

*Fred R. Prince*

RECORDER

JOINT EXHIBIT

6

Commonwealth of Penn. v. Thomas E. Proctor Heirs Trust et al.

No. 1:12-cv-1567

CENTRAL PENNSYLVANIA LUMBER COMPANY
TO
THE COMMONWEALTH OF PENNSYLVANIA

THIS INDENTURE Made this fourteenth day of December in the year of our Lord one thousand, nine hundred and twenty. Between the Central Pennsylvania Lumber Company, a corporation created by and existing under the laws of the Commonwealth of Pennsylvania, having its domicile in the City of Williamsport, county of Lycoming and state of Pennsylvania, Party of the first part, and the Commonwealth of Pennsylvania, party of the second part. WITNESSETH; That the said party of the first part, for and in consideration of the sum of

EIGHTEEN THOUSAND SEVEN HUNDRED AND THIRTY TWO AND 25/100 ($18,732.25) DOLLARS

CERTIFIED FROM ORIGINAL RECORD

THIS 25 August 2020

*Linda Wilcox*

Recorder of Deeds

342                                                                                                         377

lawful money of the United States, unto it well and truly paid by the said party of the
second part, at or before the sealing and delivery of these presents, the receipt whereof is
hereby acknowledged, hath granted, bargained, sold, aliened, enfeoffed, released, conveyed
and confirmed and by these presents doth grant, bargain, sell, alien, enfeoff, release,
convey and confirm unto the said party of the second part, its successors and assigns forever

All that certain tract or piece of land situate, lying and being in the

TOWNSHIPS OF LEROY AND BARCLAY

iN the County of Bradford and State of Pennsylvania, and bounded and described as follows,
to wit:- Beginning at a stone corner marking the northeast corner of the Joseph Henry
warrant and the northwest corner of the James Biddle warrant; thence by the line between the
Joseph Henry and James Biddle warrants, S. 4° 30' W. one hundred and ninety (190) rods to
a post in the east line of the Joseph Henry warrant, said post also marking the southwest
corner of the James Biddle warrant; thence by the south line of the said James Biddle
warrant and the north line of the William Parker and John Barron, Jr. warrants, S. 86° E.
three hundred and seventy one (371) rods to a post; thence by a line between the Joanna
Carey warrant and the John Barron, Jr., warrant, S. 40° E. one hundred and ninety four (194)
rods to a post and stones corner in the west line of the William Govett warrant, said corner
also being the most easterly corner of the John Barron, Jr. warrant; thence by the line
between the William Govett and John Barron, Jr. warrants, S. 34° W. one hundred and forty
(140) rods to a fallen Maple, said Maple marking the southwest corner of the William Govett
warrant; thence by the line between the Andrew Tybout and the John Barron Jr. warrants,
N. 58° W. 63.5 rods to a beech marking the most northerly corner of the Andrew Tybout
warrant; thence continuing along line between the Andrew Tybout and John Barron, Jr.
warrants, S. 34° W. one hundred thirty three and six tenths (133.6) rods to a stone corner
in the east line of the Robert Irwin warrant; thence by the line between the Robert Irwin
and John Barron, Jr. warrants, N. 33° W. two hundred and twelve (212) rods to a stone
corner marking the most northerly corner of the Robert Irwin warrant, also the northeast
corner of the John Adlum warrant; thence by the east line of the John Adlum warrant and the
west line of the Robert Irwin warrant, S. 4° W. three hundred and ninety five (395) rods to
a post marking the southeast corner of the John Adlum warrant; thence by the south line of
the John Adlum warrant and the north line of the Jacob Hiltzheimer warrant N. 85° 15' W.
two hundred eighteen and four tenths (218.4) rods to a post, said post marking the southwest
corner of the John Adlum warrant and the northwest corner of the Jacob Hiltzheimer warrant;
thence by the east line of the Mark J. Biddle warrant and the west line of the Jacob
Hiltzheimer warrant, S. 2° 15' W. three hundred and sixty nine (369) rods to a post in the
north line of the Robert Hiltzheimer warrant, said post marking the southeast corner of the
Mark J. Biddle warrant; thence by the north line of the Robert Hiltzheimer warrant and the
south line of the Mark J. Biddle warrant, N. 85° W. one hundred ninety one and five tenths
(191.5) rods to a hemlock in the east line of the John Barron warrant, said hemlock also
marking the northwest corner of the Robert Hiltzheimer warrant; thence by the east line of
the John Barron warrant and the west line of the Robert Hiltzheimer warrant S. 2° 15' W.
fifteen (15) rods to a beech marking the northeast corner of the James Collins warrant;
thence by the south line of the John Barron, Benjamin Pennington and Andrew Grayden warrants
and the north line of the James Collins, William M. Biddle and Peter Boynton warrants,
N. 86° W. seven hundred and seventy six (776) rods to a point in the line between the
Andrew Graydon and Peter Boynton warrants; thence by lands now or formerly of J. Mills,
Joseph Mills, Christopher Smith and L. Wilcox, N. 4 1/2° E. two hundred and seventy one
(271) rods to a beech marking the northeast corner of the said L. Wilcox lot; thence by the
north line of the said Wilcox lot, N. 85° 15' W. eighty eight (88) rods to a post marking
the northwest corner of the said Wilcox lot; thence by the west line of the said Wilcox
lot, S. 4° 30' W. eighty five (85) rods to a post marking the southwest corner of the said
Wilcox lot, said post being also in the north line of the John Patton warrant; thence by the
line between the Hiram Gratz and John Patton warrants, N. 85° 15' W. ninety (90) rods to a

JA390

378                                    342

post, said post marking the southwest corner of the Hiram Gratz warrant and the southeast
corner of the Simon Gratz warrant; thence by the line between Simon Gratz and Hiram Gratz
warrants, N. 4° 30' E. one hundred and ninety seven (197) rods to a post, said post marking
the northwest corner of the Hiram Gratz warrant; thence by the south line of the Joseph
Simmons warrant and the north line of the Hiram Gratz warrant, S; 85° 15' E. ninety (90)
rods to a birch, said birch marking the southeast corner of lot of land now or formerly of
R. Stone; thence by lands of the said R. Stone, the three following courses and distances,
viz; N. 4° 30' E. eighty six and three tenths (86.3) rods to a stone corner; S. 85° 30' E.
four (4) rods to a post corner; N. 4° 30' E. eighty two and four tenths (82.4) rods to a
post in the south line of the Bernard Gratz warrant; thence by the south line of the Bernard
Gratz warrant and the north line of the Stone lands, N. 85° 30' W. ninety four (94) rods to
a post in the east line of the Henry Antes warrant; thence by line of the Henry Antes war-
rant and line of the Bernard Gratz warrant, N. 4° 30' E. seventeen and four tenths (17.4) r
rods to a post marking the northeast corner of the Henry Antes warrant and line of the
Bernard Gratz warrant; N. 85° 30' W. ninety eighty (98) rods to a birch marking the south-
west corner of the Bernard Gratz warrant; thence by the east line of the William Wister
warrant and the west line of the Bernard Gratz warrant, N. 4° 30' E. one hundred twenty six
and two tenths (126.2) rods to a post marking the northwest corner of the Bernard Gratz
warrant; thence by the north line of the Bernard Gratz warrant and the south line of the
lands now or formerly of Bellows and Wilcox, S. 86° 20' E. four hundred (400) rods to the
southeast corner of the said Bellows and Wilcox lands; thence by the east line of the said
Bellows and Wilcox lands, N. 4° 15' E. fifty three (53) rods to a post marking the south-
west corner of the Henry Beck warrant; thence by the south line of the Henry Beck warrant
north 81° E. three hundred thirty three and seven tenths (333.7) rods to a post and stones
marking the southeast corner of the Henry Beck warrant; thence by the east line of the
Henry Beck warrant and the west line of lands of the Central Pennsylvania Lumber Company,
N. 5° E. three hundred and fifty nine (359) rods to a point in the south line of the said
James Clamphampson warrant; thence by the south line of the said James Clamphampson warrant
N. 72° E. one hundred and eight (108) rods to a post and stones, said post and stones
marking the northwest corner of land now or formerly of M. Mott; thence by the west line of
the said Mott lands and lands now or formerly of E. Halcomb, S. 5° W. one hundred seventy-
two and three tenths (172.3) rods to a post in the north line of the Michael Gratz warrant;
thence by the north line of the Michael Gratz warrant, S. 85° 30' E. seventy eight (78) rods
to a post in the west line of the Joseph Henry warrant, said post marking the southeast
corner of the said Halcomb lot; thence by the west line of the Joseph Henry warrant and the
east line of the said Halcomb lot, N. 5° E. one hundred (100) rods to a post marking the
northwest corner of the Joseph Henry warrant; thence  by the north line of the Joseph Henry
warrant and the south line of the Henry Beck warrant, S. 86° E. three hundred and sixty-
nine (369) rods to the place of beginning. CONTAINING IN ALL
    SEVEN THOUSAND FOUR HUNDRED NINETY AND NINE TENTHS (7492.9) ACRES.
And being composed of the whole or portions of the following warrants, viz:
    1.  Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793 granted to
Joseph Henry, for which Letters Patent were granted to John Brodhead, dated June 27, 1794,
enrolled at Harrisburgh in Patent Book P. Vol. 22, page 122.
    2.  Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793 granted to
John Barron, Jr., for which Letters Patent were granted to John Brodhead, dated June 26,
1794, enrolled at Harrisburgh in Patent Book P. Vol. 22, page 116.
    3.  Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793 granted to
Clement Biddle, for which Letters Patent were granted to John Brodhead, dated June 26, 1794,
enrolled at Harrisburg in Patent Book P, Vol. 22, page 122.
    4.  Tract of land surveyed in pursuance of warrant dated April 17, 1792 granted to
Benjamin Pennington, for which Letters Patent were granted to John Brodhead dated June 25,
1794, enrolled at Harrisburg in Patent Book P. Vol. 22, page 113.

JA391

5. Tract of land surveyed in pursuance of warrant dated July 22, 1793 granted to Hyman Gratz, for which Letters Patent were granted to John Brodhead, dated June 26, 1794, enrolled at Harrisburg in Patent Book P, Vol. 22, page 121.

6. Tract of land surveyed in pursuance of warrant dated April 17, 1792, granted to James Shoemaker, for which Letters Patent were granted to John Brodhead, dated June 25, 1794 enrolled at Harrisburg in Patent Book P, Vol. 22 page 112.

7. Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793, granted to John Boyd, for which Letters Patent were granted to John Brodhead, dated June 25, 1794, enrolled at Harrisburg in Patent Book P, Vol. 22, page 114.

8. Tract of land surveyed in pursuance of warrant dated April 17, 1792, granted to John Barron, Jr., for which Letters Patent were granted to John Brodhead dated June 25, 1794 enrolled at Harrisburg in Patent Book P, Vol. 22, page 117.

9. Tract of land surveyed in pursuance of warrant dated Jan. 22, 1794 granted to William Wilson, for which Letters Patent were granted to John Brodhead, dated June 26, 1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 332.

10. Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793 granted to Josiah Haines, for which Letters Patent were granted to John Brodhead, dated June 27, 1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 326.

11. Tract of land surveyed in pursuance of warrant dated Jan. 22, 1794, granted to Charles Hall, for which Letters Patent were granted to John Brodhead, dated June 26, 1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 331.

12. Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793, granted to Joseph Simons, for which Letters Patent were granted to John Brodhead, dated June 27, 1794 enrolled at Harrisburg in Patent Book P, Vol. 21, page 330.

13. Tract of land surveyed in pursuance of warrant dated April 17, 1792, granted to Mark I. Biddle, for which Letters Patent were granted to John Brodhead, dated June 24, 1794 enrolled at Harrisburg in Patent Book P, Vol. 21, page 327.

14. Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793, granted to Bernard Gratz, for which Letters Patent were granted to John Brodhead, dated June 25, 1794, enrolled at Harrisburg in Patent Book P, Vo, 21, page 320.

15. Tract of land surveyed in pursuance of warrant dated Jan. 27, 1793 granted to William Parker, for which Letters Patent were granted to John Brodhead, dated June 27, 1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 325.

16. Tract of land surveyed in pursuance of warrant dated April 17, 1792, granted to John Adlum, for which Letters Patent were granted to John Brodhead, dated June 24, 1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 328.

17. Tract of land surveyed in pursuance of warrant dated April 17, 1792, granted to Andrew Graydon, for which Letters Patent were granted to John Brodhead, dated June 25, 1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 326.

18. Tract of land surveyed in pursuance of warrant dated April 7, 1792, granted to Collison Reed, for which Letters Patent were granted to John Brodhead, dated June 25,1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 327.

19. Tract of land surveyed in pursuance of warrant dated Jan. 22, 1793, granted to Michael Gratz, for which Letters Patent were granted to John Brodhead, dated June 25, 1794, enrolled at Harrisburg in Patent Book P, Vol. 21, page 320.

The title to the said described tract of land having become vested in the Central Pennsylvania Lumber Company, the grantor herein, by virtue of deed from the Union Tanning Company, dated May 25, 1903, of record in the Recorder's office of Bradford county in deed book Vol. 251, page 52.

See also deed from Calvin H. McCauley, Jr. to the Central Pennsylvania Lumber Company, dated Dec. 6, 1910, of record as aforesaid in deed book Vol. 300, page 401.

This conveyance is made subject to all the minerals, coal, oil, gas or petroleum found

380

342

now or hereafter on, or under the surface or any or all of the lands described in each of the above mentioned parts or divisions; together with the right and privilege or ingress, egress and regress upon said lands for the purpose of prospecting for, or developing, working or removing the same, as fully as said minerals and mineral rights were excepted and reserved in deed dated Oct. 27, 1894, from Thomas E. Proctor et al to the Union Tanning Company, recorded in the Office for recordeing deeds in Bradford County in deed book Vol. 205, page 436.

Also subject to all the reservations, exceptions, covenants and stipulations contained in said recited Deed from Thomas E. Proctor et al to the Union Tanning Company, and in deed from the Union Tanning Company to the Central Pennsylvania Lumber Company, above recited, dated May 25, 1903, of record as aforesaid in deed book Vol. 251 page 520.

Also subject to the right of way of the Susquehanna and New York Railroad Company.

Also excepting and reserving unto the grantor, its successors and assigns, rights of way for wagon roads, sled roads, log slides and tramroads, tramroads, through, over and across the lands above described and hereby conveyed, for the purpose of removing timber and other wood products from other lands of said Grantor, its successors and assigns, for so long a time as the Lumber Company requires said privileges.

Also excepting and reserving unto the Grantor, its successors and assigns, a right of way fifty (50) feet in width for railroad purposes from a point on the line of the Susquehanna and New York Railroad to any mine or mines on the said described lands, with the right to take additional land for turn-outs, switches, cuts, slopes, etc.

Together with all and singular the improvements, ways, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said party of the first part, in law, equity or otherwise howsoever, of, in and to the same and every part thereof.

To have and to hold the said described tracts of land with the hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, its successors and assigns, to and for the only proper use and behoof of the said party of the second part, its successors and assigns forever.

The execution of this conveyance by the proper Officers of the said Corporation having been duly authorized by a resolution of the Board of Directors of the Central Pennsylvania Lumber Company at a meeting held on April 6, 1920; the Directors of said Company being specifically authorized and empowered to sell and convey any and all of the real estate of said Corporation by a provision in the Charter of said corporation.

And the said Central Pennsylvania Lumber Company doth hereby constitute and appoint R. G. Brownell to be its Attorney for it, and in its name, and as and for its corporate act and deed, to acknowledge this indenture before any person having authority by the laws of Commonwealth of Pennsylvania to take such acknowledgments, to the intent that the same may be duly recorded.

And the said party of the first apart, for itself, its successors and assigns, doth by these presents covenant, grant and agree to and with the said party of the second part, its successors and assigns, that it, the said party of the first part, its successors and assigns, all and singular the hereditaments and premises hereinabove described and granted, or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, its successors and assigns, all and singular the hereditaments and premises hereinabove described and granted, or mentioned and intendedso to be, with the appurtenances, unto the said party of the second part, its successors and assigns, against it, the said party of the first part, its successors and assigns, and against all and every other person or persons whomsoever, lawfully claiming or to claim the same, or any part thereof, by, from, through or under, SHALL AND WILL WARRANT AND FOREVER DEFEND.

342                                                                 381  3

In witness wher.of, the said party of the first part hath set its corporate seal, attested by its.President and Secretary, the day and year first above written.

CORPORATE SEAL    C.P.L CO    GENERAL PENNSYLVANIA LUMBER CO.
                  1-10-21
D.P.B.
A.R.S.                          BY .R. G. BROWNELL
ATTEST;                                      PRESIDENT
     W. M. SIMMONS
              SECRETARY

SUMMONWEALTH OF PENNSYLVANIA

COUNTY OF LYCOMING          SS, I hereby certify that on this 10th day of January in the year of our Lord, one thousand, nine hundred and twenty one, before me, a Notary Public in and for said county and state, personally appeared R. G. Brownell the Attorney named in the foregoing Indenture, and by virtue and in pursuance of the authority therein conferred upon him, acknowledged the foregoing indenture to be the act and deed of the said Pennsylvania Lumber Company.

     Witness my hand and official seal the day and year aforesaid.

                              Will L. McCloskey
                              Notary Public    Notarial seal
     My commission expires at end of Next Session of Senate.

$19.00 Rev. stamp
RECORDED  APRIL 29, 1921
     Fred R. Prince
          RECORDER

CHARLES STRUPPLER          THIS DEED  Made the fifth day of April in the year nineteen
     TO                 hundred and twenty one (1921), Between  Charles Struppler of
MARTIN O'CONNOR          Virginia, formerly of Herrick township, Bradford county, Pennsylvania, party of the first part, grantor, and Martin O'connor, of Herrick township, Bradford county, Pennsylvania, party of the second part, grantee.

WITNESSETH, That in consideration of

                    THIRTY TWO HUNDRED DOLLARS

in hand paid, the receipt whereof is hereby acknowledged, the said grantor does hereby grant and convey to the said grantee, his heirs and assigns, all that certain lot, piece, or parcel of land situate in the said

                    TOWNSHIP OF HERRICK

Bradford county, Pennsylvania, and bounded and described as follows, to wit: Bounded on the north by lands of C. L. Stewart and Edward Carr; on the west by lands of William McKanna and Dennis Hays; on the south by lands of John Warner and Lorin S. Westbrook, and on the east by lands of John Warner, E. Carr, deceased, and of C. L. Stewart.

                    CONTAINING ABOUT ONE HUNDRED ACRES

of land, more or less, and being the same lands conveyed by Jeremiah Anderson and wife to Charles Struppler by deed dated April 2, 1902, and recorded in deed book 250 at page 448.

     The Grantee to pay the 1921 taxes.

     In witness whereof, the said grantor has hereunto set his hand and seal the day and year first above written.                    CHARLES STRUPPLER        (SEAL)

Signed sealed and delivered in .
  the presence of
E. J. Barnes                    $3.50 Rev. stamp
M. P. Newell
STATE OF PENNSYLVANIA
COUNTY OF BRADFORD          SS;  On this 28th day of April A.D. 1921 before me a Notary Public in and for said county, came the above named Charles Struppler and acknowledged the for going deed to be his act and deed and desired the same to be recorded as such.

     Witness my hand and official seal the day and year aforesaid.
                              H. P. Newell    My commission expires Feb.14
                              Notary Public            1925
     Notarial seal

*(left margin, rotated):* Recorded April 29, 1921 Fred R Prince Recorder

JA394

Page 6 of 6

355                                                                165

ELK TANNING COMPANY

TO

CENTRAL PENNSYLVANIA
LUMBER COMPANY

THIS DEED, Made the 30th day of December, A.D. one thousand nine hundred and twenty-four (1924), BETWEEN ELK TANNING COMPANY GRANTOR AND CENTRAL PENNSYLVANIA LUMBER COMPANY, grantee; both the grantor and the grantee being corporations, organized and existing under the laws of the Commonwealth of Pennsylvania.

WITNESSETH: That the said grantor, for and in consideration of the sum of One Dollar, to its Treasurer paid, the receipt whereof is hereby acknowledged, hath released and quit-claimed, and by these presents doth release and quit-claim unto the grantee, all the right, title, interest and estate of the said grantor, of, in and to ALL those certain tracts, warrants or parts of warrants of land, situate, lying and being in the County of Bradford and State of Pennsylvania, known and designated as follows, viz:

FIRST: Tracts in the Warrantee names of:

| | | | |
|---|---|---|---|
| John Adlum, | 535.6 acres; | John Barron, Sr., | 440.00 acres; |
| John Barron, Jr., | 444.2 acres; | Mark J. Biddle, | 439.8 acres; |
| Wm. M. Biddle, | 457.0 acres; | James Collins, | 434.0 acres; |
| Robert Irwin, | 521.0 acres; | Jacob Hiltzheimer, | 467.0 acres; |
| Robt. Hiltzheimer, | 512.2 acres; | Thos. Hiltzheimer, | 20.9 acres; |
| William Parker, | 422.7 acres; | Collinson Reed, | 422.9 acres; |
| James Shoemaker, | 211.9 acres; | Andrew Tybout, | 175.5 acres; |
| John Baker, | 317.0 acres; | Clement Biddle, | 91.0 acres; |
| John Boyd, | 403.7 acres; | Peter Boynton, | 150.0 acres; |
| S. Clapjhauson, | 125.0 acres; | George Eckert, | 460.0 acres; |
| Andrew Graydon, | 355.1 acres; | Bernard Gratz, | 333.4 acres; |
| Hyman Gratz, | 290.6 acres; | Michael Gratz, | 236.4 acres; |
| Simon Gratz, | 230.0 acres; | Charles Hall, | 497.0 acres; |
| Josiah Haines, | 410.5 acres; | Joseph Henry, | 444.4 acres; |
| Peter Z. Lloyd, | 412.0 acres; | John Patton, | 341.3 acres; |
| Benj. Pennington, | 406.0 acres; | James Shoemaker, | 452.6 acres; |
| Joseph Simons, | 304.0 acres; | William Wilson, | 486.4 acres; |
| Geo. Glentworth, | 431.0 acres; | James Betz, | 386.9 acres; |
| John Betz, | 385.2 acres; | Geo. Castator, | 179.4 acres; |
| Henry Cooley, | 104.0 acres; | John Fritz, | 217. acres; |
| Samuel Fritz, | 377.3 acres; | Jonathan Hampton, | 435.0 acres; |
| James Hardy, | 456.4 acres; | Jonathan Seeley, | 438.7 acres; |
| Peter Seeley, | 383.5 acres; | | |

CONTAINING SIXTEEN THOUSAND THREE HUNDRED AND FIFTY AND THREE-TENTHS (16,350.3) ACRES OF LAND, MORE OR LESS,

situate in Barclay, LeRoy and Overton Townships.

SECOND: Also parts of the George Moore and Andrew Tybout Warrants containing 448 ACRES, MORE OR LESS,

situate in

BARCLAY AND OVERTON TOWNSHIPS:

and also 32 acres, more or less, in the Andrew Tybout Warrant in Barclay Township.

THIRD: For tracts and parts of tracts known as H. Aurant, Wm. Brady, Edw. Hand, Mathias Hough, Henry Antis, Andrew Douglas, Jacob Morgan, John Morgan, C. Shaffner, Jr., Robert Shaw, John Simpson, John Weitzel, William Wistar, containing Twenty-three hundred forty-one and seven-tenths (2341.7) acres of land, more or less, and situate in Canton and LeRoy Townships. The interest hereby quit-claimed being that which was reserved in a deed from the Union

CERTIFIED FROM ORIGINAL RECORD

THIS 25 August 2020

Sheila H. Peterson Recorder of Deeds

JOINT EXHIBIT

7

Commonwealth of Penn. v. Thomas E. Proctor Heirs Trust et al.

No. 1:12-cv-1567

166                              355

Tanning Company to the grantee herein dated May 25th, 1903, and recorded in Bradford County
in Deed Book No. 251, page 520, on June 11th, 1903; AND the said Union Tanning Company has
since become merged and consolidated with the Elk Tanning Company, under which merger all
the rights, franchises and property of both of said corporations became vested in a new or
consolidated corporation under the name of Elk Tanning Company.

This deed is made, executed and delivered in pursuance of a resolution of the Board of
Directors of the Elk Tanning Company duly passed and adopted at a meeting of said Directors
held at the principal office of the said Company in Ridgway, Pennsylvania, on the 29th day
of December, A.D. 1924;  due authority to sell and convey real estate of said Company being
vested in the Directors thereof by the Articles of Association and By-laws of the said
corporation.

The Elk Tanning Company doth hereby constitute and appoint M.J.Beach to be its attorney
for it and in its name and as and for its corporate act and deed to acknowledge this indenture
or deed of quit-claim before any person having authority by the laws of the Commonwealth of
Pennsylvania to take such acknowledgment, to the intent that the same may be duly recorded.

IN WITNESS WHEREOF, the proper officers of the said Elk Tanning Company have hereunto
set their hands and affixed the corporate seal of the said company, the day and year first
above written.

                                        Elk Tanning Company,

                                    By
form approved                          M.J.Beach
A.F.J.                                        President

                                    Attest:
                                        M.K.Williams
                                            Secretary.

STATE OF PENNSYLVANIA
                        SS.
COUNTY OF ELK

I hereby certify that on this 30th day of December, A.D. one thousand nine hundred and
twenty-four (1924), before me, the subscriber, a Notary Public in and for said County and
State, personally appeared M.J.Beach, the attorney named in the foregoing indenture or deed
of conveyance, and by virtue and in pursuance of the authority therein conferred upon him,
acknowledged the said indenture or deed of conveyance to be the act of the said Elk Tanning
Company.

WITNESS my hand and Notarial seal the day and year aforesaid.

                                          Grace M. Knecht
Notarial seal                             Notary Public
No stamp required
Recorded Feb. 17, 1925                  My commission expires April 1, 1927

Mary C. Hoffman
Recorder

CORTEZ SANDRONE ET UX          THIS DEED, Made the 13th day of February, in the year
        TO                     Nineteen Hundred and twenty-five  BETWEEN Cortez Sandrone, his
CARLO ROSSI                                               Louisa Snadrone
MARY ROSSI                     wife, of the Borough of Sayre, Bradford County, Pennsylvania,
                               Grantors and Carlo Rossi and Mary Rossi, his wife, of the same
place grantees, WITNESSETH, That in consideration of

                     ONE (1) DOLLAR AND OTHER GOOD AND VALUABLE
                            CONSIDERATION DOLLARS

JA396

J7.002

List of Persons Assessed and taxed in the County of Bucks for Health

Assessment Roll, For the year 1890

**JOINT EXHIBIT**

**8**

Commonwealth of Penn. v.
Thomas E. Procter Heirs Trust
et al.

No. 1:12-cv-1567

J8.001

JA397

List of Unseated Lands in the County of Bradford, and the Taxes Assessed Thereon, for the Year 1890

| Acres | Warrantee Name | Township | | Value | County Poor Tax 3½ Mills | School Tax 3½ Mills | School Tax 4½ Mills | Bounty 17 Mills | Road Tax 18 Mills | |
|---|---|---|---|---|---|---|---|---|---|---|
| 500 | Ballenquard Stephen | Overton | | 1000 | 3 50 | 3 50 | 4 00 | 7 00 | 18 00 | 30 00 | Paid Aug 29 1890 by E M Delph |
| 400 | Hanghlin Jonathan | " | | 800 | 2 80 | 2 80 | 3 20 | 5 00 | 24 00 | 24 00 | Paid Mch 11 1892 by Breckin W Reis |
| 200 | Hanghlin Peter | " | | 200 | 70 | 70 | | 1 40 | 3 00 | 6 00 | Paid April 1 1892 by W J C F H |
| 240 | Irwin George | " | | 1440 | 5 04 | 5 00 | | 10 8 | 21 60 | 43 20 | |
| 100 | Sadly Hugh | " | | 228 | 80 | 80 | | 11 | 4 9 | 1 54 | |
| 100 | Sadly Andrew | " | | 200 | 70 | 70 | | 50 | 3 00 | 6 00 | |
| 375 | Mord Paul | " | | 750 | 2 63 | 2 63 | 3 | 3 00 | 11 25 | 22 50 | |
| 400 | Mord Paul | " | | 1600 | 5 60 | 5 60 | 80 | 3 25 | 24 00 | 48 00 | |
| 105 | Mord John | " | | 420 | 1 47 | 1 47 | 21 | 2 00 | 9 4 | 12 60 | |
| 39 | Irwin Jonathan | " | | 39 | 13 | 13 | 02 | 27 | 38 | 1 16 | |
| 400 | Seeley Henry | " | | 2600 | 8 00 | 8 00 | 1 60 | 9 60 | 34 00 | | |
| 375 | Sadly Jonathan | " | | 2250 | 7 87 | 7 87 | 1 83 | 13 75 | 33 75 | 67 50 | |
| 400 | Sadly Peter | " | | 2400 | 8 40 | 8 40 | 1 20 | 9 60 | 36 00 | 72 00 | |
| 400 | Sadly Grafell | " | | 2500 | 8 00 | 8 00 | | 9 60 | 36 00 | 72 00 | |
| 400 | Sidlow Andrew | " | | 2400 | 8 00 | 8 00 | | 9 60 | 36 00 | 72 00 | |
| 400 | Sidlow George | " | | 2400 | 8 00 | 8 00 | 1 20 | 9 60 | 36 00 | 72 00 | |
| 325 | Sidlow Peter | " | | 1300 | 4 55 | 4 55 | 65 | 3 20 | 19 50 | 39 00 | |
| 175 | Sidlow James | " | | 1750 | 6 1 | 6 1 | 09 | 7 0 | 9 10 | | |
| 295 | Temple Peter | " | | 1000 | 3 50 | 3 50 | 50 | 4 00 | 7 00 | 30 00 | |
| 400 | Temple Samuel | " | | 800 | 2 80 | 2 80 | 40 | 4 00 | 12 00 | 24 00 | |
| 400 | Temple George | " | | 440 | 1 54 | 1 54 | 07 | 16 | 5 6 | 1 20 | |
| 450 | Mills James | " | | 800 | 2 80 | 2 80 | 40 | 3 20 | 1 00 | 24 00 | |
| 450 | Newbury Hannah | " | | 200 | 70 | 70 | 13 | 2 0 | 3 00 | 18 00 | |
| 100 | Carey John | " | | 600 | 2 10 | 2 10 | 30 | 2 40 | 9 00 | 18 00 | |
| 65 | Beck E. L. | " | | 260 | 91 | 91 | 13 | 3 0 | 3 2 | 7 80 | |
| 100 | Quinlan C. D. | " | | 200 | 70 | 70 | 10 | 80 | 1 40 | 3 00 | |
| 150 | Waterman Washington | " | | 450 | 1 87 | 1 87 | 23 | 80 | 2 10 | 6 75 | |
| 80 | Whitse Patti | " | | 300 | 1 05 | 1 05 | 10 | 80 | 3 00 | 6 00 | |
| 35 | Willey John | " | | 200 | 70 | 70 | 10 | 80 | 3 00 | 6 00 | |
| 55 | Peters George W. | Albany | | 200 | 70 | 70 | | 1 9 31 | | | |

List of Unseated Lands in the County of Bradford and the Taxes assessed thereon for the Year 1891

| Acres | Warrantee Names | Townships | Warrant | Value | | | | | Taxes assessed thereon | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

1891

## Book of Unrated lands in the County of Brantford and the Taxes collected thereon for the year 1891

J8.004

JA400

## List of Unseated Lands in the County of Bradford Co. — Taxes Assessed thereon for the Year 1892

| No. | Warrantee Name | Township | Valuation | County tax 3 mills / 1 mill | | School tax 2½ mills / 2½ mills | | Road tax 3 mills | | Poll tax 1 mill / 1 mill | | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 62 | Kapa Peter | Monroe | | | | | | | | | | |
| 177 | Sidney Knight | " | | | | | | | | | | |
| 209 | William Head | " | | | | | | | | | | |
| 407 | William Gibson | " | | | | | | | | | | |
| 53 | Mary Jones | " | | | | | | | | | | |
| 423 | Mark Sennick | " | | | | | | | | | | |

J8.005    JA401    1892.

List of Unsettled Lands in the County of Rockford Castle

Taxes Assessed thereon for the Year 1892

| Acres | Warrantee Names | Townships | Value Rate $ Mills | County Tax Per $ 3 Mills | Poor Tax $ 1 Mills | School Tax $ Mills | Town Tax $ 15 Mills | Road Tax $ 7 Mills | Bounty Tax $ 8 Mills | Total Tax | Total Received |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 300 | Hardy Henry | Overton | 1200 | 3 60 | 1 20 | 9 40 | 8 40 | 71 60 | 1 70 | 39 40 | Paid Apl 12 1894 by W.P. Murray |
| 400 | Kaufman Jonathan | " | 400 | 1 20 | 40 | 80 | 2 80 | 7 20 | 40 | 12 80 | Paid Dec 27 1892 by Brock R. Nut |
| 210 | Kaufman Peter | " | 210 | 63 | 21 | 42 | 1 47 | 3 75 | 21 | 6 72 | Paid Nov 27 1894 by T.C.A. |
| 228 | Sadley Hugh | " | 228 | 68 | 23 | 46 | 1 60 | 4 07 | 23 | 7 09 | Paid Dec 3 1892 |
| 100 | Sadley Andrew | " | 100 | 30 | 10 | 20 | 70 | 1 80 | 10 | 3 20 | Paid Jany 4 1893 by W.P. Murray |
| 365 | Merry George | " | | | | | | | | 23 36 | Paid Jany 4 1893 by W.P. Murray |
| 39 | Merry Paul | " | 608 | 1 82 | 61 | | 4 76 | 10 93 | 61 | 19 45 | Paid Dec 27 1892 |
| 39 | Mench Jonathan | " | 39 | 12 | 04 | 08 | 78 | 77 | 04 | 1 23 | Paid Nov 27 1892 |
| 480 | Sadley Henry | " | 4800 | 13 50 | 4 50 | 9 00 | 31 50 | 81 00 | 4 50 | 144 00 | Paid Dec 27 1892 by Brock R. Nut |
| 437 | Sadley Jonathan | " | 4370 | 13 11 | 4 37 | 8 74 | 30 59 | 75 86 | 4 37 | 139 34 | Paid Dec 27 1892 by Brock R. Nut |
| 400 | Sadley Peter | " | 400 | 1 20 | 40 | 80 | 2 80 | 7 20 | 40 | 12 80 | Paid Nov 27 1892 by Brock & Nut |
| 416 | Sadley John | " | 4160 | 12 48 | 4 16 | 8 32 | 29 12 | 74 88 | 4 16 | 133 72 | Paid Dec 27 1892 by Brock & Nut |
| 400 | Sadland Andrew | " | 800 | 2 40 | 80 | | 2 80 | 7 20 | 80 | 23 60 | Paid Apl 12 1894 by W.P. Murray |
| 400 | Sadland George | " | 400 | 1 20 | 40 | 80 | 2 80 | 7 20 | 40 | 14 80 | Paid Apl 12 1894 by W.P. Murray |
| 320 | Siddens Otto | " | 320 | 96 | 33 | 65 | 2 25 | 5 80 | 33 | 10 42 | Paid Dec 29 1892 |
| 170 | Siddens Samuel | " | 170 | 53 | 18 | 36 | 1 23 | 3 15 | 18 | 5 62 | Paid Dec 29 1892 |
| 320 | Faufai Peter | " | 960 | 2 88 | 96 | 1 92 | 6 72 | 17 28 | 96 | 30 72 | Paid Jany 3 1893 |
| 440 | Faufai Samuel | " | 880 | 2 64 | 88 | 1 76 | 6 16 | 15 84 | 88 | 28 16 | Paid Jany 3 1893 |
| 425 | Faufai George | " | 425 | 1 28 | 43 | 85 | 2 98 | 7 65 | 43 | 13 72 | Paid Jany 3 1893 |
| 440 | Watt James | " | 440 | 1 32 | 44 | | 28 | 77 | 04 | 1 28 | Paid Apl 12 1894 by W.P. Murray |
| 100 | Watt U.R. | " | 880 | 2 64 | 88 | 1 76 | 6 16 | 15 84 | 88 | 28 16 | Paid Apl 12 1894 by W.P. Murray |
| 273 | Enria Richard | " | 100 | 30 | 10 | 20 | 1 76 | 1 80 | 10 | 3 70 | Paid Apl 10 1894 by Ed Garson |
| 94 | Enria J.P. | " | | | | | 8 27 | 21 24 | 1 41 | 8 73 | Paid Jany 2 1893 by Garson & Co |
| 121 | Joffe Geo. R. | " | 1425 | 4 28 | 1 43 | 2 85 | 9 98 | 25 65 | 43 | 45 62 | Paid Dec 30 1892 by Jos C. Garson |
| 100 | Lasby Thomas | " | 621 | 1 86 | 62 | 1 24 | 4 35 | 11 17 | 67 | 19 86 | Paid Dec 3 1892 by J. Jaffa |
| 103 | Lindau E.E. | " | 200 | 3 60 | 1 20 | 2 40 | 8 40 | 21 60 | 1 20 | 9 60 | Paid Jany 9 1894 by Mary E. Theaden |
| 200 | Jenson Washington | " | 200 | 2 44 | 81 | 1 62 | 5 73 | 14 56 | 81 | 1 58 | Paid Jany 20 1893 by Jonathan Theaden |
| 80 | Whitau Ottad | " | 300 | 90 | 30 | 60 | 2 10 | 5 40 | 30 | 9 60 | Paid Oct 8 1892 by E.O. Wetey |
| 35 | Whitau John | " | 55 | 16 | 05 | 10 | 38 | 40 | 03 | 1 39 | Paid Apl 3 1894 by E.O. Wetey |
| 360 | Seitz-Sleitt, Seeley & Reap | " | 103 | 31 | 11 | 21 | 74 | 89 | 11 | 3 39 | Paid Nov 30 1893 |
| 32 | Fyfench A. | " | 720 | 2 16 | 72 | | 5 04 | 13 76 | 77 | 24 56 | Paid Jany 29 1894 by B.F. Steele |
| 27 | Sherill Wm | " | 100 | 30 | 10 | | 70 | 1 80 | 10 | 3 70 | Paid Nov 30 1894 |
| | | | 27 | 08 | 03 | | 19 | | 03 | No | Paid Dec 29 1894 |

1892

Book of Unsettled lands in the County of Bruce & Clark     Taxes Assessed thereon for the Year 1893

1893

J8.007

JA403

Book of Unseated Lands in the County of Bedford and the Taxes Assessed thereon for the Year 1893

| Acres | Warrantee Name | Township | Value | 3 Mills | 1 Mill | 1 Mill | 7 Mills | Town Tax | 1S Mills | 3 Mills | Poor Tax | Total Tax | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 300 | Cauley Henry | Coaldale | 1200 | 360 | 120 | 480 | 840 | 360 | 360 | 480 | 840 | Received Aug 12 1893 by McP Mornay |
| 400 | Houghlin Jonathan | " | 400 | 120 | 40 | 80 | 160 | 160 | 360 | | | Received Oct 2 1893 by Brods & Katt |
| 210 | Houghlin Peter | " | 210 | 63 | 21 | 60 | 120 | 180 | | | | Paid Nov 27 1893 by W C F S |
| 225 | Sulley Hugh | " | 228 | 68 | 23 | 91 | 378 | 478 | | | | |
| 100 | Sulley Andrew | " | 100 | 30 | 10 | 40 | 410 | 68 | | | | |
| 365 | Mord George | " | 730 | 219 | 73 | 311 | 1314 | 1094 | | | | |
| 19 | Mord Paul | " | 608 | 184 | 61 | 243 | 428 | | | | | |
| 39 | Mord Jonathan | " | 440 | 132 | 44 | 176 | 72 | | | | | |
| 450 | Sulley Henry | " | 4500 | 1350 | 450 | 1800 | 3150 | | | | | |
| 437 | Sulley Jonathan | " | 4370 | 1311 | 437 | | | | | | | |
| 400 | Sulley Peter | " | 400 | 120 | 40 | | | | | | | |
| 416 | Sulley Joseph | " | 4160 | 1248 | 416 | | | | | | | |
| 400 | Sulley Andrew | " | 300 | 240 | 380 | | | | | | | |
| 323 | Sulley George | " | 320 | 98 | 33 | | | | | | | |
| 175 | Sulley Samuel | " | 175 | 53 | 18 | | | | | | | |
| 320 | Sulley Peter | " | 960 | 288 | 96 | | | | | | | |
| 440 | Sulley Samuel | " | 860 | 264 | 88 | | | | | | | |
| 425 | Sulley George | " | 425 | 128 | 43 | | | | | | | |
| 440 | Mord Jesse | " | 440 | 132 | 44 | | | | | | | |
| 273 | Grove Richard | " | | | | | | | | | | |
| 32 | Byrusk A | " | | | | | | | | | | |
| 27 | Hill Matthias | " | | | | | | | | | | |
| 160 | Bulord A R Oliver | " | | | | | | | | | | |
| 94 | Ryan J P | " | | | | | | | | | | |
| 121 | Lipp Geo W | " | | | | | | | | | | |
| 160 | Cauley Henuel | " | | | | | | | | | | |
| 162 | Lucidus E E | " | | | | | | | | | | |
| 200 | Green Washington | McKinnie to between to | | | | | | | | | | |
| 30 | Minter Otto | " | | | | | | | | | | |
| 35 | Nutley John | E G Lucas Est | | | | | | | | | | |
| 360 | Little Black Swamp Way | " | | | | | | | | | | |

List of Unsettled Lands in the County of [Rutherford?] Austin — Township — Process of [Settled] Lands for the Year 1894

| Acres | Warrantee Name | Township | Actual Value | County Premium 3½ Mills | School tax 10 Mills | Road tax 10 Mills | Payment |
|---|---|---|---|---|---|---|---|
| 407 | Allison John Jr SRR | Barclay | 1250 | 4.38 | 12.50 | 17.50 | Paid Jany 1895 by Union Tanning Co |
| 320 | Biddle March Jr | " | 625 | 2.19 | 6.25 | 17.75 | Paid Jany 1895 by Union Tanning Co |
| 25 | Biddle Wm M | " | 100 | .35 | 1.00 | 3.00 | |
| 300 | Biddle Samuel SRR | " | 1500 | 5.25 | 15.00 | 45.00 | Paid Jany 1895 by Lycoming Tanning Co |
| 377 | Biddle Wm | " | 750 | 2.63 | 7.50 | 22.62 | Paid Nov 23 1894 by Lancaster Coal Co |
| 136 | Baron John | " | 500 | 1.75 | 5.00 | 15.00 | Paid Jany 1895 by Lancaster Coal Co |
| 313 | Baron John Jr SRR | " | 1400 | 4.90 | 14.00 | 42.00 | Paid Jany 1895 by Union Tanning Co |
| 200 | Baron Wm SRR | " | 700 | 2.63 | 7.00 | 22.50 | Paid Jany 1895 by Union Tanning Co |
| 119 | Cadnis James | " | 700 | 1.13 | 7.50 | 6.00 | Paid Jany 1895 by Union Tanning Co |
| 363 | Cunningham Johanna | " | 1100 | 3.85 | 11.00 | 33.00 | Paid Dec 31 1894 by Barclay Coal Co |
| 300 | Cox Jacob | " | 900 | 3.13 | 9.00 | | Paid Dec 31 1894 by Barclay Coal Co |
| 96 | Cunningham B.H. | " | | .96 | | 2.88 | Paid Jany 1895 by Union Treasurer |
| 74 | Edge Samuel | " | 1250 | 4.38 | 12.50 | 37.50 | Paid Jany 1895 by Union Treasurer |
| 210 | Edge George | " | 1000 | 3.50 | 10.00 | 30.00 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 326 | Edge Samuel | " | 420 | 1.47 | 4.20 | 13.60 | Paid Jany 2 1895 by Off Treasury |
| 214 | Grey Wm | " | 1300 | 4.55 | 13.00 | 39.00 | Paid Jany 2 1895 by Off Treasury |
| 142 | Grube John | " | 950 | 3.32 | 9.50 | 27.58 | |
| 142 | Grube Wm | " | 800 | 2.80 | 8.00 | 24.00 | Paid [ ] No Residence |
| 363 | Houston Andrew | " | 802 | 2.81 | 8.02 | 24.12 | Paid Jany 1895 by Union Treasurer |
| 73 | Williamson Thomas | " | 726 | 2.54 | 7.26 | 21.78 | Paid Dec 31 1894 by Barclay Coal Co |
| 250 | Williamson Jacob B | " | 725 | 2.56 | 7.25 | | Paid Jany 1895 by Lancaster Coal Co |
| 250 | Williamson Robert | " | 420 | 1.90 | 4.20 | 12.60 | Paid Jany 1895 by Union Treasury Co |
| 420 | Williamson Jacob Wm | " | 840 | 2.94 | 8.40 | 25.20 | Paid Dec 31 1894 by Barclay Coal Co |
| 250 | Hait William | " | 1050 | 3.68 | 10.50 | 31.50 | Paid Dec 28 1894 by Lancaster Coal Co |
| 280 | Handy Reid | " | 1000 | 3.00 | 10.00 | 45.00 | Paid Dec 31 1894 by Barclay Coal Co |
| 80 | Handy Andrew | " | 320 | 1.12 | 3.20 | 9.60 | Paid Jany 2 1895 by Off Treasury |
| 400 | Handy Dennis | " | 3200 | 4.30 | 32.00 | 96.00 | Paid Jany 2 1895 by Off Treasury |
| 330 | Handy James | " | 1050 | 3.68 | 10.50 | 31.50 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 400 | Handy Nathan | " | 1200 | 1.20 | 12.00 | 36.00 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 160 | Handy Paul | " | 180 | .27 | 1.80 | | Paid Jany 2 1895 by Sny Valley Coal Co |
| 320 | Handy Andrew | " | 320 | 1.12 | 3.20 | 9.60 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 241 | Hazel Richard SRR | " | 800 | 1.75 | 8.00 | 21.60 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 405 | Levy Aaron | " | 2430 | .85 | 24.30 | 72.90 | Paid Jany 1 1895 by Warran Tanning Co |
| 300 | Sudlay Andrew | " | 600 | 2.10 | 6.00 | 18.00 | Paid Jany 1 1895 by Lancaster Coal Co |
| 330 | Sudlay Joseph | " | 660 | 2.31 | 6.60 | 19.80 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 400 | Sudlay Peter | " | 800 | 2.80 | 8.00 | 24.00 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 160 | Reed Catharine | " | 720 | 2.52 | 7.20 | 21.60 | Paid Jany 1 1895 by Warran Tanning Co |
| 212 | Shanahan James | " | 320 | 1.12 | 3.20 | 9.60 | Paid Jany 1 1895 by Warran Tanning Co |
| 400 | Sudlay Samuel | " | 600 | 1.75 | 6.00 | 18.00 | Paid Jany 2 1895 by Lancaster Coal Co |
| 400 | Sudlay Joseph | " | 600 | 1.80 | 6.00 | 18.00 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 225 | Sudlay James | " | 900 | 3.15 | 9.00 | 27.00 | Paid Jany 2 1895 by Sny Valley Coal Co |
| 75 | Reed Peter | " | 225 | .79 | 2.25 | 6.75 | Paid Nov 2 1895 by Sny Valley Coal Co |
| 212 | Swank Wallis | " | 75 | .26 | .75 | 2.25 | |
| | | " | 212 | .74 | 2.12 | 6.36 | |
| 400 | Temple George | " | 1200 | 4.20 | 12.00 | 36.00 | Paid Jany 2 1895 by Off [Treasury] |
| 200 | Tybuck Andrew SRR | " | 200 | .80 | 2.00 | | Paid Jany 1895 by Union Tanning Co |
| 79 | Wilson Wm | " | 300 | .45 | 3.00 | | Paid Jany 1895 by Warran Tanning Co |

J8.009 — JA405 — 1894

## List of Resident Lands in the County of Bradford auth.

### Township — Sr. Roy

### Paid Assessed Return for the Year 1894

| Amt | Warrantee Name | SCR | Valuation | 3½ Mills | from law 1½ Mills | School law 1½ Mills | Penalties 1½ Mills | 2 Mills | 3 Mills | 3 Mills | Penalties on land 3 Mills | Valuation 3 Mills | Paid Assessed Return |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 200 | Beck Henry | SCR | 400 | 1 40 | 60 | 60 |  | 1 20 | 1 20 | 80 | 80 | 3 50 | Rec'd Sep 30, 1894 by Benson Carrigan |
| 262 | Butts Frederick | | 404 | 1 41 | 60 | 60 |  | 1 21 | 81 | 81 | 81 | 5 3 | R.C. Baker Union Banking Co |
| 296 | Baker Mrs | | 2960 | 10 36 | 4 44 | 4 44 |  | 8 88 | 5 92 | 5 92 | 5 92 | 4 57 | Rec'd Jany 1895 by Union Banking Co |
| 414 | Biddle Wm | | 2482 | 8 70 | 3 73 | 3 73 |  | 7 45 | 4 97 | 7 45 | 4 97 | 3 63 | Rec'd Jany 1895 by Union Banking Co |
| 243 | Basner John | | 1231 | 4 31 | 1 85 | 1 85 |  | 3 69 | 2 46 | 3 69 | 2 46 | 1 71 | Rec'd Jany 1895 by Union Banking Co |
| 109 | Baker Peter | | 632 | 2 29 | 98 | 98 |  | 1 96 | 1 31 | 1 96 | 1 31 | 93 | Rec'd Jany 1895 by Union Banking Co |
| 134 | Biddle Clenezah | | 603 | 2 10 | 90 | 90 |  | 1 80 | 1 21 | 1 81 | 1 21 | 88 | Rec'd Jany 1895 by Union Banking Co |
| 427 | Bryst John | SCR | 2568 | 8 98 | 3 85 | 3 85 |  | 7 70 | 5 13 | 7 70 | 5 13 | 3 71 | Rec'd Jany 1895 by Union Banking Co |
| 110 | Beck Henry | SCR | 900 | 3 15 | 1 35 | 1 35 |  | 1 40 | 90 | 1 40 | 93 | 96 | Rec'd Jany 1895 by Union Banking Co |
| 200 | Barber Wm | SCR | 702 | 2 45 | 1 05 | 1 05 |  | 2 10 | 1 40 | 2 10 | 1 40 | 1 07 | Rec'd Jany 1895 by Union Banking Co |
| 186 | Stephanus Samuel | | 900 | 3 15 | 1 35 | 1 35 |  | 2 70 | 1 80 | 2 70 | 1 80 | 1 32 | Rec'd Jany 1895 by Union Banking Co |
| 200 | Resident Thomas | SCR | 2236 | 8 00 | 3 43 | 3 43 |  | 6 86 | 4 57 | 6 86 | 4 57 | 33 15 | Rec'd Jany 1895 by Union Banking Co |
| 348 | Graydon Andrew | | 1369 | 5 00 | 2 36 | 2 36 |  | 4 70 | 3 13 | 4 70 | 3 13 | 3 15 | Rec'd Jany 1895 by Union Banking Co |
| 349 | Grady Michael | | 993 | 3 48 | 1 48 | 1 48 |  | 2 98 | 99 | 2 98 | 99 | 95 | Rec'd Jany 1895 by Union Banking Co |
| 221 | Grady Reynard | | 574 | 1 93 | 85 | 85 |  | 1 70 | 1 14 | 1 70 | 1 14 | 93 | Rec'd Jany 1895 by Union Banking Co |
| 50 | Groff John | | 2346 | 8 19 | 3 51 | 3 51 |  | 7 02 | 4 68 | 7 02 | 4 68 | 33 13 | Rec'd Jany 1895 by Union Banking Co |
| 390 | Guillaumet George | | 1776 | 6 21 | 2 66 | 2 66 |  | 5 33 | 3 55 | 5 33 | 3 55 | | Rec'd Jany 1895 by Union Banking Co |
| 351 | Grady Benson | | 1578 | 5 53 | 2 37 | 2 37 |  | 4 73 | 3 16 | 4 73 | 3 16 | | Rec'd Jany 1895 by Union Banking Co |
| 408 | Grady Denson | SCR | 2448 | 8 56 | 3 68 | 3 68 |  | 7 34 | 4 90 | 7 34 | 4 90 | | Rec'd Jany 1895 by Union Banking Co |
| 483 | Knapp Edward | | 2087 | 7 63 | 3 27 | 3 27 |  | 6 54 | 3 49 | 6 54 | 3 49 | | Rec'd Jany 1895 by Union Banking Co |
| 388 | Kurrier Joseph | | 1746 | 6 11 | 2 62 | 2 62 |  | 5 24 | 4 97 | 5 24 | | | Rec'd Jany 1895 by Union Banking Co |
| 404 | Seyd Peter | | 2490 | 8 70 | 3 73 | 3 73 |  | 7 46 | 5 74 | 5 74 | 5 74 | | Rec'd Jany 1895 by Union Banking Co |
| 437 | Pennington Benjamin | | 2623 | 9 17 | 3 93 | 3 93 |  | 7 87 | 5 24 | 7 87 | | | Rec'd Jany 1895 by Union Banking Co |
| 335 | Patton John | | 2048 | 7 03 | 3 02 | 3 02 |  | 6 03 | 4 02 | 2 00 | 4 02 | | Rec'd Jany 1895 by Union Banking Co |
| 222 | Reed Cullman | | 999 | 3 00 | 1 50 | 1 50 |  | 3 00 | 2 00 | 2 00 | 2 00 | | Rec'd Jany 1895 by Union Banking Co |
| 435 | Shannon Jersey | | 2616 | 9 13 | 3 92 | 3 92 |  | 7 83 | 57 | 7 83 | 57 | | Rec'd Jany 1895 by Union Banking Co |
| 312 | Lucas Joseph | | 1872 | 6 55 | 2 81 | 2 81 |  | 5 62 | 3 74 | 5 62 | 3 74 | | Rec'd Jany 1895 by Union Banking Co |
| 394 | Wilson William | | 2364 | 8 28 | 3 35 | 3 35 |  | 7 09 | 5 73 | 7 09 | 5 73 | | Rec'd Jany 1895 by Union Banking Co |
| 238 | Vochris James | | 238 | 84 | 36 | 36 |  | 71 | 71 | 81 | | | Rec'd Jany 1895 by Union Banking Co |
| 135 | Milliard John | | 400 | 1 41 | 61 | 61 |  | 1 22 | 81 | | | 5 95 | Rec'd Jany 1895 by Union Banking Co |

Red note (across middle): *Rec'd Check in full on the Bradford Collab.*

| Amt | Warrantee Name | Township | | Valuation | 3½ Mills | 1½ Mills | School law 1½ Mills | Penalties 1½ Mills | 2 Mills | 3 Mills | 3 Mills | Penalties 3 Mills | Valuation 3 Mills | Paid Assessed Return |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4603 | Anderson Samuel | Married | | 400 | 1 38 | 68 | 68 |  | 65 | 97 | 80 | | 5 84 | Paid Apr 10, 1875 in Philadelphia for Town |
| 323 | Bennion Jacob | " | | 323 | 1 13 | 49 | 49 |  | 63 | 97 | 97 | | 1 31 | Rec'd Oct 5, 1874 by Ellen Green, Banking Co |
| 125 | Bennion Jacob Jr | " | | 125 | 44 | 19 | 19 |  | 25 | 38 | 38 | | 1 84 | Rec'd Jany 17, 1875 by Henry Cleveland |
| 263 | Bryan Jacob Jr | " | | 263 | 93 | 40 | 40 |  | 53 | 80 | 80 | | 3 46 | Rec'd Mch 2, 1876 by R.A. McNeal |
| 400 | Bryan Robert | " | | 400 | 1 40 | 60 | 60 |  | 80 | 1 20 | 1 20 | | | Rec'd March 4, 1876 by Ed. Green |
| 97 | Cunningham D. H. | " | | 97 | 34 | 14 | 14 |  | 19 | 29 | 29 | | 1 80 | Paid June 10, 1875 by C.A. Morgan |
| 1705 | Gray William | " | | 1705 | 61 | 61 | 46 |  | 35 | 53 | 53 | | 3 46 | Paid April 10, 1875 by R. Crandall, Smith |
| 200 | Laughlin Robert | " | | 200 | 70 | 30 | 30 |  | 40 | 60 | 60 | | 2 00 | Paid June 24, 1876 by J.G. Corell |
| — | Compton Peter | " | | | | | | | | | | | | |

List of Unseated Lands in the County of Bradford and the Taxes Assessed thereon for the Year 1894.

| Township | Warrantee Name | Acres | County Tax Rate 3½ Mills | Bounty Tax Rate 1½ Mills | School Tax 2 Mills | State Road & School Tax 3 Mills | Remarks |
|---|---|---|---|---|---|---|---|

List of Unseated lands in the County of Bradford and the Taxes Assessed thereon for the Year 1894.

| Acres | Warrantee Name | Township | Owner | | | | | |
|---|---|---|---|---|---|---|---|---|

J8.012

# List of Unseated Lands in County of Bradford — And the Taxes Assessed thereon for the Year 1875.

**Township: Barclay**

Case 22.TIFF · Document 143 · Page 245 · Date Filed 06/07/2022 · 1875 · J8.013 · JA409

# List of Uncollected Lands in the County of Brantford
## And the Arrears Assessed thereon for the Year 1895

| Con | Warrantee Name | Ownership | Acres | Value | Assessment Rate &c. | Costs Reg. Rate &c. | 1½ Mills | 2 Mills | 2½ Mills | 3 Mills | Total Due | Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

J8.014     JA410     1895

List of Unseated lands in the County of [—] for the Year 1895.

| No. | Warrantee Name | Township | Total Acres | Per Acre 1½ Mills | 1 Mill | 7 Mills | 10 Mills | 20 Mills | 7 Mills | 7 Mills | | And the State Account thereon for the Year 1895. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66 | Kaga Peter | Mercer | 64 | 26 | 10 | 13 | 26 | 64 | 42 | 06 | | Recd June 1 1896 by W.B. Mercer |
| 172 | Sadley Hugh | " | 172 | 69 | 26 | 34 | 69 | 82 | 41 | 17 | | Recd Nov 16 1895 by W.B. Mercer |
| 209 | Nelson Hugh | " | 209 | 84 | 31 | 42 | 84 | | 63 | 21 | | Recd Apr 6 1896 by Wayne Mercer |
| 467 | Maddon & [?] | " | 467 | 63 | 61 | 81 | | 125 | | 41 | | Recd Dec 18 1896 by Wm Reed |
| 55 | Harris John | " | 55 | 22 | 08 | 11 | 22 | | 17 | 06 | | Recd Jany 9 1896 [—] |
| 420 | North Samuel | " | 400 | 168 | 32 | 85 | | 169 | | 21 | | [—] |
| 400 | North James | " | 400 | 160 | 60 | 80 | | 120 | | 40 | | Recd June 6 1896 in [—] |
| 361 | North Jonathan | " | 361 | 144 | 54 | 72 | | 144 | | 36 | | [—] |
| 360 | Schults Peter | " | 180 | 72 | 27 | 36 | 72 | | 54 | 18 | | [—] |
| 200 | Schults Fred | " | 160 | 72 | 23 | 30 | 20 | | 30 | 08 | | Recd June 11 1896 [—] |
| 105 | Schults George | " | 192 | 33 | 12 | 16 | 33 | | 25 | 07 | | Recd June 2 [—] |
| 219 | [—] Peter | " | 219 | 88 | 33 | 43 | 88 | | 66 | 22 | | Recd Aug 17 1896 by [—] |
| 144 | [—] Walter | " | 144 | 57 | 21 | 27 | 57 | | 43 | 14 | | Recd June 1896 [—] |
| 40 | Wardruff Raine | " | 40 | 16 | 06 | 08 | 16 | | 12 | 04 | | Recd June 1896 by [—] |
| 445 | Wardruff Kenneth | " | 445 | 178 | 67 | 18 | | 144 | | 30 | | Paid Nov [—] |
| 300 | Wallace William | " | 300 | 120 | 45 | 60 | | 120 | | 30 | | Paid Nov 16 1896 [—] |
| 228 | Wallace Samuel | " | 228 | 91 | 34 | 45 | 91 | | 68 | 23 | | Recd Mar 16 1896 by [—] |
| 416 | Lewis James | Worden | 732 | 293 | 110 | 512 | 512 | 1464 | 512 | 2035 | 2035 | Recd June 8 1896 by W.B. Mercer |
| 400 | Sanger Patrick | " | 1032 | 413 | 155 | 722 | 722 | 1022 | 722 | 206 | 293 | Recd June 8 1896 by W.B. Mercer |
| 16 | Ruben John | " | 46 | 16 | 06 | 28 | 28 | 80 | 28 | 08 | 56 | [—] |
| 382 | Ruff Henry | " | 764 | 3 05 | 145 | 635 | 635 | 1828 | 635 | 132 | | Recd Nov 30 1896 by H. Mattery |
| 370 | Ruff James | " | 3760 | 14 80 | 5 55 | 2590 | 2590 | 7400 | 2590 | 740 | | Recd Jany 1896 by [—] |
| 384 | Ruff Joseph | " | 382 | 153 | 58 | 269 | 269 | 768 | 269 | 777 | | Recd Nov 12 1896 by W.B. Mercer |
| 136 | Ruff Jacob | " | 3160 | 1544 | 574 | 2702 | 2702 | 7720 | 2702 | 772 | | Recd Jany 1896 by [—] |
| 436 | Bryan Henry | " | 436 | 174 | 65 | 305 | 305 | 872 | 305 | 87 | | Recd [—] |
| 193 | Cloud Alfred | " | 396 | 158 | 59 | 277 | 277 | 792 | 277 | 79 | | Not Rec'd No Return |
| 135 | Cody Henry | " | 270 | 108 | 41 | 189 | 189 | 540 | 189 | 54 | | Recd Jany 1896 by W.P. Mercer |
| 437 | Cody Jacob | " | 1820 | 729 | 274 | 12 77 | 1277 | 36 41 | 1277 | 344 | | Recd Dec 12 1896 by P.N. Mercer |
| 400 | Croyle Samuel | " | 437 | 175 | 66 | 306 | 306 | 874 | 306 | 87 | | Recd Nov 8 1896 by H.N. [—] |
| 400 | Croyle James | " | 400 | 160 | 60 | 280 | 280 | 800 | 280 | 80 | | Not Rec'd June 3 1896 by [—] |
| 400 | Croyle George (W.C.) | " | 400 | 160 | 60 | 280 | 280 | 800 | 280 | 80 | | Not Rec'd No Return |
| 1440 | Corlton [—] | " | 1410 | 564 | 213 | 987 | 987 | 2820 | 987 | 282 | | Recd Jany 1896 by Union [—] |
| 114 | Corlton James | " | 1440 | 1656 | 621 | 28 98 | 2898 | 82 80 | 2898 | 828 | | Recd Apr 30 1896 by Union [—] |
| 87 | Edie Peter | " | 100 | 40 | 15 | 70 | 70 | 200 | 70 | 20 | | [—] |
| 273 | Edie Mary | " | 42 | 17 | 06 | 29 | 29 | 84 | 29 | 08 | | Recd Jany 1896 by Union [—] |
| 258 | Evans Robert | " | 1092 | 437 | 164 | 764 | 764 | 21 84 | 764 | 218 | | Recd Jany 1896 by Union [—] |
| 384 | Ruff John | " | 506 | 202 | 76 | 354 | 354 | 10 12 | 354 | 101 | | Recd Jany 1896 by Union [—] |
| 352 | Ruff Samuel | " | 3940 | 1576 | 591 | 2478 | 2478 | 7810 | 2478 | 708 | | Recd Jany 1896 by Union [—] |
| 27 | Cassell William | " | 27 | 11 | 04 | 19 | 19 | 54 | 19 | 05 | | Recd June 8 1896 by W.P. Mercer |
| 400 | Kaga Nathan | " | 4200 | 16 50 | 60 | 280 | 280 | 800 | 280 | 80 | | Recd June 8 1896 by W.P. Mercer |
| 340 | Kaga Peter | " | 340 | 136 | 51 | 238 | 238 | 680 | 238 | 68 | | Recd Jany 1896 by W.P. Mercer |
| 300 | Kaga Samuel | " | 300 | 120 | 45 | 210 | 210 | 600 | 210 | 60 | | Recd June 8 1896 by W.P. Mercer |

Note 2035 Not Rec'd Due

Case ID 7587   Document 143   Page 247   Date Filed 06/07/2022

# Set of Unseated Lands in the County of Bradford

## And the Taxes Assessed thereon for the Year 1875

| Acres | Warrantee Names | Township | Vessler | Value of land | County Qrtr. | Road Qrtr. 1/2 mm | State 1 mill | 1 Mill | 7 Mills | 20 Mills | 1 mill | 2 Mills | 2 Mills | 3 Mills | When & How Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1324 | Wickizer Robert | Vessler | | 3200 | 4.88 | | | 22.75 | 22.75 | 12.00 | 6.50 | | | | Paid Jany 2 1876 by Mun.Faure &c |
| 287 | Wickizer Jacob | " | | 6.00 | .90 | | | 4.20 | 4.20 | 12.00 | 1.20 | | | | Paid Jany 7 1876 by Mun.Faure &c |
| 386 | Handy Samuel | " | | 23.76 | 9.26 | 3.97 | | 16.21 | 16.21 | 14.32 | 4.63 | | | | Paid Alex 28 1875 by Park R. Kell |
| 437 | Handy James | " | | 43.70 | 17.48 | 6.56 | | 30.59 | 30.59 | 87.40 | 8.74 | | | | Paid Jany 9 1876 by Mun.Faure &c |
| 360 | Handy Henry | " | | 6.00 | 2.40 | .90 | | 4.20 | 4.20 | 12.00 | 1.20 | 2.40 | | | Paid Jany 8 1876 by McP.Mursay |
| 299 | Hadlingworth Stephen | " | | 2.99 | 1.20 | .45 | | 2.09 | 2.09 | 5.98 | .60 | .19 | | | Not Paid. No Takers |
| 210 | Hampkin Jonathan | " | | 4.20 | 1.60 | .60 | | 2.80 | 2.80 | 8.00 | .80 | | | | Paid Jany 7 1876 by Mun.Faure &c |
| 210 | Hampkin " | " | | 2.10 | .84 | .32 | | 1.47 | 1.47 | 4.20 | .42 | .17 | | | Paid Aug 25 1876 by McG.H |
| 222 | Jordan Robert | " | | 8.88 | 3.55 | 1.33 | | 6.22 | 6.22 | 17.76 | 1.78 | .71 | | | Aassed 2 &c Same date |
| 228 | Soatly Hugh | " | | 2.28 | .91 | .34 | | 1.60 | 1.60 | 4.56 | .46 | | | | Paid Alex 16 1875 by McG.Gerant |
| 100 | Soatly Andrew | " | | 1.00 | .40 | .15 | | .70 | .70 | 2.00 | .20 | | | | Paid Alex 28 1875 by Bradst.Hill |
| 365 | Moor George | " | | 3.65 | 1.46 | .54 | | 2.56 | 2.56 | 7.30 | .73 | | | | Paid Jany 71876 by Mun.Faure &c |
| 608 | Moor Paul | " | | 12.16 | 4.86 | 1.82 | | 8.51 | 8.51 | 24.32 | 2.43 | | | | Paid Jany 71876 by Mun.Faure &c |
| 105 | Moor John | " | | 1.05 | .42 | .15 | | .74 | .74 | 2.10 | .21 | | | | Not Paid No takers |
| 100 | Neck Tewiehaus | " | | 1.00 | .40 | .15 | | .70 | .70 | 2.00 | .20 | .40 | | | Paid Jany 8 1876 by McP.Mursay |
| 450 | Soatley Horace | " | | 29.00 | 10.80 | 4.05 | | 18.90 | 18.90 | 54.00 | 5.40 | | | | Paid Alex 28 1875 by Bradst.Hill |
| 437 | Soatly Jonathan | " | | 43.70 | 17.48 | 6.56 | | 30.59 | 30.59 | 87.40 | 8.74 | | | | Paid Jany 71876 by Mun.Faure &c |
| 400 | Soatly Peter | " | | 4.00 | 1.60 | .60 | | 2.80 | 2.80 | 8.00 | .80 | | | | Paid Jany 71876 by Mun.Faure &c |
| 416 | Soatly Joseph | " | | 8.32 | 3.33 | 1.25 | | 5.82 | 5.82 | 16.64 | 1.66 | | | | Paid Alex 1 1873 1875 by Bradst.Hill |
| 400 | Buddna Andrew | " | | 4.00 | 1.60 | .60 | | 2.80 | 2.80 | 8.00 | .80 | | | | Paid Jany 8 1876 by McP.Mursay |
| 400 | Buddna George | " | | 4.00 | 1.60 | .60 | | 2.80 | 2.80 | 8.00 | .80 | | | | Paid Jany 8 1876 by McP.Mursay |
| 325 | Buddna Peter | " | | 3.25 | 1.30 | .49 | | 2.28 | 2.28 | 6.50 | .65 | | | | Bradst dec 31 1891 by Sung Fabre Caste |
| 175 | Buddna James | " | | 1.75 | .70 | .26 | | 1.23 | 1.23 | 3.50 | .35 | | | | Paid dec 31 1891 by Sung Fabre Caste |
| 320 | Guenfer Peter | " | | 6.40 | 2.56 | .96 | | 4.48 | 4.48 | 12.80 | 1.28 | | | | Paid Alex 30 1878 &c by J.Mabry |
| 440 | Guenfer Samuel | " | | 5.80 | 3.52 | 1.32 | | 6.16 | 6.16 | 17.60 | 1.76 | | | | Paid Alex 30 1879 &c by J.Kirkland |
| 40 | Guenfer George | " | | .40 | .16 | .06 | | .28 | .28 | .80 | .08 | | | .18 | Paid dec 31 1891 by Sung Fabre Caste &c |
| 425 | Guenfer George | " | | 4.25 | 1.70 | .64 | | 2.98 | 2.98 | 8.50 | .85 | | | | Paid Nov 30 1878 &c by J.Mabry |
| 32 | Gabriel Andrew | Decan | | .32 | .13 | .05 | | .22 | .22 | .64 | .06 | | | .13 | Bradst June 131 1898 D Adam Eaury &c |
| 153 | Wydecraft Hannah | " | | 1.88 | .75 | .28 | | 1.32 | 1.32 | 3.76 | .38 | | | .38 | Paid Gnes 87 1896 by McP.Mursay |
| 440 | Hoft Francis | " | | 8.80 | 3.52 | 1.32 | | 6.16 | 6.16 | 17.60 | 1.76 | | | 3.45 | Paid Gnes 3 1896 by Mary E.Madbry |
| 200 | Casey Thomas | " | | 12.00 | 4.80 | 1.80 | | 8.40 | 8.40 | 24.00 | 2.40 | | | 4.80 | Paid Gnes 8 1896 by E.E.Dunstead |
| 94 | Carter John F | " | | 6.00 | 2.40 | | | 4.20 | 4.20 | 12.00 | 1.20 | | | 1.50 | Paid Oct 31 1895 by Mc.Hammam |
| 50 | Whitaker (Williss) Mc.Names | " | | 9.40 | 3.76 | 1.41 | | 6.58 | 6.58 | 18.80 | 1.88 | | | | Aassed to E.E. Dunstead |
| 35 | Haley John | " | | .50 | .20 | .08 | | .35 | .35 | 1.00 | .10 | | | | |
| 360 | Satt. Frank Soatly Boy | " | | 7.20 | 2.88 | 1.08 | | 5.04 | 5.04 | 14.40 | 1.44 | | | .45 | Paid Aug 11 1896 by P.Salbupard |
| 160 | Mcrachne James | " | | 1.60 | .60 | .15 | | .70 | .70 | 2.00 | .20 | | | .6/- | Paid Feb. 18 1896 of McP.Mursay |
| 160 | Nichols Jefferson | " | | 1.60 | .64 | .24 | | 1.12 | 1.12 | 3.20 | .32 | | | .6/- | Paid apil 9 1896 by C.E.S.Trustead |
| 100 | Gatewood N.S. | " | | 1.00 | .40 | .15 | | .70 | .70 | 2.00 | .20 | | | 4/- | 150 Acres & assed out Each d Carter &c E. |
| 200 | Norman Waltian | " | | 3.00 | 1.20 | .45 | | 2.10 | 2.10 | 6.00 | .60 | | | | |
| 215 | Kopff G.H. | " | | 2.15 | .86 | .32 | | 1.50 | 1.50 | 4.30 | .43 | | | | Paid Jany 3 1876 by 125 Keufrawer |

List of Unseated Lands in the County of Bradford and the Taxes assessed thereon for the Year 1896

Township — Barclay

**JOINT EXHIBIT**

**9**

Commonwealth of Penn. v.
Thomas E. Procter Heirs Trust
et al.

No. 1:12-cv-1567

J9.001

JA413

# Book of Unrated Lands in the County of Stratford. And the Taxes Assessed thereon for the Year 1896.

1896

| No. | Ratepayer's Name | Township | School | Genl. Tax 3 mills | Poor Tax 1 mill | School Tax 1 3/4 mills | Road Tax 3 mills | Total Tax 8 3/4 mills | Remarks |
|---|---|---|---|---|---|---|---|---|---|
| 200 | Beck Henry | | | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | Paid May 27 1897 by Woman Elston |
| 202 | Bata Frederick | | | 4.00 | | | | | Paid May 27 1897 by Alfred Costigan |
| 297 | Bates M. J. | | | 908 | 302 | 2.86 | 3.02 | 3.02 | Paid Dec 22 1896 by Union Farming Co |
| 317 | Bates John | | | 3170 | 3.11 | 4.51 | 4.51 | 4.51 | Paid Dec 22 1896 by Union Farming Co |
| 432 | Bates Wm Mc | | | 2597 | 2.542 | 5.13 | 5.13 | 5.11 | Paid Dec 22 1896 by Union Farming Co |
| 314 | Barr John Jr | | | 1413 | 1.41 | 3.43 | 5.43 | 5.43 | Paid Dec 22 1896 by Union Farming Co |
| 150 | Bogden John | | | 6.00 | 1.80 | 1.20 | 1.80 | 1.80 | Paid Dec 22 1896 by Union Farming Co |
| 91 | Belden Clemenh | | | 4.10 | 4.1 | 1.23 | 1.20 | 1.25 | Paid Dec 22 1896 by Union Farming Co |
| 103 | Boyd John | | | 2418 | 2.42 | 7.25 | 4.80 | 7.25 | Paid Dec 22 1896 by Union Farming Co |
| 222 | Bahn William | | | 999 | 2.941 | 2.94 | 3.00 | 3.00 | Paid Dec 22 1896 by Braden & Neill |
| 1794 | Beck Henry | | | 348 | 1.03 | 3.05 | 1.04 | 1.04 | Paid Nov 18 1896 by Braden & Neill |
| 291 | Bata Jared | | | 582 | 1.75 | 1.75 | 1.76 | 1.76 | Paid Nov 18 1896 by Union Farming Co |
| 105 | Bahn Henry | | | 210 | 3.13 | 3.5 | 3.13 | 3.13 | Paid Dec 22 1896 by Union Farming Co |
| 174 | Colline James | | | 957 | 2.85 | 2.85 | 2.87 | 2.87 | Paid Dec 22 1896 by Union Farming Co |
| 349 | Grayton Andrew | | | 2080 | 6.24 | 6.24 | 6.24 | 6.24 | Paid Dec 22 1896 by Union Farming Co |
| 236 | Grady Michael | | | 1062 | 3.49 | 3.09 | 3.06 | 3.49 | Paid Dec 22 1896 by Union Farming Co |
| 290 | Grady Morgan | | | 1160 | 3.48 | 3.4 | 1.16 | 3.48 | Paid Dec 22 1896 by Union Farming Co |
| 431 | Gutheruch George | | | 2586 | 7.76 | 5.17 | 2.57 | 7.76 | Paid Dec 22 1896 by Union Farming Co |
| 333 | Grady Denison | | | 666 | 2.00 | 1.33 | 2.00 | 2.00 | Paid Dec 22 1896 by Union Farming Co |
| 230 | Grady Denison | | | 920 | 2.76 | 1.84 | 2.76 | 2.76 | Paid Dec 22 1896 by Union Farming Co |
| 160 | Graff John | | | 320 | 96 | 6.4 | 96 | 96 | Paid Dec 18 1896 by Braden & Neill |
| 310 | Gordon Thomas | ✓ | | 760 | 2.28 | 2.27 | 2.28 | 2.28 | Paid Dec 18 1896 by Braden & Neill |
| 444 | Henry Joseph | | | 2664 | 799 | 5.33 | 799 | 799 | Paid Dec 22 1896 by Union Farming Co |
| 497 | Hoat Charles | | | 2237 | 6.11 | 4.47 | 6.71 | 6.71 | Paid Dec 22 1896 by Union Farming Co |
| 410 | Karnes Joseph | | | 1845 | 5.54 | 3.69 | 5.54 | 5.54 | Paid Dec 22 1896 by Union Farming Co |
| 11 | Rodgriquin Fritz | | | 66 | 6 | 13 | 2.0 | 2.0 | Paid Dec 22 1896 by Union Farming Co |
| 412 | Sigel Peter J | | | 2472 | 7.42 | 6.94 | 7.42 | 7.42 | Paid Dec 22 1896 by Union Farming Co |
| 486 | Barrington Benjamin | | | 2916 | 2.92 | 5.83 | 8.75 | 8.75 | Paid Dec 22 1896 by Union Farming Co |
| 341 | Bates John | | | 1360 | 1.36 | 2.72 | 4.03 | 4.03 | Paid Dec 22 1896 by Union Farming Co |
| 262 | Reed Catherine | | | 13.10 | 3.91 | 2.61 | 3.91 | 3.91 | Paid Dec 22 1896 by Union Farming Co |
| 452 | Shannahan James | | | 2712 | 2.71 | 5.42 | 8.14 | 8.14 | Paid Dec 22 1896 by Union Farming Co |
| 304 | Straine Joseph | | | 1820 | 1.82 | 3.65 | 5.43 | 5.43 | Paid Dec 22 1896 by Union Farming Co |
| 407 | Nolan William | | | 2442 | 2.442 | | | | Paid Dec 22 1896 by Union Farming Co |

List of Assessed Lands in the County of Bradford for the Year 1896.

J9.003

JA415

1896

| No. | Freeholders Name | Lessee &c. | Value | No. of Acres 1 Mile | 2 Miles | 3 Miles | No. of Acres 5 Miles | 7 Miles | 10 Miles | 20 Miles | 2 miles | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

Case 112-113 0400 Page... Document 143 Page 251 Date Filed 06/07/2022

List of Unseated Lands in the County of Rockford — And the Taxes Assessed thereon for the Year 1896

| Acres | Warrantee Name | Township | | | | | | | | | | | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

J9.004

JA416

1897

List of Unseated Lands in the County of — Bucks. Co. and the Taxes Assessed thereon for the Year 1897

| No. | Warrantee Name | Township | Value 3 Mills | Road Tax 2 Mills | Poor Tax Dog Tax 13 Mills | School Tax 10 Mills | Road Tax 10 Mills | No. | When Paid and by Whom |
|---|---|---|---|---|---|---|---|---|---|
| 303½ | Wilson John Jr. 388R | Bradley | 3980 | 1194 | 796 | 5174 | 3980 | | Paid Dec 9 1897 by Union Tannery Co |
| 202 | Biddle Mark Jr. | " | 1000 | 300 | 200 | 1000 | 1000 | | " " " " |
| 25 | Biddle Wm. Jr. | " | 100 | 30 | 20 | 130 | 100 | | " " " " |
| 130 | Biddle James 388R | " | 930 | 163 | 125 | 830 | 930 | | Paid Dec 21 1897 by Bradley Land Co |
| 127 | Biddle William | " | 830 | 167 | 125 | 1080 | 830 | | Paid Jany 10 1898 by Gennaska Land Co |
| 136 | Benson John | " | 500 | 100 | 70 | 500 | 500 | | Paid Dec 9 1897 by Union Tannery Co |
| 433 | Bryson John Jr. 388R | " | 866 | 160 | 130 | 1126 | 866 | | " " " " |
| 200 | Biddle William | " | 750 | 225 | 130 | 975 | 750 | | " " " " |
| 114 | Cadwise James | " | 200 | 60 | 40 | 200 | 200 | | " " " " |
| 420 | Cary Samuel | " | 1260 | 378 | 159 | 1638 | 1260 | | Paid Mar 23 1897 by Bradley Land Co |
| 432 | Lee Jacob | " | 840 | 252 | — | 1135 | 840 | | Paid Jany 10 1898 by Bradley Land Co |
| 96 | Cunningham & H. | " | 96 | 29 | 14 | 125 | 96 | | Paid Jany 10 1898 by Gennaska Land Co |
| 76 | Cunningham Samuel 388R | " | 176 | 53 | 26 | 229 | 176 | | Paid Dec 21 1897 by Bradley Land Co |
| 301 | Edge Peter | " | 600 | 180 | 90 | 780 | 600 | | Paid Dec 9 1897 by GP McCartney |
| 74 | Edge George | " | 1000 | 300 | 90 | 1300 | 1000 | | Paid Dec 30 1897 by King Tottery Land Co |
| 36½ | Edge Samuel | " | 420 | 126 | 63 | 546 | 420 | | Paid Jany 5 1898 by GP McCartney |
| 240 | Edge William | " | 1300 | 390 | 130 | 1690 | 1300 | | Paid Jany 5 1898 by GP McCartney |
| 23 | Graff John | " | 900 | 270 | 136 | 1170 | 900 | | Paid Dec 9 1897 by Union Tannery Co |
| 428 | Scott William | " | 46 | 14 | 07 | 60 | 46 | | |
| 40 | Huston Samuel | " | 880 | 255 | 128 | 1108 | 880 | | Paid Nov 21 1897 by Bradley Land Co |
| 29 | Kittanson Thomas | " | 972 | 274 | 137 | 1184 | 972 | | Paid Dec 28 1897 by Bradley Land Co |
| 18 | Kittanson Jacob | " | 75 | 23 | 11 | 95 | 75 | | Paid Jany 10 1898 by Bradley Land Co |
| 19 | Kittanson Patrick | " | 1905 | 284 | 142 | 1229 | 945 | | Paid Dec 9 1897 by Union Tannery Co |
| 185 | Kittanson Jacob Nichol | " | 300 | 300 | 200 | 1300 | 1000 | | |
| 404 | Kitts William | " | 470 | 141 | 71 | 611 | 470 | | Paid Dec 28 1897 by Barclay Land Co |
| 225¾ | Mundy Paul | " | 723 | 277 | 139 | 1201 | 923 | | Paid Dec 28 1897 by Barclay Land Co |
| 424 | Mundy Simon | " | 222 | 67 | 33 | 289 | 222 | | Paid Jany 6 1897 by GP McCartney |
| 426 | Mundy James | " | 138 | 41 | 21 | 179 | 138 | | Paid Jany 6 1897 by GP McCartney |
| 427 | Mundy Nadan | " | 2120 | 636 | 318 | 2756 | 2120 | | Paid Dec 30 1897 by King Tottery Land Co |
| 218 | Mundy Paul | " | 308 | 92 | 27 | 1167 | 848 | | Paid Dec 30 1897 by King Tottery Land Co |
| 355 | Mundy Augustus | " | 1287 | 406 | 93 | 1293 | 1287 | | |
| 243 | Mundy Augustus 388R | " | 390 | 107 | 53 | 257 | 2187 | | |
| 413 | Gray Alexander | " | 1078 | 323 | 162 | 1401 | 1078 | | Paid Nov 9 1897 by Union Tannery Co |
| 338 | Sudley Andrew | " | 1234 | 372 | 186 | 1606 | 1234 | | |
| 336 | Sudley Joseph | " | 676 | 203 | 101 | 879 | 676 | | |
| 140 | Sudley Peter | " | 660 | 198 | 99 | 858 | 660 | | |
| 160 | Scull Nathaniel | " | 1806 | 807 | 278 | 2613 | 1836 | | |
| 72 | Shanahan Samuel | " | 720 | 216 | 108 | 936 | 720 | | |
| 413 | Sutton Samuel | " | 346 | 94 | 27 | 284 | 346 | | |
| 307 | Sutton Peter | " | 890 | 267 | 134 | 1157 | 890 | | |
| 132 | Sutton Peter | " | 826 | 247 | 124 | 1074 | 826 | | |
| 212 | Search Walter | " | 307 | 92 | 46 | 399 | 307 | | |
| 180 | Smyth George | " | 183 | 61 | 19 | 132 | 132 | | |
| 154 | Sylvest Andrew 388R | " | 212 | 64 | 31 | 276 | 212 | | |
| 79 | Wilson William | " | 300 | 90 | 45 | 390 | 300 | | |

J9.005    JA417

# List of Unseated Lands in the County of Bradford. And the Taxes Assessed thereon for the Year 1897

| No. | Warrantee Name | Township | Value | Costs 3 mills | Road Tax 2 mills | School Tax 1 mill | School Tax 2 mills | School Tax 3 mills | Remarks |
|---|---|---|---|---|---|---|---|---|---|
| 200 | Beck Henry | Sp. Vg | 400 | 1.20 | 8.0 | 6.0 | 4.0 | 8.0 | 1.20 | The Paid Dec 27 1897 by Morning Eastern |
| 202 | Beck Frederick | " | 402 | 1.21 | 8.1 | 6.1 | 4.0 | 8.1 | 1.21 | The Paid Dec 30 1897 by Lewis Collinger |
| 237 | Biddle M. G | " | 948 | 2.84 | 1.90 | 6.0 | 9.5 | 80 | 2.84 | The Paid Dec 27 1897 by Lewis Collinger |
| 317 | Baker John | " | 3470 | 9.61 | 6.34 | 4.74 | 3.17 | 6.34 | 9.61 | Paid Dec 17 1897 by Lewis Collinger |
| 432 | Biddle Fr M | " | 2092 | 7.78 | 5.18 | 3.89 | 2.72 | 5.18 | 7.78 | Paid Dec 9 1897 by Union Tanning Co |
| 340 | Brown John Dr | " | 1413 | 4.24 | 2.83 | 2.12 | 1.41 | 2.83 | 4.24 | " |
| 180 | Augusta Elias | " | 600 | 1.80 | 1.20 | 90 | 60 | 1.20 | 1.80 | " |
| 91 | Biddle Edward | " | 410 | 1.23 | 8.2 | 62 | 41 | 82 | 1.23 | " |
| 403 | Bepl John | " | 2418 | 7.25 | 4.84 | 3.63 | 2.42 | 4.84 | 7.25 | " |
| 232 | Bitton William SVR | " | 999 | 3.00 | 2.00 | 1.50 | 1.00 | 2.00 | 3.00 | Winter 24 1897 by Bacten & Kett |
| 174 | Beck Henry | " | 345 | 1.04 | 70 | 52 | 35 | 70 | 1.04 | Paid Dec 21 1897 by Bacten & Kett |
| 291 | Biddle James | " | 582 | 1.75 | 1.16 | 87 | 58 | 1.16 | 1.75 | Paid Dec 9 1897 by Union Tanning Co |
| 105 | Stephanson Samuel | " | 210 | 63 | 42 | 32 | 21 | 42 | 63 | " |
| 174 | Collins James | " | 957 | 2.87 | 1.91 | 1.44 | 96 | 1.91 | 2.87 | " |
| 308 | Crawford Andrew | " | 2080 | 6.24 | 4.16 | 3.12 | 2.08 | 4.16 | 6.24 | " |
| 236 | Judy Michael | " | 1062 | 3.19 | 2.12 | 1.59 | 1.06 | 2.12 | 3.19 | " |
| 290 | Judy Jerome | " | 1160 | 3.48 | 2.32 | 1.74 | 1.16 | 2.32 | 3.48 | " |
| 431 | Gulliwood George | " | 2386 | 7.16 | 5.18 | 3.88 | 2.59 | 5.18 | 7.16 | " |
| 333 | Judy Bernard | " | 666 | 2.00 | 1.33 | 1.00 | 67 | 1.33 | 2.00 | " |
| 230 | Judy James | " | 920 | 2.76 | 1.84 | 1.38 | 92 | 1.84 | 2.76 | " |
| 160 | Judy John | " | 320 | 96 | 64 | 48 | 32 | 64 | 96 | " |
| 380 | Gulliwood Thomas SVR | " | 760 | 2.28 | 1.52 | 1.14 | 76 | 1.52 | 2.28 | Paid Dec 21 1897 by Bacten & Kett |
| 444 | Henry Joseph | " | 2666 | 7.99 | 5.33 | 4.00 | 2.66 | 5.33 | 7.99 | Paid Dec 21 1897 by Bacten & Kett |
| 491 | Kott Samuel | " | 2237 | 6.71 | 4.47 | 3.34 | 2.24 | 4.47 | 6.71 | Paid Dec 9 1897 by Union Tanning Co |
| 410 | Kraus Joseph | " | 1845 | 5.54 | 3.69 | 2.77 | 1.80 | 3.69 | 5.54 | " |
| 11 | Williams Robt | " | 66 | 20 | 13 | 10 | 07 | 13 | 20 | " |
| 472 | Leright Robin J | " | 2472 | 7.42 | 4.94 | 3.71 | 2.47 | 4.94 | 7.42 | " |
| 496 | Pennington Benjamin | " | 2916 | 8.75 | 5.83 | 4.37 | 2.92 | 5.83 | 8.75 | " |
| 301 | Rollin Ethel | " | 1360 | 2.78 | 1.13 | 2.05 | 1.36 | 2.73 | 4.10 | " |
| 262 | Real Catharine | " | 1310 | 3.93 | 2.62 | 1.97 | 1.31 | 2.62 | 3.93 | " |
| 452 | Stegmaler James | " | 2372 | 5.42 | 3.42 | 4.07 | 2.72 | 3.62 | 5.42 | " |
| 300 | Simons Joseph | " | 1820 | 5.47 | 3.65 | 2.74 | 1.82 | 3.65 | 5.47 | " |
| 407 | Mason William | " | 2442 | 7.33 | 4.88 | 3.66 | 2.44 | 4.88 | 7.33 | " |

J9.006
1897
JA418

List of Unrated Lands in the County of Brantford — And the Several Assessed Values for the Year 1897

1897

J9.007

JA419

## List of Unseated Lands in the County of Bradford

### Township: Overton

### And the Taxes Assessed thereon for the Year 1897

| Acres | Warrantee Name | Township | Value | Co. Tax 3 Mills | Road Tax 2 Mills | | | | | | | | | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 320 | Georgia Helen | Overton | | | | | | | | | | | | Paid Jany 3 1898 by O. Greatary |
| 220 | George Samuel | " | | | | | | | | | | | | Paid Jany 3 1898 by O. Greatary |
| 40 | Joseph George | " | | | | | | | | | | | | Paid Nov 30 1897 by Jay Kecksfuulter |
| 300 | Joseph George | " | | | | | | | | | | | | Paid Jany 3 1898 by O. Greatary |
| 32 | Joseph Andrew | " | | | | | | | | | | | | Paid Jany 3 1898 by O. Greatary |
| 188 | Westcott Harriet | " | | | | | | | | | | | | Not cost No Tax |
| 440 | Metz James | " | | | | | | | | | | | | Paid Jones 13 1898 by W. F. Murray |

### Charges

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 100 | Casey Theynal | Overton | | | | | | | | | | | | Paid April 8 1898 by W. F. Cobb |
| 200 | Lewallen G. E. | " | | | | | | | | | | | | Paid Oct 13 1897 by E. S. Brendan |
| 90 | Owen John Y. | " | | | | | | | | | | | | Paid Nov 2 1897 by Wm. H. Peterson |
| 360 | Smith Black Saloryhoy | " | | | | | | | | | | | | Paid Nov 20 1897 |
| 100 | McCracken James | " | | | | | | | | | | | | Paid Oct 7 1897 by Max S. Lawyer |
| 160 | Dickates Peterson | " | | | | | | | | | | | | Paid June 13 1898 by W. F. Murray |
| 160 | Gulcourt W. O. | " | | | | | | | | | | | | Paid June 13 1898 by B. A. Buchanan |
| 330 | Homan William | " | | | | | | | | | | | | Assessed on Seated List |
| 218 | Wiffe Lee W. | " | | | | | | | | | | | | Paid Oct 7 1897 by A. S. Buford |

### Township: Terry

| Acres | Warrantee Name | Township | Value | Co. Tax 3 Mills | Road Tax 2 Mills | | | | | | | | | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 64 | Kuilbenlnch Karns No. 6 | Terry | | | | | | | | | | | | Paid Jany 3 1898 by Wm. K. & O. K. Notes |
| 77 | " No. 7 | " | | | | | | | | | | | | Paid Jany 3 1898 by Wm. K. & O. K. Notes |
| 96 | " No. 9 | " | | | | | | | | | | | | " |
| 45 | " No. 10 | " | | | | | | | | | | | | " |
| 77 | " No. 13 | " | | | | | | | | | | | | " |
| 96 | " No. 14 | " | | | | | | | | | | | | " |
| 94 | " No. 15 | " | | | | | | | | | | | | " |
| 97 | " No. 16 | " | | | | | | | | | | | | " |
| 77 | " No. 17 | " | | | | | | | | | | | | " |
| 87 | " No. 18 | " | | | | | | | | | | | | " |
| 96 | " No. 19 | " | | | | | | | | | | | | " |
| 123 | " No. 20 | " | | | | | | | | | | | | " |
| 230 | Barnett Rafael | " | | | | | | | | | | | | " |
| 45 | Stephen Karns | " | | | | | | | | | | | | " |
| 140 | Sweet Jacy | " | | | | | | | | | | | | " |
| 320 | Thomas Williams | " | | | | | | | | | | | | " |

1847     J9.008     JA420

List of Unsettled Lands in the County of Brantford   Township   Barclay   And the Taxes Assessed thereon for the Year 1898

J9.009
JA421
1898

# List of Unseated Lands in the County of Bradford and the Taxes Assessed thereon for the Year 1878

| No. | Warrants Name | Township | Value | Co. Tax 2½ Mill | Poor Tax 1 Mill | County Bond 1½ Mills | School (Road) tax ½ mill | Town tax 2 Mill | Road tax 3 mills | Bridge tax 1 mill | Assessed Taxes for the Year 1878 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 200 | Beck Henry (Paid) | S. Roy | 400 | 4.20 | 4.20 | 4.00 | 4.00 | 1.20 | 1.20 | 4.0 | To Paid Dec 21 1878 by Union Township |
| 202 | Beeble Frederick | " | 404 | 1.01 | 1.01 | .80 | .80 | 1.21 | 1.21 | 4.0 | " |
| 237 | Bixter N. F. | " | 1104 | 3.86 | 3.86 | 1.10 | 1.10 | 3.61 | 3.61 | 1.11 | Paid Dec 21 1878 by Union Township |
| 317 | Baker John | " | 2836 | 6.32 | 6.32 | 1.65 | 1.65 | 5.11 | 5.11 | 2.52 | " |
| 432 | Baker M.M. | " | 2740 | 6.85 | 6.85 | 2.34 | 2.34 | 8.22 | 8.22 | 2.74 | " |
| 314 | Barron John Sr | " | 1980 | 4.95 | 4.95 | 2.74 | 2.74 | 5.98 | 5.98 | 1.98 | " |
| 180 | Boyardie Peter Sr | " | 600 | 1.50 | 1.50 | 2.97 | 2.97 | 3.76 | 3.76 | 6.0 | " |
| 71 | Biddile Clement | " | 1892 | 4.45 | 4.45 | .27 | .27 | 1.20 | 1.20 | 1.8 | " |
| 443 | Boyd John | " | 2418 | 6.05 | 6.05 | 3.43 | 3.43 | .18 | .18 | 2.47 | Paid Nov 28 1878 by Brooke & Hall |
| 174 | Beck Henry | " | 348 | .88 | .88 | 4.82 | 4.82 | 4.80 | 7.25 | 3.5 | Paid Nov 28 1878 by Brooke & Hall |
| 291 | Biddly James | " | 652 | 1.46 | 1.46 | 3.48 | 3.48 | .70 | 1.14 | 53 | Paid Dec 21 1878 by Union Township Co |
| 105 | Chapheworld Samuel | " | 210 | .53 | .53 | .97 | .97 | 1.16 | 1.75 | 21 | Paid Dec 21 1878 by Union Township Co |
| 174 | Evans James | " | 1392 | 3.48 | 3.48 | 2.09 | 2.09 | 4.28 | 4.28 | 1.39 | " |
| 348 | Gratton Michael | " | 853 | 1.73 | 1.73 | 3.20 | 3.20 | 2.13 | 2.13 | 2.13 | " |
| 256 | Gratte Michael | " | 716 | 1.79 | 1.79 | 1.07 | 1.07 | 1.43 | 2.25 | 72 | " |
| 290 | Grate Reymond | " | 1160 | 2.90 | 2.90 | 1.74 | 1.74 | 2.37 | 3.48 | 1.16 | " |
| 431 | Wordsworth George | " | 2586 | 6.47 | 6.47 | 2.59 | 2.59 | 5.77 | 7.76 | 2.59 | " |
| 333 | Grandpa Bernard | " | 666 | 1.67 | 1.67 | 47 | 47 | 3.33 | 2.00 | 67 | " |
| 230 | Grandpa Bruno | " | 920 | 2.30 | 2.30 | 1.38 | 1.38 | 1.80 | 2.76 | 92 | " |
| 160 | Gregg John | " | 320 | .80 | .80 | .48 | .51 | .60 | .94 | 32 | Paid Nov 28 1878 by Brooke & Hall |
| 380 | Sunclass Thomas | " | 768 | 1.92 | 1.92 | 1.25 | 1.68 | 1.92 | 2.30 | 77 | Paid Nov 28 1878 by Brooke & Hall |
| 1104 | Henry Joseph | " | 2464 | 6.26 | 6.26 | 3.69 | 2.46 | 49.3 | 7.39 | 2.46 | Paid Dec 21 1878 by Union Township Co |
| 447 | Holt Charles | " | 2237 | 5.59 | 5.59 | 3.36 | 2.26 | 4.47 | 6.71 | 2.24 | " |
| 440 | Houser Josiah | " | 1845 | 4.61 | 4.61 | 2.77 | 1.85 | 3.54 | 5.54 | 1.85 | " |
| 11 | Moultzman Ralph | " | 66 | .17 | .17 | 1.10 | .07 | .13 | .20 | .07 | " |
| 442 | Boyd Peter J | " | 2270 | 5.68 | 5.68 | 3.41 | 2.71 | 4.54 | 6.81 | 2.71 | " |
| 186 | Pabington Benjamin | " | 2916 | 7.29 | 7.29 | 4.37 | 2.92 | 5.83 | 8.75 | 2.92 | " |
| 341 | Pollard John | " | 1260 | 3.15 | 3.15 | 1.89 | 1.26 | 2.52 | 3.78 | 1.26 | " |
| 222 | Parkin William | " | 1840 | 4.60 | 4.60 | 2.76 | 1.84 | 3.68 | 5.52 | 1.84 | " |
| 262 | Reed Callison | " | 2096 | 5.24 | 5.24 | 3.14 | 2.10 | 4.19 | 6.29 | 2.10 | " |
| 432 | Sternander James | " | 2772 | 6.78 | 6.78 | 4.07 | 2.71 | 5.42 | 8.14 | 2.71 | " |
| 304 | Sterners James | " | 1824 | 4.56 | 4.56 | 2.74 | 1.82 | 3.69 | 5.47 | 1.82 | " |
| 407 | Wilson William | " | 2240 | 5.60 | 5.60 | 3.36 | 2.24 | 4.48 | 6.72 | 2.24 | " |

J9.010    1878    JA422

List of Unseated Lands in the County of Breckbard.

And the Taxes Assessed thereon for the Year 1898.

J9.011

JA423

List of Unseated Lands in the County of Bradford    And the Taxes Assessed thereon for the Year 1875

| Acres | Warrantee Name | Township | Value | | | | | | | | | | | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 320 | Tenefiel John | Overton | | | | | | | | | | | | |
| 440 | Tenefiel Samuel | " | | | | | | | | | | | | |
| 440 | Tenefiel George | " | | | | | | | | | | | | |
| 300 | Tenefiel Charles | " | | | | | | | | | | | | |
| 30 | Syfack Andrew | " | | | | | | | | | | | | |
| 440 | White James | " | | | | | | | | | | | | |
| 188 | Woodruff Samuel | " | | | | | | | | | | | | |

JA424

# List of Unseated Lands in the County of Bradford And the Taxes assessed thereon for the Year 1899

## Township: Barclay

| Acres | Warrantee's Name | Township | Value 2¼ Mills | Road tax 1¼ Mills | ... | ... | Total | Received / Paid |
|---|---|---|---|---|---|---|---|---|
| 348 | Allan, John Jr. | Barclay | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 202 | Biddle, Mark | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 25 | Biddle, Wm M. | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 180 | Biddle, James | " | | | | | | Recd Nov 8 1900 by " |
| 377 | Biddle, Wm | " | | | | | | Recd — 1899 by " |
| 136 | Karan, John | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 453 | Karan, John Jr [SCR] | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 100 | Cudack, Samuel | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 220 | Every, Johanna | " | | | | | | Paid Nov 29 1899 by Barclay Coal Co |
| 232 | Every, Jacob | " | | | | | | Paid Nov 29 1899 by Barclay Coal Co |
| 76 | Cummings, Isaac & Co | " | | | | | | |
| 44 | Everdell, Thomas [SCR] | " | | | | | | Paid — 1900 |
| 300 | Edgar, Peter | " | | | | | | |
| 366 | Edgar, Bernard | " | | | | | | Recd Nov 30 1899 by Union Tan'y Co |
| 385 | Edgar, George | " | | | | | | |
| 413 | Grayden, Andrew | " | | | | | | |
| 263 | Green, Richard [SCR] | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 214 | Groff, William | " | | | | | | Recd — 1900 |
| 23 | Groff, John | " | | | | | | Recd Nov 20 1900 by Barclay Coal Co |
| 420 | Gould, William | " | | | | | | Recd Nov 22 1899 by Barclay Coal Co |
| 413 | Grayden, Andrew | " | | | | | | Recd — 1900 |
| 187 | Gillingham, Thomas | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 101 | Helliginser, Jacob | " | | | | | | Recd Nov 27 1899 by Union Tan'y Co |
| 420 | Halfman, Jacob & Robt | " | | | | | | Recd Nov 26 1899 by Barclay Coal Co |
| 361 | Hall, William | " | | | | | | |
| 223 | Handy, Peter | " | | | | | | Paid — 1899 |
| 67 | Handy, Andrew | " | | | | | | |
| 424 | Handy, Damian | " | | | | | | Paid Nov 30 1899 by Sing Valley Coal Co |
| 396 | Handy, Samuel | " | | | | | | Recd Nov 30 1899 by Sing Valley Coal Co |
| 323 | Handy, Matthew | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 218 | Handy, Peter | " | | | | | | Recd Nov 30 1899 by Sing Valley Coal Co |
| 305 | Handy, David | " | | | | | | Recd Nov 30 1899 by Sing Kating Coal Co |
| 413 | Ivey, Warren | " | | | | | | Recd Nov 29 1899 by Barclay Coal Co |
| 338 | Ludloy, Andrew | " | | | | | | Recd Oct 24 1899 by M'Namara |
| 330 | Ludloy, Joseph | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 424 | Ludloy, Peter | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 25 | Marsh, George | " | | | | | | |
| 200 | Mackin, William | " | | | | | | Recd Nov 30 1899 by Sing Kating Coal Co |
| 160 | Mast, Catharine | " | | | | | | Paid Nov 30 1899 by Sing Kating Coal Co |
| 60 | Marmaduke, James | " | | | | | | |
| 445 | Mathews, Samuel | " | | | | | | Recd Nov 30 1899 by Sing Kating Coal Co |
| 507 | Middler, Joseph | " | | | | | | Recd Nov 30 1899 by Sing Kating Coal Co |
| 412 | Middler, Samuel | " | | | | | | Recd Nov 30 1899 by Sing Kating Coal Co |
| 232 | Middler, Peter | " | | | | | | Recd Nov 30 1899 by Sing Kating Coal Co |
| 501 | Marsh, Martin | " | | | | | | |
| 141 | Sigler, Christian [SCR] | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |
| 74 | Watson, William | " | | | | | | Recd Nov 26 1899 by Union Tan'y Co |

1899    J9.013    JA425

# List of Unrated Lands in the County of Stratford

And Net Taxes Assessed thereon for the Year 1899

| Nos | Assurance Name | Township | Acres | Value | Rate per Mill | Rate per Mill 1 Mill | School Rate 2 Mills | Union Rate 2 Mills | Road Rate 3 Mills | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| 200 | Beck Henry | St. Key | 400 | 1.90 | | 40 | 80 | 80 | 1.20 | |
| 202 | Beata Frederick | " | 400 | 1.90 | | 40 | 80 | 80 | 1.20 | |
| 237 | Butler M. J. | " | 1100 | 2.98 | | 1.10 | 2.20 | 2.20 | 3.30 | 481 |
| 301 | Baden John | " | 2036 | 5.71 | | 2.37 | 5.08 | 5.08 | 7.62 | Paid Nov 26 1899 by Ungentieny Co |
| 432 | Butler W. M. | " | 2740 | 2.76 | | 4.17 | 5.48 | 5.48 | 8.22 | Paid Nov 26 1899 by Union Fancy Co |
| 300 | Bunion John Sr | " | 1980 | 4.05 | | 1.98 | 3.96 | 3.96 | 5.94 | " |
| 420 | Bunion Peter | " | 600 | 1.85 | | 60 | 1.20 | 1.20 | 1.80 | " |
| 91 | Bella Edward | " | 180 | 45 | | 18 | 36 | 36 | 54 | " |
| 403 | Boyd John | " | 2418 | 5.44 | | 2.42 | 4.84 | 4.84 | 7.26 | 438 Paid Aug 3 1901 by Crawford Co |
| 114 | Beck Henry JACK | " | 348 | 79 | | 35 | 74 | 71 | 1.05 | 821 Paid Jan 2 1901 by Crawford Mill |
| 291 | Bidetta Jacob JACK | " | 582 | 1.31 | | 58 | 1.16 | 1.16 | 1.74 | Paid Aug 26 1899 by Union Fancy Co |
| 105 | Claphauses Samuel | " | 210 | 2.1 | | 21 | 42 | 42 | 63 | " |
| 174 | Culkins Samuel | " | 1392 | 1.34 | | 1.34 | 2.78 | 2.78 | 4.17 | " |
| 348 | Graham Andrew | " | 2130 | 4.19 | | 2.13 | 4.26 | 4.26 | 6.39 | " |
| 236 | Graty Michael | " | 716 | 1.61 | | 72 | 1.44 | 1.44 | 2.16 | " |
| 290 | Graty Wayman | " | 1160 | 2.61 | | 1.16 | 2.32 | 2.32 | 3.48 | " |
| 431 | Gladdieson George | " | 2586 | 5.13 | | 2.59 | 5.18 | 5.18 | 7.77 | " |
| 333 | Graaff Bernard | " | 666 | 1.57 | | 67 | 1.34 | 1.34 | 2.01 | " |
| 230 | Graaff Simon | " | 920 | 2.07 | | 92 | 1.84 | 1.84 | 2.76 | " |
| 237 | Graff John JACK | " | 320 | 72 | | 32 | 1.60 | 1.60 | 96 | 450 Paid Aug 3 1901 by Crawford Mill |
| 380 | Giesbes Thomas JACK | " | 768 | 1.35 | | 77 | 1.54 | 1.54 | 2.31 | 1090 Paid Jan 3 1901 by Crawford Mill |
| 444 | Henry Dorfeld JACK | " | 2466 | 5.53 | | 2.46 | 4.48 | 4.52 | 7.38 | Paid Dec 26 1899 by Union Fancy Co |
| 491 | Hunt Charles | " | 2237 | 5.06 | | 2.24 | 4.48 | 4.48 | 6.72 | " |
| 11 | Kilgenson Robert | " | 1363 | 4.16 | | 1.85 | 3.70 | 3.70 | 5.83 | " |
| 412 | Skagit Peter J. | " | 66 | 16 | | 07 | 14 | 14 | 21 | " |
| 186 | Buckingham Stephen | " | 2270 | 5.11 | | 2.27 | 4.54 | 4.54 | 6.81 | " |
| 341 | Butler John | " | 2916 | 1.37 | | 2.92 | 5.84 | 5.84 | 8.76 | " |
| 222 | Parker William | " | 1260 | 2.83 | | 1.26 | 2.52 | 2.52 | 3.78 | " |
| 242 | Reel Catherine | " | 1840 | 4.14 | | 1.84 | 3.68 | 3.68 | 5.52 | " |
| 452 | Wagamaker Samuel | " | 2916 | 4.72 | | 2.10 | 4.20 | 4.20 | 6.30 | " |
| 300 | Simmon Jacob | " | 2712 | 6.11 | | 2.71 | 5.42 | 5.42 | 8.13 | " |
| 407 | Wilson William | " | 1524 | 4.09 | | 1.82 | 3.64 | 3.64 | 5.46 | " |
| | | " | 2260 | 5.06 | | 2.24 | 4.48 | 4.48 | 6.72 | " |

1899

JA426

## List of Uncultivated Land in the County of Brantford and the same Assessed Rate for the Year 1899

| No. | Owner's Name | Township | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

J9.015

JA427

Case: 22-1587 Document: 14-2 Page: 264 Date Filed: 06/07/2022
Case 1:17-cv-01567-CCC-SES Document 190-1 Filed 04/17/18 Page 17 of 21

1899

# List of Unseated Land in the County of Bradford and the Taxes Assessed thereon for the Year 1899.

| Acres | Warrantee Name | | Township | Value | Co. tax 2¼ Mill | Poor tax 1 Mill | Court House 1 Mill | School tax 8 mills | Twp tax 3 Mills | Road tax 20 Mills | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 320 | Temple Peter | BJM | Overton | 320 | 72 | 32 | 32 | 2 56 | 96 | 6 40 / 3 40 | 11 28 | Paid Jany 5 1900 by P J Mallory |
| 440 | Temple Samuel | BJM | " | 440 | 99 | 44 | 44 | 3 52 | 1 32 | 8 80 | 15 51 | Paid Jany 5 1900 by P J Mallory. |
| 40 | Temple George | Long Valley Coal Co | " | 40 | 09 | 04 | 04 | 32 | 12 | 80 | [illegible] | Paid Dec 30 1899 by Long Valley Coal Co |
| 300 | Temple George | BJM | " | 300 | 67 | 30 | 30 | 2 40 | 90 | 6 00 | 10 57 | Paid Jany 5 1900 by P J Mallory |
| 30 | Tybout Andrew | [illegible] | " | 30 | 07 | 03 | 03 | 24 | 9 | 60 | — | Paid Dec 26 1899 by Union Tanning Co |
| ~~440~~ | White James | MPM | " | 880 | 1 98 | 88 | 88 | 7 04 | 2 64 | 17 60 | 31 02 | Redeemed & Paid by M. P. Murray Mch 12 1901 / Sold to Commissioners June 11 1900 |
| ~~188~~ | Woodruff Hannah | | " | 188 | 43 | 19 | 19 | 1 50 | 56 | 3 76 | 6 63 | 7/88 Redeemed and paid by [illegible] Thompson June 10 1902 / Sold to Commissioners June 11 1900 |
| | Owners: | | | | | | | | | | | |
| 100 | Cobb W. J. | | " | 1000 | 2 25 | 1 00 | 1 00 | 8 00 | 3 00 | 20 00 | 35 25 | Paid by W J Cobb June 9 1900 |
| 94 | Corser John F | | " | 750 | 1 69 | 75 | 75 | 6 00 | 2 25 | 15 00 | 26 44 | Paid by J F Corser Apr 9th 1900. |
| 360 | Little, Stark, Seeley & Day | | " | 720 | 1 62 | 72 | 72 | 5 76 | 2 16 | 14 40 | 25 38 | Paid by [illegible] for Little Stark Seeley & Day Mch 5 1900 |
| 100 | McCracken James | | " | 100 | 22 | 10 | 10 | 80 | 30 | 2 00 | | Paid Dec 29 1899 by James McCracken |
| 160 | Seargent Chas E. | Twp of Plane | " | 160 | 36 | 16 | 16 | 1 28 | 48 | 3 20 | 5 64 | Paid June 6 1900 by Charles E Sargent |
| 52 | Hakes Chas | | " | 125 | 29 | 13 | 13 | 1 00 | 38 | 2 50 | 4 43 | Paid by Mrs Chas Hakes June 6 1900 |
| 52 | Lee John C. | | " | 125 | 29 | 13 | 13 | 1 00 | 38 | 2 50 | 4 43 | Paid by E E [illegible] June 11 1900 |
| 50 | Thompson Levi | | " | 120 | 27 | 12 | 12 | 96 | 36 | 2 40 | | Sold to Guy C. Hollon June 11 190[illegible] |
| 46 | Yale L. A. | | " | 110 | 25 | 11 | 11 | 88 | 33 | 2 20 | | " " Commissioners " " June 11 190[illegible] |

| Acres | Warrantee Name | Township | Value | 2¼ Mill | 1 Mill | 1 Mill | 3 Mill | | |
|---|---|---|---|---|---|---|---|---|---|
| 25 | Hallenback Heirs No. 5 | Terry | 385 | 88 | 39 | 39 | 1 16 | 2 82 | Paid Jany 10 1900 by M H & G Wells |
| 41 | " " " 6 | " | 510 | 1 14 | 51 | 51 | 1 53 | 3 69 | " " " " " " |
| 96 | " " " 9 | " | 1300 | 2 92 | 1 30 | 1 30 | 3 90 | 9 42 | " " " " " " |
| 96 | " " " 10 | " | 1300 | 2 92 | 1 30 | 1 30 | 3 90 | 9 42 | " " " " " " |
| 18 | " " " 12 | " | 255 | 58 | 26 | 26 | 78 | 1 88 | " " " " " " |
| 35¾ | " " " 13 | " | 535 | 1 21 | 54 | 54 | 1 62 | 3 91 | " " " " " " |
| 78 | " " " 14 | " | 1100 | 2 50 | 1 10 | 1 10 | 3 30 | 8 00 | " " " " " " |
| 76 | " " " 15 | " | 1120 | 2 52 | 1 12 | 1 12 | 3 36 | 8 12 | " " " " " " |
| 58 | " " " 16 | " | 700 | 1 57 | 70 | 70 | 2 10 | 5 07 | " " " " " " |
| 65 | " " " 17 | " | 1000 | 2 25 | 1 00 | 1 00 | 3 00 | 7 25 | " " " " " " |
| 125 | Miller C. F. | " | 1150 | 2 59 | 1 15 | 1 15 | 3 45 | 8 34 | " " " " " " |
| 94 | " " " 18 | " | 900 | 2 02 | 90 | 90 | 2 70 | 6 52 | " " " " " " |
| 97 | " " " 19 | " | 900 | 2 02 | 90 | 90 | 2 70 | 6 52 | " " " " " " |
| 96 | " " " 20 | " | 900 | 2 02 | 90 | 90 | 2 70 | 6 52 | " " " " " " |
| 235 | Bennett Rufus | " | 3000 | 6 75 | 3 00 | 3 00 | 9 00 | 21 75 | " " " " " " |
| 140 | Ross Lucy | " | 1020 | 2 29 | 1 02 | 1 02 | 3 06 | 7 39 | " " " " " " |
| 350 | Thomas William | " | 2900 | 6 52 | 2 90 | 2 90 | 8 70 | 21 02 | " " " " " " |

J9.016

List of Unseated Lands in the Township of Bradford and the same assessed thereon for the year 1901.

J9.017

JA429

1900

List of Unseated Lands in the County of Bradford. And the Taxes assessed thereon for the year 1900

J9.018

JA430

1900

206    207

| Acres | Warrants Names | Properties | | Value | Co Tax 3¼ Mills | Co Tax ¼ Mills | Road Tax ½ Mills | School Tax 1¼ Mills | Road Tax 2 Mills | State Tax 2 Mills | Road Tax 4 Mills | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 270 | Rich Henry | De Cof | | 400 | 140 | 60 | 60 | 100 | 80 | 160 | | 32 | | |
| 202 | Rudt Frederick | " | | 404 | 141 | 61 | 61 | 101 | 81 | 162 | | 25 1901 | Paid Dec. | |
| 237 | Ruddle MZ | " | | 1100 | 386 | 166 | 166 | 276 | 231 | 442 | | 21 1901 | |
| 317 | Parker John | 7½ a | | 2036 | 878 | 380 | 380 | 647 | 507 | 1014 | | | Paid Dec 17 1900 by Union Tanning Co |
| 487 | Ruddle Jn W. | " | | 2740 | 959 | 411 | 411 | 688 | 548 | 1096 | | | |
| 814 | Ransom Smith | 81 | | 1920 | 692 | 297 | 297 | 495 | 396 | 790 | | | |
| 191 | Segulite Elli | " | | 600 | 210 | 90 | 90 | 150 | 120 | 240 | | | |
| 91 | Ruddle Vermont | " | | 182 | 64 | 29 | 27 | 46 | 37 | 73 | | | |
| 403 | Parks John | " | | 2418 | 846 | 363 | 363 | 605 | 484 | 967 | | | |
| 174 | Parks Henry J & R Rush | " | | 348 | 122 | 52 | 52 | 87 | 69 | 139 | | | |
| 291 | Ruddle Lumber Co & R Mill | " | | 572 | 204 | 87 | 87 | 174 | 116 | 233 | | | Paid Dec 17 1900 by Union Tanning Co |
| 105 | Warehouse Samuel | T.U. a | | 210 | 74 | 32 | 32 | 53 | 42 | 84 | | | |
| 174 | Valence James | " | | 1542 | 487 | 209 | 204 | 348 | 278 | 557 | | | |
| 848 | Warehouse Andrew | " | | 2280 | 746 | 320 | 320 | 533 | 426 | 852 | | | |
| 236 | Gracey Vermont | " | | 716 | 251 | 108 | 108 | 179 | 143 | 286 | | | |
| 290 | Gracey Reynan | " | | 1160 | 406 | 174 | 174 | 290 | 232 | 464 | | | |
| 431 | Warehouse George | " | | 2836 | 705 | 388 | 388 | 647 | 517 | 1034 | | | |
| 833 | Hornach Edward | " | | 666 | 233 | 100 | 100 | 167 | 133 | 266 | | | |
| 230 | Hornach Henry | " | | 920 | 322 | 138 | 138 | 230 | 184 | 368 | | | |
| 160 | Gardner Wm S & R R GH | " | | 308 | 112 | 48 | 48 | 160 | 128 | 128 | | | Paid Apr 10 1901 & J F & Co |
| 370 | " Wm J & R R GH | " | | 768 | 269 | 115 | 113 | 304 | 154 | 307 | | | Paid Apr 10 1901 by Union Tanning Co |
| 444 | Parks George & R R GH | " | | 2464 | 862 | 370 | 370 | 1032 | 492 | 986 | | | Paid Dec 17 1900 by Union Tanning Co |
| 497 | Bird Peter | " | | 783 | 283 | 336 | 336 | 589 | 467 | 894 | | | |
| 410 | Davis Grant | " | | 1345 | 646 | 277 | 277 | 461 | 13 | 738 | | | |
| 714 | Boyd Ellis | " | | 66 | 23 | 10 | 10 | 17 | 494 | 908 | | | |
| 486 | Bonnington Ray | " | | 2270 | 795 | 341 | 341 | 568 | 454 | 1166 | | | |
| 341 | Vaughan Zane | " | | 2416 | 1021 | 488 | 488 | 729 | 583 | 304 | | | |
| 322 | Parker William | " | | 1260 | 441 | 189 | 189 | 315 | 252 | 736 | | | |
| 838 | Parker John L | " | | 1540 | 644 | 276 | 276 | 460 | 368 | 838 | | | |
| 262 | Beck William | " | | 2016 | 734 | 314 | 314 | 524 | 419 | 1085 | | | |
| 652 | Hornan Jn | " | | 2712 | 949 | 407 | 407 | 678 | 542 | 1080 | | | |
| 887 | Hornan George | " | | 1874 | 638 | 274 | 274 | 386 | 362 | 729 | | | |
| 407 | Hilton William | " | | 2240 | 784 | 336 | 336 | 560 | 448 | 896 | | | |

List of Provincial Lands in the District of Guysboro and the Taxes assessed thereon for the year 1900

| New Precinct Names | Township | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

J9.019

JA431

List of Unseated Lands in the County of Bradford    And the date tax'd account taken for the year 1900

1900

| Aut | Tavern Tax | Name | Township | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

JA432

# CERTIFICATE OF SERVICE

I, Michael J. Scarinci, Deputy Attorney General, do hereby certify that I have this day served the foregoing Joint Appendix – Volume III of V, via electronic service, on the following:

Christopher R. Healy, Esq.
Troutman Pepper Hamilton Sanders
Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Laura A. Lange
1670 Sturbridge Drive
Sewickley, PA 15143

Justin G. Weber
Troutman Pepper
100 Market Street
P.O. Box 1181
Suite 200
Harrisburg, PA 17108
Attorneys for Appellees

Four copies were also sent by first class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

/s/ Michael J. Scarinci

Deputy Attorney General

DATE: June 7, 2022